**KAPLAN FOX & KILSHEIMER LLP**
LAURENCE D. KING (SBN 206423)
KATHLEEN A. HERKENHOFF (SBN 168562)
MATTHEW B. GEORGE (SBN 239322)
1999 Harrison Street, Suite 1560
Oakland, CA  94612
Telephone:  415/772-4700
415/772-4707 (fax)
lking@kaplanfox.com
kherkenhoff@kaplanfox.com
mgeorge@kaplanfox.com

*Attorneys for Plaintiff and the Proposed Class*

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RONALD RAYNALDO, RICHARD BARRIE, ANDRE CRUZ, FERNANDA NUNES FERREIRA, GEORGE JONES, ROBERT LIZZUL, MITCHELL BRYON PAZANKI, JOHN PROVENZANO, HARRY RAPP, DENNIS WOODS, DAYANE TESSINARI, BRENDAN SANGER, AND JASON CASEY, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> vs. <br><br> AMERICAN HONDA MOTOR CO., INC., <br><br> Defendant. | Case No. 3:21-cv-05808-HSG <br><br> **AMENDED CLASS ACTION COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ...............................................................................................1

II.  JURISDICTION AND VENUE ........................................................................3

III. INTRA-DISTRICT CASE ASSIGNMENT ....................................................3

IV.  PARTIES ...........................................................................................................4

  A.   Plaintiffs ..................................................................................................4

     1.   Ronald Raynaldo ..........................................................................4

     2.   Richard Barrie ..............................................................................5

     3.   Andre Cruz ...................................................................................6

     4.   Fernanda Nunes Ferreira ..............................................................7

     5.   George Jones ................................................................................8

     6.   Robert Lizzul ...............................................................................9

     7.   Mitchell Bryon Pazanki .............................................................11

     8.   John Provenzano ........................................................................11

     9.   Harry Rapp .................................................................................13

     10.  Dennis Woods ............................................................................14

     11.  Dayane Tessinari .......................................................................15

     12.  Brendan Sanger ..........................................................................16

     13.  Jason Casey ................................................................................18

  B.   Defendant ...............................................................................................20

V.   SUBSTANTIVE ALLEGATIONS ................................................................22

  A.   Honda's History of Emphasizing the Quality and Reliability of Its
       Vehicles..................................................................................................22

  B.   Parasitic Draining in Vehicles Creates an Unreasonable Risk of Failure of
       Mandated Safety Features and Engine Stalls Rending Vehicle
       Transportation Unsafe............................................................................27

1

2                                                                                      **Page**

3

4       C.   Over Two Million Class Vehicles Suffering from the Parasitic Drain
            Defect Were Sold by Honda ...................................................................30

5
        D.   Honda Knew that the Class Vehicles Suffered from the Defect Prior to Its
6            Sale of the Class Vehicles...................................................................43

7       E.   Complaints Made Directly to Honda's Customer Service Division .....................54

8       F.   Honda's Service Bulletins Fail to Fix the Defect and Further Conceal the
            Defect...................................................................................................56
9
        G.   Honda Breached the Express Warranties Covering the Class Vehicles ...............62
10

11   VI.   FRAUDULENT OMISSION/CONCEALMENT ALLEGATIONS ...............................63

12   VII.  TOLLING OF STATUTES OF LIMITATIONS .........................................................65

13       A.   Discovery Rule...................................................................................65

14       B.   Fraudulent Concealment ....................................................................66

15   VIII. CLASS ALLEGATIONS ........................................................................................66

16   IX.   CAUSES OF ACTION ...........................................................................................70

17       COUNT ONE: VIOLATION OF THE CALIFORNIA CONSUMER LEGAL
            REMEDIES ACT...................................................................................70
18
19       COUNT TWO: VIOLATION OF THE CALIFORNIA UNFAIR
            COMPETITION LAW .........................................................................73
20
21       COUNT THREE: VIOLATION OF THE CALIFORNIA FALSE
            ADVERTISING LAW...........................................................................76
22
23       COUNT FOUR: BREACH OF EXPRESS WARRANTY .........................................77

24       COUNT FIVE: BREACH OF IMPLIED WARRANTY OF
            MERCHANTABILITY ........................................................................80
25       COUNT SIX: UNJUST ENRICHMENT .................................................................82

26       COUNT SEVEN: FRAUDULENT CONCEALMENT..............................................83

27       COUNT EIGHT: BREACH OF EXPRESS WARRANTY ...........................................86

28

1

2                                                                                        **Page**

3

4       COUNT NINE: BREACH OF IMPLIED WARRANTY OF
            MERCHANTABILITY .................................................................88

5
        COUNT TEN: VIOLATIONS OF THE IOWA PRIVATE RIGHT OF ACTION
6           FOR CONSUMER FRAUDS ACT.......................................................89

7       COUNT ELEVEN: VIOLATION OF FLORIDA'S UNFAIR & DECEPTIVE
            TRADE PRACTICES ACT................................................................90

8
        COUNT TWELVE: BREACH OF EXPRESS WARRANTY.......................................92
9
        COUNT THIRTEEN: BREACH OF IMPLIED WARRANTY OF
10          MERCHANTABILITY .................................................................93

11
        COUNT FOURTEEN: BREACH OF THE DECEPTIVE ACTS AND
12          PRACTICES STATUTE ................................................................94

13      COUNT FIFTEEN: BREACH OF EXPRESS WARRANTY .................................96

14      COUNT SIXTEEN: BREACH OF IMPLIED WARRANTY OF
            MERCHANTABILITY .................................................................100
15
        COUNT SEVENTEEN: BREACH OF EXPRESS WARRANTY .................................100
16
        COUNT EIGHTEEN: BREACH OF IMPLIED WARRANTY OR
17          MERCHANTABILITY .................................................................102

18
        COUNT NINETEEN: BREACH OF THE ILLINOIS CONSUMER FRAUD
19          AND DECEPTIVE BUSINESS PRACTICES ACT...........................................105

20      COUNT TWENTY: BREACH OF THE ILLINOIS CONSUMER FRAUD AND
            DECEPTIVE BUSINESS PRACTICES ACT ....................................................106
21
        COUNT TWENTY-ONE: BREACH OF EXPRESS WARRANTY.............................107
22
        COUNT TWENTY-TWO: BREACH OF IMPLIED WARRANTY OF
23          MERCHANTABILITY .................................................................109

24
        COUNT TWENTY-THREE: BREACH OF THE ARIZONA CONSUMER
25          FRAUD ACT...............................................................................111

26      COUNT TWENTY-FOUR: VIOLATIONS OF THE NEVADA DECEPTIVE
            TRADE PRACTICES ACT................................................................113
27

28

**Page**

COUNT TWENTY-FIVE: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY ................................................................116

COUNT TWENTY-SIX: BREACH OF EXPRESS WARRANTY ..............................118

COUNT TWENTY-SEVEN: DECEPTIVE ACTS OR PRACTICES PROHIBITED BY MASSACHUSETTS LAW ..................................120

COUNT TWENTY-EIGHT: MASSACHUSETTS LEMON LAW ..............................123

COUNT TWENTY-NINE: BREACH OF EXPRESS WARRANTY ...........................124

COUNT THIRTY: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY ................................................................126

COUNT THIRTY-ONE: VIOLATIONS OF THE MICHIGAN CONSUMER PROTECTION ACT .............................................................127

COUNT THIRTY-TWO: BREACH OF EXPRESS WARRANTY .............................130

COUNT THIRTY-THREE: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY ................................................................132

X.      PRAYER FOR RELIEF ......................................................................133

XI.     DEMAND FOR JURY TRIAL ............................................................134

Plaintiffs Ronald Raynaldo, Richard Barrie, Andre Cruz, Fernanda Nunes Ferreira, George Jones, Robert Lizzul, Mitchell Bryon Pazanki, John Provenzano, Harry Rapp, Dennis Woods, Dayane Tessinari, Brendan Sanger, and Jason Casey (collectively, "Plaintiffs"), individually and on behalf of all those similarly situated, files this proposed class action suit against Defendant American Honda Motor Company, Inc. ("Honda," "Company," or "Defendant"), based upon their personal knowledge as to facts specific to each of them in an individual capacity, respectively, and based upon the investigation of counsel in all other respects, and allege as follows:

## I. INTRODUCTION

1.      Honda markets its vehicles in a manner to convince consumers that they are buying a product of the highest quality and made with the utmost care and, most importantly, that will be dependable. Honda has actively concealed, however, that millions of vehicles suffer from a latent defect which results in the failure of the vehicles' essential purpose: to start running and safely transport consumers. The Class Vehicles[1] are Honda CR-V (model years 2017-2019) and Honda Accord (model years 2016-2019), and each of these vehicles was delivered to consumers with an identical and inherent defect in the Class Vehicle's design and/or manufacturing process.

2.      Currently sold automobiles need a functioning 12-volt battery. A car battery is an essential component that provides power to a vehicle's sparkplugs and starter. Batteries, when properly functioning, provide continuous power to keep the vehicle running, and also to keep items such as hazard lights and other safety mandated electronics operating when the engine is off.[2]

3.      A condition known as parasitic draining is a defect that each of the Class Vehicles alleged herein suffers. Parasitic draining occurs when electrical components in a vehicle fail to shut down once the vehicle is parked and turned off, which, in turn, allows the components to continue consuming power from the battery ("Parasitic Drain Defect" or "Defect"). If not properly

---

[1]   Plaintiffs reserve the right to amend their definition of Class Vehicles to include additional Honda vehicles with the same inherent defect.

[2]   *See* 49 C.F.R. §571.108.

repaired, parasitic draining results in the premature obsolescence of the vehicle's battery and various related component failures.

4.      In vehicles with a Parasitic Drain Defect, the vehicle will be unable to start, causing scores of issues, ultimately stranding consumers. Further, the damage caused by the Parasitic Drain Defect manifests without advance notice, creating the risk of vehicles stopping while being driven, and threatening to cause and/or causing federally mandated safety features such as emergency hazard lights and headlights to fail. Prolonged and recurrent battery depletion results in the overuse of the vehicle's alternator (which is used to replenish the battery when the engine is on) and can cause the vehicle's engine to stall.

5.      As a result of the Defect, Class Vehicle owners are often being required to pay hundreds or thousands of dollars for replacement batteries and repairs. Worse yet, many are still left with the Defect even after these expensive attempts at repair. Replacing batteries and other components which degrade as a result of the Defect are only temporary fixes, because the replacement components will ultimately fail as well.

6.      Honda knew, and/or was on notice of the fact, that its Class Vehicles suffered from the Parasitic Drain Defect even before commencing sales. Indeed, Honda issued internal Service Bulletins to its authorized dealerships about the Defect found in the Class Vehicles, but has yet to offer a reliable solution to the Defect or recall the Class Vehicles. Instead, Honda has largely only instructed its dealers to update internal software and replace dead batteries in certain Class Vehicles, if necessary. Neither "corrective action" remedies the Parasitic Drain Defect, nor does it make the vehicles any more dependable for their owners.

7.      If Plaintiffs and/or other Class members knew of the Defect at the time of purchase or lease, they would not have bought or leased the Class Vehicles or would have paid substantially less for them. Plaintiffs and other Class members were denied the benefit of the bargain in connection with their purchases and/or leasing of the Class Vehicles.

8.      The conduct described herein makes Defendant liable for, among other things, breach of express and implied warranties, and unfair, deceptive, and/or fraudulent business practices. In turn, owners and/or lessees of the Class Vehicles, including Plaintiffs, have suffered

1  an ascertainable loss of money and/or property and/or loss in value. The unfair and deceptive trade

2  practices committed by Defendant caused Plaintiffs and the members of the Class damages,

3  including, but not limited to, loss of value, loss of use of the vehicles, and battery replacement and

4  other repair costs.

5       9.      Accordingly, Plaintiffs bring this action to redress Defendant's misconduct.

6  Plaintiffs seek recovery of damages and a repair under state consumer protection statutes and

7  applicable express and implied warranties, and reimbursement of all expenses associated with the

8  repair or replacement of the Class Vehicles.

9  **II.    JURISDICTION AND VENUE**

10      10.      This Court has subject matter jurisdiction under the Class Action Fairness Act of

11  2005, 28 U.S.C. §1332(d)(2) and (6), because: (a) there are 100 or more class members; (b) there

12  is an aggregate amount in controversy exceeding $5,000,000.00 exclusive of interest and costs;

13  and (c) there is minimal diversity because at least one plaintiff and one defendant are citizens of

14  different states.

15      11.      Venue is proper in this judicial district under 28 U.S.C. §1391 because Defendant

16  transacts substantial business and because Plaintiff Ronald Raynaldo ("Raynaldo") purchased his

17  Class Vehicle at issue in this District. Defendant advertised in this District and received substantial

18  revenue and profits from sales and/or leases of the Class Vehicles in this District. Therefore, a

19  substantial part of the events and/or omissions giving rise to the claims occurred, in part, within

20  this District.

21      12.      This Court has personal jurisdiction over Defendant by virtue of its transactions

22  and business conducted in this judicial district. Defendant has transacted and done business, and

23  violated statutory and common law, in the State of California and in this District.

24  **III.    INTRA-DISTRICT CASE ASSIGNMENT**

25      13.      Pursuant to Civil Local Rule 3-2(c), an intra-district assignment to the San

26  Francisco or Oakland Division is appropriate because a substantial part of the events or omissions

27  which give rise to the claims asserted herein occurred in this Division, including that Plaintiff

28  Raynaldo made his purchase of his 2017 Honda Accord in San Francisco, California.

## IV.     PARTIES

### A.     Plaintiffs

#### 1.     Ronald Raynaldo

14.     Plaintiff Ronald Raynaldo is a citizen of California and resides in San Francisco, California. Plaintiff Raynaldo purchased a 2017 Honda Accord, vehicle identification number ("VIN") 1HGCR2F57HA112027, from San Francisco Honda, located at 1395 Van Ness Avenue, San Francisco, California 94109 in April 2019.

15.     San Francisco Honda is part of Honda's network of authorized dealers across the United States. Honda features San Francisco Honda on its website as an authorized Honda dealer, with links to lists of inventory of Honda vehicles on its website.

16.     When shopping for his Class Vehicle, Plaintiff Raynaldo researched and considered the reliability and quality of the make and manufacturer, and has purchased Hondas in the past, so Plaintiff Raynaldo was familiar with Honda's representations about Honda's vehicle quality, safety, and warranties.

17.     Prior to purchasing his Class Vehicle, Plaintiff Raynaldo was aware of and/or reviewed Honda's promotional materials on the internet and/or at San Francisco Honda, saw stickers the dealer placed on the vehicle, and interacted with Honda sales agents at San Francisco Honda. Each of those information sources failed to disclose the presence of the Defect in 2017 Honda Accord models or the other Class Vehicles.

18.     Through his exposure and interaction with Honda, Plaintiff Raynaldo was aware of Honda's uniform and nationwide marketing message that its vehicles are safe and dependable, which was material to his decision to purchase his Class Vehicle. When he purchased the vehicle, he believed that, based on Honda's marketing message, he would be in a safe and dependable vehicle, one that is safer than a vehicle that is not marketed as safe and dependable. At no point before Plaintiff Raynaldo purchased his vehicle did Honda disclose to him that his vehicle was not safe or dependable, or that it suffered from the Parasitic Drain Defect, which creates safety risks and renders the vehicle useless.

19.     After purchasing the vehicle, Plaintiff Raynaldo experienced issues with his Class Vehicle as a result of the Defect. Plaintiff Raynaldo does not have a vehicle that is safe or reliable as advertised by Honda.

20.     Plaintiff Raynaldo purchased his Class Vehicle with the Parasitic Drain Defect as part of a transaction in which Honda did not disclose material facts related to the automobile's essential purpose – safe and dependable transportation. Plaintiff Raynaldo did not receive the benefit of his bargain. He purchased a vehicle that is of a lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding safe and reliable operation. The Parasitic Drain Defect has significantly diminished the value of Plaintiff Raynaldo's Class Vehicle.

21.     Had Honda disclosed the Defect, Plaintiff Raynaldo would not have purchased his Class Vehicle, or would have paid less to do so.

22.     Plaintiff Raynaldo would purchase another Honda from Honda in the future if Defendant's representations about the vehicle, including its safety and durability, were accurate.

**2.     Richard Barrie**

23.     Plaintiff Richard Barrie ("Barrie") is a citizen of Illinois, and resides in Hawthorn Woods, Illinois. Plaintiff Barrie purchased a new 2017 Honda Accord in September 2016, VIN 1HGCR2F93HA034915, from Continental Honda, located at 5901 South La Grange Road, Countryside, Illinois 60525.

24.     Continental Honda is part of Honda's network of authorized dealers across the United States. Honda features Continental Honda on its website as an authorized Honda dealer, with links to lists of inventory of Honda vehicles on its website.

25.     When shopping for his Class Vehicle, Plaintiff Barrie researched and considered the reliability and quality of the make and manufacturer. Prior to purchasing his Class Vehicle, Plaintiff Barrie was aware of and/or reviewed Honda's promotional materials on the internet and/or at Continental Honda, saw stickers the dealer placed on the vehicle, and interacted with Honda sales agents at Continental Honda.  Each of those information sources failed to disclose the presence of the Defect in 2017 Honda Accord models or the other Class Vehicles.

26. Through his exposure and interaction with Honda, Plaintiff Barrie was aware of Honda's uniform and nationwide marketing message that its vehicles are safe and dependable, which was material to his decision to purchase his Class Vehicle. When he purchased the vehicle, he believed, based on Honda's marketing message, that he would be in a safe and dependable vehicle, one that is safer than a vehicle that is not marketed as safe and dependable. At no point before Plaintiff Barrie purchased his vehicle did Honda disclose to him that his vehicle was not safe or dependable, or that it suffered from the Parasitic Drain Defect, which creates safety risks and renders the vehicle useless.

27. After purchasing the vehicle, Plaintiff Barrie experienced issues with his Class Vehicle as a result of the Defect. Plaintiff Barrie does not have a vehicle that is safe or reliable as advertised by Honda.

28. Plaintiff Barrie purchased his Class Vehicle with the Parasitic Drain Defect as part of a transaction in which Honda did not disclose material facts related to the automobile's essential purpose – safe and dependable transportation. Plaintiff Barrie did not receive the benefit of his bargain. He purchased a vehicle that is of a lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding safe and reliable operation. The Parasitic Drain Defect has significantly diminished the value of Plaintiff Barrie's Class Vehicle.

29. Had Honda disclosed the Defect, Plaintiff Barrie would not have purchased his Class Vehicle, or would have paid less to do so.

30. Plaintiff Barrie would purchase another Honda from Honda in the future if Defendant's representations about the vehicle, including its safety and durability, were accurate.

### 3. Andre Cruz

31. Plaintiff Andre Cruz ("Cruz") is a citizen of Florida and resides in Deerfield Beach, Florida. Plaintiff Cruz leased a 2016 Honda Accord in June 2016, VIN 1HGCR2F34GA226063, from Hendrick Honda Pompano Beach, an authorized Honda dealer, located at 5381 North Federal Highway, Pompano Beach, Florida 33064. Plaintiff Cruz's Class Vehicle was covered by a written warranty. When shopping for his Class Vehicle, Plaintiff Cruz researched and considered the

1   reliability and quality of the make and manufacturer, including Honda's warranty. Prior to leasing

2   the Class Vehicle, Plaintiff Cruz heard, viewed, and/or read Honda marketing materials and

3   advertisements including brochures, commercials, and internet advertisements as well as emails

4   from Honda with lease offers that touted the quality, reliability, and safety of Honda vehicles.

5       32.    Plaintiff Cruz relied on the information regarding the quality, safety, and reliability

6   of the Class Vehicles conveyed in those marketing materials in deciding to lease his Class Vehicle.

7   Honda failed to disclose the Parasitic Drain Defect to Plaintiff Cruz before he leased his Class

8   Vehicle, despite Honda's knowledge of the Defect, and Plaintiff Cruz, therefore, leased his Class

9   Vehicle on the reasonable, but mistaken, belief that it would be a high quality, reliable and safe

10  vehicle. Plaintiff Cruz would not have leased the Class Vehicle, or would not have paid as much

11  for it, had he known the vehicle had a Defect that could drain the battery and leave him stranded

12  without warning.

13      33.    After leasing the vehicle, Plaintiff Cruz experienced issues with his Class Vehicle

14  as a result of the Defect. Plaintiff Cruz does not have a vehicle that is safe or reliable as advertised

15  by Honda.

16                      **4.     Fernanda Nunes Ferreira**

17      34.    Plaintiff Fernanda Nunes Ferreira ("Ferreira") is a citizen of Florida, and resides in

18  Pompano Beach, Florida. Plaintiff Ferreira purchased a 2017 Honda Accord in December 2017,

19  VIN 7FARW1H86HE041546, from Hendrick Pompano Beach, an authorized Honda dealer,

20  located at 5381 North Federal Highway, Pompano Beach, Florida 33064. Plaintiff Ferreira's Class

21  Vehicle was covered by a written warranty. When shopping for her Class Vehicle, Plaintiff Ferreira

22  researched and considered the reliability and quality of the make and manufacturer, including

23  Honda's warranty. Prior to purchasing the Class Vehicle, Plaintiff Ferreira heard, viewed, and/or

24  read Honda marketing materials and advertisements including commercials and internet

25  advertisements that represented the reliability and safety of Honda vehicles.

26      35.    Plaintiff Ferreira relied on the information regarding the quality, safety, and

27  reliability of the Class Vehicle conveyed in those marketing materials and advertisements in

28  deciding to purchase her Class Vehicle. Honda failed to disclose the Parasitic Drain Defect to

1   Plaintiff Ferreira before she purchased her Class Vehicle, despite Honda's knowledge of the

2   Defect, and Plaintiff Ferreira, therefore, purchased her Class Vehicle on the reasonable, but

3   mistaken, belief that it would be a high quality, reliable, and safe vehicle. Plaintiff Ferreira would

4   not have purchased the Class Vehicle, or would not have paid as much for it, had she known the

5   vehicle had a Defect that could drain the battery and leave her stranded without warning.

6       36.    After purchasing the vehicle, Plaintiff Ferreira experienced issues with her Class

7   Vehicle as a result of the Defect. Plaintiff Ferreira does not have a vehicle that is safe or reliable

8   as advertised by Honda.

9           **5.    George Jones**

10      37.    Plaintiff George Jones ("Jones") is a citizen of Iowa and resides in Lamoni, Iowa.

11  Plaintiff Jones purchased a new 2019 Honda CR-V, VIN 7FARW2H5XKE005457, from Smart

12  Honda, located at 11206 Hickman Road, Clive, Iowa 50325, on February 22, 2019.

13      38.    Smart Honda is part of Honda's network of authorized dealers across the United

14  States. Honda promotes Smart Honda on its website and lists Smart Honda's inventory of Honda

15  vehicles on its website.

16      39.    When shopping for his Class Vehicle, Plaintiff Jones researched and considered the

17  reliability and quality of the make and manufacturer, including Honda's warranty department.

18  Plaintiff Jones frequently travels for work and to visit family out of state, so the ability to park his

19  vehicle for a week at a time without the need to call a tow truck or jump-start the vehicle, among

20  other things, was integral to his decision to purchase a Class Vehicle.

21      40.    Prior to purchasing his Class Vehicle, Plaintiff Jones reviewed Honda's

22  promotional materials on the internet and at Smart Honda, the Monroney sticker, and sales

23  brochures, and interacted with Honda sales agents at Smart Honda.  Each of those failed to disclose

24  the presence of the Defect in the 2019 Honda CR-V models. Plaintiff Jones specifically questioned

25  Honda's sales agent regarding the dependability of the Class Vehicle and was told that the CR-V

26  has been in Honda's line of vehicles for many years, was well tested, and reliable. Plaintiff Jones

27  also reviewed Honda's New Vehicle Limited Warranty, and discussed all applicable written

28  express warranties with Honda sales agents.

41.     Through his exposure and interaction with Honda, Plaintiff Jones was aware of Honda's uniform and nationwide marketing message that its vehicles are safe and dependable, which was material to his decision to purchase his Class Vehicle. When he purchased the vehicle, he believed that, based on Honda's marketing message, he would be in a safe and dependable vehicle, one that is safer than a vehicle that is not marketed as safe and dependable. At no point before Plaintiff Jones purchased his vehicle did Honda disclose to him that his vehicle was not safe or dependable, or that it suffered from the Parasitic Drain Defect, which creates safety risks and renders the vehicle useless.

42.     After purchasing the vehicle, Plaintiff Jones experienced issues with his Class Vehicle as a result of the Defect. Plaintiff Jones does not have a vehicle that is safe or reliable as advertised by Honda.

43.     Plaintiff Jones purchased his Class Vehicle with the Parasitic Drain Defect as part of a transaction in which Honda did not disclose material facts related to the automobile's essential purpose – safe and dependable transportation. Plaintiff Jones did not receive the benefit of his bargain. He purchased a vehicle that is of a lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding safe and reliable operation. The Parasitic Drain Defect has significantly diminished the value of Plaintiff Jones' Class Vehicle.

44.     Had Honda disclosed the Defect, Plaintiff Jones would not have purchased his Class Vehicle, or would have paid less to do so.

45.     Plaintiff Jones would purchase another Honda from Honda in the future if Defendant's representations about the vehicle, including its safety and durability, were accurate.

**6.     Robert Lizzul**

46.     Plaintiff Robert Lizzul ("Lizzul") is a citizen of New York and resides in Flushing, New York. Plaintiff Lizzul purchased a used 2017 Honda CR-V, VIN 2HKRW2H81HH606210, from Rockland Motors, located at 85 Route 303 North, West Nyack, New York 10994, on January 2, 2020.

47.     When shopping for his Class Vehicle, Plaintiff Lizzul researched and considered the reliability and quality of the make and manufacturer. Prior to purchasing his Class Vehicle, Plaintiff Lizzul was aware of and/or reviewed Honda's promotional materials on the internet.  Each of those information sources failed to disclose the presence of the Defect in 2017 Honda CR-V models or the other Class Vehicles.

48.     Through his exposure and interaction with Honda, Plaintiff Lizzul was aware of Honda's uniform and nationwide marketing message that its vehicles are safe and dependable, which was material to his decision to purchase his Class Vehicle. When he purchased the vehicle, he believed that, based on Honda's marketing message, he would be in a safe and dependable vehicle, one that is safer than a vehicle that is not marketed as safe and dependable. At no point before Plaintiff Lizzul purchased his vehicle did Honda disclose to him that his vehicle was not safe or dependable, or that it suffered from the Parasitic Drain Defect, which creates safety risks and renders the vehicle useless.

49.     After purchasing the vehicle, Plaintiff Lizzul experienced issues with his Class Vehicle as a result of the Defect. Plaintiff Lizzul does not have a vehicle that is safe or reliable as advertised by Honda.

50.     Plaintiff Lizzul purchased his Class Vehicle with the Parasitic Drain Defect as part of a transaction in which Honda did not disclose material facts related to the automobile's essential purpose – safe and dependable transportation. Plaintiff Lizzul did not receive the benefit of his bargain. He purchased a vehicle that is of a lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding safe and reliable operation. The Parasitic Drain Defect has significantly diminished the value of Plaintiff Lizzul's Class Vehicle.

51.     Had Honda disclosed the Defect, Plaintiff Lizzul would not have purchased his Class Vehicle, or would have paid less to do so.

52.     Plaintiff Lizzul would purchase another Honda from Honda in the future if Defendant's representations about the vehicle, including its safety and durability, were accurate.

### 7. Mitchell Bryon Pazanki

53.     Plaintiff Mitchell Bryon Pazanki ("Pazanki") is a citizen of Florida, and resides in Jupiter, Florida. Plaintiff Pazanki purchased a used 2018 Honda Accord in 2020, VIN 1HGCV1F3XJA128829, from Delray Honda, an authorized Honda dealer, located at 2500 South Federal Highway, Delray Beach, Florida 33483. Plaintiff Pazanki's Class Vehicle was covered by a written warranty. When shopping for his Class Vehicle, Plaintiff Pazanki researched and considered the reliability and quality of the make and manufacturer, including Honda's warranty. Prior to purchasing the Class Vehicle, Plaintiff Pazanki heard, viewed, and/or read Honda marketing materials and advertisements including brochures, commercials, and internet advertisements that touted the quality, reliability, and safety of Honda vehicles.

54.     Plaintiff Pazanki relied on the information regarding the quality, safety, and reliability of the Class Vehicle conveyed in those marketing materials and advertisements in deciding to purchase his Class Vehicle. Honda failed to disclose the Parasitic Drain Defect to Plaintiff Pazanki before he purchased his Class Vehicle, despite Honda's knowledge of the Defect, and Plaintiff Pazanki, therefore, purchased his Class Vehicle on the reasonable, but mistaken, belief that it would be a high quality, reliable and safe vehicle. Plaintiff Pazanki would not have purchased the Class Vehicle, or would not have paid as much for it, had he known the vehicle had a Defect that could drain the battery and leave him stranded without warning.

55.     After purchasing the vehicle, Plaintiff Pazanki experienced issues with his Class Vehicle as a result of the Defect. Plaintiff Pazanki does not have a vehicle that is safe or reliable as advertised by Honda.

56.     Plaintiff Pazanki would purchase another Honda from Honda in the future if Defendant's representations about the vehicle, including its safety and durability, were accurate.

### 8. John Provenzano

57.     Plaintiff John Provenzano ("Provenzano") is a citizen of Florida, and resides in Apalachicola, Florida. Plaintiff purchased a new 2019 Honda CR-V, VIN 2HKRW5H3XKH402051, from Proctor Honda, located at 2373 West Tennessee Street, Tallahassee, Florida 32304, in April 2019.

58.     Proctor Honda is part of Honda's network of authorized dealers across the United States. Honda features Proctor Honda on its website as an authorized Honda dealer, with links to lists of inventory of Honda vehicles on its website.

59.     When shopping for his Class Vehicle, Plaintiff Provenzano researched and considered the reliability and quality of the make and manufacturer. Prior to purchasing his Class Vehicle, Plaintiff Provenzano was aware of and/or reviewed Honda's promotional materials on the internet and/or at Proctor Honda, saw stickers the dealer placed on the vehicle, and interacted with Honda sales agents at Proctor Honda. Each of those information sources failed to disclose the presence of the Defect in in 2019 Honda CR-V models or the other Class Vehicles.

60.     Through his exposure and interaction with Honda, Plaintiff Provenzano was aware of Honda's uniform and nationwide marketing message that its vehicles are safe and dependable, which was material to his decision to purchase his Class Vehicle. When he purchased the vehicle, he believed that, based on Honda's marketing message, he would be in a safe and dependable vehicle, one that is safer than a vehicle that is not marketed as safe and dependable. At no point before Plaintiff Provenzano purchased his vehicle did Honda disclose to him that his vehicle was not safe or dependable, or that it suffered from the Parasitic Drain Defect, which creates safety risks and renders the vehicle useless.

61.     After purchasing the vehicle, Plaintiff Provenzano experienced issues with his Class Vehicle as a result of the Defect. Plaintiff Provenzano does not have a vehicle that is safe or reliable as advertised by Honda.

62.     Plaintiff Provenzano purchased his Class Vehicle with the Parasitic Drain Defect as part of a transaction in which Honda did not disclose material facts related to the automobile's essential purpose – safe and dependable transportation. Plaintiff Provenzano did not receive the benefit of his bargain. He purchased a vehicle that is of a lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding safe and reliable operation. The Parasitic Drain Defect has significantly diminished the value of Plaintiff Provenzano's Class Vehicle.

63.     Had Honda disclosed the Defect, Plaintiff Provenzano would not have purchased his Class Vehicle, or would have paid less to do so.

64.     Plaintiff Provenzano would purchase another Honda from Honda in the future if Defendant's representations about the vehicle, including its safety and durability, were accurate.

**9.     Harry Rapp**

65.     Plaintiff Harry Rapp ("Rapp") is a citizen of Arizona, and resides in Lake Havasu City, Arizona. Plaintiff Rapp purchased a new 2018 Honda CR-V, VIN 7FARW1H89JE005050, from Findlay Honda, located at 7494 West Azure Drive, Las Vegas, Nevada 89130, on May 18, 2018.

