1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6
7

RONALD RAYNALDO, et al.,

Case No. 21-cv-05808-HSG

8

Plaintiffs,

**ORDER GRANTING MOTION TO DISMISS**

9

v.

Re: Dkt. No. 52

10

AMERICAN HONDA MOTOR CO., INC.,

11

Defendant.

12
13

On September 30, 2021, Plaintiffs[1] filed an Amended Class Action Complaint ("ACAC")

14

against Defendant American Honda Motor Company, Inc. ("Honda").  Dkt No. 15.  Pending

15

before the Court is Honda's motion to dismiss all claims in the ACAC.  Dkt. No. 52.  The Court

16

finds this matter appropriate for disposition without oral argument and the matter is deemed

17

submitted.  *See* Civil L.R. 7-1(b).  For the reasons detailed below, the Court **GRANTS** the motion.

18

**I.      BACKGROUND**

19

Plaintiffs bring this proposed class action against Honda, alleging that certain models of

20

vehicles that Honda manufactures, develops, and services, namely the Honda CR-V (model years

21

2017-2019) and Honda Accord (model years 2016-2019) ("vehicles at issue"), suffer from a

22

"parasitic draining" defect ("alleged defect").  ACAC ¶¶ 1-3, 110.  "Parasitic draining occurs

23

when electrical components in a vehicle fail to shut down once the vehicle is parked and turned

24

off, which, in turn, allows the components to continue consuming power from the battery."  *Id.*

25

¶ 3.  Plaintiffs do not identify in the ACAC the "electrical components" whose failure to shut

26

27

28

---

[1] Plaintiffs are Ronald Raynaldo, Richard Barrie, Andre Cruz, Fernanda Nunes Ferreira, George Jones, Robert Lizzul, Mitchell Bryon Pazanki, John Provenzano, Harry Rapp, Dennis Woods, Dayane Tessinari, Brendan Sanger, and Jason Casey.

down allegedly causes parasitic draining.  Plaintiffs aver that, if not repaired, the alleged defect "results in the premature obsolescence of the vehicle's battery and various related component failures," *id.* ¶ 3, which can lead a vehicle to stop while being driven or can cause "federally mandated safety features such as emergency hazard lights and headlights to fail," *id.* ¶ 4. Plaintiffs aver that the alleged defect was "inherent" in Honda's "design and/or manufacturing process" and, accordingly, "each" of the vehicles at issue was delivered to consumers with the alleged defect.  *Id.* ¶ 1.  Honda has "yet to offer a reliable solution" to the alleged defect; it has only "instructed its dealers to update internal software and replace dead batteries in certain" of the vehicles at issue, but neither of those corrective actions actually "remedies" the alleged defect. *Id.* ¶ 6.

The vehicles at issue are subject to a "New Vehicle Limited Warranty" ("NVLW"), which requires Honda to "repair or replace any part that is defective in material or workmanship under normal use" within 36,000 miles or three years of when the vehicle is delivered to the first purchaser by a Honda dealer or the vehicle is leased.  *Id.* ¶¶ 218-21.

Each Plaintiff purchased or leased one of the vehicles at issue and, at an unspecified time after purchasing or leasing the vehicle, allegedly experienced unspecified "issues" with the vehicle as a result of the alleged defect.  *See id.* ¶¶ 19, 27, 33, 36, 42, 49, 55, 61, 69, 77, 83, 90, 101. Plaintiffs allege that, as a result of the presence of the alleged defect in their vehicles, their vehicles are not "safe or reliable" as advertised by Honda.  *See id.*  Plaintiffs allege that Honda's failure to disclose the presence of the alleged defect in the vehicles at issue precluded them from receiving the benefit of the bargain in connection with their purchase or lease of the vehicles, as the presence of the alleged defect has significantly diminished the vehicles' value.  *See, e.g.*, *id.* ¶¶ 28, 519.

Plaintiffs assert thirty-three claims against Honda, which arise under the laws of the following nine states: California, Michigan, Arizona, Iowa, Nevada, Massachusetts, Illinois, New York, and Michigan.  The claims are premised on allegations that generally fall within three broad categories: fraudulent omission or concealment; breach of express warranty; and breach of the

implied warranty of merchantability.[2]  Plaintiffs seek damages; equitable remedies that include restitution, disgorgement, and injunctive relief; and attorneys' fees and costs.  *See* ACAC at 133-34 (Prayer for Relief).

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6).  "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  To survive a Rule

---

[2] Plaintiffs assert the following claims: (1) violations of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.* (claim 1); (2) violations of all three prongs of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.* (claim 2); (3) violations of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.* (claim 3); (4) breach of express warranty under Cal. Com. Code §§ 2313, 10210 (claim 4); (5) breach of implied warranty of merchantability under Cal. Com. Code §§ 2314, 10212 (claim 5); (6) unjust enrichment (claim 6); (7) fraudulent concealment (claim 7); (8) breach of express warranty under Iowa Code §§ 554.2313, 554.13210 (claim 8); (9) breach of implied warranty of merchantability under Iowa Code §§ 554.2314, 554.13212 (claim 9); (10) violations of Iowa Private Right of Action for Consumer Frauds Act, Iowa Code § 174H (claim 10); (11) violations of Florida's Unfair & Deceptive Trade Practices Act (claim 11); (12) breach of express warranty under Fla. Stat. §§ 672.31, 680.21 (claim 12); (13) breach of implied warranty of merchantability under Fla. Stat. §§ 672.314, 680.212 (claim 13); (14) breach of Deceptive Acts and Practices Statue, N.Y. Gen. Bus. Law § 349, *et seq.* (claim 14); (15) breach of express warranty under N.Y. U.C.C. Law §§ 2-313 and 2-A-210 (claim 15); (16) breach of implied warranty of merchantability under N.Y. U.C.C. Law §§ 2-314 and 2-A-212 (claim 16); (17) breach of express warranty under 810 Ill. Comp. Stat 5/2-313, 810 Ill. Comp. Stat. 5/2A-210 (claim 17); (18) breach of implied warranty of merchantability under 810 Ill. Comp. Stat 5/2-314, 810 Ill. Comp. Stat. 5/2A-212 (claim 18); (19) breach of the Illinois Consumer Fraud and Deceptive Practices Act (claim 19); (20) breach of the Illinois Consumer Fraud and Deceptive Practices Act (claim 20); (21) breach of express warranty under Ariz. Rev. Stat. §§ 47-2313, 47-2A210 (claim 21); (22) breach of implied warranty of merchantability under Ariz. Rev. Stat. § 47-2314, 27-2A212 (claim 22); (23) breach of the Arizona Consumer Fraud Act (claim 23); (24) violations of the Nevada Deceptive Trade Practices Act (claim 24); (25) breach of the implied warranty of merchantability under Nev. Rev. Stat. Ann. §§ 104.2314, 104A.2212 (claim 25); (26) breach of express warranty under Nev. Rev. Stat. Ann. §§ 104.2313, 104A.2210 (claim 26); (27) violations of Mass. Gen. Laws ch. 93A § 1, *et seq.* (claim 27); (28) violations of Massachusetts Lemon Law (claim 28); (29) breach of express warranty under Mass. Gen. Laws ch. 106 §§2-313, 2A-210 (claim 29); (30) breach of implied warranty of merchantability under Mass. Gen. Laws Ch. 106, §§ 2-314, 2A-212 (claim 30); (31) violations of the Michigan Consumer Protection Act (claim 31); (32) breach of express warranty under Mich. Comp. Laws §§ 440.2313, 440.2860 (claim 32); and (33) breach of implied warranty of merchantability under Mich. Comp. Laws §§ 440.2314, 440.2860 (claim 33).

12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Rule 9(b) imposes a heightened pleading standard where fraud is an essential element of a claim.  *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *see also Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).  A plaintiff must identify "the who, what, when, where, and how" of the alleged conduct, so as to provide defendants with sufficient information to defend against the charge.  *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997).  However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. Rule 9(b).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Nevertheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

Even if the court concludes that a 12(b)(6) motion should be granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).

## III.    DISCUSSION

Honda contends that all asserted claims in the ACAC fail for several reasons, including that (1) Plaintiffs do not adequately allege the presence of a defect in the vehicles at issue; (2) Plaintiffs fail to plausibly allege that Honda engaged in fraudulent omissions or concealment; (3) Plaintiffs fail to plausibly allege that Honda breached the NVLW; (4) Plaintiffs fail to plausibly allege that Honda breached an implied warranty of merchantability; (5) Plaintiffs fail to show that

United States District Court
Northern District of California

1   they can seek equitable remedies; and (6) all asserted claims that arise out of California law are

2   subject to dismissal to the extent that they are asserted on behalf of any Plaintiffs or proposed class

3   members who do not reside in, or lack a meaningful connection to, California.