66.     Findlay Honda is part of Honda's network of authorized dealers across the United States. Honda features Findlay Honda on its website as an authorized Honda dealer, with links to lists of inventory of Honda vehicles on its website.

67.     When shopping for his Class Vehicle, Plaintiff Rapp researched and considered the reliability and quality of the make and manufacturer. Prior to purchasing his Class Vehicle, Plaintiff Rapp was aware of and/or reviewed Honda's promotional materials on the internet and/or at Findlay Honda, saw stickers the dealer placed on the vehicle, and interacted with Honda sales agents at Findlay Honda. Each of those information sources failed to disclose the presence of the Defect in in 2018 Honda CR-V models or the other Class Vehicles.

68.     Through his exposure and interaction with Honda, Plaintiff Rapp was aware of Honda's uniform and nationwide marketing message that its vehicles are safe and dependable, which was material to his decision to purchase his Class Vehicle. When he purchased the vehicle, he believed that, based on Honda's marketing message, he would be in a safe and dependable vehicle, one that is safer than a vehicle that is not marketed as safe and dependable. At no point before Plaintiff Rapp purchased his vehicle did Honda disclose to him that his vehicle was not safe or dependable, or that it suffered from the Parasitic Drain Defect, which creates safety risks and renders the vehicle useless.

69.     After purchasing the vehicle, Plaintiff Rapp experienced issues with his Class Vehicle as a result of the Defect. Plaintiff Rapp does not have a vehicle that is safe or reliable as advertised by Honda.

70.     Plaintiff Rapp purchased his Class Vehicle with the Parasitic Drain Defect as part of a transaction in which Honda did not disclose material facts related to the automobile's essential purpose – safe and dependable transportation. Plaintiff Rapp did not receive the benefit of his bargain. He purchased a vehicle that is of a lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding safe and reliable operation. The Parasitic Drain Defect has significantly diminished the value of Plaintiff Rapp's Class Vehicle.

71.     Had Honda disclosed the Defect, Plaintiff Rapp would not have purchased his Class Vehicle, or would have paid less to do so.

72.     Plaintiff Rapp would purchase another Honda from Honda in the future if Defendant's representations about the vehicle, including its safety and durability, were accurate.

### 10.     Dennis Woods

73.     Plaintiff Dennis Woods ("Woods") is a citizen of Florida, and resides in Land O' Lakes, Florida. Plaintiff Woods purchased a used, certified, pre-owned 2016 Honda Accord, VIN 1HGCR2F5XGA234699, from Wesley Chapel Honda, located at 27750 Wesley Chapel Boulevard, Wesley Chapel, Florida 33544, on August 26, 2016.

74.     Wesley Chapel Honda is part of Honda's network of authorized dealers across the United States. Honda features Wesley Chapel Honda on its website as an authorized Honda dealer, with links to lists of inventory of Honda vehicles on its website.

75.     When shopping for his Class Vehicle, Plaintiff Woods researched and considered the reliability and quality of the make and manufacturer. Prior to purchasing his Class Vehicle, Plaintiff Woods was aware of and/or reviewed Honda's promotional materials on the internet and/or at Wesley Chapel Honda, saw stickers the dealer placed on the vehicle, and interacted with Honda sales agents at Wesley Chapel Honda. Each of those information sources failed to disclose the presence of the Defect in 2016 Honda Accord models or the other Class Vehicles.

76.     Through his exposure and interaction with Honda, Plaintiff Woods was aware of Honda's uniform and nationwide marketing message that its vehicles are safe and dependable, which was material to his decision to purchase his Class Vehicle. When he purchased the vehicle, he believed that, based on Honda's marketing message, he would be in a safe and dependable vehicle, one that is safer than a vehicle that is not marketed as safe and dependable. At no point before Plaintiff Woods purchased his vehicle did Honda disclose to him that his vehicle was not safe or dependable, or that it suffered from the Parasitic Drain Defect, which creates safety risks and renders the vehicle useless.

77.     After purchasing the vehicle, Plaintiff Woods experienced issues with his Class Vehicle as a result of the Defect. Plaintiff Woods does not have a vehicle that is safe or reliable as advertised by Honda.

78.     Plaintiff Woods purchased his Class Vehicle with the Parasitic Drain Defect as part of a transaction in which Honda did not disclose material facts related to the automobile's essential purpose – safe and dependable transportation. Plaintiff Woods did not receive the benefit of his bargain. He purchased a vehicle that is of a lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding safe and reliable operation. The Parasitic Drain Defect has significantly diminished the value of Plaintiff Woods' Class Vehicle.

79.     Had Honda disclosed the Defect, Plaintiff Woods would not have purchased his Class Vehicle, or would have paid less to do so.

80.     Plaintiff Woods would purchase another Honda from Honda in the future if Defendant's representations about the vehicle, including its safety and durability, were accurate.

**11.     Dayane Tessinari**

81.     Plaintiff Dayane Tessinari ("Tessinari ") is a citizen of Florida, and resides in Pompano Beach, Florida. Plaintiff Tessinari purchased a new 2019 Honda Accord, VIN 1HGCV1F38KA072178, in July 2019 from Hendrick Honda Pompano Beach, an authorized Honda dealer, located at 5381 North Federal Highway, Pompano Beach, Florida 33064. Plaintiff Tessinari's Class Vehicle was covered by a written warranty. When shopping for her Class

1  Vehicle, Plaintiff Tessinari researched and considered the reliability and quality of the make and

2  manufacturer, including Honda's warranty. Prior to purchasing the Class Vehicle, Plaintiff

3  Tessinari heard, viewed, and/or read Honda marketing materials and advertisements including

4  commercials and internet advertisements that represented the reliability and safety of Honda

5  vehicles.

6      82.    Plaintiff Tessinari relied on the information regarding the quality, safety, and

7  reliability of the Class Vehicle conveyed in those marketing materials and advertisements in

8  deciding to purchase her Class Vehicle. Honda failed to disclose the Parasitic Drain Defect to

9  Plaintiff Tessinari before she purchased her Class Vehicle, despite Honda's knowledge of the

10 Defect, and Plaintiff Tessinari, therefore, purchased her Class Vehicle on the reasonable, but

11 mistaken, belief that it would be a high quality, reliable, and safe vehicle. Plaintiff Tessinari would

12 not have purchased the Class Vehicle, or would not have paid as much for it, had she known the

13 vehicle had a Defect that could drain the battery and leave her stranded without warning.

14     83.    After purchasing the vehicle, Plaintiff Tessinari experienced issues with her Class

15 Vehicle as a result of the Defect. Plaintiff Tessinari does not have a vehicle that is safe or reliable

16 as advertised by Honda.

17     84.    Plaintiff Tessinari would purchase another Honda from Honda in the future if

18 Defendant's representations about the vehicle, including its safety and durability, were accurate.

19         **12.    Brendan Sanger**

20     85.    Plaintiff Brendan Sanger is a citizen of Michigan and resides in Litchfield,

21 Michigan. On or about February 15, 2017, Plaintiff Sanger purchased a 2017 Honda Accord

22 Touring, VIN 1HGCR3F98HA025360 from Art Moehn Auto Group Honda, located at 2200

23 Seymour Road, Jackson, Michigan 49201.

24     86.    Art Moehn Auto Group Honda is part of Honda's network of authorized dealers

25 across the United States. Honda features Art Moehn Auto Group Honda on its website as an

26 authorized dealer, with links to lists of inventories of Honda vehicles on its website.

27     87.    When shopping for his Class Vehicle, Plaintiff Sanger researched and considered

28 the reliability and quality of the make and manufacturer. Plaintiff relied on Honda's

1     representations and that of its salesmen about the functionality and features of the vehicle,

2     including its quality, safety, and warranties.

3          88.     Prior to purchasing his Class Vehicle, Plaintiff Sanger was aware of and/or

4     reviewed Honda's promotional materials on the internet and/or at Art Moehn Auto Group Honda,

5     saw stickers the dealer placed on the vehicle, and interacted with Honda sales agents at Art Moehn

6     Auto Group Honda. Each of those information sources failed to disclose the presence of the Defect

7     in 2017 Honda Accord models or the other Class Vehicles.

8          89.     Through his exposure and interaction with Honda, Plaintiff Sanger was aware of

9     Honda's uniform and nationwide marketing message that its vehicles are safe and dependable,

10     which was material to his decision to purchase his Class Vehicle. When he purchased the vehicle,

11     he believed, based on Honda's marketing message, that he would be in a safe and dependable

12     vehicle, one that is safer than a vehicle that is not marketed as safe and dependable. At no point

13     before Plaintiff Sanger purchased his vehicle did Honda disclose to him that his vehicle was not

14     safe or dependable, or that it suffered from the Parasitic Drain Defect, which creates safety risks

15     and renders the vehicle useless.

16          90.     After purchasing the vehicle, Plaintiff Sanger experienced issues with his Class

17     Vehicle as a result of the Defect. Plaintiff does not have a vehicle that is safe or reliable as

18     advertised by Honda.

19          91.     Plaintiff Sanger purchased his Class Vehicle with the Parasitic Drain Defect as part

20     of a transaction in which Honda did not disclose material facts related to the automobile's essential

21     purpose – safe and dependable transportation. Plaintiff Sanger did not receive the benefit of his

22     bargain. He purchased a vehicle that is of a lesser standard, grade, and quality than represented,

23     and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding

24     safe and reliable operation. The Parasitic Drain Defect has significantly diminished the value of

25     Plaintiff Sanger's Class Vehicle.

26          92.     Had Honda disclosed the Defect, Plaintiff Sanger would not have purchased his

27     Class Vehicle, or would have paid less to do so.

28

93. Plaintiff Sanger would purchase another Honda from Honda in the future if Defendant's representations about the vehicle, including its safety and durability, were accurate.

94. Plaintiff Sanger – on behalf of himself and the Michigan Subclass – sent a demand letter to Defendant via certified mail on or about August 23, 2021, to bring this action pursuant to MICH. COMP. LAWS SERV. §445.911(4) ("MCL 445.911(4)"). Plaintiff Sanger's letter advised Defendant that it is in violation of the MCL 445.911(4) and must correct, replace, or otherwise remedy the Class Vehicles alleged to be in violation of MCL 445.911(4) as a result of the Defect. Defendant was further advised therein that in the event the relief requested was not provided within 30 days, Plaintiff Sanger would amend the complaint to include an unfair, unconscionable, or deceptive practices claim with a request for monetary damages. Over 30 days have now passed, and Defendant did not correct, replace, or otherwise remedy the Class Vehicles and issues alleged in Plaintiff's notice under MCL 445.911(4) or this Complaint within the statutorily prescribed 30-day period. Plaintiff Sanger, therefore, seeks both injunctive relief and monetary damages (including compensatory damages) against Defendant pursuant to MCL 445.911(4).

95. Plaintiff further seeks an Order awarding costs of court and attorneys' fees pursuant to the Michigan Consumer Protection Act.

### 13.    Jason Casey

96. Plaintiff Jason Casey is a citizen of Massachusetts and resides in Spencer, Massachusetts. On or about March 29, 2017, Plaintiff Casey purchased a 2017 Honda Accord EX, VIN 1HGCR2F31HA184601 from Lundgren Honda, located at 163 Washington Street, Auburn, Massachusetts 01501.

97. Lundgren Honda is part of Honda's network of authorized dealers across the United States. Honda features Lundgren Honda on its website as an authorized dealer, with links to lists of inventories of Honda vehicles on its website.

98. When shopping for his Class Vehicle, Plaintiff Casey researched and considered the reliability and quality of the make and manufacturer. Plaintiff relied on Honda's representations and that of its salesmen about the functionality and features of the vehicle, including its quality, safety, and warranties.

1    99.    Prior to purchasing his Class Vehicle, Plaintiff Casey was aware of and/or reviewed
2  Honda's promotional materials on the internet and/or at Lundgren Honda, saw stickers the dealer
3  placed on the vehicle, and interacted with Honda sales agents at Lundgren Honda. Each of those
4  information sources failed to disclose the presence of the Defect in 2017 Honda Accord models or
5  the other Class Vehicles.

6    100.    Through his exposure and interaction with Honda, Plaintiff Casey was aware of
7  Honda's uniform and nationwide marketing message that its vehicles are safe and dependable,
8  which was material to his decision to purchase his Class Vehicle. When he purchased the vehicle,
9  he believed, based on Honda's marketing message, that he would be in a safe and dependable
10  vehicle, one that is safer than a vehicle that is not marketed as safe and dependable. At no point
11  before Plaintiff Casey purchased his vehicle did Honda disclose to him that his vehicle was not
12  safe or dependable, or that it suffered from the Parasitic Drain Defect, which creates safety risks
13  and renders the vehicle useless.

14    101.    After purchasing the vehicle, Plaintiff Casey experienced issues with his Class
15  Vehicle as a result of the Defect. Plaintiff does not have a vehicle that is safe or reliable as
16  advertised by Honda.

17    102.    Plaintiff Casey purchased his Class Vehicle with the Parasitic Drain Defect as part
18  of a transaction in which Honda did not disclose material facts related to the automobile's essential
19  purpose – safe and dependable transportation. Plaintiff Casey did not receive the benefit of his
20  bargain. He purchased a vehicle that is of a lesser standard, grade, and quality than represented,
21  and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding
22  safe and reliable operation. The Parasitic Drain Defect has significantly diminished the value of
23  Plaintiff's Class Vehicle.

24    103.    Had Honda disclosed the Defect, Plaintiff Casey would not have purchased his
25  Class Vehicle, or would have paid less to do so.

26    104.    Plaintiff Casey would purchase another Honda from Honda in the future if
27  Defendant's representations about the vehicle, including its safety and durability, were accurate.

28

AMENDED CLASS ACTION COMPLAINT - 3:21-cv-05808-HSG                      - 19 -

105.    Plaintiff Casey – on behalf of himself and the Massachusetts Subclass – sent a demand letter to Defendant via certified mail on or about August 23, 2021, pursuant to the requirements of MASS. GEN. LAW, Chapter 93A, Section 9 ("M.G.L. Ch. 93A" or "Chapter 93A"). The Chapter 93A letter advised Defendant that it is in violation of the M.G.L. Ch. 93A and must correct, replace, or otherwise remedy the Class Vehicles alleged to be in violation of M.G.L. Ch. 93A §9 as a result of the Defect. Over 30 days have now passed, and Defendant did not correct, replace, or otherwise remedy the Class Vehicles and issues alleged in Plaintiff's M.G.L. Ch. 93A §9 notice or this Complaint within the statutorily prescribed 30-day period. Plaintiff Casey, therefore, seeks both injunctive relief and monetary damages (including compensatory and punitive damages) against Defendant pursuant to M.G.L. Ch. 93A §9.

106.    Plaintiff further seeks an Order awarding costs of court and attorneys' fees pursuant to M.G.L. Ch. 93A §9(3A).

**B.    Defendant**

107.    Defendant American Honda Motor Company, Inc. is incorporated in California with its principal place of business in Torrance, California. Honda is the wholly owned subsidiary in North America of Honda Motor Company Limited ("HML"), a Japanese corporation. Honda began operations in 1959 and is now responsible for "[s]ales, marketing, service, distribution, import and export of Honda and Acura products in the U.S."[3]

108.    Honda Development & Manufacturing of America, LLC and Honda R&D Americas, LLC are affiliated with Honda, and operate 19 major manufacturing plants in North America and 14 major research and development centers in North America which jointly fully design, develop, and engineer many of the products the Company makes in North America.

109.    Honda is a holding company of sales, manufacturing, engineering, design, and research and development strategies of HML in the United States. Honda is in the business of

---

[3]    Honda, Honda 2020 Digital FactBook, at 2.1 (Aug. 31, 2020), https://hondanews.com/en-US/honda-corporate/releases/release-554e3d8539c7f6db3b88b571930280ab-honda-2020-digital-factbook.

1   designing, engineering, testing, validating, manufacturing, distributing, marketing, selling, and

2   servicing Honda- and Acura-branded vehicles in the United States through its hundreds of

3   dealerships.

4        110.    At its Torrance, California headquarters, Honda reportedly combines product sales,

5   service, and coordinating functions for HML in North America, and is responsible for the

6   manufacture, development, distribution, marketing, sales, and servicing of Honda vehicles. The

7   decisions regarding the marketing and sale of the Class Vehicles, the development of the internal

8   Service Bulletins relating to the Parasitic Drain Defect in the Class Vehicles, and the disclosure or

9   non-disclosure of the Defect were in whole or substantial part made by Honda at its Torrance

10  headquarters. For example, in addition to Honda's C-Suite, Honda's Vice President of Marketing

11  & Customer Experience (responsible for "overseeing marketing and public relations for both the

12  Honda and Acura automobile brands as well as the company's customer experience initiatives");[4]

13  Assistant Vice President of Honda's Marketing Division (responsible for "leading the company's

14  marketing efforts for both the Honda and Acura automobile brands");[5] Vice President of the

15  Automobile Sales Strategy Division (responsible for Honda's "market representation, sales and

16  production planning, certified pre-owned sales, dealer communication, product and sales

17  information, as well as export sales and distribution");[6] Vice President of the Product Regulatory

18  Office (responsible for "overseeing the U.S. regulatory compliance activities for all automobile . .

19  . products, including the areas of product safety, environmental strategy, and energy reporting and

20  compliance");[7] Division Head of Product Safety (responsible for automobile "product safety,

21

22  [4]   Press Release, Honda, Jay Joseph, https://hondanews.com/en-US/releases/jay-joseph-bio (last
23  accessed Sept. 21, 2021).

24  [5]   Press Release, Honda, Ed Beadle, https://hondanews.com/en-US/releases/ed-beadle (last
    accessed Sept. 21, 2021).

25
26  [6]   Press Release, Honda, Steven Center, https://hondanews.com/en-US/releases/steven-center
    (last accessed Sept. 21, 2021).

27  [7]   Press Release, Honda, Jenny Gilger, https://hondanews.com/en-US/releases/jenny-gilger-bio
28  (last accessed Sept. 21, 2021).

including compliance with the Transportation Recall Enhancement, Accountability and Documentation [("TREAD")] Act[,]" "compliance with government regulations[,]" and managing "Honda's relationship with U.S. government agencies, including the National Highway Traffic Safety Administration [("NHTSA")] . . . on matters related to incident reporting, safety investigations, and product recall management");[8] and Manager of Auto Campaigns and Recalls (responsible for communicating with Honda dealerships concerning potential defects in Honda vehicles and overseeing internal investigations)[9] are each based in Torrance.

111.    Honda's warranty and customer service departments for Honda vehicle owners and lessees are operated from its Torrance headquarters.[10]

## V.    SUBSTANTIVE ALLEGATIONS

### A.    Honda's History of Emphasizing the Quality and Reliability of Its Vehicles

112.    Passenger cars such as the Accord and Civic, and light trucks (such as the CR-V, Odyssey, and Pilot) are Honda's principal automobile models in the United States. More than half of all Honda parent HML's global revenue from 2018 to 2020 were from North American sales.

113.    The Accord, first introduced in 1976, is now up to its tenth generation; the ninth generation was released in 2013, and the tenth generation was released in 2018.

114.    The Honda CR-V is a compact crossover SUV, first sold in Japan in 1995 and introduced into the United States market in 1997, selling 66,000 vehicles in its first year. Honda's 2017 CR-V introduced the fifth generation of the vehicle.

115.    Honda is at the top of automakers in the United States in terms of sales.

---

[8]    LinkedIn, Jeff Chang, https://www.linkedin.com/in/jeff-chang-2a0195107/ (last accessed Sept. 21, 2021).

[9]    LinkedIn, Brad Ortloff, https://www.linkedin.com/in/brad-ortloff-7210039a/ (last accessed Sept. 21, 2021); *see also* https://static.nhtsa.gov/odi/tsbs/2019/MC-10156621-0001.pdf (last accessed Sept. 21, 2021).

[10]    *See* Honda,                                    https://automobiles.honda.com/information/customer-relations#:~:text=Call%201%2D866%2D864%2D5211    (last    accessed    July    27,    2021); https://direct.automobiles.honda.com/information/customer-relations.aspx (last accessed July 27, 2021).

116.    In 2019 and 2020, Honda sold 1.34 million and 1.6 million vehicles, respectively.[11]

117.    In 2019, more than 90% of the Honda and Acura automobiles sold in the United States were produced in North America.[12]

118.    The Accord has been Honda's third bestselling vehicle, selling over 199,000 vehicles and over 267,000 vehicles in 2019 and 2020, respectively.[13] The CR-V has been Honda's best-selling vehicle in the United States for eight straight years, selling over 333,000 vehicles in 2020, and over 384,000 vehicles in 2019.[14]

119.    A McKinsey & Company report noted that over twice as many second-owner used vehicles are sold in the United States each year compared to new vehicles.[15]

120.    Honda has metamorphosed into such a large player in the United States auto-market based on its assurances to consumers of care, durability, and quality. Consistent with its marketing and public statements, Honda falsely represents its vehicles as safe and dependable so that consumers can rely upon the build and quality of the vehicles for daily use.

121.    Honda dedicates a page on its website entitled "safety," where Honda represents the safety of its vehicles.[16] Therein, Honda states that it conducts "Virtual & Real-World Tests[,]" and touts that it has "developed two of the world's most advanced crash-test facilities – including the largest ever built and first to allow multi-directional crashes." Further, Honda states that it also

---

[11]   Car Sales Statistics, https://www.best-selling-cars.com/usa/2020-full-year-usa-honda-and-acura-sales-by-model/ (last accessed Sept. 21, 2021).

[12]   *Id.*

[13]   *Id.*

[14]   *Id.*

[15]   Ben Ellencweig, et al., *Dealers, investors, and disruptors can up their games to cater to digitally savvy used-car consumers* (June 6, 2019), https://www.mckinsey.com/industries/automotive-and-assembly/our-insights/used-cars-new-platforms-accelerating-sales-in-a-digitally-disrupted-market#.

[16]   Honda, https://www.honda.com/safety (last accessed Sept. 21, 2021).

1   "dreamt bigger to create some of the most advanced virtual crash tests in the world. All this
2   combines to make safer roads for everyone."[17]

3       122.   Notwithstanding the presence of the Defect in millions of Class Vehicles which
4   prevents drivers from starting their engines and can cause engine stalls, Honda calls itself "a
5   mobility company–we move people. But, for us, safety is an enormous priority. We don't just want
6   to move you; we want to move you safely."[18]

7       123.   In addition to the real-world test performed at the "most advanced crash-test
8   facilities[,]"[19] Honda "supplement[s] these tests" with "software that results in extremely reliable,
9   accurate, and cost-effective crash simulations."[20] Honda claims that the safety testing procedures
10  it utilizes "allows [it] to make the road safer for everybody on it by engineering for worst case
11  scenarios in an unprecedented way."

12      124.   A "rugged" webpage on Honda's website represents that Honda conducts "COLD-
13  WEATHER TESTING[,]" including "on 23 different driving courses in the frozen prairies of
14  Northern Minnesota" and in "-40-degree cold cells."[21] Further, Honda states that it "test[s]
15  everything" at "the Honda Proving Center of California, spanning 3,840 acres of sun-scorched
16  desert."[22]

17      125.   The consistently uniform marketing message from Honda concerning the reliability
18  of its vehicles is also found in the marketing materials unique to the Class Vehicles.

19      126.   In the brochure for Honda's "ALL-NEW 2017 CR-V[,]" Honda states that "THE
20  BAR HAS BEEN RAISED, AGAIN" and that the CR-V sets "the new standard in comfort, style

21
22  [17]   *Id.*

23  [18]   Honda, https://www.honda.com/safety/virtual-and-real-world-tests (last accessed Sept. 21,
       2021).

24  [19]   *See supra* n.16.

25  [20]   *See supra* n.18.

26  [21]   Honda, https://automobiles.honda.com/rugged (last accessed Sept. 21, 2021).

27  [22]   *Id.*
28

and versatility." Honda marketed the CR-V as "[a] vehicle designed for a superior driving experience makes for better exploration of the roads ahead[,]" "deliver[ing] a wealth of standard features and driver and passenger conveniences[.]"[23]

127.    Even in the face of the known Parasitic Drain Defect in the vehicle, Honda proclaimed the CR-V's reliability with the slogan, "Because no matter where you're going, there's always more to do, more to see, and more to experience-every day."[24]

128.    In addition, Honda stated that the vehicle provides "A STAND-OUT EXPERIENCE" because "[e]very surface, every contour, and every feature has been thoughtfully designed to create a truly superior driving experience in every sense." In light of all these purported safety features and attention to detail, Honda instructs drivers to "COMMUTE WITH CONFIDENCE."[25]

129.    Featured prominently in Honda's marketing materials are claims of excellence in quality, design, safety, and reliability.

130.    For example, in its brochure for the 2018 Accord, Honda states that the vehicle is "[t]he most impressive Honda ever":[26]

---

[23]   Honda 2017 CR-V Brochure, https://automobiles.honda.com/-/media/Honda-Automobiles/Vehicles/2017/CR-V/Brochures/weird/MY17CRV-Wave2-Reprint (last accessed Sept. 21, 2021).

[24]   *Id.*

[25]   *Id.*

[26]   Honda 2018 Accord Brochure, https://pictures.dealer.com/rivertownhonda/8b4ec4800a0e0ca37432ffaa8919ba2f.pdf (last accessed Sept. 21, 2021).



The most impressive Honda ever.

You can't build a legacy by staying put.
So even after countless awards and trophies,
we continue to push the limits of innovation.
With new turbocharged engine options
and a European-inspired fastback design,
the all-new Accord sets a new standard for
sophistication and excitement.

Stay up to speed at facebook.com/hondaaccord

131.     Additional representations about reliability-related topics include affirmative promises that the vehicle was "[b]uilt for what-if" and is "[a]t the forefront of safety."[27]

132.     Honda similarly represented that the 2018 CR-V is a dependable vehicle. In the brochure for the vehicle, Honda again states that drivers should "[c]ommute with confidence" and that there is "[e]xcellence in every detail."[28]

133.     The 2019 CR-V was promoted by Honda as a reliable vehicle with the slogan "Enhance Every Day[,]" "MONDAY" through "SUNDAY[,] [p]eace of mind, from here to everywhere":[29]

---

[27] *Id.*

[28] Honda    2018    CR-V    Brochure,    https://automobiles.honda.com/-/media/Honda-Automobiles/Vehicles/2018/CR-V/2018-Updates/Brochure/MY18_CR-V_Brochure_Online_Mech1.pdf (last accessed Sept. 21, 2021).

[29] Honda,    https://web.archive.org/web/20190218165632if_/https://automobiles.honda.com/cr-v#features (last accessed Sept. 21, 2021).







**B.     Parasitic Draining in Vehicles Creates an Unreasonable Risk of Failure of Mandated Safety Features and Engine Stalls Rending Vehicle Transportation Unsafe**

134.    In some fashion, vehicles today are feats of electrical coordination, no longer simply mechanical machines. This additional technology and electric power to make the vehicle function requires electricity to maintain federal- and state-mandated safety features, as well as to allow the vehicle to function for its intended purpose, which is  transporting consumers where they need to go and safely.

135.    A vehicle's electrical components are powered by its battery and, when the engine is running, the alternator. When operated, the alternator also charges the vehicle's battery at a specified voltage level.

136.    When a vehicle is parked and turned off, the battery is the vehicle's only source of power. Consequently, the vehicle relies on a minimum level of electricity stored in its battery to start the engine and operate. Specifically, the vehicle's sparkplugs which run the engine and the starter which cranks the engine rely on the battery when the vehicle is off.

137.    Additionally, in order "to reduce traffic accidents and deaths and injuries resulting from traffic accidents," automobile manufacturers are required to include certain core safety features in their vehicles that rely on battery power.[30] For example, reliable emergency hazard warning signal lights, headlights, and taillights must be found in all passenger cars sold in the United States.[31]

138.    Other safety components that rely on engine-off battery usage are defrosters, door locks, alarm systems, interior lights, windshield wipers, and internal computer modules which store engine diagnostic codes, fuel economy adjustments, and other essential components.

139.    When the engine is off, some of these components slowly draw on the battery's stored electricity. Once the engine is started, the alternator begins to replenish the minimal amount of electricity that the emergency features pulled from the battery while in the off state.

140.    A vehicle's alternator is not designed to generate power with the engine off, therefore all electricity used from the battery when the alternator is not running is a parasitic or one-way electrical drain. Over an extended period of time, parasitic draws will deplete a vehicle's battery.

141.    Due to the reliance of multiple emergency safety features and the starter on a minimum amount of electricity stored in the battery, modern vehicles are designed so that this amount of draw does not significantly discharge a healthy battery below the amount necessary to perform its basic functions.[32]

---

[30]  49 C.F.R. §571.108.

[31]  *Id.*; *see also* CAL. VEH. CODE §§24250, 24400 (motor vehicles in California must be equipped with at least two headlights which must be used during "darkness" or "inclement weather").

[32]  For example, vehicles are now designed with precautionary systems to detect unintended draws occurring while the vehicle is off, including audible and visual alarms which notify drivers when

142.    If a vehicle experiences constant parasitic drawing, the vehicle's battery will be under constant strain, and its performance will degrade until total obsolescence. That is because vehicle batteries have a certain amount of "duty cycles" – *i.e.*, the recharging of a depleted battery – before it becomes unable to store the minimal amount of electricity required to perform its function. With each depletion, the battery becomes weaker and is unable to store as much electricity. This reduced capacity is irreversible, and no amount of jump-starts or recharging through the alternator will repair the battery.

143.    Prior to the inevitable, complete failure of a battery, excessive parasitic draining can cause key safety components (*e.g.*, hazard lights, headlights, and taillights) to fail, including when the vehicle is being driven. For example, as the battery degrades, the dashboard, headlights, and hazard lights can flicker and dim due to poor electricity flow coming from the battery and/or alternator.[33]

144.    Because parasitic draining results in depleted batteries, the alternator is utilized to replenish the battery's power at a higher-than-usual rate, resulting in the failure of the alternator's internal electrical component and bearing. When that occurs, the alternator generates a reduced amount of power until the point when it ultimately fails. As the alternator's ability to generate power degrades, there is an increasing risk that the vehicle's engine will unexpectedly stall.[34]

145.    Also, when a vehicle loses its engine control module data due to battery depletion, the vehicle may experience reduced engine performance, reduced fuel economy, and increased emissions.

---

lights are left on. Most instances of unintended parasitic draining are not detectable, and the driver's safety is at risk without their knowledge.

[33] *See* Synchrony, *6 Signs Your Battery Needs to Be Replaced* (May 25, 2020), https://www.mysynchrony.com/blog/automotive/6-signs-your-car-battery-needs-to-be-replaced.html#:~:text=If%20your%20headlights%20dim%20while,again%20in%20the%20near%20future.

[34] *See* Mia Bevacqua, *Why Your Engine Is Stalling, and How to Stop It*, REPAIR PAL (Mar. 14, 2018); AAMCO, *Alternator Trouble Signs* (Dec. 20, 2017), https://repairpal.com/symptoms/why-is-my-car-stalling; https://aamcominnesota.com/alternator-trouble-signs/.

146.    The amount of draw that a vehicle requires to turn the engine on and operate core safety features is low, typically amounting to no more than a total trickle of 25 to 40 milliamperes. When a vehicle battery experiences an expected draw within this range, the battery should last months without the need to recharge itself from the alternator or receive a jump-start. Moreover, the life and operation of the battery and wider electrical systems are not detrimentally impacted.

147.    A battery installed in a car today should last a driver six years, with some lasting nearly twice that amount, as long as the battery is not subject to excessive parasitic draining.[35] The cost to replace a vehicle battery typically varies from $45 to $250,[36] and the cost of a replacement alternator with repair fees can vary from $200 to $800.[37]

### C.    Over Two Million Class Vehicles Suffering from the Parasitic Drain Defect Were Sold by Honda

148.    Honda, upon information and belief based on the facts alleged herein, has knowingly sold over two million Class Vehicles which suffer from a serious Parasitic Drain Defect. The Defect provides no discernable warning to drivers and thus creates an unreasonable risk to each driver.