4         **A.**      **Failure to Plead a Defect**

5        Honda argues that all of Plaintiffs' claims fail because Plaintiffs have not plausibly alleged

6   that the vehicles at issue contain the alleged defect.  Honda contends that Plaintiffs fail to identify

7   the particular part or system in the vehicles that is affected by the alleged defect or aver facts

8   showing that the alleged defect causes the battery problems and component failures alleged in the

9   ACAC.  Mot at 3-6.  According to Honda, the ACAC fails to provide them with fair notice of the

10  alleged defect because (1) Plaintiffs allege that parasitic draining occurs when "electrical

11  components" fail to shut off, without identifying the electrical component or components whose

12  failure to shut off causes parasitic draining; and (2) Plaintiffs allege a variety of symptoms,

13  including battery problems and component failures, without alleging any facts showing that such

14  symptoms are consequences of the alleged defect, as opposed to some other cause.

15        Plaintiffs concede that, to give fair notice to Honda of the alleged defect, they must

16  identify the particular part or system in the vehicles affected by the defect, as well as identify the

17  problems in the vehicles allegedly caused by the defect.  Opp. at 2-3.  Plaintiffs argue that they

18  have satisfied these standards because their allegations "identify (i) the system containing the

19  Defect (the electrical system), (ii) the symptoms of the Defect (premature obsolescence of

20  batteries and failure of safety features, among others), and, although not required, (iii) the cause of

21  each of the symptoms (parasitic draining on the Vehicle's battery while parked)."  *Id.* at 5.

22        Honda replies that Plaintiffs have not alleged that the alleged defect is contained in an

23  overarching "electrical system," because the ACAC refers to multiple electrical systems, none of

24  which is identified as being defective.  Reply at 1.  Honda also contends that, because Plaintiffs

25  have not alleged that their own vehicles suffered from any of the battery problems and component

26  failures that are described in the ACAC, the allegations are insufficient to raise the inference that

27  the alleged defect causes the identified battery problems and component failures.

28        Because "the Ninth Circuit has not addressed the disagreement among district courts about

United States District Court
Northern District of California

the level of detail required to allege an automobile defect," courts, including this one, "have looked to the general rule governing pleadings, namely that '[a] complaint must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively,' and those allegations 'must plausibly suggest an entitlement to relief.'" *See Williams v. Tesla, Inc.*, No. 20-CV-08208-HSG, 2021 WL 2531177, at *3 (N.D. Cal. June 21, 2021) (citations omitted). Here, the parties agree that a complaint gives fair notice to the defendant of a defect if it (1) identifies the particular part or system affected by the defect, and (2) describes the problems allegedly caused by the defect. *See* Mot. at 4; Opp. at 2. The Court evaluates the sufficiency of Plaintiffs' allegations in light of this agreed-upon standard.

The Court agrees with Honda that the ACAC lacks allegations that identify the part or system of the vehicles at issue that is affected by the alleged parasitic draining defect. Plaintiffs represent in their opposition that they have identified the vehicle's "electrical system" as "the system containing the Defect."[3] Opp. at 5. The ACAC, however, lacks allegations that identify any single "electrical system" as containing the alleged defect. The ACAC alleges that the vehicles at issue contain *multiple* "electrical systems," *see* ACAC ¶ 146, but it does not identify any of these electrical systems as the location of the defect. The ACAC also does not describe the components that comprise each electrical system, or how any of the electrical systems relate to the alleged defect.[4]

The Court also agrees with Honda that Plaintiffs have failed to plausibly allege that the

---

[3] These representations do not appear to be consistent with the allegations in the ACAC. Plaintiffs allege that individual, unidentified electrical *components* that fail to properly shut down are the parts of the vehicles at issue that are affected by the defect, suggesting that it is not a *system* in the vehicles that is affected by the defect. *See, e.g.*, ACAC ¶ 3.

[4] In their opposition, Plaintiffs argue that the "electrical system is the vehicle's network of components that receive and rely on a stable supply of electricity to function," and that it consists of "various components necessary to operate the vehicle, including the sparkplugs, alternator, and federally mandated safety features." Opp. at 2 & n.4 (citing ACAC ¶¶ 2, 4, 134-35). The paragraphs of the ACAC that Plaintiffs cite do not describe an "electrical system" or a "network of components" that comprise it. Instead, the cited paragraphs allege, in general terms, that certain "electrical components" are powered by a vehicle's battery and that vehicles require electricity to function. *See* ACAC ¶¶ 134-35. The cited paragraphs do not indicate whether, and if so, how, any of the "electrical components" are connected to each other or are affected by the alleged parasitic draining defect (whether collectively as part of a system or individually).

United States District Court
Northern District of California

alleged parasitic draining defect causes the battery problems and component failures described in the ACAC.  Plaintiffs allege that "each" of the vehicles at issue suffers from the alleged defect, and that, if not properly repaired, the alleged defect "results in the premature obsolescence of the vehicle's battery and various related component failures." *Id.* ¶ 3.  But Plaintiffs do not allege that *any* of their vehicles has suffered from the alleged battery problems or component failures as a result of the alleged defect; this is so even though Plaintiffs aver that their vehicles contain the alleged defect and that Honda has not adequately repaired or remedied the alleged defect in *any* affected vehicles, including theirs.  *Id.* ¶¶ 319, 1-6.  Plaintiffs allege only that they experienced unspecified "issues" with their vehicles at unspecified times.  *See id.* ¶¶ 19, 27, 33, 36, 42, 49, 55, 61, 69, 77.

While Plaintiffs point to allegations in the ACAC showing that unidentified people submitted complaints to the NHTSA or posted complaints online regarding battery problems that they experienced with their vehicles (which were among the models at issue here), these allegations do not raise the inference that the battery problems are attributable to a parasitic draining defect in the vehicles' electrical systems or any other common component or system.  The overwhelming majority of the alleged complaints do not associate the battery problems with *any* cause, much less a common cause.  *See id.* ¶¶ 150-55, 166-73, 184-89.  Plaintiffs also cite to allegations regarding some communications between Honda and its dealers and customers.  While those alleged communications also refer to battery problems in the vehicle models at issue, the ACAC lacks allegations that connect these problems to a defective "electrical system" or to any other common defective component or system that could result in parasitic draining.  *See id.* ¶¶ 199-210.  Instead, the alleged communications identify various (seemingly distinct) components or systems in the vehicles at issue as the possible sources of the battery problems.  *See, e.g., id.* ¶¶ 202, 205, 206 (referring to "a software bug in the VSA [Vehicle Stability Assist]," the "PCM [powertrain control module]," and the "FI-ECU," among other parts or systems, as the possible sources of battery problems in the vehicles at issue).  Thus, the allegations to which Plaintiffs point are insufficient to raise the inference that the battery problems and component failures described in the ACAC are caused by a single defective part or system.

1    The authorities that Plaintiffs cite for the proposition that their allegations are sufficient to

2    plead a defect are distinguishable.  In those cases, unlike here, the complaint identified specific

3    components or systems containing the alleged defect and alleged facts that plausibly and causally

4    connected the allegedly defective components or systems to specific observed problems or

5    symptoms.  *See Hardt v. Chrysler Grp. LLC*, No. SACV1401375SJOVBKX, 2015 WL 12683965,

6    at *5 (C.D. Cal. June 15, 2015) (plaintiffs plausibly pled a defect by alleging that "the Manual

7    Transmission contains one or more design and/or manufacturing defects" and describing the

8    symptoms caused by the alleged defect in the manual transmission); *Williams*, 2021 WL 2531177,

9    at *3 (defect adequately pled because "Plaintiff alleges that Tesla installed a defective suspension

10   system, describes the specific affected components and symptoms, and cites various Tesla internal

11   communications and NHSTA complaints concerning the suspension system"); *Clark v. Am.*

12   *Honda Motor Co*., 528 F. Supp. 3d 1108, 1116 (C.D. Cal. 2021) (same based on allegations that

13   the alleged defect affected "certain components and systems (the engine, throttle, and

14   transmission, and the ECM [engine control module] and TCM [transmission control module])"

15   and that "miscommunications among these components and systems resulted in vehicles failing to

16   safety accelerate and maintain speeds"); *Mosqueda v. Am. Honda Motor Co., Inc.*, 443 F. Supp. 3d

17   1115, 1126 (C.D. Cal. 2020) (same based on allegations that "automated braking system is prone

18   to false alarms, which in turn causes 'the Class Vehicles' brakes to engage at random for no

19   reason'").

20   Accordingly, the Court concludes that the allegations in the ACAC are insufficient to

21   provide fair notice to Honda of the alleged defect.  Because Plaintiffs do not dispute that each of

22   their claims is subject dismissal to the extent that they fail to provide adequate notice to Honda of

23   the alleged defect, the Court **GRANTS** Honda's motion to dismiss all claims, with **LEAVE TO**

24   **AMEND**.  *See Farrales v. Ford Motor Co.*, No. 21-CV-07624-HSG, 2022 WL 1239347, at *6

25   (N.D. Cal. Apr. 27, 2022) (holding that the plaintiff failed to plausibly plead a defect in vehicles

26   on the grounds that he "does not identify the affected components, or even explain why it would

27   be reasonable to assume that these symptoms are all caused by the same defect" and dismissing all

28   claims premised on the alleged defect).