149.    Scores of complaints submitted to the NHTSA reveal the magnitude of the Defect's impact of the Class Vehicles and consumers.

150.    A list of representative complaints filed with the NHTSA detailing the Parasitic Drain Defect found in the 2017 Honda CR-V Class Vehicles includes:

---

[35]    *See* AAA, *How Long Do Car Batteries Last*, https://www.kbb.com/battery-replacement/ (last accessed Sept. 21, 2021); Jen McCaffery, *How Long Do Car Batteries Last?* READER'S DIGEST (May 24, 2021), https://www.aaa.com/autorepair/articles/how-long-do-car-batteries-last; https://www.rd.com/article/how-long-do-car-batteries-last/.

[36]    *See* KELLEY BLUE BOOK, https://www.kbb.com/battery-replacement/ (last accessed Sept. 21, 2021).

[37]    *See* Andy Jensen, *How Much Does an Alternator Cost*, ADVANCE AUTO PARTS (Aug. 25, 2021), https://shop.advanceautoparts.com/r/advice/car-maintenance/how-much-does-it-cost-to-replace-an-alternator.

- NHTSA ID No. 11005067 (dated July 13, 2017) ("Brand new 2017 CR-V touring, *second night home. Battery completely drained while parked overnight* and had to charge battery to start.").

- NHTSA ID No. 11012414 (dated August 2, 2017) (owner reported depleted battery in four month old car after it was parked for three hours).

- NHTSA ID No. 11019266 (dated August 17, 2017) ("Car battery has drained on two occasions. Car won't start.").

- NHTSA ID No. 11016279 (dated August 18, 2017) (owner reported that three months after purchasing his CR-V, the battery died after being parked for three hours. "*Honda service called [the owner[ the next day and said that they charged the car battery and that the cause was a parasitic drain* and that [he] needed to put the electric brake on before [he] turned off the car. They told [him] that Honda was aware of this issues and that they were working on a software fix.").

- NHTSA ID No. 11032872 (dated October 10, 2017) ("*Battery drains completely for no reason when vehicle is parked*. The first time it happened the dealership replaced the battery. It has [sic] happenned twice since then and dealership does not provide a fix.").

- NHTSA ID No. 11035424 (dated October 17, 2017) ("*Vehicle battery dead after sitting for 3 hours. 3 week old vehicle* with 690 miles.").

- NHTSA ID No. 11045525 (dated November 13, 2017) (2-month old vehicle would not start; the owner lamented: "so I will be late to work today and wasted my Sunday dealing with this too.").

- NHTSA ID No. 11061486 (dated January 9, 2018) ("vehicle was parked in garage for a few days over holidays. When leaving to meet relatives at a restaurant, the car was completely dead.").

- NHTSA ID No. 11064100 (dated January 22, 2018) ("*Car will not start after sitting overnight. Dealer performed software update which did not correct the problem to*.").

- NHTSA ID No. 11073304 (dated February 16, 2018) ("Car purchased July 1, 2017. Jan 6, 2018 *battery died after sitting for roughly 2 days*. Honda checked battery and found no problems with battery or electrical system. Friday, Feb 16, 2018 same problem: dead battery. Car was sitting for 3 days prior to discovery.").

- NHTSA ID No. 11079667 (dated March 15, 2018) ("Car would not start twice in the first year. System seems to have some kind of drain on the battery when the car is off. First time, the car was not turned on for 3 days before trying to start it..... It is not acceptable for this to happen in the first year of having a car. Plenty of 2017 CRV owners are saying the same thing happened to them. It's all over the internet. Honda must find a solution and issue a recall.").

- NHTSA ID No. 11088356 (dated April 16, 2018) (after parking car at airport for 13 days, "the battery was completely dead and was started with a jump.").

- NHTSA ID No. 11089119 (dated April 20, 2018) ("Took 10 day vacation car was parked during that period. Car battery was dead when we returned…. [A Honda dealership] informed me I need to drive car ever[y]day to keep it charged.. [and] that we need to acquire a battery charger because most likely the battery would be dead… Uncomfortable feeling for a brand new car with only 540 miles on it.").

- NHTSA ID No. 11090045 (dated April 25, 2018) ("***Five times the battery drained completely with nothing on, after sitting unused, garaged, over night or after one day unused.***").

- NHTSA ID No. 11098895 (dated May 30, 2018) ("I bought this Honda CRV 2017 awd on 04/01/2017 from Honda Folsom. On April 24,2018, it would not start. I called roadside assistance to jumpstart it and brought this to the dealer in Folsom. They changed the battery on April 24, 2018.…. Today, May 30, 2018, it did not start again so it was jumpstarted again[.]").

- NHTSA ID No. 11115700 (dated August 4, 2018) ("***The vehicle was in the garage with dead battery after 2 days of not being used.***").

- NHTSA ID No. 11120233 (dated August 16, 2018) ("Bought the car April of 2017***, after a few months car went dead*** … dealer replaces the battery, not much explanation why. ***The problem happen 2 more times,*** had to jump start car again took it back to the dealer but this time dealer telling me that the car needs to be driven regularly and also on a certain distance so that battery will be charged up completely. And was told to buy a portable charger[.]").

- NHTSA ID No. 11124343 (dated September 4, 2018) (after two-week vacation, "battery was dead as it was completely drained.").

- NHTSA ID No. 11131089 (dated September 24, 2018) ("Car left in parking lot for four days. car would not crank or start.").

- NHTSA ID No. 11131864 (dated September 27, 2018) ("***For the second*** time, ***after leaving the vehicle parked for 3-5 days the battery has been drained and unable to start the engine.***").

- NHTSA ID No. 11142765 (dated October 25, 2018) ("***vehicle battery*** drains ***after 2 days of non use***").

- NHTSA ID No. 11143939 (dated October 29, 2018) ("***Vehicle was parked over night in the morning the battery was completely drained*** I left no lights on there was no reason for a drained battery on a new car.").

- NHTSA ID No. 11145200 (dated November 4, 2018) ("***battery drains out completely and car won't start***.. Just 18000 miles. 4 times in 3 days.").

- NHTSA ID No. 11153477 (dated November 24, 2018) ("Battery was dead after parking on street, had to call for emergency road service to jump car. There was no excessive usage of battery or electronics in the car.").

- NHTSA ID No. 11154819 (dated November 29, 2018) ("*After a month*. We went for a vacation and as we went back, *my car is not starting anymore*.").

- NHTSA ID No. 11165366 (dated January 5, 2019) ("January 3rd my car would not start. Jan 4th and 5th again my car would not stop without a jump. I have had nothing but electrical problem, radio blinking and not coming on or brake system engaging without braking etc. since I have purchased.").

- NHTSA ID No. 11165157 (dated January 8, 2019) ("*Vehicle frequently runs out of battery and need to jump start*.").

- NHTSA ID No. 11182473 (dated February 26, 2019) ("Vehicle does not shut down when turned off. This causes a high [sic] parsitic draw on the battery which causes the vehicle not to start in a matter of hours. … my battery blew up releasing toxic gasses filling the exterior of the car which contain my wife and kids at the time.").

- NHTSA ID No. 11187354 (dated March 17, 2019) ("Battery dies after sitting for 5+ days. *New battery installed, same issue. TSB-032 has been applied, still have the problem*.").

- NHTSA ID No. 11191314 (dated March 25, 2019) ("Vehicle is unable to start after shutdown with no diagnosed cause… Vehicle requires jump start for successful start upon symptoms appearing… vehicle has been brought to Honda dealerships several times for diagnosis and service… latest visit, car was unable to start immediately after parking car at dealership.… *Dealership applied Honda technical service bulletin (TSB) 17-032 and did not fix problem*….").

- NHTSA ID No. 11194855 (dated April 9, 2019) ("*If I stop using the cr-v for two days the battery goes dead* and I have to recharge it. The original battery was replaced after the first year in the Honda dealer.").

- NHTSA ID No. 11220318 (dated June 15, 2019) ("I had parked my car for 4 days while away on a business trip. I came back and the car was totally dead. It wouldn't start, I could not even open the doors without the emergency key.").

- NHTSA ID No. 11229585 (dated July 5, 2019) ("*If I parked this car over two nights, its battery will die* and need to call AAA to jump it. It occurs over five times in only two years. Then I changed my battery, it still happened and I also turn off all light in my cars.").

- NHTSA ID No. 11256787 (dated September 20, 2019) ("Issue with drained battery/vsa modulator. Vehicle lights won't turn off when shutting off vehicle. Key fob will not work because vehicle battery will die. *Once jumped, vehicle will die*

1

2

*again. Battery has been checked and it doesn't seem to need replacing yet no active recall reported*.").

3

4

- NHTSA ID No. 11258834 (dated September 29, 2019) ("My 2017 crv-ex has had its battery drained twice. With only 4600 miles driven. I've had the battery drained after 2 days to less then 24 hours. I'm on my third time now.").

5

6

7

8

- NHTSA ID No. 11268859 (dated October 16, 2019) ("Yesterday the car would not start, battery issue was determined to be the likely problem after placing a service assist call to Honda. A jump start and problem was resolved. Mileage approx. 19,000. This is the second time this occurred since owning the car. The first time it happened within a couple of months of owning the car. In both instances, the car had been parked less than 2 hours.").

9

10

- NHTSA ID No. 11280821 (dated November 18, 2019) ("dead battery - 11-17-2019, 11-18-2019 (2yrs 3months old, 16,000 miles) garage kept. Car won't start.").

11

- NHTSA ID No. 11308113 (dated February 10, 2020) ("*Vehicle battery will die after two days of non starting. This happens constantly*.").

12

13

- NHTSA ID No. 11322233 (dated April 25, 2020) ("Battery keeps dying after sitting more than a several days. This is the third time since owning the car.").

14

15

- NHTSA ID No. 11322811 (dated April 30, 2020) ("Car would not start and goes dead with 3rd attempt to start. This is the 3rd time i must have car towed to dealership; car has 4,000 miles.").

16

17

18

- NHTSA ID No. 11322903 (dated April 30, 2020) ("numerous people including myself have been affected by this car draining a brand new battery and leaving people stranded and needing a jumpstart. My car is currently at the dealership again to have this issue looked at.").

19

20

21

- NHTSA ID No. 11324710 (dated May 15, 2020) ("As of May 13, I have had to return my leased 2017 cr-v to the dealership four (4) times for the same reason - the battery would not work , hence the engine did not start… *I was verbally told the problem is my fault - since I do not drive the vehicle enoug*h.").

22

23

- NHTSA ID No. 11325206 (dated May 19, 2020) ("*Battery keeps dying after 2 days of non operational.this has happen multiple times and no fix from dealer*.").

24

- NHTSA ID No. 11325093 (dated May 19, 2020) ("My wife and I have, on numerous incidents, had to jumpstart the cr-v due to a dead battery.").

25

26

27

28

- NHTSA ID No. 11326577 (dated May 30, 2020) ("*Car battery will die if the car is not used for more than a couple days.* We have taken it into the dealership to get checked many times only to be told nothing is wrong. *Battery has been replaced multiple times as well only for the car to die a few days later.* We purchased the car brand new in March 2017. The first time it happened it was only a few months into owning the car.").

- NHTSA ID No. 11329352 (dated June 17, 2020) ("The car was towed to the dealer because the battery (less than 3 years old) was dead and was replaced because the car was still in warranty. Then on 6/13/2020 the second battery was completely dead with only 663 miles. I think the situation should be investigated and remedied due to concern about safety.").

- NHTSA ID No. 11241811 (dated August 5, 2019) ("Battery failure [at] 27275 miles... Car won't start, dashboard lights blinking and flashing, all sorts of error codes…*alternator may be working hard to recharge battery that won't recharge*").

- NHTSA ID No. 11349364 (dated August 15, 2020) ("Dead battery for 3 mornings in a row and now on the 4th day it will not accept a jump.").

- NHTSA ID No. 11351281 (dated August 15, 2020) ("*Battery died overnight, took vehicle to different dealerships, replaced battery.. Nothing help!*").

- NHTSA ID No. 11355664 (dated September 17, 2020) ("*Battery runs down. Put new battery...same problem.* Need a jump to start for me to drive. Battery runs down if it sits for a day problem steering after it is jumped.").

- NHTSA ID No. 11364200 (dated October 13, 2020) ("I lost power…. I have no documents except the dealer's report that there was nothing wrong except a weak battery.").

- NHTSA ID No. 11373970 (dated November 10, 2020) ("*Battery is dead if I don't drive it for 2 days. This has happened three times in the past year*, the last two times just a few weeks apart. And this past time I drove it on a Thursday and it was dead on Saturday. Fortunately the times this has happened the car was in the garage, so I was not stranded.").

- NHTSA ID No. 11376180 (dated November 24, 2020) ("*Battery will be dead if car not used every 2 days. 4 times I have had the dealer replace my battery and 1 time myself*. Dealer refuses to solve the problem. A vehicle['s] battery should not go dead after only 4 days of use.").

- NHTSA ID No. 11378523 (dated December 8, 2020) ("The battery dies frequently for no reason after not driving for one to two days. When the battery dies, it locks up the brakes and messes up the safety features.").

- NHTSA ID No. 11386463 (dated January 4, 2021) ("Ongoing intermittent issues since car was purchased May 2017. Repeated battery drains and complete failure, battery replaced by Honda July 2020. Drove, parked, would not start or run accessories Nov. 30 2020 and on Jan. 1 2021.").

- NHTSA ID No. 11388291 (dated January 15, 2021) ("Parasitic power draw on system resulting in dead battery if not driven every other day. Honda is aware of the issue but has not issued a recall.").

- NHTSA ID No. 11390863 (dated January 31, 2021) ("Overnight dead battery.").

- NHTSA ID No. 11397119 (dated February 20, 2021) ("Car battery gets drained out over night and it's not the battery or the alternator.").

- NHTSA ID No. 11398524 (dated March 1, 2021) ("Honda CRV 2017 keeps draining battery even after it is turned off and causing routine service calls.… Hope such things do not happen on road when parked and create other issues.").

151.   A list of representative complaints filed with NHTSA detailing the Parasitic Drain Defect found in the 2018 Honda CR-V Class Vehicles includes:

- NHTSA ID No. 11076480 (dated March 6, 2018) ("While on vacation, I had my 2018 Honda, CRV-EXL parked for nearly 2 weeks.  On our return, I attempted to start the vehicle.  It would not start as the new battery was completely drained and dead.").

- NHTSA ID No. 11115697 (dated August 4, 2018) ("Draining battery suspected parasitic. … **The vehicle was sitting in the garage for about 2 days since last use.**").

- NHTSA ID No. 11118082 (dated August 6, 2018) ("**While driving 35 mph, the vehicle inadvertently came to a stop**. There were no warning indicators illuminated. The contact stated that the vehicle was able to restart. The vehicle was taken to Lithia Honda in Medford… **where the contact was informed that the alternator needed to be replaced**.").

- NHTSA ID No. 11139129 (dated October 8, 2018) ("Car stalls when going up parking ramp, car dies at intersection…. The car has been a problem ever since I got it earlier this year...**there is only 4,000 miles on it and so far, they changed the battery...**explanation I was given is that Honda has bad batteries….still having problems, car is stalling, panel freezes, sensors don't work....I believe it's a major safety issue…..**Brakes failed, panel freezes, car stalls... help!**").

- NHTSA ID No. 11316406 (dated March 5, 2020) ("**I was away for 17 days and my battery died.  Went to dealer and he said this is normal.  It's dangerous and should not happen!**  Car is 18 months old!  This is dangerous too.").

- NHTSA ID No. 11383284 (dated December 14, 2020) ("2018 Honda CRV Touring Purchase September 8, 2018.  Currently has 16,400 miles.  On Thursday, December 10, I went out to start my Honda CRV Touring in the garage.  It would not start. … The towing company driver informed me that this is about the 13th Honda 2018 2020 that he has had to jumpstart.").

- NHTSA ID No. 11342279 (dated July 30, 2020) ("I parked my car in my garage with half a tank of gas on Sunday.  On Wednesday I went to start my car to no avail.").

- NHTSA ID No. 11397174 (dated February 21, 2021) ("Battery drains abnormally.").

152. A list of representative complaints filed with the NHTSA detailing the Parasitic Drain Defect found in the 2019 Honda CR-V Class Vehicles includes:

- NHTSA ID No. 11181325 (dated February 20, 2019) ("Battery keeps dying after 2 days of not using my car. I brought my car to a honda dealer and they checked it and said there was nothing wrong with it. So far this has happened 4 times.").

- NHTSA ID No. 11182356 (dated February 25, 2019) ("Purchased 2019 honda cr-v on february 9, 2019. Drove only twice in the first 2 weeks. Attempted to drive for the 3rd time (101 miles on odometer) on the 2 week anniversary of buying, february 23, 2019 and the car was completely dead!").

- NHTSA ID No. 11184460 (dated March 5, 2019) ("Purchased 12/28/18.  After driving home from dealer(60 miles) car was not used for 2 days.  Tried to start car and battery was dead—totally drained. … Dealership is aware of 4 additional 2019 crvs with the same problem.").

- NHTSA ID No. 11184357 (dated March 5, 2019) ("The battery is repeatedly dead after a day or so if not driven.").

- NHTSA ID No. 11185761 (dated March 11, 2019) ("After turning the vehicle off, the battery drained and the vehicle could not be restarted. … The battery was replaced, but the failure continued.").

- TSA ID No. 11186743 (dated March 14, 2019) ("Vehicle failed to start without warning. ... The technician stated that the vehicle needed to be driven everyday to keep the battery charged.").

- NHTSA ID No. 11187233 (dated March 16, 2019) ("***Left car parked for 5 days. Nothing left on but battery was drained. Needed to call a tow truck for a jump start***.").

- NHTSA ID No. 11187238 (dated March 16, 2019) ("***Continual battery failures***, batteries go dead if not driven every day. On my second battery and died as two days not being driven. Some sort of parasitic drain?").

- NHTSA ID No. 11190065 (dated March 19, 2019) ("***If the car sits for 2-3 days without running the battery drains and dies completely.***").

- NHTSA ID No. 11192285 (dated March 28, 2019) ("Vehicle battery was dead after the suv sat unused for 2 days within 3 weeks and 300 miles of ownership. ***This has occurred over 6 times in 3000 miles***. Battery has been replaced by the battery twice and is now on its third battery. Dealer notes this problem exists on all 2019 crv's delivered to-date and that they do not yet have a solution.").

- NHTSA ID No. 11192339 (dated March 29, 2019) ("If the car sits for 24 + hours the battery dies, I have had this happen 6 times now. Called dealer 3+ times, brought it in they first said it was the battery (which we all knew it was not) but they put in a new one they said. Anyhow as you already know this is an electrical issue that needs to be fixed a.s.a.p. Dealer now tells me honda is working on a fix but in the mean time I have had to have the car jumped and paid for this as well it's a major nuisance I want fixed very soon or want my money back and I will buy another car. This has been goin on since i bought this car dec. 28th 2018.").

- NHTSA ID No. 11196738 (dated April 16, 2019) ("***Car 2 months old, have only put 1300 miles on it, let it sit for 5 days, and battery totally dead!***").

- NHTSA ID No. 11196271 (dated May 1, 2019) ("***The consumer stated the battery dies within 2 days of shutting the vehicle down***, if not driven again. The emissions system drains the battery. There is no repair available for the failure.").

- NHTSA ID No. 11207890 (dated May 15, 2019) ("***Electrical problem,4/10/19 at 200 miles, battery completely dead after 2 days of not driving because computer program error***. Honda is aware of problem, but does not instruct the dealer to fix the problem before selling its cars[.]").

- NHTSA ID No. 11231760 (dated July 14, 2019) ("***Battery dies overnight***. Car has only 1000 miles and i've had to jump it 3 times. … A new car should not behave this way.

- NHTSA ID No. 11172347 (dated January 27, 2019) ("***My 2019 honda cr-v's battery dies after sitting in my garage for two days. It has only 320 miles on it.***").

- NHTSA ID No. 11244857 (dated August 19, 2019) ("Battery is draining out after sitting for 3 days in a parking lot, and will not start up again without a jump.").

- NHTSA ID No. 11252372 (dated August 30, 2019) ("The vehicle was parked at an airport and would not start upon the contact's return from a five day trip. … Manufacturer suggested that the contact unhook the battery if the vehicle remained parked more than a day. … The failure mileage was 1,900.").

- NHTSA ID No. 11279556 (dated November 12, 2019) ("***Went away for a weekend trip and hadn't driven the car for 3 days. Came back and the battery was totally drained***, had to jump start the car. It has roughly 3,300 miles on the odometer.").

- NHTSA ID No. 11299090 (dated January 13, 2020) ("The ***SUV would not start after not being driven for 2 days***.").

- NHTSA ID No. 11324191 (dated May 11, 2020) ("***After leaving vehicle in garage for 24 hours or more, then attempting to start the vehicle, vehicle will not start***. After using battery jump, vehicle will start and run as normal. This has happened several times over the past few months, even when vehicle is run for couple miles or more.").

1

2

- NHTSA ID No. 11337956 (dated July 7, 2020) (***"The contact stated that an hour after parking the vehicle, the battery was drained.*** The contact stated that the failure recurred six times.").

3

4

5

6

- NHTSA ID No. 11360689 (dated September 23, 2020) ("The contact stated that the battery became drained on two separate occasions. … The battery was replaced. ***The failure recurred after two weeks***. … ***The technician stated that the failure was common with the make and model and that the dealer would not disclose that information.*** The contact called the same dealer who confirmed the information and told the contact to buy a jumper cable.").

7

8

9

- NHTSA ID No. 11373267 (dated November 5, 2020) ("The car wouldn't start until I messed with it a lot. I've read it's a battery drain and software update issue on message boards- several people complained about it. I've only had my 2019 honda crv since september 2019.").

10

11

12

- NHTSA ID No. 11376801 (dated November 28, 2020) ("Our 2019 honda crv was purchased in december of 2019. The battery had died 3 times and had to be recharged by the dealer.  The honda dealer refused to replace the battery and could tell us why the battery keeps dying. The car is driven every day and the lights are always turned off automatically at night after driving.").

13

14

15

16

17

- NHTSA ID No. 11385578 (dated December 30, 2020) ("On august 28 I went to start my car and it would not turn on. I called the dealership and they jumped it and the car started. They tested the battery and it was fine but changed it anyway. On December 23 it would not start and had to be jumped. This happened again on December 26 and 27. The car is currently at the dealership. They have said nothing is wrong with the battery or the car even though this has happened to multiple 2019 cr-vs.").

18

19

- NHTSA ID No. 11397192 (dated February 21, 2021) ("The battery has failed multipile time in the first 18 months of ownership. The first instance at the 4 month mark with about 1000 miles on the car.").

20

21

153.    A list of representative complaints filed with the NHTSA concerning the Parasitic Drain Defect found in the 2016 Honda Accord Class Vehicles includes:

22

23

- NHTSA ID No. 10959718 (dated March 9, 2017) (***"The battery has been replaced twice by the dealership.*** We are not leaving anything on.").

24

25

- NHTSA ID No. 10970672 (dated April 5, 2017) ("Vehicle would not start possibly due to alternator or battery malfunction after being purchased for one year.").

26

27

- NHTSA ID No. 10978620 (dated April 15, 2017) (***"Purchased 2016 accord touring in may 2016. In April 2017 the car would not start*** - appeared to be a battery issue.").

28

- NHTSA ID No. 11013956 (dated August 9, 2017) ("*I am unable to start my car after it sits for ten days to two weeks or more*. The battery goes dead and my family and I are left potentially stranded. My wife and I travel frequently and return to a car that won't start due to a parasitic draw on the battery. *This is a safety issue as you can imagine* flying home, taking the bus to the parking lot at the airport at 11:00 pm, going to your car and finding a dead battery which puts our safety in peril. … [the honda dealership stated that] this is now normal with the new honda accords due to the parasitic draw on the battery when the car isn't running. … I called another honda dealer's service department in the kansas city area and received the same comment. … this is now what I can expect on my new accord, if it sits for ten days or two weeks then the battery will die". ... I have had this problem since last fall and it has occurred on several occasions.").

- NHTSA ID No. 11047161 (dated November 18, 2017) ("Second time on the last four days that my car will not start.  … I was working in los angeles four days later and once again the car wouldn't start. … this is a problem because of where I work and I cannot let my wife drive the car due to not having the confidence that the car will start, especially if she has the kids with her.").

- NHTSA ID No. 11013956 (dated August 9, 2017) ("*I am unable to start my car after it sits for ten days to two weeks or more*… due to a parasitic draw on the battery. This is a safety issue[.]" The owner added that when he brought his vehicle into a Honda dealer he was told "that this is now normal with the new Honda accords due to the parasitic draw on the battery when the car isn't running which ultimately drains the battery to a point where it won't start.").

- NHTSA ID No. 11112042 (dated July 17, 2018) ("*My battery has a shortage-2016 with less than 40,000 miles.  This is clearly a defect*.").

- NHTSA ID No. 11153323 (dated November 23, 2018) ("I had to get my car towed bc it would not start.").

- NHTSA ID No. 11153677 (dated November 26, 2018) ("After driving the vehicle and turning the engine off, the battery power would drain and the vehicle could not be restarted. *After replacing the battery with a new battery, the failure continued*.").

- NHTSA ID No. 11192228 (dated March 28, 2019) ("*Battery has been replaced 3 times and constantly drains*.").

- NHTSA ID No. 11209968 (dated May 25, 2019) ("Battery has been replaced twice in 1 year.").

- NHTSA ID No. 11268149 (dated October 13, 2019) ("When I get in my car sometimes to start it the battery is dead I have taking it to Autozone so they can run test with there computer and everything comes out perfect if I'm not mistaken I think the battery negative voltage sensor is damaged.").

- NHTSA ID No. 11281257 (dated November 20, 2019) ("My battery has died multiple times without leaving anything on or open.").

- NHTSA ID No. 11281833 (dated November 22, 2019) ("August 2018 battery in car stopped working. Stationary car would not start. Replaced battery and in November 2019 battery stopped working again. Car wont start.").

- NHTSA ID No. 11360118 (dated September 20, 2020) ("I just replace the battery for the 3rd time on 9/19/2020. This is a problem for a car 4 years old.").

- NHTSA ID No. 11390859 (dated January 31, 2021) ("If the vehicle is not started and driven at least every second day. A no start condition results. Battery is new, the second one from Honda dealer. … Purchased an after market start booster to resolve dead battery issue.").

154.    A list of representative complaints filed with the NHTSA detailing the Parasitic Drain Defect found in the 2017 Honda Accord Class Vehicles includes:

- NHTSA ID No. 11098225 (dated May 2, 2018) ("car needed to be jumped started twice. ...  First time, car would not start after waiting 20 mins. Second time, car in garage over night would not start.").

- NHTSA ID No. 11174885 (dated February 6, 2019) ("Over the last several days the car would not start without requiring a jump for the battery. Then it would run, but once the car was off and had to be restarted it would require another jump. …It ran fine for the next few days, but currently its parked and won't start.  The only lights that displayed was the EPS which turned off shortly after the car started.").

- NHTSA ID No. 11221967 (dated June 23, 2019) ("Car won't start or turn over and the lights just flicker on and off. I'm currently waiting on a tow truck to get a jump my car is parked in the garage and it won't start. Very frustrated with Honda I had the car less than 2 years and I have less than 50k miles.").

- NHTSA ID No. 11266417 (dated October 4, 2019) ("Last night I had just gotten home from worked and gone in the house to change for church. Less than 5 minutes later, I returned to my car and when trying to start it, it would start up. Lights flickered on dash, but it wouldn't turn over. …. ***This is the third time this his happened this year, with in a few months***. Car has less that 50k miles. … ***[T]his could be very dangerous***.").

- NHTSA ID No. 11308018 (dated February 9, 2020) ("There are times the car will not start. Have to get a jump to start.").

- NHTSA ID No. 11327379 (dated June 5, 2020) ("1/10/2020 car wouldn't start….. 6/4/2020 my car did the exact same thing.").

- NHTSA ID No. 11329911 (dated June 21, 2020) ("After owning the car for 2.5 years, the car would not start and required a jump. After several instances of this

occurring, the original oem battery was replaced. ***Within 2 months of installing the new battery, the car wouldn't start and required a jump.*** The car will start fine for a few weeks and then requires another jump (this repeats every several weeks).").

- NHTSA ID No. 11384868 (dated December 24, 2020) ("The car battery does not hold charge. ***If the car is not used for three days to a week, the battery is completely dead.***").

- NHTSA ID No. 11390956 (dated February 1, 2021) ("***Vehicle has been dead on 4+ occasions***. Stationary, in garage. Vehicle is driven as little as once per week at times but the battery or electric draw has caused the car to fail in as little as a couple days or even trunk being open for 15-20min…. ***Dealer is brushing this off without responsibility…They refuse to replace the battery***[.]").

155.   A list of representative complaints filed with the NHTSA detailing the Parasitic Drain Defect found in the 2018 Honda Accord Class Vehicles includes:

- NHTSA ID No. 11270292 (dated October 22, 2019) ("***The problem we had with this 2018 Honda Accord, was it wouldn't start. Without warning of low battery or faulty charging*** or any other indication displayed in the warning or advisory systems of the car previously - it just wouldn't start…. Now, if this were you, or your wife, or your daughter, or grand mother; or all of them in the car together going to an event like a wedding - and they were suddenly and unexpectedly, without warning …. Stranded on the side of a road in the middle of nowhere, at night, in stormy weather, or worse... Evacuating the area from a tsunami. Would you be concerned?").

- NHTSA ID No. 11374134 (dated November 11, 2020) ("I have changed two batteries since I bought it first battery that it came with completely died and couldn't even get a jump. Changed it and now I have to keep getting jump everyday.").

- NHTSA ID No. 11394473 (dated February 3, 2021) ("The vehicle has 8000 miles on it. The safety problem on this vehicle is that the electric system has shorted 5 batteries and has left me stranded in various locations, lending to unsafe conditions. The Honda dealer has replaced 5 batteries on my vehicle and now my car has broken-down again making it six shorted batteries on a vehicle that barely has 8k miles.  When I talked to Kyle Lampp, Assistant Service Manager at Brandon Honda, he stated Honda Corp. knows about the electric problems and they are unwilling to address it because of cost.  Below are the dates of service repairs with included invoice numbers: 8/21/19 Service #514010 11/13/19 Service #531130 1/22/20 Service#544284 8/16/20 Service #578092 11/19/20 Service #594896.").

**D.   Honda Knew that the Class Vehicles Suffered from the Defect Prior to Its Sale of the Class Vehicles**

156.   Defendant, based on the facts alleged herein and on information and belief, had full knowledge of the existence of the Defect and the risk it posed to Class Vehicle owners and lessees. This knowledge is based upon, among other facts: (a) Honda's  pre-sale durability testing and part sales;  (b) records  of  customer  complaints  provided  to  Honda;  (c)  NHTSA  complaints; (d) dealership repair records; (e) consumer complaints posted on the internet; and (f) warranty and post-warranty claims.

157.   Honda is experienced in the design and manufacture of consumer vehicles. As an experienced  manufacturer,  Honda  conducts  tests,  including  pre-sale  durability  testing,  on incoming components, including for parasitic draws, to verify the parts are free from defects and align with its specifications.

158.   Honda emphasizes its Global Honda Quality Standard ("G-HQS"), which it claims "continuously enhances quality at every stage, encompassing design, development, production, sales and after-sales  service  in  order  to  realize  products  offering  a  new  level  of  outstanding quality." [38] Honda adds: "This initiative aims to achieve the highest quality through the creation of drawings  designed  to  facilitate  manufacturing,  as  well  as  develop  manufacturing  control techniques  that  limit  process  variability,  by  applying  and  reflecting  design  and  development expertise at the production preparation and production (mass-production) stages." [39]

159.   As  part  of  this  initiative,  Honda  "Assur[es]  Long-Term  Reliability  through Rigorous Durability Testing": [40]

> Honda subjects new and redesigned models to a rigorous regimen of long-distance durability  testing  before  beginning  mass  production  to  verify  that  there  are  no quality issues.