United States District Court
Northern District of California

1    Because Plaintiffs may be able to overcome this deficiency in an amended complaint, and

2    to streamline any further pleading litigation, the Court addresses some of Honda's additional

3    arguments below.

**B.    Fraudulent Omission or Concealment**

4    Plaintiffs assert claims under the laws of various states under a theory of fraudulent

5    omission or concealment ("omission-based claims"). [5]  These claims are premised on allegations

6    that Honda knew of the presence of the alleged defect in the vehicles at issue at the time of sale

7    but failed to disclose this when making other representations to consumers about the reliability

8    and safety of the vehicles.[6]  *See, e.g.*, ACAC ¶¶ 226-33.  Plaintiffs allege that they were harmed by

9    this conduct because they paid more for their vehicles than they otherwise would have and

10    because the vehicles have diminished value as a result of containing the alleged defect.  *See, e.g.*,

11    *id.* ¶ 519.

12    Honda moves to dismiss Plaintiffs' omission-based claims on the grounds that: (1)

13    Plaintiffs fail to satisfy Rule 9(b)'s pleading standard; (2) Plaintiffs fail to plead pre-sale

14    knowledge; (3) Plaintiffs fail to plead that Honda engaged in active concealment; and (4) the

15    claims of some Plaintiffs are subject to dismissal for additional reasons that are specific to the

16    laws of the states under which the claims arise.  Mot. at 10-17.

**1.    Rule 9(b)**

17    Honda argues that Plaintiffs' omission-based claims sound in fraud and are, therefore,

18    subject to Rule 9(b)'s heightened pleading requirements.  Mot. at 11.  Honda further contends that

19    Plaintiffs have failed to satisfy Rule 9(b) because they do not plead sufficient facts to indicate the

20    information that Honda should have disclosed or where Honda should have disclosed the omitted

21    information.  *Id.*  Honda contends that, to satisfy Rule 9(b), Plaintiffs are also required to identify

[5] The claims include those under the CLRA (claim 1), the UCL (claim 2), and the FAL (claim 3); those under the consumer protection statutes of Iowa (claim 10), Florida (claim 11), New York (claim 14), Illinois (claims 19 and 20), Arizona (claim 23), Nevada (claim 24), Massachusetts (claims 27 and 28), and Michigan (claim 31); and Plaintiffs' claim "under the common law of fraudulent concealment" (claim 7).

[6] Plaintiffs represent in their opposition that their claims are based on alleged omissions only, and not on alleged affirmative misrepresentations.  *See* Opp. at 12 n.24.

United States District Court
Northern District of California

in the complaint "representative samples of advertisements, offers, or other representations that they relied on to make their purchasing decision," which allegedly did not contain the information that Honda should have disclosed.  *Id.* at 12 (relying on *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1002 (N.D. Cal. 2009)).

Citing *MacDonald v. Ford*, 37 F. Supp. 3d 1087, 1096 (N.D. Cal. 2014) and other California district court cases relying on that opinion, Plaintiffs argue that a "relaxed" pleading standard applies to their omission-based claims.  Opp. at 11.  Plaintiffs contend that, to plausibly plead an omission-based claim under this relaxed standard, they are required to allege only that Honda was the vehicles' manufacturer or distributor (the "who"), that Honda had knowledge of the defect (the "what"), that Honda should have disclosed the presence of the defect in the vehicles prior to the sales of the vehicles (the "when"), and that Honda should have disclosed the presence of the defect through the "various channels of information" through which it sold the vehicles (the "where").  *Id.* at 12.  Plaintiffs contend that they have alleged sufficient facts to satisfy the relaxed standard, and that, although they are not required to identify specific materials in which Honda should have disclosed the presence of the defect or the representations that Plaintiffs reviewed before purchasing the vehicles that omitted information about the defect, they have done so in the ACAC.  *Id.*

First, Rule 9(b) applies to Plaintiffs' omission-based claims because they sound in fraud. The Ninth Circuit held in *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009), that Rule 9(b) applies to *any* claim that is grounded fraud, regardless of the claim's elements or the substantive law that gives rise to it.[7]  *See id.* at 1125-27 (holding that Rule 9(b) applies to the pleading of a claim "as a whole" if it is "grounded in fraud" even if "fraud is not a necessary element" of the claim, and holding that the applicability of Rule 9(b) is "irrespective of the source of the subject matter jurisdiction, and irrespective of whether the substantive law at issue is state or federal").

---

[7] For this reason, Plaintiffs' contention that "Rule 9(b) does not apply to Florida and Illinois statutory fraud claims" fails.  *See* Opp. at 12 n.25.

The Court declines to follow district court decisions adopting the position that a "relaxed" pleading standard applies to omission-based claims. *MacDonald* held that "claims based on an omission 'can succeed without the same level of specificity required by a normal fraud claim,'" 37 F. Supp. 3d at 1096, and relied on *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1267 (C.D. Cal. 2007), to support that proposition. But *Baggett* predated *Kearns*.

Honda cites *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1002 (N.D. Cal. 2009), for the proposition that a plaintiff asserting an omission-based claim must allege the information that the defendant allegedly omitted and where the omitted information should or could have been revealed, as well as provide representative samples of advertisements, offers, or other representations that the plaintiff relied on to make her purchase but that failed to include the allegedly omitted information. Mot. at 11-12. This Court previously relied on *Marolda*'s standards for evaluating the sufficiency of allegations supporting an omission-based claim in *Williams*, another vehicle-defect case. *See* 2021 WL 2531177, at *7. The Court finds it appropriate to do so again here, given that *Marolda* applied the *Kearns* standard while Plaintiffs' authorities did not.

Plaintiffs have pled some, but not all, of what is necessary to meet this standard. As to the content of the alleged omission, Plaintiffs contend in their opposition that they allege that Honda "failed to disclose that the Vehicles' electrical systems contain a Defect, which results in, *inter alia*, the inability to operate the Vehicles and the failure of mandated safety features." Opp. at 13. Honda argues that Plaintiffs' allegations in the ACAC do not actually identify the vehicle's electrical system or electrical systems as containing the alleged defect and, for that reason, fail to allege with the required degree of specificity what Honda should have disclosed. The Court agrees with Honda. As discussed above, the ACAC alleges that the vehicles at issue contain multiple "electrical systems," *see* ACAC ¶ 146, but it does not identify *any* of these electrical systems (or any other specific component or system) as the location of the defect. Also as discussed above, Plaintiffs have failed to allege sufficient facts to support an inference that the alleged defect causes the battery problems and component failures alleged in the ACAC. Accordingly, there is a mismatch between what Plaintiffs argue in their opposition and what the

11

United States District Court
Northern District of California

1    ACAC alleges with respect to what Honda should have disclosed.  This alone makes all of

2    Plaintiffs' omission-based claims subject to dismissal.

3          As to where Honda should have disclosed the omitted information, Plaintiffs point to

4    allegations that Honda could have disclosed the presence and effects of the alleged defect in "sales

5    documents, displays, advertisements, warranties, owner's manuals, or on Honda's website" and

6    through "channels" including "(a) point of sale communications; (b) the owner's manual; and/or

7    (c) direct communication to Class members through means such as state vehicle registry lists and

8    e-mail notifications."  Opp. at 13 (citing ACAC ¶ 231).  Honda fails to respond to this argument in

9    its reply, *see* Opp. at 7-10, which the Court interprets as a concession that the allegations to which

10   Plaintiffs point are sufficient to identify where Honda should have disclosed the allegedly omitted

11   information.

12         As to the representations that Plaintiffs relied upon in making their purchase that failed to

13   include the allegedly omitted information, Plaintiffs point to averments they relied on in Honda's

14   online marketing materials, stickers displayed at Honda's dealerships, and representations made

15   by sales staff at Honda dealerships, none of which contained the allegedly omitted information.

16   *See, e.g.*, ACAC ¶¶ 17, 25.  Once again, Honda fails to respond to this argument in its reply, *see*

17   Opp. at 7-10, which the Court interprets as a concession that the allegations to which Plaintiffs

18   point are sufficient.

19         In sum, Plaintiffs have failed to plead with the required degree of specificity what Honda

20   should have disclosed but didn't.  Their allegations do not satisfy the heightened pleading

21   requirements of Rule 9(b) for that reason.

22                        **2.      Pre-Sale Knowledge**

23         Honda also argues that Plaintiffs fail to plausibly plead that Honda knew of the presence of

24   the alleged defect in the vehicles at issue at the time of sale or lease to each Plaintiff.  Mot. 12-16.