---

[38]   Honda Sustainability Report 2018,                                                                                        at 69, https://global.honda/content/dam/site/global/about/cq_img/sustainability/report/pdf/2018/Honda-SR-2018-en-065-078.pdf_(2018).

[39]   *Id.*

[40]   *Id.* at 71.

Honda also disassembles vehicles used in the test drives into every single part and verifies that there are no quality issues through a process consisting of several thousand checks. By accumulating data on the issues discovered through these test drives and detailed inspections as well as associated countermeasures, the Company is able to ensure a high level of quality and reliability.[41]

160. "Honda's production departments establish manufacturing control items and criteria for each part, process and operation to prevent product quality issues[,]" conducts extensive on-site audits of its suppliers for quality assurance, and "then works to improve part quality through activities that emphasize communication with suppliers, for example, by sharing audit results and cooperating to identify opportunities for quality improvement."[42]

161. In addition to the "quality assurance system" put in place by the G-HQS related to the production and manufacturing of the Class Vehicles, Honda has in place procedures to investigate "issues after sales"; namely, through its dealerships.[43]  Honda has an interconnected network of customer service departments worldwide which it relies upon to monitor quality control issues.

162. Honda's California headquarters also maintains a Technical Research & Support ("TRS") Group responsible for, *inter alia*, identifying and investigating potential defects in Honda vehicles.

163. Honda also regularly monitors NHTSA databases for consumer complaints as part of its ongoing obligation pursuant to the TREAD Act, 49 U.S.C. §30118, to identify potential defects in its vehicles. As shown above, numerous complaints filed by Class Vehicle owners with the NHTSA establish that Honda knew, or should have known, of the Defect *at least* as early as March 2017 (NHTSA ID No. 11005067), based on publicly available information.

164. Indeed, given Honda's history of skirting its monitoring obligations under the TREAD Act and subsequent fine, Honda was likely acutely aware of (or should have been) each

---

[41] *Id*.

[42] *Id*. at 70-71.

[43] *Id*. at 67, 69.

NHTSA customer complaint regarding the Parasitic Drain Defect. Specifically, in 2015, Honda was fined $70 million (the highest penalty allowed by Congress) by the NHTSA "for failing to report deaths, injuries, and certain warranty claims to the federal government in violation of the TREAD Act" from 2003 through 2014. As part of the Consent Order "Honda also agreed to increased NHTSA oversight and third party audits to ensure that all required reporting is completed[.]"[44]

165.    In addition to NHTSA complaints, customer complaints of the Parasitic Drain Defect in Class Vehicles can be found on various consumer websites and message boards.

166.    For example, one consumer or member of the public stated on March 9, 2017, "There have been several posts about battery problems on 2017's. Starting it every day is nuts. Horrible advice. My vehicles routinely sit for two weeks or more without running them. Never ever had problems. Summer or winter. Keep pushing your dealer on this."[45]

167.    On May 15, 2017, another consumer reported:

Today is the second time we've had the exact problem described--dead battery on a '17 CR-V, in our case from 55 hours of not being driven. We even joked about it over the weekend, while running errands in our 2009 Fit, "hope the CR-V still starts on Monday!" It did not not start on Monday. (The other case was when trying to install the super tight OEM rear seat covers with all the lights on for a few hours. Which still seemed suspiciously short to kill a battery, but after waiting a few hours it did start at least.)

*We bought this to be a second, family car, on the reputation* built from having purchased our '09 Fit Sport in 2008, and having never had a moment's issue with it.

*With a new baby joining the family in 3 weeks, I can't imagine how I'm going to put my faith in this car for emergencies.* I shouldn't have to recreate the scene from Apollo 13 where they're working to boot up the lunar module in just the right sequence so as to not overload the batteries--it's an automobile, not a trip to space.

---

[44]   Press Release, NHTSA, *U.S. Department of Transportation Fines Honda $70 million for Failing to Comply with Laws That Safeguard the Public* (Jan. 8, 2015), https://one.nhtsa.gov/About+NHTSA/Press+Releases/2015/DOT-fines-Honda-$70-million.

[45]   CR-V OWNERS CLUB (Mar. 9, 2017), https://www.crvownersclub.com/threads/2017-crv-battery-going-dead-overnight.135193/.

> Not much to add to what the previous posters have stated, dealer service sounds confused when we call, and I'm sure won't find anything when we get it to them tomorrow. Will be sure to ask for Honda Tech Line Summary ATS 170301. ***For what it's worth, we religiously set the electronic parking brake every single time we park, so I don't know what more can be done except buying a battery-operated jumpstarter.*** . . .[46]

168.    Multiple customer reports of the Defect in Class Vehicles were also posted on CARCOMPLAINTS.COM. For example, on May 20, 2019, the owner of a 2019 CR-V complained that her vehicle "stall[ed] out" at least three times in a matter of weeks.[47] The owner reported that her vehicle first stalled when she was driving 10-15 miles per hour in her work parking lot. Three weeks later, as she was driving 60 miles per hour on a highway, the vehicle "completely died with no warning lights or indication." Moreover, she lost power steering and the engine would not start again. A week later, after dropping off her vehicle at the Honda dealership, the vehicle stalled for a third time. This time, the driver reported that the CR-V "completely stalled out again" while driving, "leaving [her] in danger of" getting hit by other vehicles.[48]

169.    Other Class Vehicle owners complained of their vehicle's stalling. For example, on March 11, 2019, an owner complained that their "2017 CRV died on highway" while traveling 65 miles per hour, which "almost caused an accident," and the vehicle "had to be towed" to the dealership.[49]

170.    On January 22, 2019, the owner of a 2019 CR-V stated, "Dead Battery. Called Honda Roadside Assist and they said 'I left the lights on.' I didn't think I had, but hey, I'm human and it could have happened."[50] Six days later, the same owner provided an update: "Again dead

---

[46] *Id.*

[47] CARCOMPLAINTS.COM, https://www.carcomplaints.com/Honda/CR-V/2019/engine/stalls_while_driving.shtml (last accessed Sept. 21, 2021).

[48] *Id.*

[49] CR-V OWNERS CLUB (Mar. 11, 2019), https://www.crvownersclub.com/threads/2017-crv-died-on-highway-almost-caused-an-accident-had-to-be-towed.196481/.

[50] CARCOMPLAINTS.COM, https://www.carcomplaints.com/Honda/CR-V/2019/electrical/dead_battery.shtml (last accessed Sept. 21, 2021).

battery after not driving the car for a couple of days. This time, towed to dealership. They couldn't find any problem. Basically, I had to wait for the problem again."[51]

171.    On March 11, 2019, another owner of a 2019 Honda CR-V bemoaned the need for three replacement batteries in a new vehicle:

> Battery was dead on two occasions within the first 800 miles of ownership. Dealer replaced the battery under warranty and about 5 weeks later the same problem is back. Battery discharges after sitting unused for two days. Will be calling the dealer for an appointment once the battery is charged and I can start the SUV.

> Three dead batteries within the first 2 2/2 months of ownership. Have purchased a new battery charger and now carry a LI-ION battery starter in the vehicle. So much for Honda reliability; never again.[52]

172.    A third owner recounted the extreme difficulties he encountered after purchasing a new 2019 Honda CR-V on February 14, 2019, as well as the health and safety risk it posed to him.[53] The owner complained that the Parasitic Drain Defect resulted in the depletion of his battery which "caused [him] to miss an out of town Dr.'s appointment."[54] Over the course of the next two weeks, the owner experienced multiple incidents of failed batteries and brought his vehicle to a Honda dealership. Despite the dealership purporting to fix the issue, the vehicle was no more reliable. The owner lamented that he was unable to rely on his new vehicle to drive to other medical appointments and was forced to borrow other vehicles to get to his scheduled medical tests.[55]

173.    Similar complaints of the Defect were posted on CARCOMPLAINTS.COM for other Class Vehicles. On October 1, 2018, a 2018 Honda CR-V owner complained of having to replace the battery in his vehicle six times since purchasing the car in April of the same year. The owner

---

[51]   *Id.*

[52]   *Id.*

[53]   *Id.*

[54]   *Id.*

[55]   *Id.*

1   noted that "[t]he mechanics at [his] local Honda dealership say they know it is a problem; however,

2   there is nothing they can do about it except keep replacing our battery."[56]

3       174.   A consumer message board, known as *CRVOwnersClub.com* exists, and (upon info

4   and belief) is a location where Honda reviews and provides feedback to consumer complaints.[57] It

5   is also routine for retailers such as Honda to have a customer relations division that receives and

6   responds to customer calls concerning, *inter alia*, product defects. Plaintiffs allege that these

7   sources also put Honda on notice of the Defect and its danger.

8       175.   On information and belief, Honda's customer relations department, which interacts

9   with authorized service technicians in order to identify potentially widespread vehicle problems

10  and assist in the diagnosis of vehicle issues, has received numerous reports of the Parasitic Drain

11  Defect and premature wear on Class Vehicle batteries. Customer relations also collects and

12  analyzes field data, including, but not limited to, repair requests made at dealerships and service

13  centers, technical reports prepared by engineers that have reviewed vehicles for which warranty

14  coverage is requested, parts sales reports, and warranty claims data.

15      176.   Honda's warranty department similarly reviews and analyzes warranty data

16  submitted by its dealerships and authorized technicians in order to identify defect trends in its

17  vehicles.

18      177.   Honda dictates that when a repair is made under warranty (or warranty coverage is

19  requested), service centers must provide Defendant with detailed documentation of the problem

20  and the fix that describes the complaint, cause, and correction, and also save the broken part in case

21  Honda later determines to audit the dealership or otherwise verify the warranty repair.

22

23

---

24  [56]   CARCOMPLAINTS.COM,                      https://www.carcomplaints.com/Honda/CR-

25  V/2018/electrical/battery_drain.shtml (last accessed Sept. 21, 2021).

26  [57]   *See* CR-V OWNERS CLUB, https://www.crvownersclub.com/threads/2017-crv-battery-going-

27  dead-overnight.135193/ (May 15, 2017 post by "Honda Automobile Customer Service[,]
    American Honda Motor Co., Inc." in response to a customer complaint concerning the Defect)

28  (last accessed Sept. 21, 2021).

1    178.   For their part, service centers are meticulous about providing this detailed
2    information about in-warranty repairs to Honda because Honda will not pay the service centers for
3    the repair if the complaint, cause, and correction are not sufficiently described.

4    179.   Honda knew or should have known about the Defect and risk of premature battery
5    wear because of the high number of replacement parts and batteries it is reasonable to infer were
6    ordered from Honda. All of Honda's service centers are required to order replacement parts,
7    including batteries directly from Honda. Other independent vehicle repair shops that service Class
8    Vehicles also order replacement parts directly from Honda.

9    180.   Honda routinely monitors part sales reports and are responsible for shipping parts
10   requested by dealerships and technicians. Thus, Honda has detailed, accurate, and real-time data
11   regarding the number and frequency of replacement part orders. The increase in orders of batteries
12   and other auto-parts necessary to fix damage caused by the Parasitic Drain Defect the Class
13   Vehicles was known to Defendant and should have alerted it to the scope and severity of the
14   Defect.

15   181.   Furthermore, the existence of the Defect in the Class Vehicles can hardly come as
16   a surprise to Honda given prior model years of the Class Vehicle are known to experience similar
17   parasitic draining issues. There are many customer complaints filed with the NHTSA prior to the
18   sale of the Class Vehicles regarding parasitic draining issues found in prior versions of the Class
19   Vehicle. Examples include:

20   •    NHTSA ID No. 10862600 (dated May 2, 2016) (2014 Honda CR-V owner
21        complained: "we have 4 instances where we have been unable to start the CRV
          because of a low battery problem" and that after the Honda dealership performed a
22        software update to remedy the problem "the same sub standard condition
          reoccurred.");

23   •    NHTSA ID No. 10889192 (dated June 30, 2016) (2013 Honda Accord owner
24        complained: "[T]he engine failed to start and the navigational system failed
          intermittently. The vehicle was taken to the dealer where it was diagnosed that the
25        ignition electrical system caused the battery to drain…. The dealer replaced the
          battery and the starter assembly; however, the failure was not corrected. The vehicle
26        failed to start and the navigational system continued to fail."); and

27   •    NHTSA ID No. 10908883 (dated September 23, 2016) (2014 Honda CR-V owner
28        complained: "Every 14-15 days, I am having to get a jump because the car would

not start. I had the battery checked and was told that there is not problem with the battery.").

182.    On October 21, 2013, an owner of a 2014 Honda CR-V reported on CARCOMPLAINTS.COM that his vehicle experienced the same issue: "Parked car at the airport for 16 days, returned and found battery dead. Would not turn over. Dealer said that is a common problem, they did not want to fix it. Returned again after the same issue, made them do a draw test and retested the battery."[58]

183.    In addition to NHTSA complaints, customers complained about the Parasitic Drain Defect in Class Vehicles on various consumer websites and car forums.

184.    For example, there are multiple forums dedicated to complaints from consumers related to the Defect contained in Class Vehicles on CARCOMPLAINTS.COM. These forums contain numerous posts from drivers that have suffered from battery draining issues, have had trouble starting their vehicles, or experienced stalling while driving their vehicles:

- "Battery has gone dead several times over the years. I don't drive all the time so I've gone out to a dead battery probably about 7 times in the last year."

- "Tried to start my car and all I got was clicking with lights flashing on the dash. I called the HondaLink Roadside Assistance. They sent AAA to jump my battery. The AAA guy says he's jumped a lot of 2017 CR-V's with the same problem. I am taking the car to the dealer to see what solution they have for me."

- "Battery is dead after 2 days sitting, sometimes overnight."

- "have 9000 mileage, yesterday was the 6th time that my battery has gone dead."

185.    A separate forum on CARCOMPLAINTS.COM has several other complaints related to the Defect in Class Vehicles:

- "Purchased 2019 "Honda Certified" CR-V EX-L with about 15,000 in August 2020. Since then I've had to have the battery jumped 4 times. First time I thought it was just a fluke – but now after searching and finding lots

---

[58]   CARCOMPLAINTS.COM,                          https://www.carcomplaints.com/Honda/CR-V/2014/electrical/dead_battery.shtml (last accessed Sept. 21, 2021).

of complaints, I see I'm not alone. Have contacted the dealership for next steps to determine if the "software update" some have spoken of will help[.]

- "Problem first occurred after 4 months of ownership. Tried to start car battery was dead, towed to dealer, they replaced battery. Six months later same problem, towed to dealer, they did a 'hard reset of ecm'. Six months later, same problem, towed to dealer, they still have the car. This car has about 8500 miles on it."

- "My 2019 Honda CRV 's battery continues to go dead. Only had the car 2weeks. Purchased the car Feb 5th, 2019,problem started Feb 20 and then again on the 28th of Feb. Dealer said it is a software problem that when car sits overnight the car automatically does a diagnostic and drain the battery.No fix yet and dealer does no know when there will be a fix. Dealer said they are working on a software update. In the meantime dealer said I need to keep the gas tank full and drive he [sic] car 20 minutes everyday. REALLY!!!! Dealer want me to use a trickle charger everyday to keep battery charged. I contacted American Honda and received a case number. I paid 30,000 for this car and am afraid to dive it. I am still waiting for Honda to fix this problem." In an update from March 21, 2019, the driver continued: "Just received a call from my car dealer they have a software update. Bringing my car in tomorrow the 22nd. for the computer update on my car. This is supposed to be the fix for the battery constantly going dead. I will keep you posted." An additional update posted on Mar 28, 2019 states "Had software update on March 22. Not sure I it has worked yet. I am lettting [sic] it sit for at least 5 to six days to see if it starts . My concern is that other owners of the 2019 CRV had the software update and found that while driving on the highway their car lost power. In am also on CarGuru site where there are multiple owners with the same problem. I will keep you updated."

186.    Another popular forum for complaints regarding cars, CARGURUS.COM, also has numerous forums dedicated to issues relating to the Defect contained in Class Vehicles with several posts from drivers:

- "2019 Honda CRV Touring AWD battery has gone dead after being parked for 3 days in garage for the second time in less than 3 months. Boosted vehicle twice and took it into dealer. Could not find a problem battery, charging system and parasitic load all checked out. Is this a common problem?"

- "Bought a 2019 new CRV honda in Jan 2019, from Burns Honda Marlton NJ twice I've had battery replaced despite the new software update. Battery replaced May 27 and July 10, 2019. They said it was a dead cell. Was told the first time it would be okay and now they are saying that the same. I don't think that they care. The problem still persists. It should be some legal action

taken ie class action suit or lemon law. Replacing battery and software update did not help. Winter is not here yet[.]"

- "My 2019 crv battery has died twice, even after the recall update. It cannot sit more than 3 days. They suggested I get a Jump Start kit or make arrangements for someone to come and start it when I'm out of town.....really!! UNACCEPTABLE. It is new and I'm not standing for this. I will get a lawyer or whatever I have to do, up to includiing [sic] a new car!!!! Right now I hate this vehicle and would not recommend a Honda to anyone."

- "My 2019 CRV was not started for 1 week due to the corona virus issue. When I tried to start it, 3/26/2020, the battery was dead, measured 5 volts. The 19-039 software update meant to solve this problem had been installed the previous September. I contacted Honda support via email. Their brilliant suggestion was to wait until it happens again and have the car towed to the dealer for diagnosis of the problem. The same thing happened to my brother who also owns a 2019 CRV. He DID have his towed to the dealer, they could find no cause. There is obviously a discharge problem that 19-039 did not solve and Honda will not admit to it. I now keep my CRV on a battery charger if I do not expect to drive it for more than two days. Sort of disappointing to have to do this with a car a little over 1 year old that I paid almost 30k for."

187.   A separate forum on CARGURUS.COM in which the driver asks "after sitting in my garage for 2 days why is the battery dead in my Honda 2019 crv?" has 280 responses, many of which are made by drivers complaining of similar issues related to the Defect found in Class Vehicles:

- "My battery went dead after two days onTuesday ...went to dealer , I am the 4 th one reporting the problem..dealer told me that engineers are workingon the problem[.]"

- "have the same problem with my crv 2019I have it 3 weeks and two times went completely dead. Dealer replaced battery the first time , the second time that said it's something with the software. They said software needs updating should have the problem fixed in two months. I want them to take the care back. I am not paying for something I can't drive unless I jump it."

- "My dealer would not give me a new battery unless I paid him $165 for one. I had 127 miles on it, they charged it up and said the battery was ok and the next morning it was dead, so I bought a jump starter, hope they get something going on it soon be cause a new $35K crv should start. This is my 3rd Honda crv and the LAST."

- "This is my problem too, bought it January 7 and in a few days it will be two months. Still not fixed. It has been dead 8 times to date. It goes dead in 3 days or less in the garage, nothing is left turned on. It has been to the dealer for several days a couple times, and sent back cause "nothing was found wrong with it". Finally they got the battery to go dead for them and put in a larger battery. That worked well for a few days and now it also goes dead. So we have to drive it every day to put some charge back in. I also bought a Jumpit pack which is helpful. But why should I have to do all this? Mine is a 2019 Honda CRV - EX. Honda I am asking politely "Will you fix my car very soon or replace it without charging me $3000" as I was told it would take to get into another car? I already paid cash for this one so better treatment to this guest would be a big plus."

- "I'm having the same issue with my battery drainage!!! I'm so upset! It will be 30 days tomorrow since I've had the car! I'm not sure if I should return it or what???"

- "Same thing happened to me about 2 weeks after I bought mine. Jumped it and made an appointment with the dealership because odd things were happening after that such as heat not working well, etc. They determined the battery was low and also told me the same thing someone else here said- it's a problem with one of the systems running a scan. A software fix should be out in a month - in the meantime, after turning the car off turn it on again immediately and then back off. That should prevent the scan from running. That was 4 days ago and so far it has started.....but I'm in agreement that we shouldn't be having to do this for a brand new Honda product."

188. And, as detailed herein, several of the posts in this forum reference reporting the issues directly to Honda's customer service division, providing Honda with direct knowledge of the Defect and the hazards associated with the Defect.

189. A popular Honda forum for CR-V owners, crvownersclub.com also contains several complaints from drivers caused by the Defect in Class Vehicles:

- "[W]e also have a 17 CR-V. had to replace the battery this year."

- "We have a 2017 CRV, that we had the issue with the battery draining, and had the TSB done about a year ago and it has been fine since then, until the other morning. Wife went to start it, and it was dead, we jumped it off, and she went to work (30mile commute), that evening it cranked, but slowly. The next morning it was dead, jumped it off, she went to work, that evening it barely cranked but did and she drove the 30 miles home. After she got home, I thought it was probably the battery, and I'd just put a new battery in even though it was under warranty. Went to the parts place, and they tested the battery, and it tested fine. At the parts place it cranked fine, about 4 times, like it was fully charged. We went across the street, and got gas,

and went to crank it, and it would not turn over, and the lights were barely on. Tried to open the hatch to get the jumper cables and it would not open on its own, I had to pull the hatch up. I checked the connections at the battery, and they are tight, I tried to wiggle them, and they would not move. I really wish this thing had a volt meter. We've got an appointment with the dealer tomorrow. Any ideas??"

- "I just had the battery issue after 2 years. I had to jump start my CRV each time. I had to pay 200.00 for a new battery because I was over the 36,000 miles. Pretty crappy after you pay money and only get 2 years on the battery. Shame on you Honda!"

190.    A simple Google search reveals several other forums with numerous complaints from drivers regarding the Defect in Class Vehicles. For example, on October 30, 2015, an owner of a 2012 Honda CR-V complained that she "has been going through batteries at an alarming rate. Every time I put a new one in, it dies within a few weeks and can't be made to hold a charge. This is a totally unacceptable problem to have in a vehicle that only has 20,000 miles on it! I have gone through 4 batteries and enough is enough. What is the problem and how can I prevent more batteries from biting the dust?"[59]

191.    In February 2012, an owner of a 2012 Honda Accord complained on a popular car website, EDMUNDS.COM, that his vehicle's battery was constantly draining without explanation: "Only 1600 miles, I sent my car to the dealer 2 times and jumping start 3 times already. They just told me everything is OK. Something is eating my battery power."[60]

**E.    Complaints Made Directly to Honda's Customer Service Division**

192.    In addition to the numerous complaints submitted to the NHTSA and posted on various consumer and car forums, Honda also learned of the Parasitic Drain Defect directly from complaints received by Honda's customer relations division.

---

[59]   YOUR MECHANIC (Oct. 30, 2015), https://www.yourmechanic.com/question/going-through-too-many-batteries.

[60]   EDMUNDS,   https://forums.edmunds.com/discussion/14504/honda/accord/2012-honda-civic-and-accord-battery-drain (last accessed Sept. 21, 2021).

193.   As part of its Global Honda Quality Standard, Honda had procedures in place to deal with "quality issues after sales" in which dealerships "collect quality information from customers in a timely manner."

194.   Honda utilizes a customer relations center which "receives feedback in the form of customer questions, suggestions, requests and complaints 365 days a year." And to "ensure that this valuable information is put to good use in Honda's operations, the facility shares it in a timely manner with the company's R&D, manufacturing, service and sales departments."

195.   "Honda has established a Quality Center to bring together the various components of our organization concerned with product market quality information to enhance the functions of 'preventing quality issues' and 'quickly detecting and resolving quality issues when they occur' on a global scale."

196.   Honda also maintains a TRS Group at its California headquarters which is responsible for, among other things, identifying and investigating potential defects in Honda vehicles.

197.   Upon information and belief, Honda's customer relations division received numerous reports of the Parasitic Drain Defect and the premature failure of Class Vehicle batteries.

198.   In fact, drivers referenced reports made directly to Honda's customer service division in posts made on many online forums in which they were discussing the Defect in Class Vehicles, providing Honda with direct knowledge of the Defect and the hazards associated with the Defect:

- "Everyone having this battery drainage problem please call Honda and report it at 1-809-999-1008 x155. This is to Consumer Services, I believe. They took all of the dates the story etc. They gave me a case number and the report will go to Case Management. I was told they would call me in 1-2 days. I was on the phone with them for about an hour. I have no idea what they will do for me, if anything, but they need to know how widespread this problem is. Don't count on the dealership to report it. My car has been towed 5 times all through Honda Roadside assistance but only 2 of the 5 dates had a service report filed from the dealership. Write down the dates your car was dead and what the outcome was. Like was it towed to dealership, what did they say, was it jumped and you drove it. All of it. Write it out on paper or keep a running document on your computer or on your phone calendar. You will need all of this in case you decide to pursue

something through the lemon law in your state. I refuse to be stuck with this car! It's been a very very productive morning."

- "I also called HONDA CUSTOMER SERVICE AND ASK THEM TO FIND OUT WHY THE BATTERY WOULD DIE AFTER SITTIG IN MY GARAGE FOE 2 DAYS AND SHE SAID THEY WERE AWARE OF THE DEAD BATTERY PROBLEM, BUT HAD NO ANSWER FOR IT. SHE SAID TO TALK TO THE DEALER AND I TOLD HER I did 3 times and they had no answer for it, I got a case Number. Big Deal."

- "We purchased our CRV on 2/21. On the morning of 3/3 it would not start due to a dead battery. I jump started it and let it run to charge the battery back up. On the morning of 3/4 it would not start again. Jumped it and drove to the dealership. They tested the battery and said it was OK. They stated this was a known design problem due to the evaporative emissions system trying to test the gas tank overnight. They said to keep the gas tank more than 3/4 filled and it would be OK. This means filling the tank every night. Filled the tank. On the morning of 3/5, no start again. We brought it to the dealership and got a loaner Civic to drive for the rest of the month. The evap test should not run with more than 3/4 tank of gas. The evap test should not run when the ambient temperature is below freezing. Overnight temperatures currently are in the single digits and teens. It should not be running this test. There is no current fix for this condition. We have about 600 miles on our new car that we cannot use. I have called Honda and started a case, we will see what happens next. If you have a car with this problem, call Honda, let them know about it and get a case number. Keep a log of all events involving your car and the people/companies you contact."

**F.    Honda's Service Bulletins Fail to Fix the Defect and Further Conceal the Defect**

199.    On February 22, 2017, Honda filed an "Engineering Request for Investigation" ("Engineering Request") with the NHTSA. In the Engineering Request, Honda stated that it "is investigating certain 2016-2017 Accord V6s with a customer complaint of a no-start condition that requires the 12V battery to be replaced. To fully understand the cause of this condition, [Honda] would like to collect specific parts from the vehicle prior to you attempting a repair of any kind."[61] Instructions were provided to have dealers contact Honda's TRS Group for further information.

---

[61] NHTSA ID No. 10108050, Manufacturer Communication No. AER17020B, https://static.nhtsa.gov/odi/tsbs/2017/MC-10108050-9340.pdf (last accessed Sept. 21, 2021). NHTSA complaints are publicly available online and searchable by NHTSA ID Number at https://www.nhtsa.gov/recalls.

200.   On February 23, 2017, Honda issued a "Dealer Message" with similar information.[62] Neither document identified the basis for Honda's decision to collect the vehicle batteries other than an unidentified number of customer complaints.

201.   Over the course of the next three months (on dates including March 6, 16, and 27, 2017 and June 30, 2017), Honda issued additional "Dealer Message[s]" concerning "customer complaint[s] of a no-start condition that requires the 12V battery to be replaced" in 2016-2017 Accords.[63]

202.   Indeed, on March 10, 2017, Honda issued a "Tech Line Summary Article" notifying dealerships that it had conducted an "investigation" into 2017 CR-Vs being brought in for weak or dead batteries, yet the vehicles and batteries "check out OK[.]"[64] Honda stated that it "found that a software bug in the VSA [Vehicle Stability Assist] system may be keeping it awake when the ignition is turned to OFF. This can cause a 350 mA parasitic draw that may result in a weak or dead battery." Honda noted that it "found that this issue appears to happen only when a certain shut down procedure is done, and it's rare when it does." Although it acknowledged the issue, Honda did not have a "fix" and instead warned that "this parasitic draw can be avoided by setting the electric parking brake before turning the ignition to OFF."[65]

---

[62]   NHTSA ID No. 10108052, Manufacturer Communication No. APAS02232017901 (Feb. 23, 2017), https://static.nhtsa.gov/odi/tsbs/2017/MC-10108052-9340.pdf.

[63]   NHTSA ID No. 10108266, Manufacturer Communication Number: APAS03062017901 (Mar. 6, 2017), https://static.nhtsa.gov/odi/tsbs/2017/MC-10108266-9340.pdf; NHTSA ID No. 10108293, Manufacturer Communication No. APAS03162017901 (Mar. 16, 2017), https://static.nhtsa.gov/odi/tsbs/2017/MC-10108293-9340.pdf; NHTSA ID No. 10108331, Manufacturer Communication No. APAS03272017901 (Mar. 27, 2017), https://static.nhtsa.gov/odi/tsbs/2017/MC-10108331-9340.pdf; NHTSA ID No. 10108299, Manufacturer Communication No. APAS03222017901 (Mar. 22, 2017), https://static.nhtsa.gov/odi/tsbs/2017/MC-10108299-9340.pdf.

[64]   NHTSA ID No. 10108281, Manufacturer Communication No. ATS 170301 (Mar. 2017), https://static.nhtsa.gov/odi/tsbs/2017/MC-10108281-9340.pdf.

[65]   *Id.*

1    203.    Honda issued Service Bulletin 17-032 on June 14, 2017, which warned dealerships

2    that 2017 CR-Vs "may have an intermittent 350mA current draw after the vehicle is shut off[,]" in

3    which case "[t]he vehicle does not start due to a low battery." Honda stated that the "possible

4    causes" for the parasitic draw was the vehicle's VSA modulator-control unit: "The VSA software

5    logic may not allow the VSA modulator-control unit to shut down correctly and go into sleep mode

6    after the vehicle is shut off. This can happen if the electronic parking brake (EPB) is applied within

7    3 to 4 seconds of the vehicle being shut off or if the EPB switch is held for a 3 to 4 second duration

8    when the vehicle is off." Honda's proposed "CORRECTIVE ACTION" was to "[u]pdate the VSA

9    modulator-control unit, do the VSA sensor neutral position memorization (ALL SENSOR), set the

10   tire pressures to the driver's door jamb label cold inflation values, and do the TPMS calibration

11   procedure."[66]

12   204.    On October 24, 2018, Honda announced that it had launched a battery collection

13   program for 2017-2018 CR-Vs. Honda's "Service Engineering" group sent a message to "Honda

14   Dealers" instructing the dealers to ship the batteries to Honda and to contact Honda's TRS Group

15   for more information if the dealership "replaced an OEM battery on a qualified vehicle."[67]

16   205.    On March 29, 2019, Honda issued Service Bulletin 19-039, warning that 2019 CR-

17   Vs may "fail[] to start after being parked for an extended period." Honda explained that "[a]fter

18   the vehicle is parked for an extended period, the PCM begins an evaporative system leak check

19   after meeting certain criteria. Under certain conditions, it may not return to sleep mode, causing

20   the battery to discharge."[68]

21   206.    Also on March 29, 2019, a Honda "Manager of Auto Campaigns and Recalls"

22   issued a communication to dealers and "All Honda Sales, Service, & Parts Managers, and

23

---

24   [66] Honda Service Bulletin, NHTSA ID No. 10108868 (June 14, 2017), https://static.nhtsa.gov/odi/tsbs/2017/MC-10108868-9999.pdf.

25
26   [67] NHTSA ID No. 10147183, Manufacturer Communication No. APaS10242018901 (Oct, 24, 2018), https://static.nhtsa.gov/odi/tsbs/2018/MC-10147183-9999.pdf.

27
28   [68] NHTSA ID No. 10156620, Manufacturer Communication No. A19-039 (Mar. 29, 2019), https://static.nhtsa.gov/odi/tsbs/2019/MC-10156620-0001.pdf.

1  Personnel[,]" "announcing a Product Update for certain 2019 CR-V vehicles to address a concern

2  related to a possible low battery state of charge and/or no start after the vehicle has been parked."