25         Plaintiffs do not dispute that a failure to plausibly allege that Honda had pre-sale

26   knowledge of the alleged defect would warrant dismissing their omission-based claims.  Plaintiffs

27   argue that knowledge may be alleged generally, and that their allegations are sufficient to raise a

28   plausible inference that Honda knew at the time of sale of the presence of the alleged defect in the

vehicles at issue and of the resulting problems.  Opp. at 13-14.  Plaintiffs point to the following allegations in the ACAC as indicating that Honda had the required pre-sale knowledge: (1) allegations regarding consumer complaints and communications by Honda regarding battery problems in the vehicles at issue, ACAC ¶¶ 150-55, 165-74, 184-89, 198, 161-62, 193-96, 199-209; (2) allegations regarding consumer complaints and communications by Honda regarding battery issues in vehicle models that pre-date the models of the vehicles at issue, *id.* ¶¶ 181, 190-91, 212-17; (3) allegations regarding Honda's pre-sale design process and testing, *id.* ¶¶ 157-60; and (4) allegations regarding reports and data collected by Honda's customer relations, warranty, and service departments regarding battery problems and battery replacements, *id.* ¶¶ 175-80, 188.

The Court recognizes that knowledge may be alleged generally.  *See* Fed. R. Civ. P. 9(b) (providing that "knowledge and other conditions of a person's mind may be alleged generally"). Plaintiffs' allegations, however, do not plausibly support the inference that Honda knew of a specific defect at the time of sale.  *See Victorino v. FCA US LLC*, No. 16cv1617-GPC(JLB), 2018 WL 1083395, at *8 (S.D. Cal. Feb. 27, 2018) ("When addressing a defendant's pre-sale knowledge, courts have held that the defendant must have knowledge of the specific defect alleged, not a general defect.").  Plaintiffs' allegations regarding consumer complaints, reports and communications by Honda, and Honda's pre-sale testing suggest that Honda was arguably aware that the vehicles at issue suffered from some battery-related issues, but those allegations do not plausibly support an inference that these problems stemmed from a common defective component or system.  Plaintiffs' allegations regarding consumer complaints about battery problems in other Honda models not at issue in this action do not supply that missing connection, because Plaintiffs have not alleged any facts suggesting that the other vehicle models shared a common defective part or system.  *See In re Samsung Galaxy Smartphone Mktg. & Sales Practices Litig.*, Case No. 16-cv-06391-BLF, 2020 WL 7664461, at *5-6 (N.D. Cal. Dec. 24, 2020) (holding that plaintiffs may not "piggyback" on the presence of an alleged defect in another product model "with conclusory allegations of similarities").

### 3.      Active Concealment

Honda contends that, to the extent that Plaintiffs' omission-based claims are premised on a

13

1   theory of active concealment, the claims fail in light of Plaintiffs' failure to plead that Honda knew

2   of the alleged defect and took any affirmative steps to conceal it.  Mot. at 15-16.

3          Plaintiffs argue that their allegations are sufficient to support a theory of active

4   concealment, pointing to the same allegations discussed above.  Citing *Duttweiler v. Triumph*

5   *Motorcycles (Am.) Ltd.*, No. 14-CV-04809-HSG, 2015 WL 4941780, at *5 (N.D. Cal. Aug. 19,

6   2015), Plaintiffs argue that their allegations about consumer complaints regarding battery

7   problems, combined with allegations that the replacement of batteries or the installation of new

8   software in some affected vehicles was ineffective in remedying the battery problems, *see* ACAC

9   ¶¶ 150, 172, 186-87, 189, 198, plausibly plead that Honda took active steps to conceal the

10   presence of the alleged defect.

11          Because both parties rely on California authorities to argue that Plaintiffs have, or have

12   not, adequately pled active concealment, the Court does the same.  "An allegation of active

13   concealment must plead more than an omission; rather, a plaintiff must assert affirmative acts of

14   concealment; e.g., that the defendant sought to suppress information in the public domain or

15   obscure the consumers' ability to discover it."  *Duttweiler*, 2015 WL 4941780, at *5 (citations and

16   internal quotation marks omitted).  Additionally, "[a]s a threshold matter, [a plaintiff] must aver

17   (1) the existence of a material fact (2) of which Defendant was aware."  *In Re Samsung Galaxy*

18   *Smartphone*, 2020 WL 7664461, at *9 (citation and internal quotation marks omitted).

19          Here, Plaintiffs' failure to plausibly allege that Honda had knowledge of the alleged defect

20   at the time of sale, as discussed in more detail above, is an independent ground for dismissing their

21   omission-based claims to the extent that they are premised on a theory of active concealment.  *See*

22   *id.* (holding that non-disclosure claim based on a theory of active concealment was subject to

23   dismissal on the basis that plaintiffs "have not sufficiently pled knowledge").

24          Plaintiffs' claims are subject to dismissal for the additional reason that Plaintiffs have not

25   plausibly pled any affirmative acts by Honda "to suppress information in the public domain or

26   obscure the consumers' ability to discover it."  *See Duttweiler*, 2015 WL 4941780, at *5 (citations

27   and internal quotation marks omitted).  As noted, Plaintiffs contend that the alleged

28   ineffectiveness of attempts to remedy the alleged defect by replacing batteries or software in the

United States District Court
Northern District of California

14

vehicles of some of the consumers who complained about battery problems are enough to plausibly allege that Honda engaged in affirmative acts to conceal the defect.

In *Duttweiler*, this Court recognized that other courts have held that a plaintiff can allege the affirmative acts required for an active concealment claim by averring that the defendant "(in addition to receiving consumer complaints) *both*: (1) substituted broken defective parts with equally defective replacements; and (2) represented to consumers that those defective replacements corrected the problem."[8] 2015 WL 4941780, at *5 (citations omitted) (emphasis added).

Here, Plaintiffs point to no allegations suggesting that Honda replaced "defective parts" with "equally defective parts," whether in the vehicles of consumers who complained about battery problems or otherwise. The only parts that Plaintiffs allege were replaced in response to consumer complaints were batteries and software, but Plaintiffs do not allege that the replacement batteries or software were defective. As discussed above, Plaintiffs argue in their opposition that the alleged defect is located in the vehicles' "electrical system." Plaintiffs do not allege that Honda ever replaced any "electrical system" in the vehicles with an equally defective electrical system. Accordingly, the ACAC does not plausibly plead that Honda took affirmative acts to conceal the alleged defect.

### 4. Honda's Other Arguments

Honda contends that the omission-based claims of some Plaintiffs fail for additional reasons that depend on the application of the law of the state under which each claim arises. *See* Mot. at 16-17. In response, Plaintiffs argue that a number of exceptions save their claims from dismissal. Opp. at 18-19. Because the parties' briefing of these issues is not sufficiently comprehensive, and because dismissal of the claims in question is warranted for multiple other

---

[8] In their opposition, Plaintiffs contend, incorrectly, that this Court held in *Duttweiler* that *either* of these elements would suffice to allege the required affirmative steps to conceal. *See* Opp. at 17 ("Active concealment is found where the defendant receives consumer complaints but merely substitutes the defective part with an equally defective replacement *or* tells consumers that the replacement parts correct the problem.") (citing *Duttweiler*, 2015 WL 4941780, at *5) (emphasis added).

United States District Court
Northern District of California

1   reasons, as discussed above, the Court declines to reach Honda's additional arguments at this time.

2   **C.      Breach of Express Warranty**

3        Plaintiffs assert claims for breach of an express warranty under the laws of various states.

4   These claims are premised on allegations that Honda breached the NVLW.  ACAC ¶¶ 218-24.

5   The NVLW covers "[a]ll new Honda vehicles" for three years or 36,000 miles and requires Honda

6   to "repair or replace any part that is defective in material or workmanship under normal use."  *Id.*

7   ¶ 219.  Plaintiffs allege that each of them experienced unspecified "issues" with their vehicles as a

8   result of the alleged defect at an unspecified time after purchasing the vehicle.  *See id.* ¶¶ 19, 27,

9   33, 36, 42, 49, 55, 61, 69, 77, 83, 90, 101.  Plaintiffs further aver that Honda breached the NVLW

10  by failing to "repair or remedy" the alleged defect in the vehicles at issue when "[c]lass members

11  complained to authorized Honda dealerships and technicians about the Parasitic Drain Defect[.]"

12  *Id.* ¶¶ 218-25.

13       Honda argues that Plaintiffs' claims for breach of express warranty are subject to dismissal

14  because Plaintiffs have not plausibly alleged that Honda breached the NVLW.[9]  Honda contends

15  that to plausibly allege that Honda breached the NVLW by failing to repair or remedy the alleged

16  defect, Plaintiffs must allege facts raising the inference that (1) the NVLW was in effect when

17  they experienced "issues" with their vehicles; (2) the alleged defect is a "material or

18  workmanship" defect covered by the NVLW; and (3) Plaintiffs provided Honda with an

19  opportunity to repair or replace parts of the vehicles at issue that were affected by the alleged

20  defect.[10]  As discussed below, Honda's arguments are well-taken.