3  Honda stated that the issue was related to "[t]he FI-ECU[, which] checks for EVAP leaks 5 hours

4  after vehicle shutdown. Due to a programming error, this system may not go back into sleep mode

5  afterwards. As a result, the battery may drain if this condition exists for an extended period of

6  time." Honda acknowledged that the issue may necessitate a battery replacement.[69]

7       207.    Honda issued a communication to Honda Service Managers on April 16, 2019, that

8  "[Honda] has been collecting batteries from [2018-2019 Accords and 2017-2018 CR-Vs] under

9  certain conditions. If you have replaced an OEM battery on a qualified vehicle, please follow the

10  procedure below. Service Managers were instructed to ship the batteries to Honda and to contact

11  Honda's TRS Group for more information if the dealership "replaced an OEM battery on a

12  qualified vehicle."[70]

13       208.    On August 30, 2019, Honda issued an Owner Notification Letter for 2019 CR-Vs,

14  warning: "After the vehicle is parked for an extended period, the powertrain control module (PCM)

15  begins an evaporative system leak check after meeting certain criteria. Under certain conditions,

16  the PCM will not return to sleep mode, and may ultimately result in a dead battery. This is not an

17  indication of a leak in the evaporative system."[71]

18       209.    On December 17, 2019, Honda issued an update for Service Bulletin 19-039 which

19  expanded the number of 2019 CR-Vs subject to the bulletin.[72]

20

21

22  [69]  NHTSA ID No. 10156621, Manufacturer Communication No. ABOM03292019 (Mar. 29,

23  2019), https://static.nhtsa.gov/odi/tsbs/2019/MC-10156621-0001.pdf.

24  [70]  NHTSA ID No. 10159033, Manufacturer Communication No. APaS04162019903 (Apr. 16, 2019), https://static.nhtsa.gov/odi/tsbs/2019/MC-10159033-0001.pdf.

25  [71]  NHTSA ID No. 10164478, Manufacturer Communication No. ONLO4G08302019 (Aug.

26  2019), https://static.nhtsa.gov/odi/tsbs/2019/MC-10164478-0002.pdf.

27  [72]  NHTSA ID No. 10169977, Manufacturer Communication No. A19-039 (Dec. 17, 2019), ,

28  https://static.nhtsa.gov/odi/tsbs/2019/MC-10169977-0001.pdf.

1    210.    Notably, Honda is aware that the Service Bulletins and proposed remedies are

2    insufficient and fail to correct the Parasitic Drain Defect found the Class Vehicles. Even after the

3    Service Bulletins were issued and dealers applied the "corrective action[s]" to the Class Vehicles,

4    drivers continued to report incidents of parasitic draining.[73]

5    211.    Additionally, years before Honda issued Service Bulletins and battery collections

6    for the Class Vehicles, Honda acknowledged the existence of parasitic draw issues in prior model

7    years of the Class Vehicle.

8    212.    On September 1, 2011, Honda issued Service Bulletin A11090M for vehicle

9    models "'98 and later models with A/C," including 2006-2007 Accords and 1998-2012 CR-Vs,

10   warning that a defect in the A/C relay may cause parasitic draining. Specifically, Honda warned

11   that "[d]ead battery after parking for a short time or overnight" was "caused by the A/C compressor

12   clutch relay contacts intermittently sticking closed . . . If it sticks when you turn off the ignition

13   with the compressor running, the compressor clutch keeps drawing battery power at a rate of 2 to

14   4 amps. That much parasitic draw discharges the battery in short order."[74]

15   213.    On November 13, 2012, Honda issued Service Bulletin 12-041 titled, *The Battery*

16   *Is Dead and Needs Multiple Jump-Starts*.[75] Therein, Honda acknowledged that 2012 Civics and

17   2012 CR-Vs that "sat for at least two days" are prone to dead batteries, which require "multiple

18   jump-starts to start the engine." Honda told its dealerships and technicians that the "probable

19   cause" of the dead batteries was related to "[t]he vehicle's battery sensor monitors battery

20   condition and the PCM [which] determines charging mode." Honda explained that "[b]ased on the

21   sulfation of the battery and customer driving habits the PCM may not select the correct charge

22   mode." Honda further warned that "[a] jump-start should only be used to get the vehicle to a service

23

24

25   [73]   *See, e.g.*, NHTSA ID Nos. 11187354, 11089119, 11191314, 11064100, 11089119.

26   [74]   TSB SEARCH (Sept. 1, 2011), https://www.tsbsearch.com/Honda/A11090M.

27   [75]   https://www.crvownersclub.com/attachments/sb-12-041-2-pdf.7783/ (last accessed July 27,
28   2021).

1  station or dealer. It should not be used to fully charge the battery." The Service Bulletin instructed

2  Honda mechanics to replace the battery "if necessary" and to update the PCM's software.

3      214.    Next, on March 19, 2014, Honda issued a Service Bulletin which superseded

4  Service Bulletin 12-041, issued on February 2, 2013. Therein, Honda states that the Service

5  Bulletin "has been revised extensively[.]" Again, the "CORRECTIVE ACTION" proposed was to

6  update the PCM software, and that dealers should "[i]f necessary, replace the battery[.]" Honda

7  further stated that the PCM not selecting the correct charge mode as the "POSSIBLE CAUSE" for

8  the Defect remained unchanged.[76]

9      215.    On July 23, 2014, Honda issued a subsequent Service Bulletin which superseded

10  the March 19, 2014 Service Bulletin. This time, the Service Bulletin was expanded to include

11  2013-2014 Honda CR-Vs.[77] Honda's statement that the PCM not selecting the correct charge mode

12  as the "possible cause" for the Defect remained unchanged.

13      216.    On November 8, 2014, Honda issued Service Bulletin 14-071, which warned that

14  "[i] some cases, because of the battery condition and the customer's driving habits, the PCM may

15  not select the correct charge mode, resulting in a battery with a low state-of-charge. If the battery

16  has a low state-of-charge, the engine may not start."[78] This Service Bulletin related to all 2012 CR-

17  V models.

18      217.    Also on November 8, 2014, Honda issued a dealership communication warning that

19  2012 CR-V vehicles contained "issues with the battery management system." Honda described the

20  "[p]roblem": "The battery management system may misinterpret state-of-charge (SOC)

21  information if the vehicle is left sitting for an extended period of time, which can cause the system

22

23

___

24  [76]  Honda Service Bulletin, Manufacturer Communication No. A17-032 (Mar. 19, 2014), https://static.nhtsa.gov/odi/tsbs/2014/MC-10129492-9999.pdf.

25
26  [77]  Honda Service Bulletin, NHTSA ID No. 10128561 (July 23, 2014), https://static.nhtsa.gov/odi/tsbs/2014/MC-10128561-9999.pdf.

27  [78]  Honda Service Bulletin, NHTSA ID No. 10118181 (Nov. 8, 2014), https://static.nhtsa.gov/odi/tsbs/2014/MC-10118181-9999.pdf.

28

1   to fail to charge the battery. If the condition persists, the SOC may fall below a level sufficient to

2   start the engine."[79]

3          **G.**    **Honda Breached the Express Warranties Covering the Class Vehicles**

4          218.    The Class Vehicles sold and leased by Honda included a written express warranty,

5   which provides: "All new Honda vehicles are covered by a 3-Year/36,000-Mile New Vehicle

6   Limited Warranty [.]"[80]

7          219.    Under the terms of the New Vehicle Limited Warranty, Honda is required to "repair

8   or replace any part that is defective in material or workmanship under normal use."[81]

9          220.    Each Class Vehicle's original battery is included in the New Vehicle Limited

10  Warranty.[82]

11         221.    The New Vehicle Limited Warranty period begins once "[t]he vehicle is delivered

12  to the first purchaser by a Honda automobile dealer" or "[t]he vehicle is leased."[83]

13         222.    Honda also includes a 100-month Replacement Battery Limited Warranty for

14  batteries purchased from a Honda automobile dealer.[84] Under the Replacement Battery Limited

15  Warranty, defective replacement batteries are to be replaced at no cost for the battery, labor, or

16  installation during the first 36 months of service. For the remaining 64 months, the warranty

17  provides for a sliding-scale credit towards the purchase of a replacement battery.

18         223.    Buyers and lessees have no pre-sale/lease knowledge or ability to bargain as to the

19  terms of the warranties.

20

---

21  [79]   NHTSA ID No. 10118173 (Nov. 8, 2014), https://static.nhtsa.gov/odi/tsbs/2014/MC-
22  10118173-9999.pdf.

23  [80]   Honda, https://automobiles.honda.com/cr-v/warranty (last accessed Sept, 21, 2021).

24  [81]   Honda, https://owners.honda.com/documentum/Warranty/Handbooks/AWL47382.pdf (last
25  accessed Sept. 21, 2021).

26  [82]   *Id.*

     [83]   *Id.*
27

28  [84]   *Id.*

224.     Honda breached of these warranties by, *inter alia*, failing to repair or remedy the Parasitic Drain Defect in the Class Vehicles. Class members complained to authorized Honda dealerships and technicians about the Parasitic Drain Defect, but did not receive an adequate repair, breaching the express and implied warranties provided by Honda.

225.     Honda's attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable here. Specifically, Honda's warranty limitation is unenforceable because it knowingly sold or leased a defective product without informing consumers about the Defect. The time limits contained in Honda's warranty periods were also unconscionable and inadequate to protect Plaintiffs and other Class members. Among other things, Plaintiffs and other Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Honda. A gross disparity in bargaining power existed between Honda and other Class members, and Honda knew of the Defect at the time of sale.

## VI.     FRAUDULENT OMISSION/CONCEALMENT ALLEGATIONS

226.     Absent discovery, Plaintiffs were unaware of, and unable through reasonable investigation to obtain, the true names and identities of those individuals at Honda responsible for making false and misleading statements regarding the Class Vehicles. Honda necessarily is in possession of all of this information. Plaintiffs' claims arise out of Defendant's fraudulent omission/concealment of the Defect, despite their representations about the quality, reliability, and safety of the Class Vehicles.

227.     Plaintiffs allege that, at all relevant times, including specifically at the time they and Class members purchased their Class Vehicles, Honda knew, or was reckless in not knowing, of the Defect; Defendant had a duty to disclose the Defect based upon its exclusive knowledge; and Defendant never disclosed the Defect to Plaintiffs or the public at any time or place in any manner other than inadequate Service Bulletins relating to the Class Vehicles.

228.     Honda actively concealed and omitted the Defect from Plaintiffs and Class members while simultaneously touting the safety and dependability of the Class Vehicles, as

1  alleged herein. Plaintiffs were unaware of, and therefore unable to identify, the true names and

2  identities of those specific individuals at Honda responsible for such decisions.

3       229.    Honda knew, or was reckless or negligent in not knowing, that the Class Vehicles

4  contain the Defect, as alleged herein. Defendant concealed and omitted the Defect while making

5  representations about the safety, dependability, and other attributes of the Class Vehicles, as

6  alleged herein.

7       230.    Honda concealed and omitted material information regarding the Defect at all times

8  while making representations about the safety and dependability of the Class Vehicles on an

9  ongoing basis, and continuing to this day, as alleged herein. Honda still has not disclosed the truth

10  about the full scope of the Defect in the Class Vehicles. Honda has never taken any action to inform

11  consumers about the true nature of the Defect in Class Vehicles. And when consumers brought

12  their vehicles to Honda complaining of the Defect, Honda denied any knowledge of, or an adequate

13  repair for, the Defect.

14      231.    Honda concealed and omitted material information regarding the true nature of the

15  Defect in every communication it had with Plaintiffs and Class members and made representations

16  about the quality, reliability, and safety of the Class Vehicles. Plaintiffs are not aware of any

17  document, communication, or other place or thing in which Defendant disclosed the truth about

18  the full scope of the Defect in the Class Vehicles. Such information is not adequately disclosed in

19  any sales documents, displays, advertisements, warranties, owner's manuals, or on Honda's

20  website. There are channels through which Honda could have disclosed the Defect, including, but

21  not limited to: (a) point of sale communications; (b) the owner's manual; and/or c) direct

22  communication to Class members through means such as state vehicle registry lists and e-mail

23  notifications.

24      232.    Honda concealed and omitted the Defect from Plaintiffs and Class members and

25  made representations about the quality, safety, dependability, and comfort of the Class Vehicles.

26  Honda actively concealed and omitted the truth about the existence, scope, and nature of the Defect

27  from Plaintiffs and Class members at all times, even though it knew about the Defect and knew

28

1   that information about the Defect would be important to a reasonable consumer, and Honda

2   promised in its marketing materials that Class Vehicles have qualities that they do not have.

3         233.   Honda actively concealed and omitted material information about the Defect in the

4   Class Vehicles for the purpose of inducing Plaintiffs and Class members to purchase and/or lease

5   Class Vehicles, rather than purchasing or leasing competitors' vehicles, and made representations

6   about the quality, safety, durability, and comfort of the Class Vehicles. Had Honda disclosed the

7   truth, for example in its advertisements or other materials or communications, Plaintiffs and Class

8   members (all reasonable consumers) would have been aware of it, and would not have bought or

9   leased the Class Vehicles or would not have paid as much for them.

10  **VII.   TOLLING OF STATUTES OF LIMITATIONS**

11        234.   Any applicable statute(s) of limitations have been tolled by Defendant's knowing

12  and active concealment and denial of the facts alleged herein. Plaintiffs and the members of the

13  Class could not have reasonably discovered the true, latent nature of the Defect until shortly before

14  this class action litigation was commenced. Plaintiffs' claims were thus tolled pursuant to the

15  discovery rule and for fraudulent concealment.

16       **A.   Discovery Rule**

17        235.   As shown by Plaintiffs' experiences alleged above, Class members had no way of

18  knowing about the Parasitic Drain Defect in their Class Vehicles. Defendant concealed its

19  knowledge of the Defect (as evidenced by the Service Bulletins, detailed above) while continuing

20  to market and sell the Class Vehicles as safe, high-quality, and reliable vehicles.

21        236.   Within any applicable statutes of limitation, Class members could not have

22  discovered through the exercise of reasonable diligence that Honda was concealing the conduct

23  complained of herein and misrepresenting the true qualities of the Class Vehicles. As detailed

24  above, Class members acted reasonably and diligently in attempting to find the source of their

25  electrical and battery-related vehicle issues.

26        237.   Class members did not know facts that would have caused a reasonable person to

27  suspect that there was a Parasitic Drain Defect affecting their vehicle's battery and an ordinary

28  person would be unable to appreciate that the vehicle was defective.

238.    For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to the claims in this litigation.

**B.    Fraudulent Concealment**

239.    Defendant was under a continuous duty to disclose to Class members the existence of the Parasitic Drain Defect found in the Class Vehicles.

240.    Defendant recklessly disregarded the true nature, quality, and character of the Class Vehicles by failing to disclose the existence of the Parasitic Drain Defect.

241.    The statute of limitations on any counts alleged in this action are tolled during the relevant period alleged herein due to Defendant's concealment of the adverse facts concerning the Parasitic Drain Defect.

242.    Defendant actively concealed from Class members the truth about the battery failures and related electrical issues as described herein.

243.    As shown by Plaintiffs' experiences alleged above, Class members were not at fault for failing to discover the relationship between the Parasitic Drain Defect and their electrical and battery-related vehicle issues. Plaintiffs had no actual or presumptive knowledge of facts sufficient to put them on inquiry notice of such a relationship. This ignorance of the true cause of the electrical and battery-related vehicle issues is common across Plaintiffs and each Class member.

**VIII.   CLASS ALLEGATIONS**

244.    Plaintiffs bring this action pursuant to Rules 23(a), 23(b)(2), and 23(b)(3) of the FEDERAL RULES OF CIVIL PROCEDURE on behalf of themselves and all others similarly situated.

245.    Plaintiffs seek to represent a class ("Nationwide Class") defined as:

All persons in the United States and its territories who are current or former owners and/or lessees of a Honda CR-V (model years 2017-2019) or Honda Accord (model years 2016-2019).

246.    In addition, and in the alternative to the above, Plaintiff Raynaldo seeks to represent a class ("California Class") defined as:

All persons in the State of California who are current or former owners and/or lessees of a Honda CR-V (model years 2017-2019) or Honda Accord (model years 2016-2019).

247.     In addition, and in the alternative to the above, Plaintiffs Cruz, Pazanki, Tessinari, Ferreira, Provenzano, and Woods seek to represent a class ("Florida Class") defined as:

> All persons in the State of Florida who are current or former owners and/or lessees of a Honda CR-V (model years 2017-2019) or Honda Accord (model years 2016-2019).

248.     In addition, and in the alternative to the above, Plaintiff Barrie seeks to represent a class ("Illinois Class") defined as:

> All persons in the State of Illinois who are current or former owners and/or lessees of a Honda CR-V (model years 2017-2019) or Honda Accord (model years 2016-2019).

249.     In addition, and in the alternative to the above, Plaintiff Rapp seeks to represent a class ("Arizona Class") defined as:

> All persons in the State of Arizona who are current or former owners and/or lessees of a Honda CR-V (model years 2017-2019) or Honda Accord (model years 2016-2019).

250.     In addition, and in the alternative to the above, Plaintiff Rapp seeks to represent a class ("Nevada Class") defined as:

> All persons in the State of Nevada who are current or former owners and/or lessees of a Honda CR-V (model years 2017-2019) or Honda Accord (model years 2016-2019).

251.     In addition, and in the alternative to the above, Plaintiff Jones seeks to represent a class ("Iowa Class") defined as:

> All persons in the State of Iowa who are current or former owners and/or lessees of a Honda CR-V (model years 2017-2019) or Honda Accord (model years 2016-2019).

252.     In addition, and in the alternative to the above, Plaintiff Lizzul seeks to represent a class ("New York Class") defined as:

> All persons in the State of New York who are current or former owners and/or lessees of a Honda CR-V (model years 2017-2019) or Honda Accord (model years 2016-2019).

253.     In addition, and in the alternative to the above, Plaintiff Casey seeks to represent a class ("Massachusetts Class") defined as:

All persons in the State of Massachusetts who are current or former owners and/or lessees of a Honda CR/V (model years 2017-2019) or Honda Accord (model years 2016-2019).

254.    In addition, and in the alternative to the above, Plaintiff Sanger seeks to represent a class ("Michigan Class") defined as:

All persons in the State of Michigan who are current or former owners and/or lessees of a Honda CR/V (model years 2017-2019) or Honda Accord (model years 2016-2019).

255.    Excluded from the Nationwide Class, the California Class, the Florida Class, the Arizona Class, the Nevada Class, the Iowa Class, the Illinois Class, the New York Class, the Massachusetts Class, and the Michigan Class (collectively, "Classes") are Honda, its affiliates, employees, officers, and directors, persons or entities that purchased the Class Vehicles for resale, and the Judge(s) assigned to this action. Plaintiffs reserve the right to modify, change, or expand the Class definitions based on discovery and further investigation.

256.    <u>Numerosity</u>: The Classes are so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Classes are unknown at this time, such information being in the sole possession of Defendant, Plaintiffs believe, and on that basis allege, that approximately two million Class Vehicles have been sold and/or leased in the United States.

257.    <u>Existence and Predominance of Common Questions of Law and Fact</u>: Common questions of law and fact exist as to all members of the Classes. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

(a)    whether the Class Vehicles were sold with the Defect;

(b)    whether Defendant engaged in the conduct alleged herein;

(c)    whether Defendant advertised, marketed, distributed, leased, sold, or otherwise placed the Class Vehicles into the stream of commerce in the United States;

(d)    whether Defendant knew of the Parasitic Drain Defect but failed to disclose the problem and its consequences to its customers;

1         (e)     whether a reasonable consumer would consider the Parasitic Drain Defect

2  or its consequences to be material;

3         (f)     when Defendant discovered the Parasitic Drain Defect in the Class

4  Vehicles, and what, if anything, it did in response;

5         (g)     whether Defendant should be required to fully disclose the existence of the

6  Parasitic Drain Defect;

7         (h)     whether Defendant breached its express and/or implied warranties with

8  respect to the Class Vehicles;

9         (i)     whether Defendant's conduct violates the California Consumers Legal

10  Remedies Act ("CLRA"), CAL. CIV. CODE §1750, *et seq*.; California's Unfair Competition Law

11  ("UCL"), CAL. BUS. & PROF. CODE §17200; California's False Advertising Law, CAL. BUS. &

12  PROF. CODE §17500, *et seq*. and the other statutes asserted herein;

13         (j)     whether Plaintiffs and Class members overpaid for their Class Vehicles;

14         (k)     whether Defendant was unjustly enriched; and

15         (l)     whether Plaintiffs and Class members experienced out-of-pocket losses as

16  a result of the Defect, and if so, how much.

17     258.  <u>Typicality</u>: Plaintiffs' claims are typical of the claims of the Classes because

18  Plaintiffs purchased Class Vehicles with the same Defect as did each member of the Classes.

19  Furthermore, Plaintiffs and all members of the Classes sustained monetary and economic injuries,

20  including, but not limited to, ascertainable losses arising out of Defendant's wrongful conduct.

21  Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent

22  Class members.

23     259.  <u>Adequacy</u>: Plaintiffs are adequate representatives because their interests do not

24  conflict with the interests of the Classes that they seek to represent, they have retained counsel

25  competent and highly experienced in complex class action litigation, and they intend to prosecute

26  this action vigorously. The interests of the Classes will be fairly and adequately protected by

27  Plaintiffs and their counsel.

28

260.   _Superiority_: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and members of the Classes. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Classes individually to redress effectively the wrongs done to them. Even if the members of the Classes could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the Court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Classes can be readily identified and notified based on, _inter alia_, Defendant's vehicle identification numbers, warranty claims, registration records, and database of complaints.

261.   _Declaratory and Injunctive Relief_: Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Classes as a whole.

262.   Defendant has acted, and refused to act, on grounds generally applicable to the Classes, thereby making appropriate final equitable relief with respect to the Classes as a whole.

## IX.   CAUSES OF ACTION

**COUNT ONE:**
**VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT**
**(CAL. CIV. CODE §1750, _et seq._)**
**(On Behalf of the Nationwide Class or,**
**Alternatively, on Behalf of the California Class)**

263.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

264.     Plaintiffs bring this claim individually and on behalf of the other members of the Nationwide Class.

265.     Plaintiffs allege, on information and belief that: (a) the decisions of Honda concerning the advertising, marketing, and warranty policies and procedures emanate from Honda's headquarters in Torrance, California; (b) Honda's decisions on how to present Class Vehicles in advertising in the United States emanate from its headquarters in Torrance, California; (c) decisions as to recalls, services bulletins, and whether to make warranty repairs all emanate from Honda's headquarters in Torrance, California; and (d) the relevant personnel from Honda work in Honda's headquarters in Torrance, California or coordinate and make decisions concerning the above through facilities and other personnel in Torrance, California. For these reasons, Plaintiffs and the Class' claims emanate from Honda's actions in California and it is appropriate for Honda to be held to comply with California law on a nationwide basis.

266.     Defendant is a "person" as that term is defined in CAL. CIV. CODE §1761(c).

267.     Plaintiffs and the Class members are "consumers" as that term is defined in CAL. CIV. CODE §1761(d).

268.     Honda engaged in unfair and deceptive acts in violation of the CLRA, by the practices described above, and by knowingly and intentionally concealing from Plaintiffs and Class members that the Class Vehicles suffer from a defect(s) (and the costs, risks, and diminished value of the vehicles as a result of this problem). These acts and practices violate, at a minimum, the following sections of the CLRA:

(a)(2)   Misrepresenting the source, sponsorship, approval or certification of goods or services;

(a)(5)   Representing that goods or services have sponsorships, approval, characteristics, ingredients, uses, benefits or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have;

(a)(7)   Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and

(a)(9)   Advertising goods and services with intent not to sell them as advertised.

269.     Honda's unfair or deceptive acts or practices occurred repeatedly in Honda's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

270.     Honda knew that the Class Vehicles were defectively designed or manufactured, would prematurely fail to perform their essential function, and were not suitable for their intended use.

271.     Honda was under a duty to Plaintiffs and the Class members to disclose the defective nature of the Class Vehicles and the existence of the Parasitic Drain Defect because:

(a)     Defendant was in a superior position to know the true state of facts about the Parasitic Drain Defect and associated repair costs in the Class Vehicles;

(b)     Plaintiffs and the Class members could not reasonably have been expected to learn or discover that the Class Vehicles had a Parasitic Drain Defect until manifestation of the Defect;

(c)     Defendant knew that Plaintiffs and the Class members could not reasonably have been expected to learn or discover the Parasitic Drain Defect and the associated repair costs that it causes until the manifestation of the Defect; and

(d)     Defendant actively concealed the Parasitic Drain Defect and the associated repair costs by knowingly failing to recall Class Vehicles.

272.     In failing to disclose the Defect and the associated safety risks and repair costs that result from it, Defendant has knowingly and intentionally concealed material facts and breached its duty to disclose.

273.     The facts concealed or not disclosed by Honda to Plaintiffs and the Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Defendant's Class Vehicles or pay a lesser price. Had Plaintiffs and the Class known about the defective nature of the Class Vehicles, they would not have purchased or leased the Class Vehicles or would have paid less for them.

274.     On July 31, 2021, Plaintiff Raynaldo served a demand, dated July 29, 2021, on Defendant pursuant to CAL. CIV. CODE §1782. Honda responded by e-mail on September 1, 2021.

275.     Plaintiffs and Class members' injuries were proximately caused by Honda's fraudulent and deceptive business practices.

276.     Plaintiffs and the Class members seek equitable relief and damages.

**COUNT TWO:**
**VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW**
**(CAL. BUS. & PROF. CODE §17200, *et seq.*)**
**(On Behalf of the Nationwide Class or,**
**Alternatively, on Behalf of the California Class)**

277.     Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

278.     Plaintiffs bring this claim individually and on behalf of the other members of the Nationwide Class.

279.     The UCL defines unfair competition to include any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code." CAL. BUS. & PROF. CODE §17200.

280.     Defendant violated the UCL by engaging in unlawful, unfair, and deceptive business acts and practices.

281.     Defendant is a "person" as defined by CAL. BUS. & PROF. CODE §17201.

282.     Pursuant to CAL. BUS. & PROF. CODE §17204, each of the Plaintiffs named herein, and the members of the proposed Class, have suffered injury in fact and have lost money or property because of the unfair competition set forth herein.

283.     Plaintiffs allege, on information and belief, that: (a) the decisions of Honda concerning the advertising, marketing, and warranty policies and procedures emanate from Honda's Torrance, California headquarters; (b) Honda's advertising decisions on how to present and/or market Class Vehicles in the United States emanate from its headquarters in Torrance, California; (c) decisions as to recalls, services bulletins, and whether to make warranty repairs all emanate from Honda's headquarters in Torrance, California; and (d) the relevant personnel from Honda operate from Honda's headquarters in Torrance, California or coordinate and make

decisions concerning the above through facilities and other personnel in Torrance, California. For these reasons, Plaintiffs and the Class' claims emanate from Honda's actions in California and it is appropriate for Honda to be held to comply with California law on a nationwide basis.

284.    Honda's conduct, as described herein, was and is in violation of the UCL. Honda's conduct violates the UCL by, among other things: (a) failing to disclose the existence of the Parasitic Draining Defect in the Class Vehicles; (b) marketing and promoting the Class Vehicles as being free from defect, including the Parasitic Draining Defect which causes the Class Vehicles to fail to perform their essential function and creates safety risks; (c) knowingly and intentionally concealing the existence of the Defect in the Class Vehicles; (d) violating California laws, including the CLRA; and (e) breaching its express and implied warranties.

285.    Honda intentionally and knowingly misrepresented and omitted material facts regarding the Class Vehicles with intent to mislead Plaintiffs and other Class members.

286.    In purchasing or leasing the Class Vehicles, Plaintiffs and other Class members were deceived by Honda's failure to disclose the Parasitic Drain Defect found in the Class Vehicles.

287.    Plaintiffs and other Class members reasonably relied upon Honda's false misrepresentations and omissions. They had no way of knowing that Defendant's representations were false, misleading, and incomplete. As alleged herein, Defendant engaged in a pattern of deception and public silence in the face of a known Parasitic Drain Defect in the Class Vehicles. Plaintiffs and other Class members did not, and could not, discover Defendant's deception on their own.

288.    Defendant knew or should have known that its conduct violated the UCL.

289.    Defendant owed Plaintiffs and other Class members a duty to disclose the truth about the Parasitic Drain Defect because the Defect created a safety hazard and Defendant: (a) possessed exclusive knowledge of the Defect; (b) intentionally concealed the Defect from Plaintiffs and the Class; and/or (c) made incomplete representations by failing to warn the public or to recall the Class Vehicles due to the Defect.

290.     Defendant had a duty to disclose that the existence of the Defect in the Class Vehicles, because Plaintiffs and other Class members relied on Defendant's material misrepresentations and omissions.

291.     Defendant's conduct proximately caused injuries to Plaintiffs and other Class members that purchased or leased the Class Vehicles and suffered harm as alleged herein.

292.     Plaintiffs and other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiffs and other Class members incurred costs related to the parasitic drain caused by the Defect, including replacement of electrical components and service costs, and overpaid for their Class Vehicles that have suffered a diminution in value.

293.     Plaintiffs and the Class members are suffering from continuing injuries because Honda has failed to issue an adequate remedy for the Defect found in each Class Vehicle. Defendant's unlawful acts and practices complained of herein affect the public interest.

294.     Defendant's misrepresentations and omissions alleged herein caused Plaintiffs and other Class members to make their purchases or leases of their Class Vehicles. Absent those misrepresentations and omissions, Plaintiffs and other Class members would not have purchased or leased these vehicles, would not have purchased or leased these Class Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not suffer from the Parasitic Drain Defect and failed to live up to industry standards.

295.     Accordingly, Plaintiffs and other Class members have suffered injury-in-fact, including lost money or property, as a result of Defendant's misrepresentations and omissions

296.     Plaintiffs request that this Court enjoin further unlawful, unfair, and/or fraudulent acts or practices by Defendant, and order restitutionary disgorgement of all monies and revenues generated as a result of such practices, and all other relief allowed under CAL. BUS. & PROF. CODE §17200, including reasonable attorneys' fees and costs under CAL. CIV. PROC. CODE §1021.5.

**COUNT THREE:**
**VIOLATION OF THE CALIFORNIA FALSE ADVERTISING LAW**
(CAL. BUS. & PROF. CODE §17500, *et seq.*)
**(On Behalf of the Nationwide Class or,**
**Alternatively, on Behalf of the California Class)**

297.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

298.    Plaintiffs bring this claim individually and on behalf of the other members of the Nationwide Class.

299.    CAL. BUS. & PROF. CODE §17500 states:

It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . .

300.    Honda caused to be made or disseminated through California and the United States, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known, to Honda to be untrue and misleading to consumers, including Plaintiffs and Class members.

301.    Honda has violated CAL. BUS. & PROF. CODE §17500 because the misrepresentations and omissions regarding the quality, safety, and reliability of the Class Vehicles and the Defect contained in Class Vehicles as well as the associated safety risks and repair costs that result from it as set forth in this Complaint were material and likely to deceive a reasonable consumer.

302.    Honda has also violated CAL. BUS. & PROF. CODE §17500 because the misrepresentations and omissions regarding the existence of a repair for the Defect and Defendant's ability and intention to render such a repair as set forth in this Complaint were material and likely to deceive a reasonable consumer.

303.    Plaintiffs and Class members have suffered an injury in fact, including the loss of money or property, as a result of Honda's unfair, unlawful, and/or deceptive practices. In purchasing or leasing their Class Vehicles, Plaintiffs and Class members relied on the misrepresentations and/or omissions of Honda with respect to the quality, safety, and reliability of the Class Vehicles as well as the existence of a repair for the Defect. Honda's representations turned out to be false because as a result of the Defect that could result in battery failure, stalling while operating the vehicle under normal driving conditions, and the failure of essential safety features, the Class Vehicles are unsafe, unreliable, and not of high quality. Additionally, no permanent and reliable repair exists for the Defect. Had Plaintiffs and Class members known this, they would not have purchased or leased their Class Vehicles and/or paid as much for them.