21              **1.      Durational and Mileage Limits of the NVLW**

22       Honda argues that Plaintiffs fail to allege the date or mileage of their vehicles when they

23  allegedly experienced "issues" with them, which they must do to raise the inference that the

---

[9] Honda moves to dismiss the following claims for breach of express warranty: claims 4, 8, 12, 15, 17, 26, 29 and 32.

[10] Honda also argues that the breach-of-express-warranty claims of Plaintiffs Brendan Sanger and Harry Rapp, under Michigan and Arizona law, respectively, fail for other reasons that are based on the law of those states.  The Court does not reach this additional argument by Honda at this juncture because all of Plaintiffs' breach-of-express-warranty claims fail for other reasons.

United States District Court
Northern District of California

1   NVLW was in effect at the time that Honda allegedly breached the NVLW by failing to repair or

2   remedy the alleged defect.  Mot. at 6-7.

3          Plaintiffs do not dispute that they do not allege the date or mileage of their vehicles at the

4   time that they experienced "issues" as a result of the alleged defect, and they also do not dispute

5   that their breach-of-express-warranty claims are subject to dismissal as a result.  Plaintiffs instead

6   argue that the durational and mileage limits of the NVLW are unenforceable because they are

7   unconscionable.  Opp. at 7.  Plaintiffs point to allegations that a gross disparity in bargaining

8   power existed between consumers of the vehicles at issue and Honda because Honda was aware

9   that the alleged defect was present in the vehicles at the time of sale and failed to disclose it.

10  ACAC ¶ 225.  Plaintiffs also argue that they "should be permitted to pursue the unconscionability

11  issue in discovery."  Opp. at 7.

12         Defendants respond that Plaintiffs' allegations are insufficient to plausibly plead

13  procedural and substantive unconscionability as to the NVLW's durational and mileage

14  limitations, because Plaintiffs have not plausibly alleged that a bargaining imbalance between

15  consumers and Honda existed on the basis that Honda had pre-sale knowledge of the alleged

16  defect and failed to disclose it, or that Plaintiffs lacked meaningful alternatives to purchasing the

17  vehicles at issue.  Reply at 3-4.

18         The parties appear to agree that, unless Plaintiffs have plausibly pled that the durational

19  and mileage limits of the NVLW are unconscionable, Plaintiffs' breach-of-express-warranty

20  claims are subject to dismissal for failure to plead the date or mileage when Plaintiffs allegedly

21  experienced problems with their vehicles as a result of the alleged defect.

22         Even though the breach-of-express-warranty claims at issue arise out of the laws of

23  multiple states, both parties cite *Williams*, 2021 WL 2531177, at *5, for the standards for pleading

24  unconscionability in the context of breach-of-express-warranty claims brought under California

25  law.  *See* Mot. at 7 n.5; Opp. at 7.  Accordingly, the Court relies here on the California-based

26  unconscionability standards discussed in *Williams*.

27         "Unconscionability is a question of law for the court."  *Seifi v. Mercedes-Benz USA, LLC*,

28  No. C12-5493 TEH, 2013 WL 2285339, at *4 (N.D. Cal. May 23, 2013).  An agreement is

United States District Court
Northern District of California

enforceable unless it is both procedurally and substantively unconscionable. *Armendariz v. Foundation Health Psychcare Svcs. Inc.*, 24 Cal. 4th 83, 114 (Cal. 2000). Procedural and substantive unconscionability need not be present in equal amounts. *Id.* The two are evaluated on a "sliding scale," which means that the more evidence of procedural unconscionability there is, the less evidence of substantive unconscionability is needed to render the agreement unenforceable, and vice versa. *Id.* However, both forms of unconscionability must be present in some amount "for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." *Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519, 1521 (Ct. App. 1997), *as modified* (Feb. 10, 1997).

Plaintiffs have not plausibly pled that the NVLW's durational and mileage limitations are procedurally unconscionable. Procedural unconscionability exists when the contract reflects "inequality of bargaining power which results in no real negotiation and 'an absence of meaningful choice.'" *Aron v. U-Haul Co. of California*, 143 Cal. App. 4th 796, 808, (Ct. App. 2006) (citation omitted). Plaintiffs aver that Honda was aware that the alleged defect was present in the vehicles at the time of sale and failed to disclose the presence of the defect to consumers and that, as a result, a gross disparity in bargaining power existed between consumers and Honda. ACAC ¶ 225. For the reasons discussed above, Plaintiffs have not plausibly pled that Honda had pre-sale knowledge of the alleged defect or that Honda fraudulently failed to disclose the presence of the alleged defect. Accordingly, the Court cannot infer that a gross disparity in bargaining power existed between Plaintiffs and Honda on the basis that Honda knew of and failed to disclose the alleged defect at the time of sale. The Court also cannot infer that Plaintiffs lacked a meaningful choice when purchasing the vehicles at issue, because Plaintiffs have not pointed to any allegations that would support that inference.

Plaintiffs also have not plausibly pled that the NVLW's durational and mileage limitations are substantively unconscionable. Substantive unconscionability "focuses on the actual terms of the agreement and evaluates whether they create 'overly harsh' or 'one-sided' results as to 'shock the conscience.'" *Aron*, 143 Cal. App. 4th at 808 (citation omitted). As Honda correctly notes, this Court held in *Williams* that it would be "somewhat unlikely that a routine time-and-miles limit

18

in a car warranty would rise to th[e] level" of substantive unconscionability.  2021 WL 2531177, at *5 (citation omitted).  Plaintiffs have neither distinguished *Williams* nor pointed to any facts in the ACAC that would support an inference that the durational and mileage limitations of the NVLW are overly harsh or so one-sided as to shock the conscience.  As the Court did in *Williams* when presented with similar allegations, *see id.*, the Court urges Plaintiffs to consider carefully whether they can truthfully plead facts sufficient to plausibly allege that the NVLW's terms "shock the conscience" before repeating their unconscionability argument in any amended complaint.

### 2.      Design Defect

Honda argues that Plaintiffs cannot plausibly allege that Honda breached the NVLW by failing to repair or remedy the alleged defect, because they have not plausibly alleged that the alleged defect is a manufacturing or workmanship defect that is covered under the NVLW.  Honda contends that the NVLW covers only parts that are defective in material or workmanship under normal use, and that courts have held that warranties for materials and workmanship defects do not apply to alleged design defects.  Mot. at 7.

Plaintiffs do not dispute that their breach-of-express-warranty claims, except for those under the laws of Iowa, Massachusetts, Nevada, and Michigan, are subject to dismissal to the extent that they are predicated on an alleged design defect as opposed to a materials or workmanship defect.[11]  Opp. at 5-6.  Relying on California authorities only, Plaintiffs contend that, as to those claims that *could* be dismissed for failure to plead a materials or workmanship defect, their allegations are sufficient to plausibly plead a materials or workmanship defect because they "need only allege," and have alleged, that the vehicles at issue "include a system or part (i.e. the electrical system (see supra §I) that is 'defective in . . . design and manufacture',

---

[11] Plaintiffs contend that Honda has not shown that their breach-of-express-warranty claims under the laws of Iowa, Massachusetts, Nevada, and Michigan can be dismissed on the basis that design defects are excluded from "material and workmanship" warranties in those jurisdictions.  Opp. at 5 n.8.  Honda does not respond to this argument in its reply, which the Court interprets as a concession that Plaintiffs' breach-of-express-warranty claims based on the laws of these four states are not subject to dismissal for failure to plausibly plead that the alleged defect is a materials or workmanship defect.

United States District Court
Northern District of California

1   along with plausible facts that the defective system differs from the product [Honda] intended to

2   sell in ways that 'could be' attributable to a materials or workmanship defect." *Id.* at 6.

3        Honda responds that, even under the California authorities upon which Plaintiffs rely,

4   Plaintiffs have not plausibly pled that the alleged defect is a materials or workmanship defect

5   because Plaintiffs' allegations about the alleged defect are conclusory.  Reply at 4.

6        The Court agrees with Honda.  Plaintiffs' allegations are insufficient to plead a materials or

7   workmanship defect under the authorities they cite in their opposition.[12]

8        Under California law, a defect in the manufacture of a product exists if the product

9   "deviates from the manufacturer's intended result."  *Barker v. Lull Eng'g Co.*, 20 Cal. 3d 413, 424

10   (1978).  "A design defect, by contrast, cannot be identified simply by comparing the injury-

11   producing product with the manufacturer's plans or with other units of the same product line,

12   since by definition the plans and all such units will reflect the same design."  *Id.* at 429.