304.    Accordingly, Plaintiffs and Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain.

305.    All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Honda's business. Honda's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the state of California and nationwide.

306.    Plaintiffs, individually and on behalf of the Class, request that this Court enter such Orders or judgments as may be necessary to restore to Plaintiffs and Class members any money Honda acquired by unfair competition, including restitution and/or restitutionary disgorgement and all other relief allowed under CAL. BUS. & PROF. CODE §17500, including reasonable attorneys' fees and costs under California CAL. CIV. PROC. CODE §1021.5.

**COUNT FOUR:**
**BREACH OF EXPRESS WARRANTY**
**(CAL. COM. CODE §§2313, 10210)**
**(On Behalf of the Nationwide Class or,**
**Alternatively, on Behalf of the California Class)**

307.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

308.    Plaintiffs bring this claim individually and on behalf of the other members of the Nationwide Class.

309. Defendant is a "merchant" (as defined by CAL. COM. CODE §2104(1)), a "seller" (as defined by CAL. COM. CODE §2103(d)), and "lessor" of motor vehicles (as defined by CAL. CIV. CODE §2985.7(b)).

310. Plaintiffs and the Class' claims emanate from Honda's actions in California, and thus, the application of California extraterritorially to the claims of the Class in this action is proper. As alleged herein, Honda's advertising, marketing, and warranty policies and procedures emanate from Honda's headquarters in Torrance, California. In addition, upon information and belief, Defendant's advertising decisions emanated from its headquarters in Torrance, California, as well as its decisions as to recalls, services bulletins, and whether to make warranty repairs. Further, Defendant's relevant personnel are located at facilities in Torrance, California.

311. Pursuant to CAL. COM. CODE §2313 (a)(1), "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."

312. Pursuant to CAL. COM. CODE §10210(a)(1), "[a]ny affirmation of fact or promise made by the lessor to the lessee which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods will conform to the affirmation or promise."

313. The Class Vehicles are "goods" within the meaning of the UNIFORM COMMERCIAL CODE and relevant state law, including CAL. COM. CODE §2105(1).

314. Defendant provided all purchasers and lessees of the Class Vehicles with the express warranties described herein. In its written express warranties, Defendant expressly warranted that it would repair or replace defective parts free of charge if the defects became apparent during the warranty period.

315. Defendant's written express warranties formed the basis of the bargain that was reached when Plaintiffs and other Class members purchased or leased their Class Vehicles.

316. Defendant breached the express warranties through the acts and omissions described above.

317. Plaintiffs and other Class members have had sufficient direct dealings with either Defendant or its agents (*e.g.*, dealerships, consumer affairs departments, and technical support) to

1   establish privity of contract between Defendant on one hand, and Plaintiffs and each of the other

2   Class members on the other hand. Nonetheless, privity is not required here because Plaintiffs and

3   each of the other Class members are intended third-party beneficiaries of contracts between

4   Defendant and their dealers, and specifically, of Defendant's express warranties. The dealers were

5   not intended to be the ultimate consumers of the Class Vehicles and have no rights under the

6   warranty agreements provided with the Class Vehicles; the warranty agreements were designed

7   for and intended to benefit the consumers only. Additionally, privity is excused here because

8   Plaintiffs and each of the other Class members relied on statements made by Defendant itself in

9   choosing to purchase or lease a Class Vehicle. As alleged herein, the marketing of the Class

10   Vehicles was uniform and was controlled and disseminated directly by Defendant.

11   318.   Defendant knew that it was unable to provide adequate remedy under the warranty.

12   Defendant was also provided notice of the Parasitic Drain Defect through numerous complaints

13   filed against it directly and through its dealers, as well as its own internal engineering knowledge.

14   Honda has not remedied its breach.

15   319.   Further, Defendant has refused to provide an adequate warranty repair for the

16   Parasitic Drain Defect, thus rendering the satisfaction of any notice requirement futile. As stated

17   above, customers that have presented their vehicles for warranty repair, as Plaintiffs have, due to

18   the Parasitic Drain Defect have been denied adequate repairs.

19   320.   The written express warranties fail in their essential purpose because the contractual

20   remedy is insufficient to make Plaintiffs and other Class members whole and because Defendant

21   has failed and/or has refused to adequately provide effective remedies within a reasonable time.

22   321.   Accordingly, recovery by Plaintiffs and other Class members is not limited to the

23   limited remedy of repair, and Plaintiffs, individually and on behalf of the other Class members,

24   seek all remedies as allowed by law.

25   322.   Also, as alleged in more detail herein, at the time that Honda warranted and sold or

26   leased the Class Vehicles, it knew that the Class Vehicles did not conform to the warranty and

27   were inherently defective, and Defendant improperly concealed material facts regarding its Class

28

Vehicles. Plaintiffs and other Class members were therefore induced to purchase or lease the Class Vehicles under false pretenses.

323.    Defendant had notice of its breach as alleged herein.

324.    As a direct and proximate result of Defendant's breach of its express warranty, Plaintiffs and other Class members have been damaged in an amount to be determined at trial.

325.    Plaintiffs, on behalf of themselves and the Class, seek monetary damages, treble damages, costs, attorneys' fees, and such other and further relief provided by law and equity.

**COUNT FIVE:**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(CAL. COM. CODE §§2314, 10212)**
**(On Behalf of the Nationwide Class or,**
**Alternatively, on Behalf of the California Class)**

326.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

327.    Plaintiffs bring this claim individually and on behalf of the other members of the Nationwide Class.

328.    Defendant is a "merchant" (as defined by CAL. COM. CODE §2104(1)), a "seller" (as defined by CAL. COM. CODE §2103(d)), and "lessor" of motor vehicles (as defined by CAL. CIV. CODE §2985.7(b))..

329.    The Class Vehicles are "goods" within the meaning of the UNIFORM COMMERCIAL CODE and relevant state law, including CAL. COM. CODE §2105(1).

330.    Plaintiffs and the Class' claims emanate from Honda's actions in California, and thus, the application of California extraterritorially to the claims of the Class in this action is proper. As alleged herein, Honda's advertising, marketing, and warranty policies and procedures emanate from Honda's headquarters in Torrance, California. In addition, upon information and belief, Defendant's advertising decisions emanated from its headquarters in Torrance, California, as well as its decisions as to recalls, services bulletins, and whether to make warranty repairs. Further, Defendant's relevant personnel are located at facilities in Torrance, California.

1      331.   Defendant was, at all relevant times, the manufacturer, distributor, warrantor, seller
2  and/or lessor of the Class Vehicles. Defendant knew or had reason to know of the specific use for
3  which the Class Vehicles were purchased or leased.

4      332.   Pursuant to CAL. COM. CODE §2314(1) "a warranty that the goods shall be
5  merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods
6  of that kind." Goods are merchantable if they are "fit for the ordinary purposes for which such
7  goods are used" and "[c]onform to the promises or affirmations of fact made on the container or
8  label if any." CAL. COM. CODE §2314(2)(c),(f).

9      333.   Defendant provided Plaintiffs and other Class members with an implied warranty
10  that the Class Vehicles and any parts thereof are merchantable and fit for the ordinary purposes for
11  which they were sold. However, the Class Vehicles are not fit for their ordinary purpose of
12  providing reasonably reliable and safe transportation at the time of sale or thereafter because, *inter*
13  *alia*, the Class Vehicles suffered from the Parasitic Drain Defect at the time of sale that causes
14  various safety features to fail without warning, creates the undue risk of the engine stalling while
15  driving, and results in the premature depletion of batteries and alternators. Therefore, the Class
16  Vehicles are not fit for their particular purpose of providing safe and reliable transportation.

17      334.   Defendant impliedly warranted that the Class Vehicles were of merchantable
18  quality and fit for such use. This implied warranty included, among other things, a warranty that
19  the Class Vehicles were manufactured, supplied, distributed, and/or sold by Defendant ,were safe
20  and reliable for providing transportation, and would not result in the premature failure of its
21  batteries.

22      335.   Contrary to the applicable implied warranties, the Class Vehicles at the time of sale
23  and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and other
24  Class members with reliable, durable, and safe transportation. Instead, the Class Vehicles suffer
25  from a defective design(s) and/or manufacturing defect(s).

26      336.   Defendant knew or had reason to know of these material facts, and wrongfully and
27  fraudulently concealed these material facts from Plaintiffs and the Class. Defendant was provided
28  notice of these issues by complaints lodged by consumers with the NHTSA – which Defendant

1    routinely monitors – before or within a reasonable amount of time after the allegations of the
2    Defect became public.

3        337.    Defendant's actions, as complained of herein, breached the implied warranty that
4    the Class Vehicles were of merchantable quality and fit for such use.

5        338.    Plaintiffs and other Class members have had sufficient direct dealings with either
6    Defendant or its agents – such as its dealerships, consumer affairs departments, and technical
7    support – to establish privity of contract between Defendant on one hand, and Plaintiffs and each
8    of the other Class members on the other hand. Nonetheless, privity is not required here because
9    Plaintiffs and each of the other Class members are intended third-party beneficiaries of contracts
10   between Defendant and their dealers, and specifically, of Defendant's implied warranties. The
11   dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights
12   under the warranty agreements provided with the Class Vehicles; the warranty agreements were
13   designed for and intended to benefit the consumers only. Additionally, privity is excused here
14   because Plaintiffs and each of the other Class members relied on statements made by Defendant
15   itself in choosing to purchase or lease a Class Vehicle. As alleged herein, the marketing of the
16   Class Vehicles was uniform, and was controlled and disseminated directly by Defendant.

17       339.    Plaintiffs, on behalf of themselves and the Class, seek monetary damages, treble
18   damages, costs, attorneys' fees, and such other and further relief provided by law and equity.

19                                    **COUNT SIX:**
                                 **UNJUST ENRICHMENT**
20                      **(On Behalf of the Nationwide Class or,**
                **Alternatively, on Behalf of each of the Classes)**
21

22       340.    Plaintiffs reallege and incorporate by reference all preceding allegations as though
23   fully set forth herein.

24       341.    Plaintiffs bring this claim on behalf of themselves and the Nationwide Class under
25   the common law of unjust enrichment, which is materially uniform in all states. In the alternative,
26   Plaintiffs bring this claim on behalf of each of the Classes under the laws of each state in which
27   Plaintiffs and Class members purchased or leased the Class Vehicles.

28

342.    Defendant designed, manufactured, produced, distributed, marketed, and/or sold the Class Vehicles during the relevant period herein.

343.    Plaintiffs and members of the Class conferred non-gratuitous benefits upon Defendant, without knowledge that the Class Vehicles contained the Defect.

344.    Defendant appreciated, or had knowledge of, the non-gratuitous benefits conferred upon them by Plaintiffs and members of the Class.

345.    Defendant accepted or retained the non-gratuitous benefits conferred by Plaintiffs and members of the Class, with full knowledge and awareness that, as a result of Defendant's unconscionable wrongdoing, Plaintiffs and members of the Class were not receiving products of high quality, nature, fitness, or value that had been represented by Defendant and reasonable consumers would have expected.

346.    Retaining the non-gratuitous benefits conferred upon Defendant by Plaintiffs and members of the Class under these circumstances made Defendant's retention of the non-gratuitous benefits unjust and inequitable.

347.    Because Defendant's retention of the non-gratuitous benefits conferred by Plaintiffs and members of the Class is unjust and inequitable, Plaintiffs and members of the Class are entitled to, and hereby seek, disgorgement and restitution of Defendant's wrongful profits, revenue, and benefits in a manner established by the Court.

**COUNT SEVEN:**
**FRAUDULENT CONCEALMENT**
**(On Behalf of the Nationwide Class or,**
**Alternatively, on Behalf of each of the Classes)**

348.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

349.    Plaintiffs bring this claim on behalf of themselves and the Nationwide Class under the common law of fraudulent concealment, which is materially uniform in all states. In the alternative, Plaintiffs bring this claim on behalf of each of the Classes under the laws of each state in which Plaintiffs and Class members purchased or leased the Class Vehicles.

350.    Honda fraudulently concealed and suppressed material facts concerning the quality of the Class Vehicles and the existence of the Defect.

351.    Despite advertising the Class Vehicles as safe, reliable, and being of high quality, Honda knew when it manufactured, marketed, and sold or leased the Class Vehicles that the Class Vehicles suffered from a design and/or manufacturing defect that reduced the Class Vehicles' value and subjected the Class Vehicles to parasitic draining and that rendered the Class Vehicles unreliable and posed significant safety hazards to drivers.

352.    Honda failed to disclose these facts to consumers at the time it manufactured, marketed, and sold or leased the Class Vehicles, and Honda knowingly and intentionally engaged in this concealment in order to boost sales and revenue, maintain its competitive edge in the automobile market, and obtain windfall profit. Through its active concealment and/or suppression of these material facts, Honda sought to increase consumer confidence in the Class Vehicles, and to falsely assure purchasers and lessors of the same that the Vehicles were of sound quality and that Honda was a reputable manufacturer that stands behind the automobiles it manufactures. Honda engaged in this behavior to protect its profits, avoid warranty replacements, avoid recalls that would impair the brand's image, cost it money, and undermine its competitiveness in the automobile industry.

353.    Plaintiffs and Class members were unaware, and could not reasonably discover on their own, that Honda's representations were false and misleading, or that it had omitted material facts relating to the Class Vehicles.

354.    Honda had a duty to disclose, rather than conceal and suppress, the full scope and extent of the Defect because:

(a)    Honda had exclusive or far superior knowledge of the Defect and concealment thereof;

(b)    the facts regarding the Defect and concealment thereof were known and/or accessible only to Honda;

(c)    Honda knew that Plaintiffs and Class members did not know about, or could not reasonably discover, the Defect and concealment thereof; and

(d)     Honda made representations and assurances about the qualities of the Class Vehicles, and about the existence of a repair for the Defect that were misleading, deceptive, and incomplete without the disclosure of the fact that the Class Vehicles suffered from a latent and inherent design and/or manufacturing defect.

355.    These omitted and concealed facts were material because a reasonable consumer would rely on them in deciding to purchase or lease the Class Vehicles, and because they substantially reduced the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Whether the Class Vehicles were defective, of sound quality, safe, reliable, and whether Honda stood behind such Vehicles would have been an important factor in Plaintiffs' and the Class members' decisions to purchase or lease the Vehicles. Plaintiffs and Class members trusted Honda not to sell them vehicles that were defective and significantly overpriced.

356.    Honda intentionally and actively concealed and suppressed these material facts to falsely assure consumers that their Class Vehicles were free from known defects, as represented by Honda and reasonably expected by consumers.

357.    Plaintiffs and Class members were unaware of these omitted material facts and would have paid less for the Class Vehicles, or would not have purchased/leased them at all, if they had known of the concealed and suppressed facts. Plaintiffs and Class members did not receive the benefit of their bargain due to Honda's fraudulent concealment. Plaintiffs' and Class members' actions in purchasing the Class Vehicles were justified. Honda was in exclusive control of the material facts, and such facts were not known or reasonably knowable to the public, Plaintiffs, or Class members.

358.    Plaintiffs and Class members relied to their detriment upon Honda's reputation, fraudulent misrepresentations, and material omissions regarding the quality, safety, and reliability of the Class Vehicles.

359.    As a direct and proximate result of Honda's deceit and fraudulent concealment, including its intentional suppression of true facts, Plaintiffs and Class members suffered injury. They purchased and leased Class Vehicles that had a diminished value by reason of Honda's

concealment of, and failure to disclose, the Defect. Plaintiffs and Class members also paid substantial money to (unsuccessfully) repair the Defect.

360.   Accordingly, Honda is liable to the Nationwide Class and/or Classes for their damages in an amount to be proven at trial.

361.   On information and belief, Honda has still not made full and adequate disclosure and continues to defraud Plaintiffs and Class members. Honda also continues to conceal material information regarding the Defect.

362.   Honda's acts were done deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Class members' rights. Honda's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT EIGHT:**
**BREACH OF EXPRESS WARRANTY**
**(IOWA CODE §§554.2313, 554.13210)**
**(On Behalf of the Iowa Class)**

363.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

364.   Plaintiff Jones brings this claim individually and on behalf of the other members of the Iowa Class.

365.   Honda is a "merchant" (as defined by IOWA CODE §554.2104(1)), a "seller" (as defined by IOWA CODE §554.2103(1)(d)), and a "lessor" (as defined by IOWA CODE §554.13103(p)) of Class Vehicles.

366.   The Class Vehicles are "goods" (as defined by IOWA CODE §§554.2105(1) and 554.13103(1)(h)).

367.   Pursuant to IOWA CODE §554.2313(1)(a), "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."

368.    Pursuant to IOWA CODE §554.13210(1)(a), "[a]ny affirmation of fact or promise made by the lessor to the lessee which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods will conform to the affirmation or promise."

369.    In its written express warranties, Honda expressly warranted that it would repair or replace defective parts free of charge if the defects became apparent during the warranty period.

370.    Honda's written express warranties formed the basis of the bargain that was reached when Plaintiffs and other Class members purchased or leased their Class Vehicles.

371.    Honda breached its express warranty to repair defective parts in the Class Vehicles. Honda admittedly has not repaired the Class Vehicles' Parasitic Drain Defect.

372.    Plaintiff Jones notified Honda of the Parasitic Drain Defect in the Class Vehicles when he brought it in to a dealer after his Class Vehicle failed due to the Parasitic Drain Defect. Honda knew that it was unable to provide adequate remedy under the warranty. Honda was also provided notice of the Parasitic Drain Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge. Honda has not remedied its breach.

373.    Further, Honda has refused to provide an adequate warranty repair for the Parasitic Drain Defect, thus rendering the satisfaction of any notice requirement futile. As stated above, customers that have presented their vehicles for warranty repair, as Plaintiffs have, due to the Parasitic Drain Defect have been denied adequate repairs.

374.    The written express warranties fail in their essential purpose because the contractual remedy is insufficient to make Plaintiffs and other Class members whole and because Honda has failed and/or has refused to adequately provide effective remedies within a reasonable time.

375.    Accordingly, recovery by Plaintiffs and other Class members is not limited to the limited remedy of repair, and Plaintiffs, individually and on behalf of the other Class members, seek all remedies as allowed by law.

376.    Also, as alleged in more detail herein, at the time that Honda warranted and sold or leased the Class Vehicles, it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and Honda improperly concealed material facts regarding its Class

Vehicles. Plaintiffs and other Class members were therefore induced to purchase or lease the Class Vehicles under false pretenses.

377.    Honda had notice of its breach as alleged herein.

378.    As a direct and proximate result of Honda's breach of its express warranty, Plaintiffs and other Class members have been damaged in an amount to be determined at trial.

379.    Plaintiffs, on behalf of themselves and the Class, seek monetary damages, costs, attorneys' fees, and such other and further relief provided by law and equity.

**COUNT NINE:**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(IOWA CODE §§554.2314 & 554.13212)**
**(On Behalf of the Iowa Class)**

380.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

381.    Plaintiff Jones brings this claim individually and on behalf of the other members of the Iowa Class.

382.    Honda is a "merchant" (as defined by IOWA CODE §554.2104(1)), a "seller" (as defined by IOWA CODE §554.2103(1)(d)), and a "lessor" (as defined by IOWA CODE §554.13103(p)) of Class Vehicles.

383.    The Class Vehicles are "goods" (as defined by IOWA CODE §§554.2105(1) and 554.13103(1)(h)).

384.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to IOWA CODE §§554.2314 and 554.13212.

385.    Honda was provided notice of the issues raised in this Count and this Complaint, as detailed above.

386.    As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Iowa Class members have been damaged in an amount to be proven at trial.

387.    Plaintiffs, on behalf of themselves and the Class, seek monetary damages, costs, attorneys' fees, and such other and further relief provided by law and equity.

**COUNT TEN:**
**VIOLATIONS OF THE IOWA PRIVATE RIGHT OF ACTION**
**FOR CONSUMER FRAUDS ACT**
**(IOWA CODE §714H)**
**(On Behalf of the Iowa Class)**

388.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

389.    Plaintiff Jones brings this claim individually and on behalf of the other members of the Iowa Class.

390.    The Iowa "Private Right of Action for Consumer Frauds Act" ("Iowa CFA"), IOWA CODE §714H, prohibits unfair and deceptive trade practices in the sale, lease, or advertisement of a product or service, and in the solicitation of charitable contributions. The Iowa CFA's purpose is to protect consumers against these unfair and deceptive business practices, and to provide efficient and economical procedures to secure such protection.

391.    Specifically, Plaintiffs allege that Honda has violated the Iowa CFA by engaging in the unfair and/or deceptive acts and practices set forth within the Iowa CFA. Honda knew prior to the sale or lease of the Class Vehicles that the Class Vehicles suffered from an inherent defect, were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use. Honda's unfair and deceptive business practices in carrying out the marketing program described above were and are intended to and did and do result in the purchase of Honda's products by consumers, including Plaintiffs, in violation of the Iowa CFA.

392.    Plaintiffs' right as a consumer to bring this action at law derives from the Iowa CFA. The Iowa legislature enacted the Iowa CFA to allow Iowa consumers who have been victimized by an unfair or deceptive trade business practice to obtain damages and other such equitable relief as the Court deems necessary to protect the public from further violations.

393.    As a result of Honda's unfair and/or deceptive business practices, Plaintiffs and all purchasers of Honda's products have lost money in that they paid for products that did not have the benefit as represented. Plaintiffs seek and are entitled to an Order enjoining Honda from continuing to engage in the unfair and deceptive business practices alleged herein.

394.     Plaintiff Jones and his counsel have sought and have obtained the approval to bring this claim pursuant to Iowa Code §714H.7.

**COUNT ELEVEN:**
**VIOLATION OF FLORIDA'S UNFAIR & DECEPTIVE TRADE PRACTICES ACT**
**(Fla. Stat. §501.201, *et seq*.)**
**(On Behalf of the Florida Class)**

395.     Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

396.     Plaintiffs Cruz, Pazanki, Tessinari, and Fernanda Nunes Ferreira bring this claim on behalf of themselves and the Florida Class.

397.     Plaintiffs and the Florida Class members are "consumers" within the meaning of Fla. Stat. §501.203(7).

398.     Honda is engaged in "trade" or "commerce" within the meaning of Fla. Stat. §501.203(8).

399.     The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") makes unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. §501.204(1).

400.     In the course of its business, Honda violated the Florida FDUTPA by knowingly misrepresenting and/or intentionally concealing material facts regarding the quality, safety, and reliability of the Class Vehicles, including the existence of the Defect, and the existence of a permanent and reliable repair for the Defect. Specifically, in marketing, offering for sale/lease, and selling/leasing the defective Class Vehicles, Honda engaged in one or more of the following unfair or deceptive acts or practices prohibited by Fla. Stat. §501.204(1):

(a)     representing that the Class Vehicles have characteristics or benefits that they do not have;

(b)     representing that the Class Vehicles are of a particular standard and quality when they are not;

(c)     advertising the Class Vehicles with the intent not to sell them as advertised;

(d)      engaging in other conduct which created a likelihood of confusion or of misunderstanding; and/or

(e)      using or employing deception, fraud, false pretense, false promise, or misrepresentation, or the concealment, suppression, or omission of a material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the advertisement and sale or lease of the Class Vehicles.

401.      Honda's scheme and concealment of the true characteristics of the Class Vehicles were material to Plaintiffs and the Florida Class, and Honda misrepresented, concealed, or failed to disclose the truth with the intention that Plaintiffs and the Florida Class would rely on the misrepresentations, concealments, and omissions. Had they known the truth, Plaintiffs and the Florida Class would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

402.      Plaintiffs and the Florida Class members had no way of discerning that Honda's representations were false and misleading, or otherwise learning the facts that Honda had concealed or failed to disclose.

403.      Honda had an ongoing duty to Plaintiffs and the Florida Class members to refrain from unfair and deceptive practices under the Florida FDUTPA in the course of its business. Specifically, Honda owed Plaintiffs and the Florida Class members a duty to disclose all the material facts concerning the Class Vehicles because it possessed exclusive knowledge, it intentionally concealed such material facts from Plaintiffs and the Florida Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

404.      Plaintiffs and the Florida Class members suffered ascertainable loss and actual damages as a direct and proximate result of Honda's concealment, misrepresentations, and/or failure to disclose material information.

405.      Plaintiffs, on behalf of themselves and the Class, seek monetary damages, costs, attorneys' fees, and such other and further relief provided by law and equity.

**COUNT TWELVE:**
**BREACH OF EXPRESS WARRANTY**
(FLA. STAT. §§672.313 and 680.21)
**(On Behalf of the Florida Class)**

406.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

407.    Plaintiffs Cruz, Pazanki, Tessinari, and Ferreira bring this claim on behalf of themselves and the Florida Class.

408.    Honda is and was, at all relevant times, a "merchant" with respect to the Class Vehicles under FLA. STAT. §§672.104(1) and 680.1031(1)(t), and a "seller" of the Class Vehicles under FLA. STAT. §672.103(1)(d).

409.    With respect to leases, Honda is and was, at all relevant times, a "lessor" of motor vehicles under FLA. STAT. §680.1031(1)(p).

410.    The Class Vehicles are and were, at all relevant times, "goods" within the meaning of FLA. STAT. §§672.105(1) and 680.1031(1)(h).

411.    In connection with the purchase or lease of all Class Vehicles, and as detailed above, Honda provided Plaintiffs and the Florida Class members with express warranties as described above.

412.    Honda's warranties formed a basis of the bargain that was reached when Plaintiffs and the Florida Class members purchased or leased their Class Vehicles.

413.    Honda breached its express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing Plaintiffs and the Florida Class members with Class Vehicles containing defects in the materials and workmanship that were never disclosed to Plaintiffs and the Florida Class members; (b) failing to repair or replace the Class Vehicles at no cost within the warranty periods; and (c) supplying products and materials that failed to conform to the representations made by Honda.

414.    Plaintiffs and the Florida Class members have given Honda a reasonable opportunity to cure its breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements

offered by Honda can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

415.    Thus, Honda's warranties fail of their essential purpose, and the recovery of Plaintiffs and the Florida Class members is not limited to their remedies.

416.    Accordingly, Plaintiffs and the Florida Class members assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiffs and the Florida Class members of the purchase or lease price of all Class Vehicles currently owned and leased, and for such other incidental and consequential damages as allowed.

417.    As a direct and proximate result of Honda's breach of its express warranty, Plaintiffs and the Florida Class members have been damaged in an amount to be determined at trial.

418.    Honda was provided notice of the issues raised in this Count and this Complaint, as detailed above.

419.    Plaintiffs, on behalf of themselves and the Class, seek monetary damages, costs, attorneys' fees, and such other and further relief provided by law and equity.

## COUNT THIRTEEN:
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (FLA. STAT. §§672.314 and 680.212)
### (On Behalf of the Florida Class)

420.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

421.    Plaintiffs Cruz, Pazanki, Tessinari, and Ferreira bring this claim on behalf of themselves and the Florida Class.

422.    This cause of action is brought on behalf of the Florida Class against Defendant.

423.    Honda is and was, at all relevant times, a "merchant" with respect to the Class Vehicles under FLA. STAT. §§672.104(1) and 680.1031(1)(t), and a "seller" of the Class Vehicles under FLA. STAT. §672.103(1)(d).

424.    With respect to leases, Honda is and was, at all relevant times, a "lessor" of motor vehicles under FLA. STAT. §680.1031(1)(p).

425.     The Class Vehicles are and were, at all relevant times, "goods" within the meaning of FLA. STAT. §§672.105(1) and 680.1031(1)(h).

426.     A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to FLA. STAT. §§672.314(2)(c) and 680.212(2)(c).

427.     Honda was provided notice of the issues raised in this Count and this Complaint, as detailed above.

428.     As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Florida Class members have been damaged in an amount to be proven at trial.

429.     Plaintiffs, on behalf of themselves and the Class, seek monetary damages, costs, attorneys' fees, and such other and further relief provided by law and equity.

## COUNT FOURTEEN:
### BREACH OF THE DECEPTIVE ACTS AND PRACTICES STATUTE
#### (N.Y. GEN. BUS. LAW §349 *et seq.*)
#### (On Behalf of the New York Class)

430.     Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

431.     This Count is brought on behalf of the New York Class against Defendant.

432.     The New York Class members and Defendant are "persons" under N.Y. GEN. BUS. LAW §349(h), the New York Consumer Protection From Deceptive Acts and Practices statute ("NY DAP").

433.     Defendant's actions as set forth herein occurred in the conduct of trade or commerce under the NY DAP.

434.     The NY DAP makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. GEN. BUS. LAW §349. Defendant's conduct, as set forth herein, constitutes deceptive acts or practices under this section. As alleged in more detail herein, at the time that Honda warranted and sold or leased the Class Vehicles, it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and Defendant improperly

concealed material facts regarding its Class Vehicles. Plaintiffs and other Class members were therefore induced to purchase or lease the Class Vehicles under false pretenses.

435. New York Class members had no way of knowing that Defendant's representations were false and misleading, and that the battery on their Class Vehicles suffered from the Defect.

436. Defendant thus violated the NY DAP by, at minimum: (a) representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; (b) representing that Class Vehicles are of a particular standard, quality, and grade when they are not; (c) advertising Class Vehicles with the intent not to sell or lease them as advertised; and (d) representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

437. Defendant intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the New York Class.

438. Defendant knew or should have known that their conduct violated the NY DAP.

439. Defendant owed the New York Class a duty to disclose the true nature of the Class Vehicles, because Defendant:

(a) possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

(b) intentionally concealed the foregoing from Plaintiffs, and/or Class members; and/or

(c) made incomplete representations about the Class Vehicles generally, and the safety and reliability of the Class Vehicles, in particular, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

440. Defendant's false and misleading statements about the Class Vehicles were material to Plaintiffs and to the New York Class.

441. Defendant's unfair or deceptive acts or practices were likely to and did, in fact, deceive reasonable consumers, including the New York Class members, about the safety, quality, and reliability of their Class Vehicles, and the true value of the Class Vehicles.

442.    Defendant's violations present a continuing risk to the New York Class, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

443.    New York Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations and its concealment of and failure to disclose material information. Defendant had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the NY DAP. All owners of Class Vehicles suffered ascertainable loss as a result of Defendant's deceptive and unfair acts and practices made in the course of Defendant's business.

444.    As a direct and proximate result of Defendant's  violations of the NY DAP, New York Class members have suffered injury-in-fact and/or actual damage.

445.    As a result of the foregoing willful, knowing, and wrongful conduct of Defendant, New York Class members have been damaged in an amount to be proven at trial, and seek all just and proper remedies, including, but not limited to, actual damages or $50, whichever is greater, treble damages up to $1,000, punitive damages to the extent available under the law, reasonable attorneys' fees and costs, an Order enjoining Defendant's deceptive and unfair conduct, and all other just and appropriate relief available under the NY DAP.

446.    Plaintiffs, on behalf of themselves and the Class, seek monetary damages, costs, attorneys' fees, and such other and further relief provided by law and equity.

**COUNT FIFTEEN:**
**BREACH OF EXPRESS WARRANTY**
**(N.Y. U.C.C. LAW §§2-313 and 2-A-210)**
**(On Behalf of the New York Class)**

447.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

448.    This Count is brought on behalf of the New York Class against Defendant.

449.    Defendant is and was, at all relevant times, a "merchant" with respect to motor vehicles under N.Y. U.C.C. LAW §2-104(1), and a "seller" of motor vehicles under N.Y. U.C.C. LAW §2-103(1)(d).

1      450.    With respect to leases, Defendant is and was, at all relevant times, a "lessor" of

2   motor vehicles under N.Y. U.C.C. LAW §2-A-103(1)(p).

3      451.    The Class Vehicles are and were, at all relevant times, "goods" within the meaning

4   of N.Y. U.C.C. LAW §§2-105(1) and 2-A-103(1)(h).

5      452.    Defendant provided all purchasers and lessees of the Class Vehicles with the

6   express warranties described herein. In its written express warranties, Defendant expressly

7   warranted that it would repair or replace defective parts free of charge if the defects became

8   apparent during the warranty period.