13        In the cases that Plaintiffs cite, the plaintiff plausibly pled that an alleged defect was

14   caused by manufacturing or workmanship problems by identifying the component or system

15   affected by the alleged defect *and* by alleging facts that raised the inference that, in light of the

16   alleged defect's effects on the performance of the product at issue, the alleged defect "could be

17   attributed" to manufacturing problems.  For example, in *Enea v. Mercedes-Benz USA, LLC*, the

18   plaintiff alleged that certain vehicles' sunroofs contained a manufacturing defect that caused the

19   sunroofs to shatter spontaneously while the vehicles were being driven.  No. 18-CV-02792-HSG,

20   2019 WL 402315, at *3 (N.D. Cal. Jan. 31, 2019).  This Court concluded that the plaintiff

21   plausibly pled that the defect located in the vehicles' sunroofs "could be attributed" to

22   manufacturing problems because the allegations regarding the symptoms of the defect (i.e., that it

23   caused the sunroofs to shatter spontaneously while the vehicle was being driven) raised the

24   inference that the sunroofs "differ from the product the manufacturer intended to sell in ways that

---

[12] As Plaintiffs fail to plead a materials or workmanship defect under the California authorities
they cite in their opposition, the Court need not decide at this juncture whether the standard for
pleading a materials or workmanship defect under California law differs from the standards that
would apply to Plaintiffs' non-California express-warranty claims under the laws of other states.

could be attributable to a materials or workmanship defect." *Id.* Courts in this district have

reached similar conclusions when considering similar allegations. *See Cabebe v. Nissan of N.*

*Am., Inc.*, No. 18-CV-00144-WHO, 2018 WL 5617732, at *1, * (N.D. Cal. Oct. 26, 2018)

(holding that the plaintiff plausibly pled that an alleged defect was a manufacturing defect because

the plaintiff alleged that the defect was located in the vehicles' continuously variable transmission

and resulted in a significant delay in the vehicles' response while attempting to accelerate from a

stop and, in light of the defect's alleged effects on the vehicle's performance, "Nissan could not

have intended for the Class Vehicles to operate as described throughout the FAC").

Here, Plaintiffs allege conclusorily that the vehicles at issue "contain a defect in the

'design and/or manufacturing process.'" ACAC ¶ 1. For the reasons discussed above, Plaintiffs'

allegations fail to plausibly support an inference that the vehicles at issue contain a defect of any

kind. While the battery problems that Plaintiffs describe in the ACAC are suggestive of a

materials or workmanship defect that Honda could not have intended, Plaintiffs' allegations are

insufficient to plausibly connect such battery problems to a parasitic draining defect in the

vehicles' electrical systems or any other common component or system.

### 3.     Opportunity to Repair or Replace

Honda contends that Plaintiffs cannot plausibly allege that Honda breached the NVLW

because they have not alleged facts showing that Plaintiffs (as opposed to some other nonparty)

provided Honda with an opportunity to repair or replace the parts of their vehicles that were

affected by the alleged parasitic draining defect. Mot at 7 & n.6. Honda contends that a claim for

breach of an express warranty that is predicated on allegations that the defendant breached the

warranty by failing to repair or replace a defective product fails in the absence of allegations that

the plaintiff provided the defendant with an opportunity to repair or replace the defective product

in the first instance. *Id.*

Plaintiffs do not dispute that the ACAC does not allege that they themselves (as opposed to

other consumers of the vehicles at issue) provided Honda with an opportunity to repair or replace

any parts of their vehicles that were allegedly impacted by the alleged defect. Plaintiffs do not

squarely address Honda's contention that this failure is a valid ground for dismissing their breach-

United States District Court
Northern District of California

1   of-express-warranty claims.  Plaintiffs instead invoke the essential purpose doctrine.  Plaintiffs do

2   not explain the relevance of the essential purpose doctrine to the analysis of whether their claims

3   are subject to dismissal for failure to plead that they gave Honda an opportunity to repair the

4   alleged defect in their vehicles.  Opp. at 6-7.  Plaintiffs merely cite to conclusory allegations in the

5   ACAC providing that unidentified people who owned or leased the vehicles at issue (who are not

6   alleged to be parties in this litigation) provided Honda with "numerous opportunities to repair the

7   Defect" but Honda failed to do so.  Opp. at 6 (citing ACAC ¶¶ 6, 179).  Relying on *Philippine*

8   *Nat'l Oil Co. v. Garrett Corp.*, 724 F.2d 803, 808 (9th Cir. 1984), Plaintiffs contend that, in light

9   of the "repeated repair attempts" by these unidentified people, the Court may infer that the

10  NVLW's "replace or repair remedy" fails of its essential purpose.  *Id.*

11      In its reply, Honda argues that Plaintiffs cannot invoke the essential purpose doctrine

12  because they aver no facts that raise the inference that the NVLW "has failed them in any way," as

13  "Plaintiffs do not allege they made any repair attempt, let alone repeated repair attempts within a

14  reasonable time."  Reply at 3.

15      Honda cites authorities, which Plaintiffs have not addressed or distinguished, providing

16  that a claim for breach of an express warranty can be dismissed for failure to allege facts showing

17  that the plaintiff provided the defendant with the opportunity to remedy a defective product

18  according to the terms of the warranty.  *See* Mot. at 7 n.6; *see also, e.g.*, *In re Myford Touch*

19  *Consumer Litig.*, No. C-13-3072 EMC, 2015 WL 5118308, at *5 (N.D. Cal. Aug. 31, 2015)

20  (holding that claims for breach of express warranty were subject to dismissal in light of plaintiffs'

21  failure to allege that they "brought their cars in for repairs" and failure "to cite any case . . . that

22  supports their contention that an individual can maintain a claim for breach of express warranty

23  where that individual did not even give the defendant an opportunity to honor the terms of that

24  warranty (i.e., attempt to fix or replace the product)"); *Aprigliano v. Am. Honda Motor Co.*, 979 F.

25  Supp. 2d 1331, 1340 (S.D. Fla. 2013) (same based on failure to allege that plaintiffs "presented

26  their motorcycles to Honda for repair during the warranty periods").  The Court interprets

27  Plaintiffs' failure to address these authorities as a concession that their express-warranty claims

28  are subject to dismissal to the extent that they have failed to allege facts showing that they

22

provided Honda with the opportunity to remedy the alleged defect in their vehicles.

As noted, Plaintiffs attempt to invoke the essential purpose doctrine.  Because Plaintiffs rely exclusively on California authorities discussing the doctrine, the Court does the same.

In *Philippine Nat'l Oil Co.*, which Plaintiffs cite in their opposition, the Ninth Circuit held that, where a "limited warranty 'fails of its essential purpose,' the buyer is entitled to the full range of UCC remedies" notwithstanding any contractual limitations as to the buyer's remedies.  724 F.2d at 807 (citing Cal. Comm. Code § 2719(d)).  It further held that "a repair or replace remedy" under a limited warranty "fails of its essential purpose only if repeated repair attempts are unsuccessful within a reasonable time."  *Id.*  In a subsequent opinion, the Ninth Circuit held that the essential purpose doctrine "becomes operative when a party is deprived of its contractual remedy" and that the doctrine cannot be invoked where there is "no evidence" that the party "has been deprived of this remedy."  *O'Neill v. United States*, 50 F.3d 677, 687 (9th Cir. 1995) (citation and internal quotation marks omitted).

Here, as Honda correctly points out, the ACAC does not contain any averments showing that any Plaintiff made any attempt to obtain a repair or replacement during the life of the NVLW. Accordingly, the Court cannot infer that Plaintiffs made "*repeated*" and unsuccessful attempts to have Honda repair or replace a part in their vehicles that was affected by the alleged defect, which is what the essential purpose doctrine requires.  *See Philippine Nat'l Oil Co.*, 724 F.2d at 807 (emphasis added).  While Plaintiffs allege that some unidentified people who are not parties to this litigation attempted to have their vehicles repaired or replaced by Honda to remedy battery problems allegedly caused by the alleged defect, and that those repair or replace attempts were futile, Plaintiffs cannot invoke the essential purpose doctrine by relying on the purported experiences of other people.  The authorities discussed above, as well as opinions by courts in this District, suggest that only the repeated attempts of the "party" suing for breach of a contract are relevant.  *See O'Neill*, 50 F.3d at 687 (holding that the essential purpose doctrine "becomes operative when *a party* is deprived of its contractual remedy") (citation and internal quotation marks omitted) (emphasis added); *see also Tabak v. Apple, Inc.*, No. 19-CV-02455-JST, 2020 WL 9066153, at *14 (N.D. Cal. Jan. 30, 2020) (holding that the "allegations in the FAC do not

successfully invoke the essential purpose doctrine" because "none of the named plaintiffs has plausibly alleged that Apple *denied him or her* of Limited Warranty coverage with respect to their original devices or any replacement devices during the life of the Limited Warranty") (emphasis added).

Plaintiffs' express-warranty claims are thus subject to dismissal for failing to plead that they provided Honda with an opportunity to remedy the alleged defect in their vehicles under the terms of the NVLW.

### D.    Breach of Implied Warranty of Merchantability

Plaintiffs assert claims for breach of the implied warranty of merchantability under the laws of various states.  The claims are based on allegations that Honda provided Plaintiffs with an implied warranty that the vehicles at issue were merchantable and fit for the ordinary purposes for which they were sold, but the vehicles are not merchantable and fit for their ordinary purpose of providing safe and reliable transportation because they contain the alleged defect, which creates a risk of stalling and depleting the vehicles' battery prematurely.  *See, e.g.*, ACAC ¶¶ 326-39.