9      453.    Defendant's written express warranties formed the basis of the bargain that was

10   reached when Plaintiffs and other Class members purchased or leased their Class Vehicles.

11      454.    Defendant breached the express warranties through the acts and omissions

12   described above.

13      455.    Plaintiffs and other Class members have had sufficient direct dealings with either

14   Defendant or its agents (*e.g.*, dealerships, consumer affairs departments, and technical support) to

15   establish privity of contract between Defendant on one hand, and Plaintiffs and each of the other

16   Class members on the other hand. Nonetheless, privity is not required here because Plaintiffs and

17   each of the other Class members are intended third-party beneficiaries of contracts between

18   Defendant and their dealers, and specifically, of Defendant's express warranties. The dealers were

19   not intended to be the ultimate consumers of the Class Vehicles and have no rights under the

20   warranty agreements provided with the Class Vehicles; the warranty agreements were designed

21   for and intended to benefit the consumers only. Additionally, privity is excused here because

22   Plaintiffs and each of the other Class members relied on statements made by Defendant itself in

23   choosing to purchase or lease a Class Vehicle. As alleged herein, the marketing of the Class

24   Vehicles was uniform, and was controlled and disseminated directly by Defendant.

25      456.    Defendant knew that it was unable to provide adequate remedy under the warranty.

26   Defendant was also provided notice of the Parasitic Drain Defect through numerous complaints

27   filed against it directly and through its dealers, as well as its own internal engineering knowledge.

28   Honda has not remedied its breach.

457.     Further, Defendant has refused to provide an adequate warranty repair for the Parasitic Drain Defect, thus rendering the satisfaction of any notice requirement futile. As stated above, customers that have presented their vehicles for warranty repair, as Plaintiffs have, due to the Parasitic Drain Defect have been denied adequate repairs.

458.     The written express warranties fail in their essential purpose because the contractual remedy is insufficient to make Plaintiffs and other Class members whole and because Defendant has failed and/or has refused to adequately provide effective remedies within a reasonable time.

459.     Accordingly, recovery by Plaintiffs and other Class members is not limited to the limited remedy of repair, and Plaintiffs, individually and on behalf of other Class members, seek all remedies as allowed by law.

460.     Also, as alleged in more detail herein, at the time that Honda warranted and sold or leased the Class Vehicles, it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and Defendant improperly concealed material facts regarding its Class Vehicles. Plaintiffs and other Class members were therefore induced to purchase or lease the Class Vehicles under false pretenses.

461.     Defendant had notice of its breach as alleged herein.

462.     As a direct and proximate result of Defendant's breach of its express warranty, Plaintiffs and other Class members have been damaged in an amount to be determined at trial.

463.     Defendant's warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles that were subject to the Defect.

464.     Despite the existence of warranties, Defendant failed to inform New York Class members that the Class Vehicles suffered from the Defect that causes the battery drain described herein, and this was not disclosed to consumers who purchased or leased them.

465.     Defendant breached the express warranty promising to repair and correct Defendant's defect in materials and workmanship. Defendant has not repaired or adjusted, and has been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

466.     Affording Defendant a reasonable opportunity to cure thitseir breach of written warranties would be unnecessary and futile here.

467.   Furthermore, the limited warranty promising to repair and correct Defendant's defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make New York Class members whole and because Defendant has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

468.   Accordingly, recovery by the New York Class members is not restricted to the limited warranty promising to repair and correct Defendant's defect in materials and workmanship, and they seek all remedies as allowed by law.

469.   Also, as alleged in more detail herein, at the time Defendant warranted and sold or leased the Class Vehicles, it knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendant had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. New York Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

470.   Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendant's defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendant's fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on the New York Class members' remedies would be insufficient to make them whole.

471.   Finally, because of Defendant's breach of warranty as set forth herein, New York Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

472.   Defendant was provided notice of these issues by numerous complaints filed against them, including the instant Complaint, within a reasonable amount of time.

473.   As a direct and proximate result of Defendant's breach of express warranties, New York Class members have been damaged in an amount to be determined at trial.

474.   Plaintiffs, on behalf of themselves and the Class, seek monetary damages, costs, attorneys' fees, and such other and further relief provided by law and equity.

**COUNT SIXTEEN:**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(N.Y. U.C.C. LAW §§2-314 and 2-A-212)**
**(On Behalf of the New York Class)**

475.     Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

476.     This Count is brought on behalf of the New York Class against Defendant.

477.     Defendant is and was, at all relevant times, a "merchant" with respect to motor vehicles under N.Y. U.C.C. LAW §2-104(1), and a "seller" of motor vehicles under N.Y. U.C.C. LAW §2-103(1)(d).

478.     With respect to leases, Defendant is and was, at all relevant times, a "lessor" of motor vehicles under N.Y. U.C.C. LAW §2-A-103(1)(p).

479.     The Class Vehicles are and were, at all relevant times, "goods" within the meaning of N.Y. U.C.C. LAW §§2-105(1) and 2-A-103(1)(h).

480.     A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to N.Y. U.C.C. LAW §§2-314(2)(c) and 2-A-212(2)(c).

481.     These Class Vehicles, when sold or leased and at all times thereafter, were subject to the Defect, and were therefore not fit for the ordinary purpose for which vehicles are used.

482.     Defendant was provided notice of these issues by complaints filed with the NHTSA, and the instant Complaint, within a reasonable amount of time.

483.     As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, New York Class members have been damaged in an amount to be proven at trial.

484.     Plaintiffs, on behalf of themselves and the Class, seek monetary damages, costs, attorneys' fees, and such other and further relief provided by law and equity.

**COUNT SEVENTEEN:**
**BREACH OF EXPRESS WARRANTY**
**(810 ILL. COMP. STAT. 5/2-313, 810 ILL. COMP. STAT. 5/2A-210)**
**(On Behalf of the Illinois Class)**

485.    Plaintiff Barrie realleges and incorporates by reference all preceding allegations as though fully set forth herein.

486.    Plaintiff Barrie brings this claim individually and on behalf of the other members of the Illinois Class.

487.    Honda is a "merchant" (as defined by 810 ILL. COMP. STAT. 5/2-104(1)), a "seller" (as defined by 810 ILL. COMP. STAT. 5/2-103(1)(d)), and a "lessor" (as defined by 810 ILL. COMP. STAT. 5/2A-103(1)(p)) of Class Vehicles.

488.    The Class Vehicles are "goods" (as defined by 810 ILL. COMP. STAT. 5/2-105(1) and 810 ILL. COMP. STAT. 5/2A-103(h)).

489.    Pursuant to 810 ILL. COMP. STAT. 5/2-313(1)(a), "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."

490.    Pursuant to 810 ILL. COMP. STAT. 5/2A-210(1)(a), "[a]ny affirmation of fact or promise made by the lessor to the lessee which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods will conform to the affirmation or promise."

491.    In its written express warranties, Honda expressly warranted that it would repair or replace defective parts free of charge if the defects became apparent during the warranty period.

492.    Honda's written express warranties formed the basis of the bargain that was reached when Plaintiff Barrie and other Class members purchased or leased their Class Vehicles.

493.    Honda breached its express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing Plaintiff Barrie and Class members with Class Vehicles containing a Defect that was never disclosed to Plaintiff Barrie and Class members; (b) failing to repair or replace the Class Vehicles at no cost within the warranty periods; and (c) supplying products and materials that failed to conform to the representations made by Honda.

494.    Plaintiff Barrie and Class members have given Honda a reasonable opportunity to cure its breaches of express warranty or, alternatively, were not required to do so because such an

1   opportunity would be unnecessary and futile given that the repairs or replacements offered by

2   Honda can neither cure the defect in the Class Vehicles nor resolve the incidental and

3   consequential damages flowing therefrom.

4        495.   The written express warranties fail in their essential purpose because the contractual

5   remedy is insufficient to make Plaintiff Barrie and other Class members whole and because Honda

6   has failed and/or has refused to adequately provide effective remedies within a reasonable time.

7        496.   Accordingly, recovery by Plaintiff Barrie and other Class members is not limited

8   to the limited remedy of repair, and Plaintiff Barrie, individually and on behalf of the other Class

9   members, seeks all remedies as allowed by law.

10        497.   Also, as alleged in more detail herein, at the time that Honda warranted and sold or

11   leased the Class Vehicles, it knew that the Class Vehicles did not conform to the warranty and

12   were inherently defective, and Honda improperly concealed material facts regarding its Class

13   Vehicles. Plaintiff Barrie and other Class members were therefore induced to purchase or lease the

14   Class Vehicles under false pretenses.

15        498.   Honda had notice of its breach as alleged herein.

16        499.   As a direct and proximate result of Honda's breach of its express warranty, Plaintiff

17   Barrie and other Class members have been damaged in an amount to be determined at trial.

**COUNT EIGHTEEN:**
**BREACH OF IMPLIED WARRANTY OR MERCHANTABILITY**
**(810 ILL. COMP. STAT. 5/2-314, 810 ILL. COMP. STAT. 5/2A-212)**
**(On Behalf of the Illinois Class)**

21        500.   Plaintiff Barrie realleges and incorporates by reference all preceding allegations as

22   though fully set forth herein.

23        501.   Plaintiff Barrie brings this claim individually and on behalf of the other members

24   of the Illinois Class.

25        502.   Honda is a "merchant" (as defined by 810 ILL. COMP. STAT. 5/2-104(1)), a "seller"

26   (as defined by 810 ILL. COMP. STAT. 5/2-103(1)(d)), and a "lessor" (as defined by 810 ILL. COMP.

27   STAT. 5/2A-103(1)(p)) of Class Vehicles.

503.     The Class Vehicles are "goods" (as defined by 810 ILL. COMP. STAT. 5/2-105(1) and 810 ILL. COMP. STAT. 5/2A-103(h)).

504.     Pursuant to 810 ILL. COMP. STAT. 5/2-314(1), "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."

505.     Pursuant to 810 ILL. COMP. STAT. 5/2A-212(1), "a warranty that the goods will be merchantable is implied in a lease contract if the lessor is a merchant with respect to goods of that kind."

506.     Goods are merchantable if they are "fit for the ordinary purposes for which such goods are used" and "conform to the promises or affirmations of fact made on the container or label if any." 810 ILL. COMP. STAT. 5/2-314(2)(c), (f); 810 ILL. COMP. STAT. 5/2A-212(2)(c), (f).

507.     Defendant was, at all relevant times, the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles. Defendant knew or had reason to know of the specific use for which the Class Vehicles were purchased.

508.     Defendant provided Plaintiff Barrie and other Class members with an implied warranty that the Class Vehicles and any parts thereof are merchantable and fit for the ordinary purposes for which they were sold. However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles suffered from the Parasitic Drain Defect at the time of sale that causes various safety features to fail without warning, creates the undue risk of the engine stalling while driving, and results in the premature depletion of batteries and alternators. Therefore, the Class Vehicles are not fit for their particular purpose of providing safe and reliable transportation.

509.     Defendant impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things, a warranty that the Class Vehicles were manufactured, supplied, distributed, and/or sold by Defendant, were safe and reliable for providing transportation, and would not result in the premature failure of its batteries.

510. Contrary to the applicable implied warranties, the Class Vehicles at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff Barrie and other Class members with reliable, durable, and safe transportation. Instead, the Class Vehicles suffer from a defective design(s) and/or manufacturing defect(s).

511. Defendant knew or had reason to know of these material facts, and wrongfully and fraudulently concealed these material facts from Plaintiff Barrie and the Class. Defendant was provided notice of these issues by, *inter alia*, complaints lodged by consumers with the NHTSA – which Defendant routinely monitors – before or within a reasonable amount of time after the allegations of the Defect became public.

512. Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use.

513. Plaintiff Barrie and other Class members have had sufficient direct dealings with either Defendant or its agents (*e.g.*, dealerships, consumer affairs departments, and technical support) to establish privity of contract between Defendant on one hand, and Plaintiff Barrie and each of the other Class members on the other hand. Nonetheless, privity is not required here because Plaintiff Barrie and each of the other Class members are intended third-party beneficiaries of contracts between Defendant and their dealers, and specifically, of Defendant's implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumers only. Defendant was also aware that the ultimate consumers of the Class Vehicles (*i.e.*, the Class) required vehicles that would function safely, could be relied upon, and otherwise meet minimum industry standards. Additionally, privity is excused here because Plaintiff Barrie and each of the other Class members relied on statements made by Defendant itself in choosing to purchase or lease a Class Vehicle. As alleged herein, the marketing of the Class Vehicles was uniform, and was controlled and disseminated directly by Defendant.

514. Plaintiff Barrie, on behalf of himself and the Class, seeks monetary damages, treble damages, costs, attorneys' fees, and such other and further relief provided by law and equity.

**COUNT NINETEEN:**
**BREACH OF THE ILLINOIS CONSUMER FRAUD**
**AND DECEPTIVE BUSINESS PRACTICES ACT**
**(815 ILL. COMP. STAT. §505/1 *et seq.*)**
**(On Behalf of the Illinois Class)**

515.    Plaintiff Barrie realleges and incorporates by reference all preceding allegations as though fully set forth herein.

516.    Plaintiff Barrie brings this claim individually and on behalf of the other members of the Illinois Class.

517.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits unfair or deceptive acts or practices in connection with any trade or commerce, "including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . whether any person has in fact been misled, deceived or damaged thereby." 815 ILL. COMP. STAT. 505/2. The Illinois CFA also prohibits suppliers from representing that their goods are of a particular quality or grade they are not.

518.    Honda has violated the Illinois CFA's prohibition on deceptive conduct in that it used unconscionable business practices by failing to disclose to Plaintiff Barrie and other members of the Class, in its public statements touting the safety of the Class Vehicles including at the point of sale, that the Class Vehicles contain the Parasitic Drain Defect.

519.    As a direct and proximate result of Honda's conduct, Plaintiff Barrie and other members of the Class have been harmed in that they purchased Class Vehicles they otherwise would not have; paid more for Class Vehicles than they otherwise would have; paid for battery diagnoses, repairs, and replacements, towing, and/or rental cars; and are left with Class Vehicles of diminished value and utility because of the Defect. Meanwhile, Honda has sold more Class Vehicles than it otherwise could have and charged inflated prices for Class Vehicles, unjustly enriching itself thereby.

520.     Plaintiff Barrie seeks damages and appropriate equitable relief, including an Order requiring Honda to adequately disclose and repair the Defect, and an Order enjoining Honda from incorporating the Defect into its vehicles in the future.

521.     Based on the foregoing, Plaintiff Barrie and the Class are entitled to all remedies available pursuant to the Illinois CFA, including refunds, actual damages, liquidated damages, punitive damages, attorneys' fees, and other reasonable costs. Plaintiff Barrie and the Class also request that the Court award equitable relief, including an Order requiring Honda to adequately disclose and repair the Defect and an Order enjoining Honda from incorporating the Defect into its vehicles in the future.

## COUNT TWENTY:
### BREACH OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT
#### (815 ILL. COMP. STAT. §505/1 *et seq.*)
#### (On Behalf of the Illinois Class)

522.     Plaintiff Barrie realleges and incorporates by reference all preceding allegations as though fully set forth herein.

523.     Plaintiff Barrie brings this claim individually and on behalf of the other members of the Illinois Class.

524.     The Illinois CFA prohibits unfair or deceptive acts or practices in connection with any trade or commerce, "including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . whether any person has in fact been misled, deceived or damaged thereby." 815 ILL. COMP. STAT. 505/2. The Illinois CFA also prohibits suppliers from representing that their goods are of a particular quality or grade they are not.

525.     As alleged more fully herein, Honda has violated Illinois' prohibition on unfair conduct because its acts, omissions, policies, and course of conduct: (a) offend public policy; (b) are immoral, unethical, oppressive, and unscrupulous; and (c) cause substantial injury to consumers in violation of the Illinois CFA. *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d

403, 417 (2002). Its unfair business practices include failing to disclose, at the point of sale or otherwise, that the Class Vehicles contain the Parasitic Drain Defect and pose a safety hazard.

526.    As a direct and proximate result of Honda's conduct, Plaintiff Barrie and other members of the Class have been harmed in that they purchased Class Vehicles they otherwise would not have; paid more for Class Vehicles than they otherwise would have; paid for battery diagnoses, repairs, and replacements, towing, and/or rental cars; and are left with Class Vehicles of diminished value and utility because of the Defect. Meanwhile, Honda has sold more Class Vehicles than it otherwise could have and charged inflated prices for Class Vehicles, unjustly enriching itself thereby.

527.    Plaintiff Barrie seeks damages and appropriate equitable relief, including an Order requiring Honda to adequately disclose and repair the Defect, and an Order enjoining Honda from incorporating the Defect into its vehicles in the future.

528.    Based on the foregoing, Plaintiff Barrie and the Class are entitled to all remedies available pursuant to the Illinois CFA, including refunds, actual damages, liquidated damages, punitive damages, attorneys' fees, and other reasonable costs. Plaintiff Barrie and the Class also request that the Court award equitable relief, including an Order requiring Honda to adequately disclose and repair the Defect and an Order enjoining Honda from incorporating the Defect into its vehicles in the future.

**COUNT TWENTY-ONE:**
**BREACH OF EXPRESS WARRANTY**
**(ARIZ. REV. STAT. §§47-2313, 47-2A210)**
**(On Behalf of the Arizona Class)**

529.    Plaintiff Rapp realleges and incorporates by reference all preceding allegations as though fully set forth herein.

530.    Plaintiff Rapp brings this claim individually and on behalf of the other members of the Arizona Class.

531.    Honda is a "merchant" (as defined by ARIZ. REV. STAT. §47-2104(A)), a "seller" (as defined by ARIZ. REV. STAT. §47-2103(A)(4)), and a "lessor" (as defined by ARIZ. REV. STAT. §47-2A103(A)(16)) of Class Vehicles.

1    532.    The Class Vehicles are "goods" (as defined by ARIZ. REV. STAT. §47-2105(A) and

2    ARIZ. REV. STAT. §47-2A103(A)(8)).

3    533.    Pursuant to ARIZ. REV. STAT. §47-2313(A)(1), "[a]ny affirmation of fact or promise

4    made by the seller to the buyer which relates to the goods and becomes part of the basis of the

5    bargain creates an express warranty that the goods shall conform to the affirmation or promise."

6    534.    Pursuant to ARIZ. REV. STAT. §47-2A210(A)(1), "[a]ny affirmation of fact or

7    promise made by the lessor to the lessee which relates to the goods and becomes part of the basis

8    of the bargain creates an express warranty that the goods will conform to the affirmation or

9    promise."

10    535.    In its written express warranties, Honda expressly warranted that it would repair or

11    replace defective parts free of charge if the defects became apparent during the warranty period.

12    536.    Honda's written express warranties formed the basis of the bargain that was reached

13    when Plaintiff Rapp and other Class members purchased or leased their Class Vehicles.

14    537.    Honda breached its express warranties (including the implied covenant of good

15    faith and fair dealing) by: (a) knowingly providing Plaintiff Rapp and Class members with Class

16    Vehicles containing a Defect that was never disclosed to Plaintiff Rapp and Class members;

17    (b) failing to repair or replace the Class Vehicles at no cost within the warranty periods; and

18    (c) supplying products and materials that failed to conform to the representations made by Honda.

19    538.    Plaintiff Rapp and Class members have given Honda a reasonable opportunity to

20    cure its breaches of express warranty or, alternatively, were not required to do so because such an

21    opportunity would be unnecessary and futile given that the repairs or replacements offered by

22    Honda can neither cure the defect in the Class Vehicles nor resolve the incidental and

23    consequential damages flowing therefrom.

24    539.    The written express warranties fail in their essential purpose because the contractual

25    remedy is insufficient to make Plaintiff Rapp and other Class members whole and because Honda

26    has failed and/or has refused to adequately provide effective remedies within a reasonable time.

27    540.    Accordingly, recovery by Plaintiff Rapp and other Class members is not limited to

28    the limited remedy of repair, and Plaintiff Rapp, individually and on behalf of the other Class

1    members, seeks all remedies as allowed by law, including the full purchase price of the vehicle

2    pursuant to ARIZ. REV. STAT. §44-1263.

3         541.    Also, as alleged in more detail herein, at the time that Honda warranted and sold or

4    leased the Class Vehicles, it knew that the Class Vehicles did not conform to the warranty and

5    were inherently defective, and Honda improperly concealed material facts regarding its Class

6    Vehicles. Plaintiff Rapp and other Class members were therefore induced to purchase or lease the

7    Class Vehicles under false pretenses.

8         542.    Honda had notice of its breach as alleged herein.

9         543.    As a direct and proximate result of Honda's breach of its express warranty, Plaintiff

10   Rapp and other Class members have been damaged in an amount to be determined at trial.

11                              **COUNT TWENTY-TWO:**
                  **BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
12                     **(ARIZ. REV. STAT. §47-2314 & 47-2A212)**
                            **(On Behalf of the Arizona Class)**
13

14        544.    Plaintiff Rapp realleges and incorporates by reference all preceding allegations as

15   though fully set forth herein.

16        545.    Plaintiff Rapp brings this claim individually and on behalf of the other members of

17   the Arizona Class.

18        546.    Honda is a "merchant" (as defined by ARIZ. REV. STAT. §47-2104(A)), a "seller"

19   (as defined by ARIZ. REV. STAT. §47-2103(A)(4)), and a "lessor" (as defined by ARIZ. REV. STAT.

20   §47-2A103(A)(16)) of Class Vehicles.

21        547.    The Class Vehicles are "goods" (as defined by ARIZ. REV. STAT. §47-2105(A) and

22   ARIZ. REV. STAT. §47-2A103(A)(8)).

23        548.    A warranty that the Class Vehicles were in merchantable condition and fit for the

24   ordinary purpose for which vehicles are used is implied by law pursuant to ARIZ. REV. STAT. §47-

25   2314 and ARIZ. REV. STAT. 47-2A212.

26        549.    The Class Vehicles when sold or leased and all times thereafter, included the Honda

27   CR-V (model years 2017-2019) or Honda Accord (model years 2016-2019).

28

550.     Defendant was, at all relevant times, the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles. Defendant knew or had reason to know of the specific use for which the Class Vehicles were purchased.

551.     Defendant provided Plaintiff Rapp and other Class members with an implied warranty that the Class Vehicles and any parts thereof are merchantable and fit for the ordinary purposes for which they were sold. However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles suffered from the Parasitic Drain Defect at the time of sale that causes various safety features to fail without warning, creates the undue risk of the engine stalling while driving, and results in the premature depletion of batteries and alternators. Therefore, the Class Vehicles are not fit for their particular purpose of providing safe and reliable transportation.

552.     Defendant impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things, a warranty that the Class Vehicles were manufactured, supplied, distributed, and/or sold by Defendant, were safe and reliable for providing transportation, and would not result in the premature failure of its batteries.

553.     Contrary to the applicable implied warranties, the Class Vehicles at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff Rapp and other Class members with reliable, durable, and safe transportation. Instead, the Class Vehicles suffer from a defective design(s) and/or manufacturing defect(s).

554.     Defendant knew or had reason to know of these material facts, and wrongfully and fraudulently concealed these material facts from Plaintiff Rapp and the Class. Defendant was provided notice of these issues by, *inter alia*, complaints lodged by consumers with the NHTSA – which Defendant routinely monitors – before or within a reasonable amount of time after the allegations of the Defect became public.

555.     Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use.

556.     Plaintiff Rapp and other Class members have had sufficient direct dealings with either Defendant or its agents (*e.g.*, dealerships, consumer affairs departments, and technical support) to establish privity of contract between Defendant on one hand, and Plaintiff Rapp and each of the other Class members on the other hand. Nonetheless, privity is not required here because Plaintiff Rapp and each of the other Class members are intended third-party beneficiaries of contracts between Defendant and their dealers, and specifically, of Defendant's implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumers only. Defendant was also aware that the ultimate consumers of the Class Vehicles (*i.e.*, the Class) required vehicles that would function safely, could be relied upon, and otherwise meet minimum industry standards. Additionally, privity is excused here because Plaintiff Rapp and each of the other Class members relied on statements made by Defendant itself in choosing to purchase or lease a Class Vehicle. As alleged herein, the marketing of the Class Vehicles was uniform, and was controlled and disseminated directly by Defendant.

557.     Plaintiff Rapp, on behalf of himself and the Class, seeks monetary damages, treble damages, costs, attorneys' fees, and such other and further relief provided by law and equity.

**COUNT TWENTY-THREE:**
**BREACH OF THE ARIZONA CONSUMER FRAUD ACT**
**(ARIZ. REV. STAT. §44-1521, *et seq.*)**
**(On Behalf of the Arizona Class)**

558.     Plaintiff Rapp realleges and incorporates by reference all preceding allegations as though fully set forth herein.

559.     Plaintiff Rapp brings this claim individually and on behalf of the other members of the Arizona Class.

560.     Plaintiff Rapp, Class members, and Honda are each "persons" as defined by ARIZ. REV. STAT. §44-1521(6). The Class Vehicles are "merchandise" as defined by ARIZ. REV. STAT. §44-1521(5).

561.    The Arizona Consumer Fraud Act ("Arizona CFA") declares as an unlawful practice "[t]he act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby[.]" ARIZ. REV. STAT. §44-1522(A).

562.    By failing to disclose and actively concealing the Parasitic Drain Defect in the Class Vehicles, Honda engaged in unlawful deceptive business practices prohibited by the Arizona CFA, ARIZ. REV. STAT. §44-1522(A), including engaging in acts or practices which are unfair, misleading, false, or deceptive to the consumer.

563.    In purchasing or leasing the Class Vehicles, Plaintiff Rapp and Class members were deceived by Honda's failure to disclose its knowledge of the Defect, which caused a parasitic drain even when the vehicle's ignition switch is off. Defendant further concealed the hidden nature of the Parasitic Drain Defect problem by, among other things, telling Class Vehicle drivers that the issue was due to defective batteries. Each of these omissions contributed to the deceptive context of Honda's unlawful advertising and representations as a whole.

564.    Plaintiff Rapp and Class members reasonably relied upon Honda's false misrepresentations and omissions. They had no way of knowing that Honda's representations were false, misleading, and incomplete. As alleged herein, Honda engaged in a pattern of deception and public silence in the face of a known Parasitic Drain Defect in its vehicles. Plaintiff Rapp and Class members did not, and could not, unravel Honda's deception on their own.

565.    Honda's actions as set forth above occurred in the conduct of trade or commerce.

566.    Honda's unfair or deceptive acts or practices were likely to and did, in fact, deceive reasonable consumers.

567.    Honda knew that the Class Vehicles were defectively designed or manufactured, and prone to create a parasitic electricity drain.

568.    Honda intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiff Rapp and Class members.

1    569.    Honda knew or should have known that its conduct violated ARIZ. REV. STAT. §44-

2    1521.

3    570.    Honda owed Plaintiff Rapp and Class members a duty to disclose the truth about

4    the Parasitic Drain Defect in the Class Vehicles because the Defect created a safety hazard and

5    Honda: (a) possessed exclusive knowledge of the Defect in the Class Vehicles; (b) intentionally

6    concealed the foregoing from Plaintiff Rapp and the Class; and/or (c) made incomplete

7    representations in advertisements and on its website, failing to warn the public or to publicly admit

8    that the Class Vehicles contained the Parasitic Drain Defect.

9    571.    Honda had a duty to disclose that the Class Vehicles contained the Parasitic Drain

10   Defect, as described herein, because the Defect created a safety hazard, and Plaintiff Rapp and

11   Class members relied on Honda's material misrepresentations and omissions regarding the

12   reliability, performance, and safety found in the Class Vehicles

13   572.    Honda's conduct proximately caused injuries to Plaintiff Rapp and Class members

14   that purchased the Class Vehicles and suffered harm as alleged herein.

15   573.    Plaintiff Rapp and Class members were injured and suffered ascertainable loss,

16   injury-in-fact, and/or actual damage as a proximate result of Honda's conduct in that Plaintiff Rapp

17   and Class members incurred costs related to the Parasitic Drain Defect, including replacement of

18   electrical components and service costs, and overpaid for their Class Vehicles that have suffered a

19   diminution in value.

20   574.    Plaintiff Rapp and Class members sustained damages as a result of Honda's

21   unlawful acts and are, therefore, entitled to damages and other relief as provided under the Arizona

22   CFA.

23   575.    Plaintiff Rapp and Class members also seek court costs and attorneys' fees as a

24   result of Honda's violation of the Arizona CFA, pursuant to ARIZ. REV. STAT. §12-341.01.

**COUNT TWENTY-FOUR:**
**VIOLATIONS OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT**
**(NEV. REV. STAT. ANN. §598.0903, *et seq.*)**
**(On Behalf of the Nevada Class)**

576.   Plaintiff Rapp realleges and incorporates by reference all preceding allegations as though fully set forth herein.

577.   Plaintiff Rapp brings this claim individually and on behalf of the other members of the Nevada Class.

578.   Honda advertised, offered, or sold goods or services in Nevada and engaged in trade or commerce directly or indirectly affecting the people of Nevada.

579.   Honda engaged in unfair and deceptive acts in violation of the Nevada Deceptive Trade Practices Act ("NDTPA"), NEV. REV. STAT. ANN. §598.0903, *et seq*,. by the practices described above, and by knowingly and intentionally concealing from Plaintiffs and Class members that the Class Vehicles suffer from a defect(s) and the costs, risks, and diminished value of the vehicles as a result of this problem. These acts and practices violate, at a minimum, the following sections of the NDTPA:

(a)   knowingly making a false representation as to the characteristics, uses, and benefits of goods or services for sale (NEV. REV. STAT. ANN. §598.0915(5));

(b)   representing that goods or services for sale are of a particular standard, quality, or grade when Honda knew or should have known that they are of another standard, quality, or grade (NEV. REV. STAT. ANN. §598.0915(7));

(c)   advertising goods or services with intent not to sell them as advertised (NEV. REV. STAT. ANN. §598.0915(9));

(d)   failing to disclose a material fact in connection with the sale of goods or services (NEV. REV. STAT. ANN. §598.0923(2)); and

(e)   violating state and federal statutes or regulations relating to the sale of goods or services (NEV. REV. STAT. ANN. §598.0923(3)).

580.   Honda's unfair or deceptive acts or practices occurred repeatedly in Honda's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

581.   Honda knew that the Class Vehicles were defectively designed or manufactured, would prematurely fail to perform their essential function, and were not suitable for their intended use.

582.   Honda was under a duty to Plaintiff Rapp and the Class members to disclose the defective nature of the Class Vehicles and the existence of the Parasitic Drain Defect because:

(a)   Defendant was in a superior position to know the true state of facts about the Parasitic Drain Defect and associated repair costs in the Class Vehicles;

(b)   Plaintiff Rapp and the Class members could not reasonably have been expected to learn or discover that the Class Vehicles had a Parasitic Drain Defect until manifestation of the Defect;

(c)   Defendant knew that Plaintiff Rapp and the Class members could not reasonably have been expected to learn or discover the Parasitic Drain Defect and the associated repair costs that it causes until the manifestation of the Defect; and

(d)   Defendant actively concealed the Parasitic Drain Defect and the associated repair costs by knowingly failing to recall Class Vehicles.

583.   In failing to disclose the Defect and the associated safety risks and repair costs that result from it, Defendant has knowingly and intentionally concealed material facts and breached its duty to disclose.

584.   The facts concealed or not disclosed by Honda to Plaintiff Rapp and the Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Defendant's Class Vehicles or pay a lesser price. Had Plaintiff Rapp and the Class known about the defective nature of the Class Vehicles, they would not have purchased or leased the Class Vehicles or would have paid less for them.

585.   Plaintiff Rapp and Class members' injuries were proximately caused by Honda's fraudulent and deceptive business practices.

586.   Plaintiff Rapp and the Class members seek equitable relief and damages.

**COUNT TWENTY-FIVE:**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(NEV. REV. STAT. ANN. §§104.2314, 104A.2212)**
**(On Behalf of the Nevada Class)**

587.     Plaintiff Rapp realleges and incorporates by reference all preceding allegations as though fully set forth herein.