Honda moves to dismiss Plaintiffs' claims for breach of the implied warranty of merchantability on the grounds that (1) any implied warranty is limited to the duration of the NVLW, but Plaintiffs have not averred facts showing that the alleged defect manifested in their vehicles while the NVLW was in effect; (2) Plaintiffs do not plead facts showing that their vehicles are unmerchantable as a result of the alleged defect; and (3) the implied-warranty claims of some Plaintiffs fail for additional reasons that are based on the laws of the states under which the claims arise.[13]

### 1.    Limitations on the Implied Warranty of Merchantability

Honda argues that all of Plaintiffs' implied-warranty claims fail because the NVLW limits the duration of any implied warranty to the duration of the NVLW, and Plaintiffs have not alleged any facts showing that the alleged defect manifested in their vehicle while the NVLW was in

---

[13] The implied-warranty claims that Honda seeks to dismiss are claims: 5, 9, 13, 16, 18, 22, 25, 30, and 33.

United States District Court
Northern District of California

1  effect.  Mot. at 8.  Honda does not point to any allegations in the ACAC showing that the

2  NVLW's terms limited the duration of implied warranties to the duration of the NVLW.  Honda,

3  instead, points to an attachment to its motion, which it labeled simply as "Exhibit A" and which

4  appears to be a copy of a set of various warranties offered by Honda for an unidentified "2007

5  Honda."  *See* Dkt. No. 52-2 at 7 ("This is a brief summary of the warranties covering your 2017

6  Honda.").  In a footnote in its opening brief, Honda states, without providing any description of

7  the document in question or any information that would permit the Court to understand how the

8  document relates to Plaintiffs' allegations, that a court may consider documents incorporated by

9  reference in a complaint or upon which a complaint necessarily relies.  *See* Mot. at 6 n.4.

10  Plaintiffs do not respond to any of Honda's arguments.  *See* Opp. at 7-11.

11  Although Plaintiffs have not objected to the Court's consideration of Exhibit A to Honda's

12  motion, the Court declines to consider that document under the incorporation-by-reference

13  doctrine at this time.  Honda neither provides any information as to what the document is nor

14  authenticates it.  It is not clear whether this document is relevant to any of the vehicles at issue

15  here, and Honda does not specify where the ACAC supposedly relies on it.  Without definitive

16  information as to what the document in question is, or how it relates to Plaintiffs' allegations, the

17  Court cannot determine whether the document is one upon which the ACAC necessarily relies.

18  *See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) (holding that the doctrine

19  of incorporation by reference permits a court "to consider documents in situations where the

20  complaint necessarily relies upon a document or the contents of the document are alleged in a

21  complaint, the document's authenticity is not in question and there are no disputed issues as to the

22  document's relevance").

23  Because Honda's arguments about the limitations on the implied warranty of

24  merchantability depend on the Court's consideration of Exhibit A under the incorporation-by-

25  reference doctrine, the Court does not reach those arguments at this juncture.

26  **2.    Merchantability**

27  Relying on California authorities only, Honda contends that all of Plaintiffs' breach-of-

28  implied-warranty claims fail because they have not alleged facts showing that the vehicles at issue

United States District Court
Northern District of California

1    are unmerchantable as a result of the alleged defect.  Mot. at 9.  Honda argues that the ACAC does

2    not raise the inference that the vehicles at issue cannot be operated safely, that Plaintiffs were

3    afraid to drive their vehicles, or that any of the "issues" that Plaintiffs allegedly experienced with

4    their vehicles as a result of the alleged defect were more than a minor nuisance.  *Id.*  Honda also

5    argues that, at best, Plaintiffs allege that their vehicles have the "potential for premature battery

6    failure," which is not enough to render them unmerchantable because a vehicle is not

7    unmerchantable if it can still be driven.  *Id.*

8         Plaintiffs do not dispute that all of their implied-warranty claims would be subject to

9    dismissal to the extent that they have failed to plausibly plead that the vehicles at issue are

10   unmerchantable.  Relying on *Enea*, 2019 WL 402315, at *5, Plaintiffs argue that a vehicle is

11   unmerchantable if it contains a defect that creates a safety risk for a driver on the road.  Opp. at 8-

12   9.  Plaintiffs argue that they have plausibly alleged that their vehicles are unmerchantable under

13   *Enea's* standard, because they allege in the ACAC that the alleged defect results in battery

14   problems that create the risk of the vehicles stopping while being driven and the risk that certain

15   components could fail, including mandated safety features, such as emergency hazard lights and

16   headlights.  *See, e.g.*, ACAC ¶¶ 4, 142-44.

17        Because the parties rely exclusively on California authorities to address the question of

18   whether Plaintiffs have plausibly alleged that the vehicles at issue are unmerchantable, the Court

19   does the same.

20        In *Enea*, which Honda has not distinguished, this Court held that allegations that a vehicle

21   contains an alleged defect that renders the sunroof of the vehicles "prone to" shattering while the

22   vehicles are in motion were sufficient under California law to plausibly plead that the vehicles

23   were unmerchantable.  2019 WL 402315, at *5.  The Court reasoned that these allegations raised

24   the inference that the "alleged defect poses a risk for any driver on the road," which is "more than

25   sufficient" for an implied-warranty claim to "survive at the pleading stage."  *Id.*

26        Here, for the reasons discussed above, Plaintiffs have not plausibly alleged that the

27   vehicles at issue contain the alleged defect or that the alleged defect causes the battery problems

28   and component failures alleged in the ACAC.  Accordingly, the Court cannot infer based on the

allegations in the ACAC that the alleged defect makes the vehicles prone to problems that could create a safety risk to drivers while the vehicles are in motion, as was the case in *Enea*. Accordingly, Plaintiffs' implied-warranty claims are subject to dismissal for failure to plausibly plead that the vehicles at issue are unmerchantable.

### 3.   Honda's Other Arguments

Honda contends that the implied-warranty claims of some, but not all, Plaintiffs fail for additional reasons that depend on the application of the law of the state under which each claim arises. *See* Mot. at 9-10.  In response, Plaintiffs argue that a number of exceptions save their claims from dismissal.  Opp. at 9-11.  Because the parties' briefing of these issues is not sufficiently comprehensive, and because dismissal of the claims in question is warranted for multiple other reasons, as discussed above, the Court declines to reach Honda's additional arguments at this time.

### E.   Equitable Relief

Plaintiffs seek equitable remedies, including restitution, disgorgement, and injunctive relief in connection with a number of their claims.[14]  Honda argues that all of Plaintiffs' requests for equitable relief fail because Plaintiffs do not plausibly allege that they have standing to seek injunctive relief or that they lack an adequate remedy at law.

### 1.   Injunctive Relief

To have standing to seek "injunctive relief, which is a prospective remedy, the threat of injury must be 'actual and imminent, not conjectural or hypothetical.'"  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (citation omitted).  "In other words, the threatened injury must be certainly impending to constitute injury in fact and allegations of possible future injury are not sufficient."  *Id.* (citation and internal quotation marks omitted).  "Past wrongs, though insufficient by themselves to grant standing, are 'evidence bearing on whether there is a real and immediate threat of repeated injury.'"  *Id.* (citation omitted).  "Where standing is

---

[14] *See* claims 1, 2, 3, 4, 5, 6, 8, 9, 10, 11, 12, 13, 14, 15, 17, 18, 19, 20, 22, 24, 25, 27, 28, 29, 30, 31, 32, 33.

United States District Court
Northern District of California

1   premised entirely on the threat of repeated injury, a plaintiff must show 'a sufficient likelihood

2   that he will again be wronged in a similar way.'" *Id.* (citation omitted).

3        Plaintiffs seek injunctive relief in the form of an order requiring Honda to repair the

4   alleged defect in the vehicles at issue; an order requiring Honda to disclose the presence of the

5   alleged defect in the vehicles at issue; an order enjoining Honda from continuing to engage in

6   unlawful acts; an order enjoining Honda from continuing to engage in unfair and deceptive

7   business practices; and an order enjoining Honda from incorporating the alleged defect into its

8   vehicles in the future.  *See, e.g.*, ACAC ¶¶ 296, 393, 445, 521, 527, 634.

9        Honda argues that Plaintiffs have not pled facts showing that they have standing to seek

10  injunctive relief because they have not plausibly alleged past harm or that they are under threat of

11  repeated injury as a result of the alleged defect.  Mot. at 20.

12       Plaintiffs respond that their allegations regarding Honda's "past wrongs combined with

13  their allegations regarding the reoccurring nature of the Defect are sufficient to allege that there is

14  a real and immediate threat of repeated injury."  Opp. at 20.  To support this argument, Plaintiffs

15  point to allegations in the ACAC that the alleged defect is present in every vehicle at issue, that

16  the alleged defect causes battery problems and component failures in the vehicles if not repaired,

17  and that Honda has not offered an effective remedy for the alleged defect.  ACAC ¶¶ 1-6.