588.     Plaintiff Rapp brings this claim individually and on behalf of the other members of the Illinois Class.

589.     Honda is a "merchant" (as defined by NEV. REV. STAT. ANN. §104.2104(1)), a "seller" (as defined by NEV. REV. STAT. ANN. §104.2103(1)(c)), and a "lessor" (as defined by NEV. REV. STAT. ANN. §104A.2103(1)(p)) of Class Vehicles.

590.     The Class Vehicles are "goods" (as defined by NEV. REV. STAT. ANN. §104.2105(1) and NEV. REV. STAT. ANN. §104A.2103(1)(h)).

591.     Pursuant to NEV. REV. STAT. ANN. §104.2314(1), "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."

592.     Pursuant to NEV. REV. STAT. ANN. §104A.2212(1), "a warranty that the goods will be merchantable is implied in a lease contract if the lessor is a merchant with respect to goods of that kind."

593.     Goods are merchantable if they are "fit for the ordinary purposes for which such goods are used" and "[c]onform to the promises or affirmations of fact made on the container or label if any." NEV. REV. STAT. ANN. §104.2314(2)(c), (f); NEV. REV. STAT. ANN. §104A.2212(2)(c), (f).

594.     Defendant was, at all relevant times, the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles. Defendant knew or had reason to know of the specific use for which the Class Vehicles were purchased.

595.     Defendant provided Plaintiff Rapp and other Class members with an implied warranty that the Class Vehicles and any parts thereof are merchantable and fit for the ordinary purposes for which they were sold. However, the Class Vehicles are not fit for their ordinary

purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles suffered from the Parasitic Drain Defect at the time of sale that causes various safety features to fail without warning, creates the undue risk of the engine stalling while driving, and results in the premature depletion of batteries and alternators. Therefore, the Class Vehicles are not fit for their particular purpose of providing safe and reliable transportation.

596.    Defendant impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things, a warranty that the Class Vehicles were manufactured, supplied, distributed, and/or sold by Defendant, were safe and reliable for providing transportation, and would not result in the premature failure of its batteries.

597.    Contrary to the applicable implied warranties, the Class Vehicles at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff Rapp and other Class members with reliable, durable, and safe transportation. Instead, the Class Vehicles suffer from a defective design(s) and/or manufacturing defect(s).

598.    Defendant knew or had reason to know of these material facts, and wrongfully and fraudulently concealed these material facts from Plaintiff Rapp and the Class. Defendant was provided notice of these issues by, *inter alia*, complaints lodged by consumers with the NHTSA – which Defendant routinely monitors – before or within a reasonable amount of time after the allegations of the Defect became public.

599.    Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use.

600.    Plaintiff Rapp and other Class members have had sufficient direct dealings with either Defendant or its agents (*e.g.*, dealerships, consumer affairs departments, and technical support) to establish privity of contract between Defendant on one hand, and Plaintiff Rapp and each of the other Class members on the other hand. Nonetheless, privity is not required here because Plaintiff Rapp and each of the other Class members are intended third-party beneficiaries of contracts between Defendant and their dealers, and specifically, of Defendant's implied

warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumers only. Defendant was also aware that the ultimate consumers of the Class Vehicles (*i.e.*, the Class) required vehicles that would function safely, could be relied upon, and otherwise meet minimum industry standards. Additionally, privity is excused here because Plaintiff Rapp and each of the other Class members relied on statements made by Defendant itself in choosing to purchase or lease a Class Vehicle. As alleged herein, the marketing of the Class Vehicles was uniform, and was controlled and disseminated directly by Defendant.

601.    Plaintiff Rapp, on behalf of himself and the Class, seeks monetary damages, treble damages, costs, attorneys' fees, and such other and further relief provided by law and equity.

**COUNT TWENTY-SIX:**
**BREACH OF EXPRESS WARRANTY**
**(NEV. REV. STAT. ANN. §§104.2313, 104A.2210)**
**(On Behalf of the Nevada Class)**

602.    Plaintiff Rapp realleges and incorporates by reference all preceding allegations as though fully set forth herein.

603.    Plaintiff Rapp brings this claim individually and on behalf of the other members of the Nevada Class.

604.    Honda is a "merchant" (as defined by NEV. REV. STAT. ANN. §104.2104(1)), a "seller" (as defined by NEV. REV. STAT. ANN. §104.2103(1)(c)), and a "lessor" (as defined by NEV. REV. STAT. ANN. §104A.2103(1)(p)) of Class Vehicles.

605.    The Class Vehicles are "goods" (as defined by NEV. REV. STAT. ANN. §104.2105(1) and NEV. REV. STAT. ANN. §104A.2103(1)(h)).

606.    Pursuant to NEV. REV. STAT. ANN. §104.2313(1)(a), "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."

607.    Pursuant to NEV. REV. STAT. ANN. §104A.2210(1)(a), "[a]ny affirmation of fact or promise made by the lessor to the lessee which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods will conform to the affirmation or promise."

608.    In its written express warranties, Honda expressly warranted that it would repair or replace defective parts free of charge if the defects became apparent during the warranty period.

609.    Honda's written express warranties formed the basis of the bargain that was reached when Plaintiff Rapp and other Class members purchased or leased their Class Vehicles.

610.    Honda breached its express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing Plaintiff Rapp and Class members with Class Vehicles containing a Defect that was never disclosed to Plaintiff Rapp and Class members; (b) failing to repair or replace the Class Vehicles at no cost within the warranty periods; and (c) supplying products and materials that failed to conform to the representations made by Honda.

611.    Plaintiff Rapp and Class members have given Honda a reasonable opportunity to cure its breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Honda can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

612.    The written express warranties fail in their essential purpose because the contractual remedy is insufficient to make Plaintiff Rapp and other Class members whole and because Honda has failed and/or has refused to adequately provide effective remedies within a reasonable time.

613.    Accordingly, recovery by Plaintiff Rapp and other Class members is not limited to the limited remedy of repair, and Plaintiff Rapp, individually and on behalf of the other Class members, seeks all remedies as allowed by law.

614.    Also, as alleged in more detail herein, at the time that Honda warranted and sold or leased the Class Vehicles, it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and Honda improperly concealed material facts regarding its Class

Vehicles. Plaintiff Rapp and other Class members were therefore induced to purchase or lease the Class Vehicles under false pretenses.

615.    Honda had notice of its breach as alleged herein.

616.    As a direct and proximate result of Honda's breach of its express warranty, Plaintiff Rapp and other Class members have been damaged in an amount to be determined at trial.

**COUNT TWENTY-SEVEN:**
**DECEPTIVE ACTS OR PRACTICES PROHIBITED BY MASSACHUSETTS LAW**
**(MASS. GEN. LAWS ch. 93A, §1, *et seq*.)**
**(On Behalf of the Massachusetts Class)**

617.    Plaintiff Casey realleges and incorporates by reference all preceding allegations as though fully set forth herein.

618.    This Count is brought on behalf of the Massachusetts Class against Defendant.

619.    Defendant, Plaintiffs, and the Massachusetts Class are "persons" within the meaning of MASS. GEN. LAWS ch. 93A, §1(a).

620.    Defendant engaged in "trade" or "commerce" within the meaning of MASS. GEN. LAWS ch. 93A, §1(b).

621.    Massachusetts law prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." MASS. GEN. LAWS ch. 93A, §2. Defendant participated in misleading, false, or deceptive acts that violated Massachusetts law.

622.    In the course of its business, Defendant concealed and suppressed material facts concerning the Parasitic Drain Defect present in the Class Vehicles. Specifically, Defendant knowingly misrepresented and/or intentionally concealed material facts regarding the quality, safety, and reliability of the Class Vehicles, including the existence of the Defect, and the existence of a permanent and reliable repair for the Defect. Specifically, in marketing, offering for sale/lease, and selling/leasing the defective Class Vehicles, Defendant engaged in one or more of the following unfair or deceptive acts or practices prohibited by Massachusetts law.

623.    Plaintiffs and the Massachusetts Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose.

624.     Defendant thus violated Massachusetts law by, at minimum: (a) representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; (b) representing that Class Vehicles are of a particular standard, quality, and grade when they are not; (c) advertising Class Vehicles with the intent not to sell or lease them as advertised; and (d) representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

625.     Defendant intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the Massachusetts Class.

626.     Defendant knew or should have known that its conduct violated Massachusetts law.

627.     Defendant owed the Plaintiffs and the Massachusetts Class a duty to disclose the Defect and the true nature of the Class Vehicles, because Defendant:

(a)     possessed exclusive knowledge that it was manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

(b)     intentionally concealed the foregoing from regulators, Plaintiffs, and/or the Massachusetts Class members; and/or

(c)     made incomplete representations about the Class Vehicles generally, and the safety, quality, and reliability of the Class Vehicles in particular, while purposefully withholding material facts from Plaintiffs and/or Massachusetts Class members that contradicted these representations.

628.     Defendant's fraudulent statements concerning the safety, quality, and reliability of the Class Vehicles were material to Plaintiffs and to the Massachusetts Class.

629.     Defendant's unfair or deceptive acts or practices were likely to and did, in fact, deceive reasonable consumers, including Plaintiffs and the Massachusetts Class members, about the safety, quality, and reliability of the Class Vehicles, and the true value of the Class Vehicles.

630.     Defendant's violations present a continuing risk to Plaintiffs and to the Massachusetts Class, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

631.     Plaintiffs and the Massachusetts Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations and its concealment of and failure to disclose material information. Defendant had an ongoing duty to all of its customers to refrain from unfair and deceptive practices under Massachusetts law. All owners of Class Vehicles suffered ascertainable loss as a result of Defendant's deceptive and unfair acts and practices made in the course of Defendant's business.

632.     As a direct and proximate result of Defendant's violations of Massachusetts law, Plaintiffs and the Massachusetts Class have suffered injury-in-fact and/or actual damage.

633.     Pursuant to MASS. GEN. LAWS ch. 93A, §9, Plaintiffs, on behalf of the Massachusetts Class, seek monetary relief against Defendant measured as the greater of: (a) actual damages in an amount to be determined at trial; and (b) statutory damages in the amount of $25 for each Massachusetts Class member. Because Defendant's conduct was committed willfully and knowingly, Plaintiffs and each Massachusetts Class member is entitled to recover up to three times actual damages, but no less than two times actual damages.

634.     Plaintiffs, on behalf of the Massachusetts Class, also seek an Order enjoining Defendant's unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees and costs, and any other just and proper relief available under Massachusetts law.

635.     On August 23, 2021, a notice letter was sent to Defendant, complying with MASS. GEN. LAWS ch. 93A, §9(3). Additionally, Defendant was provided notice of the issues raised in this Count and this Complaint by the numerous complaints filed against it, and the many individual notice letters sent by consumers. Plaintiffs seek all damages and relief to which Plaintiffs and the Massachusetts Class are entitled.

636.     As a result of Defendant's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

637.     Plaintiffs, on behalf of themselves and the Massachusetts Class, seek monetary damages, costs, attorneys' fees, and such other relief provided by law and equity.

**COUNT TWENTY-EIGHT:**
**MASSACHUSETTS LEMON LAW**
**(MASS. GEN. LAWS ch. 90, §7N1/2(1))**
**(On Behalf of the Massachusetts Class)**

638.    Plaintiff Casey realleges and incorporates by reference all preceding allegations as though fully set forth herein.

639.    This Count is brought on behalf of the Massachusetts Class against Defendant.

640.    Plaintiffs and the Massachusetts Class members own or lease "motor vehicles" within the meaning of MASS. GEN. LAWS ch. 90, §7N1/2(1), because these vehicles were constructed or designed for propulsion by power and were sold, leased, or replaced by Defendant. These vehicles are not: (a) auto homes; (b) vehicles built primarily for off-road use; and (c) used primarily for business purposes.

641.    Defendant is a "manufacturer" of the Class Vehicles within the meaning of MASS. GEN. LAWS ch. 90, §7N1/2(1).

642.    Plaintiffs and the Massachusetts Class are "consumers" within the meaning of MASS. GEN. LAWS ch. 90, §7N1/2(1) because they bought or leased the Class Vehicles or are otherwise entitled to the attendant terms of warranty.

643.    The Class Vehicles did not conform to their express and implied warranties because of the Defect, which caused the Class Vehicles to not operate as intended, and were therefore not fit for the ordinary purpose for which vehicles are used.

644.    Defendant had actual knowledge of the nonconformities during the "term of protection" within the meaning of MASS. GEN. LAWS ch. 90, §§7N1/2(1)-7N1/2(2). But, the nonconformities continued to exist throughout this term, as they have not been fixed. Massachusetts Class members are excused from notifying Defendant of the nonconformities because it was already fully aware of the problem – it intentionally created it – and any repair attempt is futile.

645.    Defendant had a reasonable opportunity to cure the nonconformities because of its actual knowledge of, creation of, and attempt to conceal the nonconformities, but has not done so as required under MASS. GEN. LAWS ch. 90, §7N1/2(3).

646.     For vehicles purchased, the Massachusetts Class demands a full refund of the contract price. For vehicles leased, the Massachusetts Class demands a full refund of all payments made under the lease agreement. The Massachusetts Class exercises their "unqualified right" to reject an offer of replacement and will retain their vehicles until payment is tendered under MASS. GEN. LAWS ch. 90, §7N1/2(3).

647.     Plaintiffs, on behalf of themselves and the Massachusetts Class, seek monetary damages, costs, attorneys' fees, and such other relief provided by law and equity.

**COUNT TWENTY-NINE:**
**BREACH OF EXPRESS WARRANTY**
**(MASS. GEN. LAWS ch. 106, §§2-313 and 2A-210)**
**(On Behalf of the Massachusetts Class)**

648.     Plaintiff Casey realleges and incorporates by reference all preceding allegations as though fully set forth herein.

649.     This Count is brought on behalf of the Massachusetts Class against Defendant.

650.     Defendant is and was, at all relevant times, a "merchant" with respect to motor vehicles under MASS. GEN. LAWS ch. 106, §2-104(1), and a "seller" of motor vehicles under MASS. GEN. LAWS ch. 106, §2-103(1)(d).

651.     With respect to leases, Defendant is and was, at all relevant times, a "lessor" of motor vehicles under MASS. GEN. LAWS ch. 106, §2A-103(1)(p).

652.     The Class Vehicles are and were, at all relevant times, "goods" within the meaning of MASS. GEN. LAWS ch. 106, §§2-105(1) and 2A-103(1)(h).

653.     In connection with the purchase or lease of each one of its new vehicles, Defendant provided an express warranty, as described above.

654.     Defendant also made numerous representations, descriptions, and promises to Massachusetts Class members regarding the safety, quality, and reliability of the Class Vehicles.

655.     Defendant's warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

656.     Defendant breached its express warranty (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing Plaintiffs and the Massachusetts Class members

with Class Vehicles containing defects in the materials and workmanship that were never disclosed to Plaintiffs and the Massachusetts Class members; (b) failing to repair or replace the Class Vehicles at no cost within the warranty periods; and (c) supplying products and materials that failed to conform to the representations made by Defendant.

657.    Plaintiffs and the Massachusetts Class members have given Defendant a reasonable opportunity to cure its breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Defendant can neither cure the Defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

658.    Furthermore, Defendant's warranties fail of their essential purpose because the contractual remedy is insufficient to make Plaintiffs and the Massachusetts Class members whole and because Defendant has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

659.    Furthermore, the limited warranty promising to repair and correct Defendant's defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make Massachusetts Class members whole and because Defendant has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

660.    Accordingly, recovery by the Massachusetts Class members is not restricted to the limited warranty promising to repair and correct Defendant's defect in materials and workmanship, and they seek all remedies as allowed by law.

661.    Also, as alleged in more detail herein, at the time Defendant warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendant had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Massachusetts Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

662.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendant's defect in materials and workmanship as many incidental and consequential damages have already been suffered because

of Defendant's fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on the Massachusetts Class members' remedies would be insufficient to make them whole.

663.    Finally, because of Defendant's breach of warranty as set forth herein, Massachusetts Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

664.    Defendant was provided notice of these issues by numerous complaints filed with the NHTSA, as well as the filing of the instant Complaint, within a reasonable amount of time.

665.    As a direct and proximate result of Defendant's breach of express warranties, Massachusetts Class members have been damaged in an amount to be determined at trial.

666.    Plaintiffs, on behalf of themselves and the Massachusetts Class, seek monetary damages, costs, attorneys' fees, and such other relief provided by law and equity.

**COUNT THIRTY:**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(MASS. GEN. LAWS ch. 106, §§2-314 and 2A-212)**
**(On Behalf of the Massachusetts Class)**

667.    Plaintiff Casey realleges and incorporates by reference all preceding allegations as though fully set forth herein.

668.    This Count is brought on behalf of the Massachusetts Class against Defendant.

669.    Defendant is and was, at all relevant times, a "merchant" with respect to motor vehicles under MASS. GEN. LAWS ch. 106, §2-104(1), and a "seller" of motor vehicles under MASS. GEN. LAWS ch. 106, §2 103(1)(d).

670.    With respect to leases, Defendant is and was, at all relevant times was, a "lessor" of motor vehicles under MASS. GEN. LAWS ch. 106, §2A-103(1)(p).

671.    The Class Vehicles are and were, at all relevant times, "goods" within the meaning of MASS. GEN. LAWS ch. 106, §§2-105(1) and 2A-103(1)(h).

672.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to MASS. GEN. LAWS ch. 106, §§2-314 and 2A-212.

673.    These Class Vehicles, when sold or leased and at all times thereafter, included the Defect, and were therefore not fit for the ordinary purpose for which vehicles are used.

674.    Defendant was provided notice of these issues by the numerous public complaints filed against it with the NHTSA, as well as the filing of the instant Complaint, within a reasonable amount of time.

675.    As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Massachusetts Class members have been damaged in an amount to be proven at trial.

676.    Plaintiffs, on behalf of themselves and the Massachusetts Class, seek monetary damages, costs, attorneys' fees, and such other relief provided by law and equity.

**COUNT THIRTY-ONE:**
**VIOLATIONS OF THE MICHIGAN CONSUMER PROTECTION ACT**
**(MICH. COMP. LAWS §445.903 *et seq.*)**
**(On Behalf of the Michigan Class)**

677.    Plaintiff Sanger realleges and incorporates by reference all preceding allegations as though fully set forth herein.

678.    This Count is brought on behalf of the Michigan Class against Defendant.

679.    The Michigan Class members are "person[s]" within the meaning of the MICH. COMP. LAWS §445.902(1)(d).

680.    Defendant is a "person" engaged in "trade or commerce" within the meaning of the MICH. COMP. LAWS §445.902(1)(d) and (g).

681.    The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce[.]" MICH. COMP. LAWS §445.903(1). Defendant engaged in unfair, unconscionable, or deceptive methods, acts, or practices prohibited by the Michigan CPA, including: "(c) [r]epresenting that goods or services have . . . characteristics . . . that they do not have . . .;" "(e) [r]epresenting that

goods or services are of a particular standard . . .  if they are of another;" "(i) [m]aking false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;" "(s) [f]ailing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer;" "(bb) [m]aking a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is;" and "(cc) [f]ailing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner." MICH. COMP. LAWS §445.903(1).

682.    In the course of its business, Defendant concealed and suppressed material facts concerning the Parasitic Drain Defect present in the Class Vehicles. Specifically, Defendant knowingly misrepresented and/or intentionally concealed material facts regarding the quality, safety, and reliability of the Class Vehicles, including the existence of the Defect, and the existence of a permanent and reliable repair for the Defect.

683.    Defendant, thus, violated the Michigan CPA by, at minimum: (a) employing deception, deceptive acts or practices, fraud, and/or misrepresentations; or (b) concealing, suppressing, or omitting material facts with the intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

684.    Plaintiffs and the Michigan Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose.

685.    Defendant intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Michigan Class.

686.    Defendant knew or should have known that its conduct violated the Michigan Act.

687.    Defendant owed Plaintiffs and the Michigan Class a duty to disclose the Defect and the true nature of the Class Vehicles, because Defendant:

(a)    possessed exclusive knowledge that it was manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

1          (b)     intentionally concealed the foregoing from regulators, Plaintiffs, and/or

2  Michigan Class members; and/or

3          (c)     made incomplete representations about the Class Vehicles generally, and

4  the quality, safety, and reliability of the Class Vehicles in particular, while purposefully

5  withholding material facts from Plaintiffs that contradicted these representations.

6        688.    Defendant's fraudulent concealment of the true characteristics of the Class

7  Vehicles' battery, and the lack of safety, reliability, and quality of the Class Vehicles, were

8  material to Plaintiffs and the Michigan Class.

9        689.    Defendant's unfair or deceptive acts or practices were likely to and did, in fact

10  ,deceive reasonable consumers, including Plaintiffs and the Michigan Class, about the safety,

11  reliability, and quality of the Class Vehicles; the quality of Defendant's brands; the existence of

12  the Defect; and the true value of the Class Vehicles.

13        690.    Plaintiffs and the Michigan Class suffered ascertainable loss and actual damages as

14  a direct and proximate result of Defendant's misrepresentations and its concealment of and failure

15  to disclose material information.

16        691.    Defendant's violations present a continuing risk to Plaintiffs and the Michigan

17  Class, as well as to the general public. Defendant's unlawful acts and practices complained of

18  herein affect the public interest.

19        692.    Plaintiffs and the Michigan Class members suffered ascertainable loss and actual

20  damages as a direct and proximate result of Defendant's misrepresentations and its concealment

21  of and failure to disclose material information. Defendant had an ongoing duty to all their

22  customers to refrain from unfair and deceptive practices under the Michigan CPA. All owners of

23  Class Vehicles suffered ascertainable loss as a result of Defendant's deceptive and unfair acts and

24  practices made in the course of Defendant's business.

25        693.    As a direct and proximate result of Defendant's violations of the Michigan CPA,

26  Michigan Class members have suffered injury-in-fact and/or actual damage.

27        694.    Plaintiffs, on behalf of the Michigan Class, seek injunctive relief to enjoin

28  Defendant from continuing its unfair and deceptive acts; monetary relief against Defendant

1 measured as the greater of: (a) actual damages in an amount to be determined at trial; and (b)

2 statutory damages in the amount of $250 for each Michigan Class member; reasonable attorneys'

3 fees; and any other just and proper relief available under MICH. COMP. LAWS §445.911.

4     695.    Plaintiffs, on behalf of the Michigan Class, also seek punitive damages against

5 Defendant because it carried out despicable conduct with willful and conscious disregard of the

6 rights of others. Defendant intentionally and willfully misrepresented the reliability of the Class

7 Vehicles and concealed material facts that only it knew – all to avoid the expense and public

8 relations nightmare of correcting a flaw in the Class Vehicles. Defendant's unlawful conduct

9 constitutes oppression and fraud warranting punitive damages.

10     696.    Plaintiffs, on behalf of themselves and the Michigan Class, seek monetary damages,

11 costs, attorneys' fees, and such other relief provided by law and equity.

12 **COUNT THIRTY-TWO:**
**BREACH OF EXPRESS WARRANTY**
13 **(MICH. COMP. LAWS §§440.2313 and 440.2860)**
**(On Behalf of the Michigan Class)**
14

15     697.    Plaintiff Sanger realleges and incorporates by reference all preceding allegations as

16 though fully set forth herein.

17     698.    This Count is brought on behalf of the Michigan Class against Defendant.

18     699.    Defendant is and was, and at all relevant times, a "merchant" with respect to motor

19 vehicles under MICH. COMP. LAWS §440.2104(1), and a "seller" of motor vehicles under MICH.

20 COMP. LAWS §440.2103(1)(c).

21     700.    With respect to leases, Defendant is and was, at all relevant times, a "lessor" of

22 motor vehicles under MICH. COMP. LAWS §440.2803(1)(p).

23     701.    The Class Vehicles are and were, at all relevant times, "goods" within the meaning

24 of MICH. COMP. LAWS §§440.2105(1) and 440.2803(1)(h).

25     702.    In connection with the purchase or lease of each one of its new vehicles, Defendant

26 issued a written warranty, as discussed above.

27     703.    Defendant's warranties formed a basis of the bargain that was reached when

28 Plaintiffs, the Michigan Class members, and consumers purchased or leased Class Vehicles.

704.     Defendant breached its express warranty (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing Plaintiffs and the Michigan Class members with Class Vehicles containing defects in the materials and workmanship that were never disclosed to Plaintiffs and the Michigan Class members; (b) failing to repair or replace the Class Vehicles at no cost within the warranty periods; and (c) supplying products and materials that failed to conform to the representations made by Defendant.

705.     Plaintiffs and the Michigan Class members have given Defendant a reasonable opportunity to cure its breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Defendant can neither cure the Defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

706.     Furthermore, Defendant's warranties fail of their essential purpose because the contractual remedy is insufficient to make Plaintiffs and the Michigan Class members whole and because Defendant has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

707.     Accordingly, recovery by Plaintiffs and the Michigan Class members is not restricted to the limited warranty promising to repair and correct Defendant's defect in materials and workmanship, and they seek all remedies as allowed by law.

708.     Also, as alleged in more detail herein, at the time Defendant warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendant had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Plaintiffs and the Michigan Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

709.     Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendant's defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendant's fraudulent conduct as alleged herein, and because of its failure and/or continued

1    failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs'

2    and the Michigan Class members' remedies would be insufficient to make them whole.

3         710.    Finally, because of Defendant's breach of warranty as set forth herein, Plaintiffs

4    and the Michigan Class members assert, as additional and/or alternative remedies, the revocation

5    of acceptance of the goods and the return to them of the purchase or lease price of all Class Vehicles

6    currently owned or leased, and for such other incidental and consequential damages as allowed.

7         711.    Defendant was provided notice of these issues by numerous complaints filed with

8    the NHTSA, as set forth herein, as well as the instant Complaint, within a reasonable amount of

9    time.

10        712.    As a direct and proximate result of Defendant's breach of express warranties,

11   Plaintiffs and the Michigan Class members have been damaged in an amount to be determined at

12   trial.

13        713.    Plaintiffs, on behalf of themselves and the Michigan Class, seek monetary damages,

14   costs, attorneys' fees, and such other relief provided by law and equity.

### COUNT THIRTY-THREE:
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (MICH. COMP. LAWS §§440.2314 and 440.2860)
### (On Behalf of the Michigan Class)

18        714.    Plaintiff Sanger realleges and incorporates by reference all preceding allegations as

19   though fully set forth herein.

20        715.    This Count is brought on behalf of the Michigan Class against Defendant.

21        716.    Defendant is and was, at all relevant times, a "merchant" with respect to motor

22   vehicles under MICH. COMP. LAWS §440.2104(1), and a "sellers" of motor vehicles under MICH.

23   COMP. LAWS §440.2103(1)(c).

24        717.    With respect to leases, Defendant is and was, at all relevant times, a "lessor" of

25   motor vehicles under MICH. COMP. LAWS §440.2803(1)(p).

26        718.    The Class Vehicles are and were, at all relevant times, "goods" within the meaning

27   of MICH. COMP. LAWS §§440.2105(1) and 440.2803(1)(h).

28

719.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to MICH. COMP. LAWS §§440.2314 and 440.2862.

720.   These Class Vehicles, when sold or leased and at all times thereafter, included the Defect, and were therefore not fit for the ordinary purpose for which vehicles are used.

721.   Defendant was provided notice of these issues by the complaints filed with the NHTSA detailed herein, as well as the instant Complaint, within a reasonable amount of time.

722.   As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiffs and the Michigan Class members have been damaged in an amount to be proven at trial.

723.   Plaintiffs, on behalf of themselves and the Michigan Class, seek monetary damages, costs, attorneys' fees, and such other relief provided by law and equity.

## X.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of members of the Class, respectfully prays that the Court:

A.   Issue an Order certifying this action as a class action pursuant to Rule 23 of the FEDERAL RULES OF CIVIL PROCEDURE; declaring that Plaintiffs are proper Class representatives; and appointing Plaintiffs' counsel as Class Counsel;

B.   Award Plaintiffs and Class members damages, restitution, and disgorgement in an amount to be determined at trial;

C.   Order appropriate injunctive and/or declaratory relief, including, but not limited to, an Order that requires Defendant to repair, recall, and/or replace the Class Vehicles and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiffs and Class members with appropriate curative notice regarding the existence and cause of the Defect;

D.   Award to Plaintiffs the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses, including pursuant to CALIFORNIA CODE OF CIVIL PROCEDURE §1021.5;

1       E.      Award pre- and post-judgment interest at the maximum legal rate; and

2       F.      Grant all such other relief as is just and proper.

3  **XI.     DEMAND FOR JURY TRIAL**

4       Plaintiffs demand a jury trial on all claims so triable.

5  DATED:  September 30, 2021       KAPLAN FOX & KILSHEIMER LLP
                                               LAURENCE D. KING (SBN 206423)

6                                       KATHLEEN A. HERKENHOFF (SBN 168562)

7                                       MATTHEW B. GEORGE (SBN 239322)

8

9                                          *s/ Laurence D. King*
                                           LAURENCE D. KING

10

11                                       1999 Harrison Street, Suite 1560
                                       Oakland, CA  94612

12                                       Telephone:  415/772-4700
                                       415/772-4707 (fax)

13                                       lking@kaplanfox.com
                                       kherkenhoff@kaplanfox.com

14                                       mgeorge@kaplanfox.com

15                                       FEGAN SCOTT LLC
                                       ELIZABETH A. FEGAN

16                                       (*pro hac vice* to be filed)
                                       150 South Wacker Drive, 4th Floor

17                                       Chicago, IL  60606
                                       Telephone:  312/741-1019

18                                       312/264-0100 (fax)

19                                       beth@feganscott.com

20                                       FEGAN SCOTT LLC
                                       JONATHAN D. LINDENFELD

21                                       (*pro hac vice* to be filed)
                                       140 Broadway, 46th Floor

22                                       New York, NY  10005

23                                       Telephone:  332/216-2101
                                       917/725-9346 (fax)

24                                       jonathan@feganscott.com

25

26

27

28

1

2  ROBBINS GELLER RUDMAN
       & DOWD LLP
3  MARK J. DEARMAN (*pro hac vice* to be filed)
   ERIC S. DWOSKIN (*pro hac vice* to be filed)
4  ALEXANDER C. COHEN
   (*pro hac vice* to be filed)
5  120 East Palmetto Park Road, Suite 500
   Boca Raton, FL  33432
6  Telephone:  561/750-3000
   561/750-3364 (fax)
7  mdearman@rgrdlaw.com
   edwoskin@rgrdlaw.com
8  acohen@rgrdlaw.com

9
   LEVIN SEDRAN & BERMAN, LLP
10 CHARLES E. SCHAFFER *
   DANIEL C. LEVIN *
11 NICHOLAS J. ELIA *
   510 Walnut Street, Suite 500
12 Philadelphia, PA  19106
   Telephone:  215/592-1500
13 215/592-4663(fax)
   dlevin@lfsblaw.com
14 cschaffer@lfsblaw.com
   nelia@lfsblaw.com
15

16
   KUZYK LAW, LLP
17 MICHAEL D. BRAUN (SBN 167416)
   1999 Avenue of the Stars, Suite 1100
18 Los Angeles, CA  90067
   Telephone:  213/401-4100
19 213/401-0311 (fax)
   mdb@kuzykclassactions.com
20

21 MIGLIACCIO & RATHOD LLP
   NICHOLAS A. MIGLIACCIO *
22 JASON S. RATHOD *
   412 H Street NE, Suite 302
23 Washington, D.C.  20002
   Telephone:  202/470-3520
24 nmigliaccio@classlawdc.com
   jrathod@classlawdc.com
25

26

27

28

1

2       BAIRD LAW FIRM
        WILLIAM A. BAIRD
3       2625 Townsgate Road, 330
        Westlake Village, CA  91361
4       Telephone:  805/267-1209
        w.baird.law@gmail.com
5
        WITES LAW FIRM
6       MARC A. WITES (*pro hac vice* to be filed)
        4400 North Federal Highway
7       Lighthouse Point, FL  33064
        Telephone:  866/558-9631
8       mwites@witeslaw.com
9
        *Attorneys for Plaintiffs and the Proposed Class*
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28