18  Plaintiffs also point to the allegations regarding complaints by unidentified consumers and

19  communications by Honda regarding battery problems in some of the vehicles at issue, which are

20  discussed in other sections of this order.  *See, e.g.*, ACAC ¶¶ 148-91.

21       The Court agrees with Honda that Plaintiffs have failed to plead facts showing that they

22  suffered past harm that is likely to be repeated in the future as a result of the alleged defect.  The

23  Court examined at length in other sections of this order all of the allegations to which Plaintiffs

24  now point to attempt to show that they have adequately pled past harm and a threat of repeated

25  future harm as a result of the alleged defect.  For those reasons, the Court has found those

26  allegations insufficient to raise the inference (1) that the alleged defect was present in a component

27  or system in the vehicles at issue, (2) that the battery problems and component failures that were

28  mentioned in consumer complaints and Honda communications and reports were caused by the

alleged defect, (3) that Plaintiffs' vehicles suffered any of the battery or component failures described in the ACAC as a result of the alleged defect, or (4) that Plaintiffs provided Honda with an opportunity to remedy any issues in their vehicles associated with the alleged defect and that Honda failed to do so.  In light of the insufficiency of Plaintiffs' allegations, the Court cannot infer that Plaintiffs' have suffered "past wrongs" as a result of the alleged defect, in the form of having been deprived of the benefit of the bargain, diminished value of their vehicles, or otherwise. Without plausibly pleading past harm, Plaintiffs do not plausibly allege that they are likely to "again be wronged in a similar way." *Davidson*, 889 F.3d at 967 (citation and internal quotation marks omitted); *cf. Bates v. United Parcel Serv.*, Inc., 511 F.3d 974, 985 (9th Cir. 2007) (holding that "past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury").

Plaintiffs argue that they have plausibly pled standing to seek injunctive in the form of an order "enjoining [Honda] from incorporating the Defect into its vehicles in the future" by averring that they would purchase "another Honda from Honda" in the future if Honda's "representations about the vehicle, including its safety and durability, were accurate."  Opp. at 21; *see also* ACAC ¶ 22.  Plaintiffs argue that the threat of future injury arises from the fact that "[a]bsent injunctive relief, Plaintiffs would have to abstain from purchasing from [Honda] even though they would like to in the future, because they will be unable to rely upon [Honda] representations regarding quality and reliability."  Opp. at 21.  This argument does not alter the Court's conclusion that Plaintiffs have failed to plead that they have standing to seek injunctive relief.  The Ninth Circuit has held that a "previously deceived consumer" may establish the required threat of future harm by alleging that "she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to." *Davidson*, 889 F.3d at 970-71.  Here, however, for the reasons discussed above, Plaintiffs have not plausibly alleged that Honda engaged in fraudulent omissions, active concealment, or otherwise deceived consumers with respect to the alleged defect.  Plaintiffs' allegations, therefore, fail to raise the inference that Plaintiffs are "previously deceived consumers" who are under threat of being deceived again if the conduct that deceived them previously is not enjoined. *See id.*

1    Accordingly, all of Plaintiffs' requests for injunctive relief are subject to dismissal for lack

2    of standing.

3              **2.       Adequate Remedy at Law**

4    In addition to the injunctive relief discussed above, Plaintiffs request equitable relief in the

5    form of restitution and disgorgement.  *See* ACAC at 133-34 (Prayer for Relief).

6    Relying on *Sonner v. Premier Nutrition Corp.*, 962 F.3d 1072 (9th Cir. 2020), *opinion*

7    *amended and superseded on denial of reh'g*, 971 F.3d 834 (9th Cir. 2020), Honda argues that

8    Plaintiffs cannot seek any form of equitable relief in this action because Plaintiffs cannot possibly

9    allege that they lack an adequate remedy at law.

10   The Court agrees.  Consistent with *Sonner* and established doctrines of federal equity

11   jurisprudence, this Court has held that "there is no right to equitable relief or an equitable remedy

12   when there is an adequate remedy at law."  *See Price v. Apple, Inc.*, No. 21-CV-02846-HSG, 2022

13   WL 1032472, at *7 (N.D. Cal. Apr. 6, 2022) (citation and internal quotation marks omitted); *see*

14   *also Sonner*, 971 F.3d at 844 (plaintiff "must establish that she lacks an adequate remedy at law

15   before securing equitable restitution for past harm under the UCL and CLRA"); *Mort v. United*

16   *States*, 86 F.3d 890, 892 (9th Cir. 1996) ("It is a basic doctrine of equity jurisprudence that courts

17   of equity should not act . . . when the moving party has an adequate remedy at law.").

18   Here, plaintiffs seek equitable remedies based on the same conduct by Honda that forms

19   the basis of their requests for damages.  Plaintiffs do not allege facts in the ACAC suggesting that

20   legal remedies would be inadequate to redress any past or prospective injuries that Plaintiffs may

21   have suffered or could suffer as a result that same course of conduct.[15]  Accordingly, all of

22   Plaintiffs' requests and claims for equitable relief are subject to dismissal on that basis.  *See Price*,

23   2022 WL 1032472, at *7 (dismissing equitable relief claims on the basis that "Plaintiff seeks

24   compensation under the UCL and CLRA for the exact same conduct that forms the basis of his

25   equitable relief claims" and "the complaint does not allege that legal remedies are inadequate"); *cf.*

26

27   ─────────────────

28   [15] As discussed above, Plaintiffs have not plausibly pled that they suffered any past or prospective injuries in connection with the alleged defect or Honda's conduct.

United States District Court
Northern District of California

*Brown v. Natures Path Foods, Inc.*, No. 21-CV-05132-HSG, 2022 WL 717816, at *6 (N.D. Cal. Mar. 10, 2022) (denying motion to dismiss equitable relief claims on the grounds that "equitable and damages claims may coexist when they are based on different theories" and that the plaintiffs "allege[d] sufficient facts from which the Court can reasonably infer that [the defendant's] conduct exposes Plaintiffs to prospective injuries for which remedies at law would be inadequate").

### F.   Choice-of-Law Analysis under *Mazza*

Plaintiffs seek to assert certain claims that arise out of California law on behalf of a proposed nationwide class comprised of "[a]ll persons in the United States and its territories who are current or former owners and/or lessees of" the vehicles at issue.[16]  *See, e.g.*, ACAC ¶ 245.

Relying on *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 594 (9th Cir. 2012), Honda moves to dismiss all claims under California law that Plaintiffs seek to assert on behalf of the proposed nationwide class to the extent that the claims would be asserted on behalf of any Plaintiff or proposed class member who does not reside in California or lacks meaningful contacts with California.  Mot. at 22-23.  Honda contends that the Court should conduct a conflict-of-law analysis under *Mazza* at the pleading stage to determine what state law should govern the claims of non-California Plaintiffs and proposed class members.  *Id.* at 22.  Honda argues that the Court should find, based on *Mazza's* conflict-of-law analysis, that because material differences exist between California law and the relevant laws of other states, the claims of non-California Plaintiffs and proposed class members should not be governed by California law.  *Id.* at 22-25.

As Plaintiffs point out, Opp. at 24-25, this Court held in another vehicle-defect proposed class action that the issue of whether "California law differs from the laws of other states in a way that is material" requires a "deeply factual inquiry" that is "not a proper inquiry at the pleading stage."  *See Valencia v. Volkswagen Grp. of Am. Inc.*, No. 15-CV-00887-HSG, 2015 WL

---

[16] Those claims are the following: Plaintiffs' claims under the CLRA (claim 1), the UCL (claim 2), and the FAL (claim 3); Plaintiffs' claims for breach of express warranty under Cal. Com. Code §§ 2313 and 10210 (claim 4) and for breach of the implied warranty of merchantability under Cal. Com. Code. §§ 2314 and 10212 (claim 5); Plaintiffs' claim for unjust enrichment (claim 6); and Plaintiffs' claim for fraudulent concealment (claim 7).  ACAC ¶¶ 263-362.

United States District Court
Northern District of California

4760707, at *1 (N.D. Cal. Aug. 11, 2015) (reasoning that this inquiry is "more appropriately addressed at the class certification stage, which was, incidentally, the posture of the *Mazza* action when it was appealed to the Ninth Circuit"). The Court is not persuaded that taking a different approach in this action is warranted and declines to undertake the conflict-of-law inquiry discussed in *Mazza* at this stage of the litigation. Honda may renew its arguments under *Mazza* at the class certification stage.

**IV.    CONCLUSION**

The Court **GRANTS** Honda's motion to dismiss as to all claims in the ACAC. Dismissal is with leave to amend. Any amended complaint must be filed within 28 days of the date of this order.

**IT IS SO ORDERED.**

Dated:   9/20/2022

HAYWOOD S. GILLIAM, JR.
United States District Judge