1
2
3
4
5
6
7
8
9

SHOOK, HARDY & BACON L.L.P.
Michael L. Mallow (SBN 188745)
mmallow@shb.com
Rachel A. Straus (SBN 268836)
rstraus@shb.com
2049 Century Park East, Suite 3000
Los Angeles, California 90067
Tel: 424.285.8330 | Fax: 424.204.9093

Amir Nassihi (SBN 235936)
anassihi@shb.com
555 Mission Street, Suite 2300
San Francisco, California 94105
Tel: 415.544.1900 | Fax: 415.391.0281

Attorneys for Defendant
AMERICAN HONDA MOTOR CO., INC.

10

UNITED STATES DISTRICT COURT

11

NORTHERN DISTRICT OF CALIFORNIA

12

SAN FRANCISCO DIVISION

13
14
15
16
17

RONALD RAYNALDO, FERNANDA
NUNES FERREIRA, GEORGE JONES,
ROBERT LIZZUL, MITCHELL BRYON
PAZANKI, JOHN PROVENZANO, HARRY
RAPP, DENNIS WOODS, DAYANE
TESSINARI, BRENDAN SANGER, and
JASON CASEY, Individually and on Behalf of
All Others Similarly Situated,

18

Plaintiffs,

19

v.

20

AMERICAN HONDA MOTOR CO., INC.,

21

Defendant.

Case No. 4:21-cv-05808-HSG

**DEFENDANT AMERICAN HONDA
MOTOR CO., INC.'S ANSWER TO
SECOND AMENDED CLASS ACTION
COMPLAINT**

Judge:      Hon. Haywood S. Gilliam, Jr.
Ctrm:       2 – 4th Floor

Complaint Filed: July 28, 2021

22
23
24
25
26
27
28

Pursuant to Federal Rules of Civil Procedure 8 and 12, defendant American Honda Motor Co., Inc. ("AHM") hereby answers and sets forth its affirmative defenses to the Second Amended Class Action Complaint ("SAC") of plaintiffs Ronald Raynaldo, Fernanda Nunes Ferreira, George Jones, Robert Lizzul, Mitchell Bryon Pazanki, Harry Rapp, Dennis Woods, Dayane Tessinari, Brendan Sanger, and Jason Casey (collectively, "Plaintiffs"). As set forth below, AHM denies each and every allegation in the SAC not specifically admitted in the following corresponding paragraphs.

## I.      INTRODUCTION

1.      Honda markets its vehicles in a manner to convince consumers that they are buying a product of the highest quality and made with the utmost care and, most importantly, that will be dependable and safe. Honda has actively concealed, however, that millions of vehicles suffer from a latent defect which results in the failure of the vehicles' essential purpose: to start running and safely transport passengers. The Class Vehicles[1] are Honda CR-V (model years 2017-2019) and Honda Accord (model years 2016-2019), and each of these vehicles was delivered to consumers with an identical and inherent defect in the Class Vehicle's design and/or manufacturing process.

**ANSWER:**   AHM admits that it markets certain Honda vehicles and that Plaintiffs have defined the alleged Class Vehicles to include Honda CR-V model years 2017–2019 and Honda Accord model years 2016–2019. AHM denies the remaining allegations in this paragraph, including the existence of the alleged defect.

2.      Modern vehicles are made up of nearly 100 small electronic modules that control the numerous functions within the vehicle called electronic control units ("ECUs"). These ECUs are connected to, and communicate via, the vehicle's Controller Area Network ("CAN") system and work together to transmit various messages to one another. The CAN system and its ECUs have two operating modes known as, "wake-up" and "sleep." The purpose of these two modes is to ensure that the vehicle's 12-volt battery supplies sufficient power to the ECUs that make up the CAN when needed, primarily when the vehicle is being driven, and minimize the depletion of a battery's power when the vehicle is turned off, referred to as parasitic current drain, or simply "parasitic drain."

---

[1] Plaintiffs reserve the right to amend their definition of Class Vehicles to include additional Honda vehicles with the same inherent defect.

**ANSWER:**   AHM lacks knowledge or information sufficient to form a belief about the truth of the allegations as to any other vehicles and therefore denies the allegations. AHM does, however, admit that each of the alleged Class Vehicles contains multiple electronic modules called electronic control units ("ECUs") that control various functions within the vehicle. AHM further admits that some ECUs are connected to, and communicate via, the vehicle's Controller Area Network ("CAN"). AHM further admits that certain ECUs within the CAN have "wakeup" and "sleep" modes. AHM further admits that certain ECUs draw power from the vehicle's 12-volt battery, and the "sleep" mode minimizes depletion of the battery when the vehicle is turned off, which is sometimes called parasitic current drain or parasitic drain.

3.     Each of the approximately two million Class Vehicles suffers from a uniform defect that causes excessive parasitic draining of the vehicles' battery storage. The Class Vehicles each contain a substantially similar Fast Controller Area Network ("F-CAN"), which is a subnetwork of the vehicles' main CAN system. The F-CAN is the network between the powertrain and ECUs that control the chassis functions, and is comprised of many ECUs critical for the safety and dependability of the vehicle. Although the F-CAN is supposed to limit its parasitic draw to less than 50 milliamps (mA)[2] when the vehicle is off, it contains a latent defect (including software errors) that results in the F-CAN not entering sleep mode and drawing as much as 350 mA when the vehicle is off. Consequently, the F-CAN causes its ECUs, including the Powertrain Control Module ("PCM"), Vehicle Stability Assist ("VSA") modulator control unit, and the Body Control Module ("BCM"), to parasitically draw excessive amounts of battery power when the vehicle is off. If not properly repaired, parasitic draining results in the premature discharge of the vehicle's battery resulting in low battery voltage, and ultimately battery failure, and, in turn, causes numerous vehicle components and systems to malfunction, including certain mandated safety electronics, such as hazard lights.[3] (Hereinafter, the "Parasitic Drain Defect" or "Defect".)

**ANSWER:**   AHM admits that each of the alleged Class Vehicles contains a Fast Controller Area Network ("F-CAN"), which is a subnetwork within the vehicle's CAN. AHM further admits

---

[2] A milliamp (mA) is a unit of measurement for an electric current. For context, the average amperage draw of a light bulb is .5 to 1.5 Amps, or 500 mA to 1,500 mA.
[3] *See* 49 C.F.R. §571.108, Federal Motor Vehicle Safety Standard (FMVSS) No. 108.

that the F-CAN connects various ECUs that control certain functions within the powertrain and chassis, including the Powertrain Control Module ("PCM"), the Vehicle Stability Assist ("VSA") modulator control unit ("MCU"), and, in some of the alleged Class Vehicles, the Body Control Module ("BCM"). AHM further admits that a milliamp (mA) is a unit of measurement for an electric current. AHM further admits that Plaintiffs purport to cite a section of the Code of Federal Regulations. The contents of the section speak for themselves, and to the extent the allegations in this paragraph vary therewith, AHM denies the allegations. AHM further denies the remaining allegations in this paragraph, including the existence of the alleged defect.

4.     The problems and safety hazards created by the Parasitic Drain Defect are considerable. The most common symptom of the parasitic draining in the Class Vehicles' F-CAN is a no-start condition, which leaves consumers stranded. Further, the damage caused by the Parasitic Drain Defect manifests without advance notice, creating the risk of vehicles stopping while being driven, and potentially causing federally mandated safety features such as headlights and emergency hazard lights to fail. Prolonged and recurrent battery depletion also results in the overuse of the vehicle's alternator (which is used to replenish the battery when the engine is on) and can cause the vehicle's engine to stall if proper voltage isn't maintained.

**ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the alleged defect.

5.     As a result of the Defect, Class Vehicle owners are often being required to pay hundreds or thousands of dollars for replacement batteries and F-CAN related repairs. Worse yet, many are still left with the Defect even after these expensive attempts at repair. Replacing batteries and other components which degrade as a result of the Defect are only temporary fixes, because the replacement components will ultimately fail as well.

**ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the alleged defect.

6.     Honda knew, and/or should have known, that the F-CAN in the Class Vehicles suffered from the Parasitic Drain Defect by February 2017, at the latest. To date, Honda has issued two internal Service Bulletins to its authorized dealerships about components in the F-CAN causing parasitic

draining and resulting in dead batteries in Class Vehicles, but has yet to offer a reliable solution to the Defect or recall the Class Vehicles. Instead, Honda has only instructed its dealers to update internal software and replace dead batteries in certain Class Vehicles, if necessary and if the vehicle is under warranty. Countless consumer reports have shown though that neither "corrective action" remedies the Parasitic Drain Defect, nor does it make the vehicles any more dependable for their owners. Furthermore, as detailed below, a Honda dealership revealed to one plaintiff that Honda is aware that the BCM—a module within the F-CAN—in certain Class Vehicles was not entering sleep mode "after the vehicle was shutdown." Despite its quiet admission to its dealerships, Honda has yet to issue any service bulletins or otherwise inform Class members that the BCM is at least in part responsible for the ECUs within the F-CAN system failing to enter sleep mode and depleting the vehicles' batteries.

**ANSWER:**   AHM admits that it has issued a Service Bulletin to authorized Honda dealers regarding parasitic draw associated with the VSA MCU in a limited population of certain alleged Class Vehicles that could cause a dead battery, and a Service Bulletin to authorized Honda dealers regarding parasitic draw associated with the PCM in a limited population of certain alleged Class Vehicles that could result in a dead battery. AHM further admits that these two Service Bulletins contain instructions regarding software updates to correct the issues identified therein. AHM denies the remaining allegations in this paragraph, including the existence of the alleged defect.

7.     If Plaintiffs and/or other Class members knew of the Defect at the time of purchase or lease, they would not have bought or leased the Class Vehicles or would have paid substantially less for them. Plaintiffs and other Class members were denied the benefit of the bargain in connection with their purchases and/or leasing of the Class Vehicles, and incurred out-of-pocket expenses.

**ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the alleged defect.

8.     The conduct described herein makes Defendant liable for, among other things, breach of express and implied warranties, and unfair, deceptive, and/or fraudulent business practices. In turn, owners and/or lessees of the Class Vehicles, including Plaintiffs, have suffered an ascertainable loss of money and/or property and/or loss in value. The unfair and deceptive trade practices committed

1   by Defendant caused Plaintiffs and the members of the Class damages, including, but not limited to,

2   loss of value, loss of use of the vehicles, battery replacement and other repair costs. Each of the

3   Plaintiffs will, and do, suffer the threat of future harm in that they are unable, due to the conduct of

4   Defendant alleged herein, to rely on Defendant's advertising and statements concerning Defendant's

5   vehicles in the future and therefore will be deprived of the ability to purchase a vehicle manufactured

6   by Defendant though each of the Plaintiffs would like to do so.

7          **ANSWER:**   AHM denies the allegations in this paragraph.

8          9.   Accordingly, Plaintiffs bring this action to redress Defendant's misconduct. Plaintiffs

9   seek recovery of damages and a repair under state consumer protection statutes and applicable express

10  and implied warranties, and reimbursement of all expenses associated with the repair or replacement

11  of the Class Vehicles.

12         **ANSWER:**   AHM admits that Plaintiffs assert various consumer protection statute and

13  express warranty claims in this action and seek damages and repairs. AHM denies the remaining

14  allegations in this paragraph, including that Plaintiffs are entitled to any relief.

15  **II.   JURISDICTION AND VENUE**

16         10.   This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005,

17  28 U.S.C. §1332(d)(2) and (6), because: (a) there are 100 or more class members; (b) there is an

18  aggregate amount in controversy exceeding $5,000,000.00 exclusive of interest and costs; and (c)

19  there is minimal diversity because at least one plaintiff and one defendant are citizens of different

20  states.

21         **ANSWER:**   This paragraph sets forth a legal conclusion to which no response is required.

22  To the extent a response is required, AHM denes that Plaintiffs or anyone else suffered any monetary

23  loss and/or any other injury. AHM further denies this action is suitable for class treatment. AHM

24  admits there is minimal diversity because at least one member of the proposed class and one defendant

25  are citizens of different states. Except as otherwise admitted, AHM denies the allegations in this

26  paragraph.

27         11.   Venue is proper in this judicial district under 28 U.S.C. §1391 because Defendant

28  transacts substantial business and because Plaintiff Ronald Raynaldo ("Raynaldo") purchased his

Class Vehicle at issue in this District. Defendant advertised in this District and received substantial revenue and profits from sales and/or leases of the Class Vehicles in this District. Therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this District.

**ANSWER:**   The allegations in this paragraph are conclusions of law to which no response is required. To the extent a response is required, AHM does not contest that venue is proper.

12.   This Court has personal jurisdiction over Defendant by virtue of its transactions and business conducted in this judicial district. Defendant has transacted and done business, and violated statutory and common law, in the State of California and in this District.

**ANSWER:**   This paragraph sets forth legal conclusions to which no response is required. To the extent a response is required, AHM admits it does business in California. AHM denies the remaining allegations in this paragraph.

## III.   INTRA-DISTRICT CASE ASSIGNMENT

13.   Pursuant to Civil Local Rule 3-2(c), an intra-district assignment to the San Francisco or Oakland Division is appropriate because a substantial part of the events or omissions which give rise to the claims asserted herein occurred in this Division, including that Plaintiff Raynaldo made his purchase of his 2017 Honda Accord in San Francisco, California.

**ANSWER:**   AHM lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and therefore denies the allegations.

## IV.   PARTIES

### A.   Plaintiffs

#### 1.   Ronald Raynaldo

14.   Plaintiff Raynaldo is a citizen of California and resides in San Francisco, California. Plaintiff Raynaldo purchased a 2017 Honda Accord, vehicle identification number ("VIN") 1HGCR2F57HA112027, from San Francisco Honda, located at 1395 Van Ness Avenue, San Francisco, California 94109 in April 2019.

**ANSWER:**   AHM lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and therefore denies the allegations.

6

1    15.    San Francisco Honda is part of Honda's network of authorized dealers across the

2    United States. Honda features San Francisco Honda on its website as an authorized Honda dealer,

3    with links to lists of inventory of Honda vehicles on its website.

4    **ANSWER:**   AHM admits that San Francisco Honda is an authorized Honda dealer. AHM

5    further admits that San Francisco Honda is listed on its website as an authorized Honda dealer. AHM

6    denies the remaining allegations in this paragraph.

7    16.    When shopping for his Class Vehicle, Plaintiff Raynaldo researched and considered

8    the reliability and quality of the make and manufacturer, and has purchased Hondas in the past, so

9    Plaintiff Raynaldo was familiar with Honda's representations about Honda's vehicle quality, safety,

10   and warranties.

11   **ANSWER:**   AHM lacks knowledge or information sufficient to form a belief about the truth

12   of the allegations in this paragraph and therefore denies the allegations.

13   17.    Prior to purchasing his Class Vehicle, Plaintiff Raynaldo was aware of and/or reviewed

14   Honda's promotional materials on the internet and/or at San Francisco Honda, saw stickers the dealer

15   placed on the vehicle, and interacted with Honda sales agents at San Francisco Honda. Each of those

16   information sources failed to disclose the presence of the Defect in 2017 Honda Accord models or

17   the other Class Vehicles.

18   **ANSWER:**   AHM denies the existence of the alleged defect. AHM lacks knowledge or

19   information sufficient to form a belief about the truth of the remaining allegations in this paragraph

20   and therefore denies the allegations.

21   18.    Through his exposure and interaction with Honda, Plaintiff Raynaldo was aware of

22   Honda's uniform and nationwide marketing message that its vehicles are safe and dependable, which

23   was material to his decision to purchase his Class Vehicle. When he purchased the vehicle, he

24   believed that, based on Honda's marketing message, he would be in a safe and dependable vehicle,

25   one that is safer than a vehicle that is not marketed as safe and dependable. At no point before Plaintiff

26   Raynaldo purchased his vehicle did Honda disclose to him that his vehicle was not safe or dependable,

27   or that it suffered from the Parasitic Drain Defect, which creates safety risks and renders the vehicle

28   useless.

1      **ANSWER:**   AHM denies the existence of the alleged defect. AHM lacks knowledge or
2   information sufficient to form a belief about the truth of the remaining allegations in this paragraph
3   and therefore denies the allegations.

4      19.    After purchasing the vehicle, Plaintiff Raynaldo experienced issues with his Class
5   Vehicle as a result of the Defect. Plaintiff Raynaldo has often had to jump-start his Class Vehicle as
6   he often finds the battery dead or the vehicle not capable of starting when left even for short periods
7   of time. Plaintiff Raynaldo does not have a vehicle that is safe or reliable as advertised by Honda.

8      **ANSWER:**   AHM denies the existence of the alleged defect. AHM lacks knowledge or
9   information sufficient to form a belief about the truth of the remaining allegations in this paragraph
10   and therefore denies the allegations.

11      20.    Plaintiff Raynaldo purchased his Class Vehicle with the Parasitic Drain Defect as part
12   of a transaction in which Honda did not disclose material facts related to the automobile's essential
13   purpose—safe and dependable transportation. Plaintiff Raynaldo did not receive the benefit of his
14   bargain. He purchased a vehicle that is of a lesser standard, grade, and quality than represented, and
15   he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding safe
16   and reliable operation. The Parasitic Drain Defect has significantly diminished the value of Plaintiff
17   Raynaldo's Class Vehicle.

18      **ANSWER:**   AHM denies allegations in this paragraph, including the existence of the alleged
19   defect.

20      21.    Had Honda disclosed the Defect, Plaintiff Raynaldo would not have purchased his
21   Class Vehicle, or would have paid less to do so.

22      **ANSWER:**   AHM denies the existence of the alleged defect. AHM lacks knowledge or
23   information sufficient to form a belief about the truth of the remaining allegations in this paragraph
24   and therefore denies the allegations.

25      22.    Plaintiff Raynaldo would purchase another Honda vehicle from Honda in the future if
26   Defendant's representations about the vehicle, including its safety and durability, were accurate.

1
2
3

**ANSWER:**  AHM denies that its representations about Honda vehicles were or are inaccurate. AHM lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and therefore denies the allegations.

4

### 2.    Fernanda Nunes Ferreira

5
6
7
8
9
10
11
12
13

23.    Plaintiff Fernanda Nunes Ferreira ("Ferreira") is a citizen of Florida, and resides in Pompano Beach, Florida. Plaintiff Ferreira purchased a 2017 Honda Accord in December 2017, VIN 7FARW1H86HE041546, from Hendrick Pompano Beach, an authorized Honda dealer, located at 5381 North Federal Highway, Pompano Beach, Florida 33064. Plaintiff Ferreira's Class Vehicle was covered by a written warranty. When shopping for her Class Vehicle, Plaintiff Ferreira researched and considered the reliability and quality of the make and manufacturer, including Honda's warranty. Prior to purchasing the Class Vehicle, Plaintiff Ferreira heard, viewed, and/or read Honda marketing materials and advertisements including commercials and internet advertisements that represented the reliability and safety of Honda vehicles.

14
15
16

**ANSWER:**  AHM admits that Hendrick Honda Pompano Beach is an authorized Honda dealer. AHM lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and therefore denies the allegations.

17
18
19
20
21
22
23
24

24.    Plaintiff Ferreira relied on the information regarding the quality, safety, and reliability of the Class Vehicle conveyed in those marketing materials and advertisements in deciding to purchase her Class Vehicle. Honda failed to disclose the Parasitic Drain Defect to Plaintiff Ferreira before she purchased her Class Vehicle, despite Honda's knowledge of the Defect. Plaintiff Ferreira, therefore, purchased her Class Vehicle on a reasonable, but mistaken, belief that it would be a high quality, reliable, and safe vehicle. Plaintiff Ferreira would not have purchased the Class Vehicle, or would not have paid as much for it, had she known the vehicle had a Defect that could drain the battery and leave her stranded without warning.

25
26
27

**ANSWER:**  AHM denies the existence of the alleged defect. AHM lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and therefore denies the allegations.

28

25.     After purchasing the vehicle, Plaintiff Ferreira experienced issues with her Class Vehicle as a result of the Defect. Plaintiff Ferreira does not have a vehicle that is safe or reliable as advertised by Honda.

**ANSWER:**   AHM denies the existence of the alleged defect. AHM lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and therefore denies the allegations.

### 3.     George Jones

26.     Plaintiff George Jones ("Jones") is a citizen of Iowa and resides in Lamoni, Iowa. Plaintiff Jones purchased a new 2019 Honda CR-V, VIN 7FARW2H5XKE005457, from Smart Honda, located at 11206 Hickman Road, Clive, Iowa 50325, on February 22, 2019.

**ANSWER:**   AHM lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and therefore denies the allegations.

27.     Smart Honda is part of Honda's network of authorized dealers across the United States. Honda promotes Smart Honda on its website and lists Smart Honda's inventory of Honda vehicles on its website.

**ANSWER:**   AHM admits that Smart Honda is an authorized Honda dealer. AHM further admits that Smart Honda is listed on its website as an authorized Honda dealer. AHM denies the remaining allegations in this paragraph.

28.     When shopping for his Class Vehicle, Plaintiff Jones researched and considered the reliability and quality of the make and manufacturer, including Honda's warranty department. Plaintiff Jones frequently travels for work and to visit family out of state, so the ability to park his vehicle for a week at a time without the need to call a tow truck or jump-start the vehicle, among other things, was integral to his decision to purchase a Class Vehicle.

**ANSWER:**   AHM lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and therefore denies the allegations.

29.     Prior to purchasing his Class Vehicle, Plaintiff Jones reviewed Honda's promotional materials on the internet and at Smart Honda, the Monroney sticker, and sales brochures, and interacted with Honda sales agents at Smart Honda. Each of those failed to disclose the presence of

the Defect in the 2019 Honda CR-V models. Plaintiff Jones specifically questioned Honda's sales agent regarding the dependability of the Class Vehicle and was told that the CR-V has been in Honda's line of vehicles for many years, was well tested, and reliable. Plaintiff Jones also reviewed Honda's New Vehicle Limited Warranty, and discussed all applicable written express warranties with Honda sales agents.

**ANSWER:**   AHM denies the existence of the alleged defect. AHM lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and therefore denies the allegations.

30.    Through his exposure and interaction with Honda, Plaintiff Jones was aware of Honda's uniform and nationwide marketing message that its vehicles are safe and dependable, which was material to his decision to purchase his Class Vehicle. When he purchased the vehicle, he believed that, based on Honda's marketing message, he would be in a safe and dependable vehicle, one that is safer than a vehicle that is not marketed as safe and dependable. At no point before Plaintiff Jones purchased his Class Vehicle did Honda disclose to him that his vehicle was not safe or dependable, or that it suffered from the Parasitic Drain Defect, which creates safety risks and renders the vehicle useless.

**ANSWER:**   AHM denies the existence of the alleged defect. AHM lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and therefore denies the allegations.

31.    After purchasing his Class Vehicle, Plaintiff Jones experienced issues caused by the Defect multiple times—although he was unaware of the cause at the time. Within months of purchasing his Class Vehicle, on March 12, 2019, Plaintiff first experienced an issue caused by the Parasitic Drain Defect in his Class Vehicle—although he was unaware of the cause at the time—when he had a no-start condition and found his battery depleted. Plaintiff Jones then called an emergency service company to jump-start his vehicle. Plaintiff Jones then brought his vehicle into Smart Honda where he was told by an employee that the issue he experienced was "common" and that Honda had to "reset" the vehicle so that it would not occur again. Two months later, in May 2019, Plaintiff Jones again found his vehicle with an inexplicable dead battery, and on May 15, 2019,

1  brought his vehicle into Smart Honda. There, Smart Honda performed a multipoint inspection and

2  updated the vehicle's PCM so that the ECUs within the F-CAN would enable sleep mode when the

3  vehicle is turned off, as Honda instructed in its Service Bulletin 19-039 (discussed below).[4]

4       **ANSWER:**   AHM admits that Plaintiffs purport to reference a website containing a copy of

5  Honda's Service Bulletin 19-039. The contents of the website and Honda's Service Bulletin 19-039

6  speak for themselves, and to the extent the allegations in this paragraph vary therewith, AHM denies

7  the allegations. AHM further denies the existence of the alleged defect. AHM lacks knowledge or

8  information sufficient to form a belief about the truth of the remaining allegations in this paragraph

9  and therefore denies the allegations.

10       32.   Despite Smart Honda performing the software update, Plaintiff Jones's Class Vehicle

11  continued to suffer from the Parasitic Drain Defect. On December 18, 2020, Plaintiff Jones again

12  brought his vehicle into Smart Honda. This time, Smart Honda ran a system check and concluded

13  that there is "no parasitic draw," and reset the vehicle's diagnostic trouble codes.

14       **ANSWER:**   AHM denies the existence of the alleged defect. AHM lacks knowledge or

15  information sufficient to form a belief about the truth of the remaining allegations in this paragraph

16  and therefore denies the allegations.

17       33.   Given the issue causing the dead batteries is not limited to the battery itself, the new

18  battery fared no better and Plaintiff Jones's Class Vehicle continued to suffer from the F-CAN failing

19  to enable sleep mode. Just a month later, on January 20, 2021, Plaintiff was forced to bring his vehicle

20  back to Smart Honda for the same issue. On February 1, 2021, Smart Honda replaced the battery

21  installed just a month and a half earlier.

22       **ANSWER:**   AHM lacks knowledge or information sufficient to form a belief about the truth

23  of the allegations in this paragraph and therefore denies the allegations.

24       34.   On February 2, 2021, a Smart Honda technician contacted Honda's technical support

25  line and spoke with a Honda engineer. The engineer stated that 2017-2019 Honda CR-Vs were known

26

27

28  ---
[4]  NHTSA ID No.: 10156620, Manufacturer Communication Number: A19-039, available at https://static.nhtsa.gov/odi/tsbs/2019/MC-10156620-0001.pdf. *See infra* ¶ 188.

to experience an issue where the BCM, which is part of the F-CAN system and communicates with other sub-computers in the vehicle, does not enable shut down when the vehicle is turned off.

**ANSWER:**   AHM denies that the BCM in 2017–2019 CR-Vs is defective or has an issue shutting down when the vehicle is turned off. AHM lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and therefore denies the allegations.

35.   Plaintiff Jones purchased his Class Vehicle with the Parasitic Drain Defect as part of a transaction in which Honda did not disclose material facts related to the automobile's essential purpose—safe and dependable transportation. Plaintiff Jones did not receive the benefit of his bargain. He purchased a vehicle that is of a lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding safe and reliable operation. The Parasitic Drain Defect has significantly diminished the value of Plaintiff Jones' Class Vehicle.

**ANSWER:**   AHM denies allegations in this paragraph, including the existence of the alleged defect.

36.   Had Honda disclosed the Defect, Plaintiff Jones would not have purchased his Class Vehicle, or would have paid less to do so.

**ANSWER:**   AHM denies the existence of the alleged defect. AHM lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and therefore denies the allegations.

37.   Plaintiff Jones would purchase another Honda vehicle from Honda in the future if Defendant's representations about the vehicle, including its safety and durability, were accurate.

**ANSWER:**   AHM denies that its representations about Honda vehicles were or are inaccurate. AHM lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and therefore denies the allegations.

AMERICAN HONDA MOTOR CO., INC.'S ANSWER TO SECOND AMENDED COMPLAINT

1

 **4.**     **Robert Lizzul**

2      38.     Plaintiff Robert Lizzul ("Lizzul") is a citizen of New York and resides in Flushing,

3   New York. Plaintiff Lizzul purchased a used 2017 Honda CR-V, VIN 2HKRW2H81HH606210, from

4   Rockland Motors, located at 85 Route 303 North, West Nyack, New York 10994, on January 2, 2020.

5      **ANSWER:**   AHM lacks knowledge or information sufficient to form a belief about the truth

6   of the allegations in this paragraph and therefore denies the allegations.

7      39.     When shopping for his Class Vehicle, Plaintiff Lizzul researched and considered the

8   reliability and quality of the make and manufacturer. Prior to purchasing his Class Vehicle, Plaintiff

9   Lizzul was aware of and/or reviewed Honda's promotional materials on the internet. Each of those

10   information sources failed to disclose the presence of the Defect in 2017 Honda CR-V models or the

11   other Class Vehicles.

12      **ANSWER:**   AHM denies the existence of the alleged defect. AHM lacks knowledge or

13   information sufficient to form a belief about the truth of the remaining allegations in this paragraph

14   and therefore denies the allegations.

15      40.     Through his exposure and interaction with Honda, Plaintiff Lizzul was aware of

16   Honda's uniform and nationwide marketing message that its vehicles are safe and dependable, which

17   was material to his decision to purchase his Class Vehicle. When he purchased the vehicle, he

18   believed that, based on Honda's marketing message, he would be in a safe and dependable vehicle,

19   one that is safer than a vehicle that is not marketed as safe and dependable. At no point before Plaintiff

20   Lizzul purchased his Class Vehicle did Honda disclose to him that his vehicle was not safe or

21   dependable, or that it suffered from the Parasitic Drain Defect, which creates safety risks and renders

22   the vehicle useless.

23      **ANSWER:**   AHM denies the existence of the alleged defect. AHM lacks knowledge or

24   information sufficient to form a belief about the truth of the remaining allegations in this paragraph

25   and therefore denies the allegations.

26      41.     After purchasing his Class Vehicle, Plaintiff Lizzul experienced issues caused by the

27   Defect multiple times. After his Class Vehicle was unable to start multiple times and he required the

28   assistance of AAA, on or around June 29, 2021, Plaintiff Lizzul brought his vehicle into Empire

1   Honda of Manhasset, an authorized Honda dealership that is promoted on Honda's website, with links

2   to its inventory of Honda vehicles. Plaintiff Lizzul's had 24,294 miles driven at the time he brought

3   his Class Vehicle into Empire Honda. Empire Honda performed a "multi-point inspection" on the

4   vehicle.. Empire Honda informed Plaintiff Lizzul that the F-CAN's BCM "must Ebel replaced." In

5   total, Plaintiff Lizzul was forced to pay $961.34 in parts and labor to replace the BCM. At the time

6   he incurred this out-of-pocket expense, Plaintiff Lizzul was not informed that Honda had already

7   determined that 2017 CR-V vehicles were "having a problem with the BCM (body control module)

8   staying on after the vehicle was shut down."

9       **ANSWER:**   AHM admits that Honda of Manhasset is an authorized Honda dealer. AHM

10   further admits that Honda of Manhasset is listed on its website as an authorized Honda dealer. AHM

11   denies the existence of the alleged defect and that the BCM in 2017 CR-Vs has an issue shutting

12   down when the vehicle is turned off. AHM lacks knowledge or information sufficient to form a belief

13   about the truth of the remaining allegations in this paragraph and therefore denies the allegations.

14       42.    Plaintiff Lizzul purchased his Class Vehicle with the Parasitic Drain Defect as part of

15   a transaction in which Honda did not disclose material facts related to the automobile's essential

16   purpose—safe and dependable transportation. Plaintiff Lizzul did not receive the benefit of his

17   bargain. He purchased a vehicle that is of a lesser standard, grade, and quality than represented, and

18   he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding safe

19   and reliable operation. The Parasitic Drain Defect has significantly diminished the value of Plaintiff

20   Lizzul's Class Vehicle.

21       **ANSWER:**   AHM denies allegations in this paragraph, including the existence of the alleged

22   defect.

23       43.    Had Honda disclosed the Defect, Plaintiff Lizzul would not have purchased his Class

24   Vehicle, or would have paid less to do so.

25       **ANSWER:**   AHM denies the existence of the alleged defect. AHM lacks knowledge or

26   information sufficient to form a belief about the truth of the remaining allegations in this paragraph

27   and therefore denies the allegations.

28

44.     Plaintiff Lizzul would purchase another Honda vehicle from Honda in the future if Defendant's representations about the vehicle, including its safety and durability, were accurate.

**ANSWER:**   AHM denies that its representations about Honda vehicles were or are inaccurate. AHM lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and therefore denies the allegations.

### 5.     Mitchell Bryon Pazanki

45.     Plaintiff Mitchell Bryon Pazanki ("Pazanki") is a citizen of Florida, and resides in Jupiter, Florida. Plaintiff Pazanki purchased a used 2018 Honda Accord in 2020, VIN 1HGCV1F3XJA128829, from Delray Honda, an authorized Honda dealer, located at 2500 South Federal Highway, Delray Beach, Florida 33483. Plaintiff Pazanki's Class Vehicle was covered by a written warranty. When shopping for his Class Vehicle, Plaintiff Pazanki researched and considered the reliability and quality of the make and manufacturer, including Honda's warranty. Prior to purchasing the Class Vehicle, Plaintiff Pazanki heard, viewed, and/read Honda marketing materials and advertisements including brochures, commercials, and interne advertisements that touted the quality, reliability, and safety of Honda vehicles.

**ANSWER:**   AHM admits that Delray Honda is an authorized Honda dealer. AHM lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and therefore denies the allegations.

46.     Plaintiff Pazanki relied on the information regarding the quality, safety, and reliability of the Class Vehicle conveyed in those marketing materials and advertisements in deciding to purchase his Class Vehicle. Honda failed to disclose the Parasitic Drain Defect to Plaintiff Pazanki before he purchased his Class Vehicle, despite Honda's knowledge of the Defect, and Plaintiff Pazanki, therefore, purchased his Class Vehicle on the reasonable, but mistaken, belief that it would be a high quality, reliable and safe vehicle. Plaintiff Pazanki would not have purchased the Class Vehicle, or would not have paid as much for it, had he known the vehicle had a Defect that could drain the battery and leave him stranded without warning.

1    **ANSWER:**   AHM denies the existence of the alleged defect. AHM lacks knowledge or

2    information sufficient to form a belief about the truth of the remaining allegations in this paragraph

3    and therefore denies the allegations.

4    47.    After purchasing the vehicle, Plaintiff Pazanki experienced issues with his Class

5    Vehicle as a result of the Defect. Plaintiff Pazanki does not have a vehicle that is safe or reliable as

6    advertised by Honda.

7    **ANSWER:**   AHM denies the existence of the alleged defect. AHM lacks knowledge or

8    information sufficient to form a belief about the truth of the remaining allegations in this paragraph

9    and therefore denies the allegations.

10   48.    Plaintiff Pazanki would purchase another Honda vehicle from Honda in the future if

11   Defendant's representations about the vehicle, including its safety and durability, were accurate.

12   **ANSWER:**   AHM denies that its representations about Honda vehicles were or are

13   inaccurate. AHM lacks knowledge or information sufficient to form a belief about the truth of the

14   remaining allegations in this paragraph and therefore denies the allegations.

15                    **6.    Harry Rapp**

16   49.    Plaintiff Harry Rapp ("Rapp") is a citizen of Arizona, and resides in Lake Havasu City,

17   Arizona. Plaintiff Rapp purchased a new 2018 Honda CR-V, VIN 7FARW1H89JE005050, from

18   Findlay Honda, located at 7494 West Azure Drive, Las Vegas, Nevada 89130, on May 18, 2018.

19   **ANSWER:**   AHM lacks knowledge or information sufficient to form a belief about the truth

20   of the allegations in this paragraph and therefore denies the allegations.

21   50.    Findlay Honda is part of Honda's network of authorized dealers across the United

22   States. Honda features Findlay Honda on its website as an authorized Honda dealer, with links to lists

23   of inventory of Honda vehicles on its website.

24   **ANSWER:**   AHM admits that Findlay Honda is an authorized Honda dealer. AHM further

25   admits that Findlay Honda is listed on its website as an authorized Honda dealer. AHM denies the

26   remaining allegations in this paragraph.

27   51.    When shopping for his Class Vehicle, Plaintiff Rapp researched and considered the

28   reliability and quality of the make and manufacturer. Prior to purchasing his Class Vehicle, Plaintiff

17

1  Rapp was aware of and/or reviewed Honda's promotional materials on the internet and/or at Findlay

2  Honda, saw stickers the dealer placed on the vehicle, and interacted with Honda sales agents at

3  Findlay Honda. Each of those information sources failed to disclose the presence of the Defect in in

4  2018 Honda CR-V models or the other Class Vehicles.

5      **ANSWER:**   AHM denies the existence of the alleged defect. AHM lacks knowledge or

6  information sufficient to form a belief about the truth of the remaining allegations in this paragraph

7  and therefore denies the allegations.

8      52.   Through his exposure and interaction with Honda, Plaintiff Rapp was aware of Honda's

9  uniform and nationwide marketing message that its vehicles are safe and dependable, which was

10  material to his decision to purchase his Class Vehicle. When he purchased the vehicle, he believed

11  that, based on Honda's marketing message, he would be in a safe and dependable vehicle, one that is

12  safer than a vehicle that is not marketed as safe and dependable. At no point before Plaintiff Rapp

13  purchased his Class Vehicle did Honda disclose to him that his vehicle was not safe or dependable,

14  or that it suffered from the Parasitic Drain Defect, which creates safety risks and renders the vehicle

15  useless.

16      **ANSWER:**   AHM denies the existence of the alleged defect. AHM lacks knowledge or

17  information sufficient to form a belief about the truth of the remaining allegations in this paragraph

18  and therefore denies the allegations.

19      53.   Within months of purchasing the vehicle, Plaintiff Rapp first experienced issues caused

20  by the Defect—although he was unaware of the cause at the time. In October 2018, Plaintiff found

21  his vehicle's battery dead and he was unable to start his vehicle without a jump. On October 1, 2018,

22  Plaintiff Rapp brought his vehicle into Kingman Honda, an authorized Honda dealer promoted on

23  Honda's website, when he informed them that the "vehicle had to be jump-started." Kingman Honda

24  stated the "cause" of the no-start condition was the battery: "over time and short trips the battery can

25  no longer be charged or hold a charge." Kingman Honda replaced the battery and stated that the

26  vehicle was "working properly." However, the new battery did not address the F-CAN's defect and

27  Plaintiff Rapp continued to experience no-start conditions. On October 1, 2020, Plaintiff Rapp went

28

back to Kingman Honda due to the vehicle failing to start. Kingman Honda determined that the battery failed the load test and needed to be replaced.

**ANSWER:**   AHM admits that Kingman Honda is an authorized Honda dealer featured on its website. AHM denies the existence of the alleged defect. AHM lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and therefore denies the allegations.

54.   On multiple occasions, Plaintiff Rapp has had to jump-start his Class Vehicle, and he continues to experience other electrical issues such as side mirrors and warning systems not operating properly. Plaintiff Rapp has been forced to purchase additional new vehicle batteries which would not have been necessary but for the presence of the parasitic draw Defect in his Class Vehicle.

**ANSWER:**   AHM denies the existence of the alleged defect. AHM lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and therefore denies the allegations.

55.   Because the replacement battery does not resolve the Parasitic Drain Defect, Plaintiff Rapp is left with a vehicle that he knows could have battery failure at any time and without warning and thus does not have a vehicle that is safe or reliable as advertised by Honda.

**ANSWER:**   AHM denies the existence of the alleged defect. AHM lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and therefore denies the allegations.

56.   Plaintiff Rapp purchased his Class Vehicle with the Parasitic Drain Defect as part of a transaction in which Honda did not disclose material facts related to the automobile's essential purpose—safe and dependable transportation. Plaintiff Rapp did not receive the benefit of his bargain. He purchased a Class Vehicle that is of a lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding safe and reliable operation. The Parasitic Drain Defect has significantly diminished the value of Plaintiff Rapp's Class Vehicle.

**ANSWER:**   AHM denies allegations in this paragraph, including the existence of the alleged defect.

57.     Had Honda disclosed the Defect, Plaintiff Rapp would not have purchased his Class Vehicle, or would have paid less to do so.

**ANSWER:**   AHM denies the existence of the alleged defect. AHM lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and therefore denies the allegations.

58.     Plaintiff Rapp would purchase another Honda vehicle from Honda in the future if Defendant's representations about the vehicle, including its safety and durability, were accurate.

**ANSWER:**   AHM denies that its representations about Honda vehicles were or are inaccurate. AHM lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and therefore denies the allegations.

### 7.     Dennis Woods

59.     Plaintiff Dennis Woods ("Woods") is a citizen of Florida, and resides in Land 0' Lakes, Florida. Plaintiff Woods purchased a used, certified, pre-owned 2016 Honda Accord, VIN 1HGCR2F5XGA234699, from Wesley Chapel Honda, located at 27750 Wesley Chapel Boulevard, Wesley Chapel, Florida 33544, on August 26, 2016.

**ANSWER:**   AHM lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and therefore denies the allegations.

60.     Wesley Chapel Honda is part of Honda's network of authorized dealers across the United States. Honda features Wesley Chapel Honda on its website as an authorized Honda dealer, with links to lists of inventory of Honda vehicles on its website.

**ANSWER:**   AHM admits that Wesley Chapel Honda is an authorized Honda dealer. AHM further admits that Wesley Chapel Honda is listed on its website as an authorized Honda dealer. AHM denies the remaining allegations in this paragraph.

61.     When shopping for his Class Vehicle, Plaintiff Woods researched and considered the reliability and quality of the make and manufacturer. Prior to purchasing his Class Vehicle, Plaintiff Woods was aware of and/or reviewed Honda's promotional materials on the interne and/or at Wesley Chapel Honda, saw stickers the dealer placed on the vehicle, and interacted with Honda sales agents

at Wesley Chapel Honda. Each of those information sources failed to disclose the presence of the Defect in 2016 Honda Accord models or the other Class Vehicles.

**ANSWER:**   AHM denies the existence of the alleged defect. AHM lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and therefore denies the allegations.

62.    Through his exposure and interaction with Honda, Plaintiff Woods was aware of Honda's uniform and nationwide marketing message that its vehicles are safe and dependable, which was material to his decision to purchase his Class Vehicle. When he purchased the vehicle, he believed that, based on Honda's marketing message, he would be in a safe and dependable vehicle, one that is safer than a vehicle that is not marketed as safe and dependable. At no point before Plaintiff Woods purchased his Class Vehicle did Honda disclose to him that his vehicle was not safe or dependable, or that it suffered from the Parasitic Drain Defect, which creates safety risks and renders the vehicle useless.

**ANSWER:**   AHM denies the existence of the alleged defect. AHM lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and therefore denies the allegations.

63.    After purchasing the Class Vehicle, Plaintiff Woods experienced issues caused by the Defect multiple times—although he was unaware of the cause at the time. Ultimately, Plaintiff Woods found his vehicle had a dead battery and was unable to start. On multiple occasions, Plaintiff Woods has had to jump-start his Class Vehicle. By June of 2021, approximately five years after he purchased his Class Vehicle, Plaintiff Woods replaced the battery in his vehicle three times and has incurred other service expenses caused by the Defect.

**ANSWER:**   AHM denies the existence of the alleged defect. AHM lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and therefore denies the allegations.

64.    Because the replacement battery does not resolve the Parasitic Drain Defect, Plaintiff Woods is left with a vehicle that he knows could have battery failure at any time and without warning and thus does not have a vehicle that is safe or reliable as advertised by Honda.

1    **ANSWER:**   AHM denies the existence of the alleged defect. AHM lacks knowledge or
2    information sufficient to form a belief about the truth of the remaining allegations in this paragraph
3    and therefore denies the allegations.

4    65.    Plaintiff Woods purchased his Class Vehicle with the Parasitic Drain Defect as part of
5    a transaction in which Honda did not disclose material facts related to the automobile's essential
6    purpose—safe and dependable transportation. Plaintiff Woods did not receive the benefit of his
7    bargain. He purchased a vehicle that is of a lesser standard, grade, and quality than represented, and
8    he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding safe
9    and reliable operation. The Parasitic Drain Defect has significantly diminished the value of Plaintiff
10   Woods' Class Vehicle.

11   **ANSWER:**   AHM denies allegations in this paragraph, including the existence of the alleged
12   defect.

13   66.    Had Honda disclosed the Defect, Plaintiff Woods would not have purchased his Class
14   Vehicle, or would have paid less to do so.

15   **ANSWER:**   AHM denies the existence of the alleged defect. AHM lacks knowledge or
16   information sufficient to form a belief about the truth of the remaining allegations in this paragraph
17   and therefore denies the allegations.

18   67.    Plaintiff Woods would purchase another Honda vehicle from Honda in the future if
19   Defendant's representations about the vehicle, including its safety and durability, were accurate.

20   **ANSWER:**   AHM denies that its representations about Honda vehicles were or are
21   inaccurate. AHM lacks knowledge or information sufficient to form a belief about the truth of the
22   remaining allegations in this paragraph and therefore denies the allegations.

23        **8.    Dayane Tessinari**

24   68.    Plaintiff Dayane Tessinari ("Tessinari") is a citizen of Florida, and resides in Pompano
25   Beach, Florida. Plaintiff Tessinari purchased a new 2019 Honda Accord, VIN
26   1HGCV1F38KA072178, in July 2019 from Hendrick Honda Pompano Beach, an authorized Honda
27   dealer, located at 5381 North Federal Highway, Pompano Beach, Florida 33064. Plaintiff Tessinari's
28   Class Vehicle was covered by a written warranty. When shopping for her Class Vehicle, Plaintiff

1    Tessinari researched and considered the reliability and quality of the make and manufacturer,
2    including Honda's warranty. Prior to purchasing the Class Vehicle, Plaintiff Tessinari heard, viewed,
3    and/or read Honda marketing materials and advertisements including commercials and interne
4    advertisements that represented the reliability and safety of Honda vehicles.

5        **ANSWER:**   AHM admits that Hendrick Honda Pompano Beach is an authorized Honda
6    dealer. AHM lacks knowledge or information sufficient to form a belief about the truth of the
7    remaining allegations in this paragraph and therefore denies the allegations.

8        69.    Plaintiff Tessinari relied on the information regarding the quality, safety, and reliability
9    of the Class Vehicle conveyed in those marketing materials and advertisements in deciding to
10   purchase her Class Vehicle. Honda failed to disclose the Parasitic Drain Defect to Plaintiff Tessinari
11   before she purchased her Class Vehicle, despite Honda's knowledge of the Defect, and Plaintiff
12   Tessinari, therefore, purchased her Class Vehicle on the reasonable, but mistaken, belief that it would
13   be a high quality, reliable, and safe vehicle. Plaintiff Tessinari would not have purchased the Class
14   Vehicle, or would not have paid as much for it, had she known the vehicle had a Defect that could
15   drain the battery and leave her stranded without warning.

16       **ANSWER:**   AHM denies the existence of the alleged defect. AHM lacks knowledge or
17   information sufficient to form a belief about the truth of the remaining allegations in this paragraph
18   and therefore denies the allegations.

19       70.    After purchasing the vehicle, Plaintiff Tessinari experienced issues with her Class
20   Vehicle as a result of the Defect. Plaintiff Tessinari does not have a vehicle that is safe or reliable as
21   advertised by Honda.

22       **ANSWER:**   AHM denies the existence of the alleged defect. AHM lacks knowledge or
23   information sufficient to form a belief about the truth of the remaining allegations in this paragraph
24   and therefore denies the allegations.

25       71.    Plaintiff Tessinari would purchase another Honda vehicle from Honda in the future if
26   Defendant's representations about the vehicle, including its safety and durability, were accurate.

27
28

AMERICAN HONDA MOTOR CO., INC.'S ANSWER TO SECOND AMENDED COMPLAINT

1       **ANSWER:**  AHM denies that its representations about Honda vehicles were or are
2 inaccurate. AHM lacks knowledge or information sufficient to form a belief about the truth of the
3 remaining allegations in this paragraph and therefore denies the allegations.

4       **9.**    **Brendan Sanger**

5       72.    Plaintiff Brendan Sanger is a citizen of Michigan and resides in Litchfield, Michigan.
6 On or about February 15, 2017, Plaintiff Sanger purchased a 2017 Honda Accord Touring, VIN
7 1HGCR3F98HA025360 from Art Moehn Auto Group Honda, located at 2200 Seymour Road,
8 Jackson, Michigan 49201.

9       **ANSWER:**  AHM lacks knowledge or information sufficient to form a belief about the truth
10 of the allegations in this paragraph and therefore denies the allegations.

11       73.    Art Moehn Auto Group Honda is part of Honda's network of authorized dealers across
12 the United States. Honda features Art Moehn Auto Group Honda on its website as an authorized
13 dealer, with links to lists of inventories of Honda vehicles on its website.

14       **ANSWER:**  AHM admits that Art Moehn Honda is an authorized Honda dealer. AHM
15 further admits that Art Moehn Honda is listed on its website as an authorized Honda dealer. AHM
16 denies the remaining allegations in this paragraph.

17       74.    When shopping for his Class Vehicle, Plaintiff Sanger researched and considered the
18 reliability and quality of the make and manufacturer. Plaintiff relied on Honda's representations and
19 that of its salesmen about the functionality and features of the vehicle, including its quality, safety,
20 and warranties.

21       **ANSWER:**  AHM lacks knowledge or information sufficient to form a belief about the truth
22 of the allegations in this paragraph and therefore denies the allegations.

23       75.    Prior to purchasing his Class Vehicle, Plaintiff Sanger was aware of and/or reviewed
24 Honda's promotional materials on the interne and/or at Art Moehn Auto Group Honda, saw stickers
25 the dealer placed on the vehicle, and interacted with Honda sales agents at Art Moehn Auto Group
26 Honda. Each of those information sources failed to disclose the presence of the Defect in 2017 Honda
27 Accord models or the other Class Vehicles.

28

1   **ANSWER:**   AHM denies the existence of the alleged defect. AHM lacks knowledge or

2   information sufficient to form a belief about the truth of the remaining allegations in this paragraph

3   and therefore denies the allegations.

4   76.   Through his exposure and interaction with Honda, Plaintiff Sanger was aware of

5   Honda's uniform and nationwide marketing message that its vehicles are safe and dependable, which

6   was material to his decision to purchase his Class Vehicle. When he purchased his Class Vehicle, he

7   believed, based on Honda's marketing message, that he would be in a safe and dependable vehicle,

8   one that is safer than a vehicle that is not marketed as safe and dependable. At no point before Plaintiff

9   Sanger purchased his Class Vehicle did Honda disclose to him that his vehicle was not safe or

10   dependable, or that it suffered from the Parasitic Drain Defect, which creates safety risks and renders

11   the vehicle useless.

12   **ANSWER:**   AHM denies the existence of the alleged defect. AHM lacks knowledge or

13   information sufficient to form a belief about the truth of the remaining allegations in this paragraph

14   and therefore denies the allegations.

15   77.   After purchasing his Class Vehicle, Plaintiff Sanger experienced issues as a result of

16   the Defect. Plaintiff does not have a vehicle that is safe or reliable as advertised by Honda.

17   **ANSWER:**   AHM denies the existence of the alleged defect. AHM lacks knowledge or

18   information sufficient to form a belief about the truth of the remaining allegations in this paragraph

19   and therefore denies the allegations.

20   78.   Plaintiff Sanger purchased his Class Vehicle with the Parasitic Drain Defect as part of

21   a transaction in which Honda did not disclose material facts related to the automobile's essential

22   purpose—safe and dependable transportation. Plaintiff Sanger did not receive the benefit of his

23   bargain. He purchased a Class Vehicle that is of a lesser standard, grade, and quality than represented,

24   and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding

25   safe and reliable operation. The Parasitic Drain Defect has significantly diminished the value of

26   Plaintiff Sanger's Class Vehicle.

27   **ANSWER:**   AHM denies allegations in this paragraph, including the existence of the alleged

28   defect.

79.     Had Honda disclosed the Defect, Plaintiff Sanger would not have purchased his Class Vehicle, or would have paid less to do so.

**ANSWER:**   AHM denies the existence of the alleged defect. AHM lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and therefore denies the allegations.

80.     Plaintiff Sanger would purchase another Honda vehicle from Honda in the future if Defendant's representations about the vehicle, including its safety and durability, were accurate.

**ANSWER:**   AHM denies that its representations about Honda vehicles were or are inaccurate. AHM lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and therefore denies the allegations.

81.     Plaintiff Sanger—on behalf of himself and the Michigan Subclass—sent a demand letter to Defendant via certified mail on or about August 23, 2021, to bring this action pursuant to MICH. COMP. LAWS SERV. §445.911(4) ("MCL 445.911(4)"). Plaintiff Sanger's letter advised Defendant that it is in violation of the MCL 445.911(4) and must correct, replace, or otherwise remedy the Class Vehicles alleged to be in violation of MCL 445.911(4) as a result of the Defect. Defendant was further advised therein that in the event the relief requested was not provided within 30 days, Plaintiff Sanger would amend the complaint to include an unfair, unconscionable, or deceptive practices claim with a request for monetary damages. Over 30 days have now passed, and Defendant did not correct, replace, or otherwise remedy the Class Vehicles and issues alleged in Plaintiff's notice under MCL 445.911(4) or this Complaint within the statutorily prescribed 30-day period. Plaintiff Sanger, therefore, seeks both injunctive relief and monetary damages (including compensatory damages) against Defendant pursuant to MCL 445.911(4).

**ANSWER:**   AHM admits that Sanger sent a letter to it via certified mail dated August 23, 2021 asserting that it is in violation of MICH. COMP. LAWS SERV. ("MCL") § 445.911(4), demanding that it remedy the alleged violation, and advising that he would amend this complaint to include an unfair, unconscionable, or deceptive practices act claim with a request for monetary damages if the alleged violation were not corrected in 30 days, but denies that the letter satisfied the requirements of MCL § 445.911(4). AHM further admits that Sanger seeks both injunctive relief and monetary

1   damages against AHM pursuant to MCL § 445.911(4). AHM denies the remaining allegations in this

2   paragraph, including the existence of the alleged defect.

3       82.     Plaintiff further seeks an Order awarding costs of court and attorneys' fees pursuant to

4   the Michigan Consumer Protection Act.

5       **ANSWER:**   AHM admits that Sanger seeks an order awarding costs and attorneys' fees

6   pursuant to the Michigan Consumer Protection Act, but denies that Sanger is entitled to such relief.

7   AHM denies any remaining allegations in this paragraph.

8                   **10.   Jason Casey**

9       83.     Plaintiff Jason Casey is a citizen of Massachusetts and resides in Spencer,

10   Massachusetts. On or about March 29, 2017, Plaintiff Casey purchased a 2017 Honda Accord EX,

11   VIN 1HGCR2F31HA184601 from Lundgren Honda, located at 163 Washington Street, Auburn,

12   Massachusetts 01501.

13       **ANSWER:**   AHM lacks knowledge or information sufficient to form a belief about the truth

14   of the allegations in this paragraph and therefore denies the allegations.

15       84.     Lundgren Honda is part of Honda's network of authorized dealers across the United

16   States. Honda features Lundgren Honda on its website as an authorized dealer, with links to lists of

17   inventories of Honda vehicles on its website.

18       **ANSWER:**   AHM admits that Lundgren Honda of Auburn is an authorized Honda dealer.

19   AHM further admits that Lundgren Honda of Auburn is listed on its website as an authorized Honda

20   dealer. AHM denies the remaining allegations in this paragraph.

21       85.     When shopping for his Class Vehicle, Plaintiff Casey researched and considered the

22   reliability and quality of the make and manufacturer. Plaintiff relied on Honda's representations and

23   that of its salesmen about the functionality and features of the vehicle, including its quality, safety,

24   and warranties.

25       **ANSWER:**   AHM lacks knowledge or information sufficient to form a belief about the truth

26   of the allegations in this paragraph and therefore denies the allegations.

27       86.     Prior to purchasing his Class Vehicle, Plaintiff Casey was aware of and/or reviewed

28   Honda's promotional materials on the internet and/or at Lundgren Honda, saw stickers the dealer

1    placed on the vehicle, and interacted with Honda sales agents at Lundgren Honda. Each of those

2    information sources failed to disclose the presence of the Defect in 2017 Honda Accord models or

3    the other Class Vehicles.

4         **ANSWER:**   AHM denies the existence of the alleged defect. AHM lacks knowledge or

5    information sufficient to form a belief about the truth of the remaining allegations in this paragraph

6    and therefore denies the allegations.

7         87.   Through his exposure and interaction with Honda, Plaintiff Casey was aware of

8    Honda's uniform and nationwide marketing message that its vehicles are safe and dependable, which

9    was material to his decision to purchase his Class Vehicle. When he purchased the vehicle, he

10   believed, based on Honda's marketing message, that he would be in a safe and dependable vehicle,

11   one that is safer than a vehicle that is not marketed as safe and dependable. At no point before Plaintiff

12   Casey purchased his Class Vehicle did Honda disclose to him that his vehicle was not safe or

13   dependable, or that it suffered from the Parasitic Drain Defect, which creates safety risks and renders

14   the vehicle useless.

15        **ANSWER:**   AHM denies the existence of the alleged defect. AHM lacks knowledge or

16   information sufficient to form a belief about the truth of the remaining allegations in this paragraph

17   and therefore denies the allegations.

18        88.   After purchasing his Class Vehicle, Plaintiff Casey experienced issues as a result of the

19   Defect. Plaintiff does not have a vehicle that is safe or reliable as advertised by Honda.

20        **ANSWER:**   AHM denies the existence of the alleged defect. AHM lacks knowledge or

21   information sufficient to form a belief about the truth of the remaining allegations in this paragraph

22   and therefore denies the allegations.

23        89.   Plaintiff Casey purchased his Class Vehicle with the Parasitic Drain Defect as part of

24   a transaction in which Honda did not disclose material facts related to the automobile's essential

25   purpose—safe and dependable transportation. Plaintiff Casey did not receive the benefit of his

26   bargain. He purchased a Class Vehicle that is of a lesser standard, grade, and quality than represented,

27   and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding

28

safe and reliable operation. The Parasitic Drain Defect has significantly diminished the value of Plaintiff's Class Vehicle.

**ANSWER:**   AHM denies allegations in this paragraph, including the existence of the alleged defect.

90.   Had Honda disclosed the Defect, Plaintiff Casey would not have purchased his Class Vehicle, or would have paid less to do so.

**ANSWER:**   AHM denies the existence of the alleged defect. AHM lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and therefore denies the allegations.

91.   Plaintiff Casey would purchase another Honda vehicle from Honda in the future if Defendant's representations about the vehicle, including its safety and durability, were accurate.

**ANSWER:**   AHM denies that its representations about Honda vehicles were or are inaccurate. AHM lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and therefore denies the allegations.

92.   Plaintiff Casey—on behalf of himself and the Massachusetts Subclass—sent a demand letter to Defendant via certified mail on or about August 23, 2021, pursuant to the requirements of MASS. GEN. LAW, Chapter 93A, Section 9 ("M.G.L. Ch. 93A" or "Chapter 93A"). The Chapter 93A letter advised Defendant that it is in violation of the M.G.L. Ch. 93A and must correct, replace, or otherwise remedy the Class Vehicles alleged to be in violation of M.G.L. Ch. 93A §9 as a result of the Defect. Over 30 days have now passed, and Defendant did not correct, replace, or otherwise remedy the Class Vehicles and issues alleged in Plaintiff's M.G.L. Ch. 93A §9 notice or this Complaint within the statutorily prescribed 30-day period. Plaintiff Casey, therefore, seeks both injunctive relief and monetary damages (including compensatory and punitive damages) against Defendant pursuant to M.G.L. Ch. 93A §9.

**ANSWER:**   AHM admits that Casey sent a letter to it via certified mail dated August 23, 2021 asserting that it is in violation of MASS. GEN. LAW. ("M.G.L.") Ch. 93A § 9 and demanding that it remedy the alleged violation, but denies that the letter satisfied the requirements of M.G.L. Ch. 93A § 9. AHM further admits that Casey seeks both injunctive relief and monetary damages against AHM

1    pursuant to M.G.L. Ch. 93A § 9. AHM denies the remaining allegations in this paragraph, including

2    the existence of the alleged defect.

3         93.    Plaintiff further seeks an Order awarding costs of court and attorneys' fees pursuant to

4    M.G.L. Ch. 93A §9(3A).

5         **ANSWER:**   AHM admits that Casey seeks an order awarding costs and attorneys' fees

6    pursuant to the M.G.L. Ch. 93A § 9, but denies that Casey is entitled to such relief. AHM denies any

7    remaining allegations in this paragraph.

8         **B.**    **Defendant**

9         94.    Defendant American Honda Motor Company, Inc. is incorporated in California with

10   its principal place of business in Torrance, California. Honda is the wholly owned subsidiary in North

11   America of Honda Motor Company Limited ("HML"), a Japanese corporation. Honda began

12   operations in 1959 and is now responsible for "[s]ales, marketing, service, distribution, import and

13   export of Honda and Acura products in the U.S."[5]

14        **ANSWER:**   AHM admits the allegations in this paragraph, but notes that the correct spelling

15   of its parent company is "Honda Motor Co., Ltd."

16        95.    Honda Development & Manufacturing of America, LLC and Honda R&D Americas,

17   LLC are affiliated with Honda, and operate 19 major manufacturing plants in North America and 14

18   major research and development centers in North America which jointly fully design, develop, and

19   engineer many of the products the Company makes in North America.

20        **ANSWER:**   AHM admits that Honda Development & Manufacturing of America, LLC

21   ("HDMA") and Honda R&D Americas, LLC are or were affiliated with the Honda brand. AHM

22   further admits that HDMA operates multiple manufacturing plants and research and development

23   centers in North America. AHM further admits that Plaintiffs purport to quote a website. The contents

24   of that website speak for themselves, and to the extent the allegations in this paragraph vary therewith,

25   AHM denies the allegations. AHM denies the remaining allegations in this paragraph.

26

27

28   _____
     [5] Honda, Honda 2020 Digital FactBook, at 2.1 (Aug. 31, 2020), https://hondanews.com/en-US/honda-corporate/releases/release-554e3d8539c7f6db3b88b571930280ab-honda-2020-digital-factbook.

96.     Honda is a holding company of sales, manufacturing, engineering, design, and research and development strategies of HML in the United States. Honda is in the business of designing, engineering, testing, validating, manufacturing, distributing, marketing, selling, and servicing Honda- and Acura-branded vehicles in the United States through its hundreds of dealerships.

**ANSWER:**   AHM admits that it is in the business of marketing and selling and distributing to authorized dealers for resale in the United States Honda and Acura branded vehicles. AHM denies the remaining allegations in this paragraph.

97.     At its Torrance, California headquarters, Honda reportedly combines product sales, service, and coordinating functions for HML in North America, and is responsible for the manufacture, development, distribution, marketing, sales, and servicing of Honda vehicles. The decisions regarding the marketing and sale of the Class Vehicles, the development of the internal Service Bulletins relating to the Parasitic Drain Defect in the Class Vehicles, and the disclosure or non-disclosure of the Defect were in whole or substantial part made by Honda at its Torrance headquarters. For example, in addition to Honda's C-Suite, Honda's Vice President of Marketing & Customer Experience (responsible for "overseeing marketing and public relations for both the Honda and Acura automobile brands as well as the company's customer experience initiatives");[6] Assistant Vice President of Honda's Marketing Division (responsible for "leading the company's marketing efforts for both the Honda and Acura automobile brands");[7] Vice President of the Automobile Sales Strategy Division (responsible for Honda's "market representation, sales and production planning, certified pre-owned sales, dealer communication, product and sales information, as well as export sales and distribution");[8] Vice President of the Product Regulatory Office (responsible for "overseeing the U.S. regulatory compliance activities for all automobile . . . products, including the areas of product safety, environmental strategy, and energy reporting and compliance");[9] Division

[6] Press Release, Honda, Jay Joseph, https://hondanews.com/en-US/releases/jay-joseph-bio (last accessed Sept. 21, 2021).
[7] Press Release, Honda, Ed Beadle, https://hondanews.com/en-US/releases/ed-beadle (last accessed Sept. 21, 2021).
[8] Press Release, Honda, Steven Center, https://hondanews.com/en-US/releases/steven-center (last accessed Sept. 21, 2021).
[9] Press Release, Honda, Jenny Gilger, https://hondanews.com/en-US/releases/jenny-gilger-bio (last accessed Sept. 21, 2021).

1    Head of Product Safety (responsible for automobile "product safety, including compliance with the
2    Transportation Recall Enhancement, Accountability and Documentation [("TREAD")] Act[,]"
3    "compliance with government regulations[,]" and managing "Honda's relationship with U.S.
4    government agencies, including the National Highway Traffic Safety Administration [("NHTSA")]
5    … on matters related to incident reporting, safety investigations, and product recall management");[10]
6    and Manager of Auto Campaigns and Recalls (responsible for communicating with Honda
7    dealerships concerning potential defects in Honda vehicles and overseeing internal investigations)[11]
8    are each based in Torrance.

9        **ANSWER:**   AHM admits that its principal place of business is at its headquarters in
10    Torrance, California, and that its business includes marketing, selling and distributing to authorized
11    dealers for resale, and providing customer service for Honda branded vehicles in North America.
12    AHM further admits that members of its C-Suite are based in Torrance. AHM further admits that Jay
13    Joseph was the Vice President of its Marketing & CX business unit and is based in Torrance. AHM
14    further admits that Ed Beadle was the Assistant Vice President and Marketing Division Head of
15    Honda and Acura Marketing and was based in Torrance. AHM further admits that Steven Carter was
16    the Vice President of its Automobile Sales Strategy Division and was based in Torrance. AHM further
17    admits that Jenny Gilger was its Vice President of its Product Regulatory Office and was based in
18    Torrance. AHM further admits that Jeff Chang was a Senior Manager, Product Safety at AHM and
19    was based in Torrance. AHM further admits that Brad Ortloff is a Manager of Auto Campaigns and
20    Recalls at AHM and is based in Torrance. AHM further admits that Plaintiffs purport to quote various
21    websites. The contents of those websites speak for themselves, and to the extent the allegations in
22    this paragraph vary therewith, AHM denies the allegations. AHM denies the remaining allegations in
23    this paragraph, including the existence of the alleged defect.

---

[10] Linkedln, Jeff Chang, https://www.linkedin.com/in/jeff-chang-2a0195107/ (last accessed Sept. 21, 2021).
[11] Linkedln, Brad Ortloff, https://www.linkedin.com/in/brad-ortloff-7210039a/ (last accessed Sept. 21, 2021); *see also* https://static.nhtsa.gov/odi/tsbs/2019/MC-10156621-0001.pdf (last accessed Sept. 21, 2021).

AMERICAN HONDA MOTOR CO., INC.'S ANSWER TO SECOND AMENDED COMPLAINT

98.     Honda's warranty and customer service departments for Honda vehicle owners and lessees are operated from its Torrance headquarters.[12]

**ANSWER:**   AHM admits that its warranty department is operated at its Torrance headquarters. AHM further admits that Plaintiffs purport to reference its website. The contents of the website speak for themselves, and to the extent the allegations in this paragraph vary therewith, AHM denies the allegations. AHM denies the remaining allegations in this paragraph.

## V.     SUBSTANTIVE ALLEGATIONS

### A.     Honda's History of Emphasizing the Quality, Reliability, and Safety of Its Vehicles

99.     Passenger cars such as the Accord and Civic, and light trucks (such as the CR-V, Odyssey, and Pilot) are Honda's principal automobile models in the United States. More than half of all Honda parent HML's global revenue from 2018 to 2020 were from North American sales.

**ANSWER:**   AHM admits that Honda's automobile models in the United States include the Accord, Civic, CR-V, Odyssey, and Pilot. AHM lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and therefore denies the allegations.

100.    The Accord, first introduced in 1976, is now up to its tenth generation; the ninth generation was released in 2013, and the tenth generation was released in 2018.

**ANSWER:**   AHM admits the allegations in this paragraph.

101.    The Honda CR-V is a compact crossover SUV, first sold in Japan in 1995 and introduced into the United States market in 1997, selling 66,000 vehicles in its first year. Honda's 2017 CR-V introduced the fifth generation of the vehicle.

**ANSWER:**   AHM admits that the CR-V is a compact crossover SUV that was first sold in Japan in 1995 and introduced into the United States in 1997. AHM further admits that it sold approximately 66,000 CR-Vs in the United States in 1997 and that it introduced the fifth generation of the vehicle in 2017. AHM denies the remaining allegations in this paragraph.

---

[12] *See* Honda, https://automobiles.honda.com/information/customer-relations#:—
:text=Call%201%2D866%2D864%2D5211 (last accessed July 27, 2021); https://direct.automobiles.honda.com/infonnation/customer-relations.aspx (last accessed July 27, 2021).

AMERICAN HONDA MOTOR CO., INC.'S ANSWER TO SECOND AMENDED COMPLAINT

102.   Honda is at the top of automakers in the United States in terms of sales.

**ANSWER:**   AHM lacks knowledge or information about the sales of other automakers, and on that basis, lacks knowledge or information to respond to this allegation.

103.   In 2019 and 2020, Honda sold 1.6 million and 1.3 million vehicles, respectively.[13]

**ANSWER:**   AHM admits that it sold over 1.6 million vehicles in 2019 and over 1.3 million vehicles in 2020. AHM further admits that Plaintiffs purport to reference a website. The contents of the website speak for themselves, and to the extent the allegations in this paragraph vary therewith, AHM denies the allegations. AHM denies the remaining allegations in this paragraph.

104.   In 2019, more than 90% of the Honda and Acura automobiles sold in the United States were produced in North America.[14]

**ANSWER:**   AHM admits that in 2018, more than 90% of Honda and Acura automobiles sold in the United States were made in North America. AHM further admits that Plaintiffs purport to reference a website. The contents of the website speak for themselves, and to the extent the allegations in this paragraph vary therewith, AHM denies the allegations. AHM denies the remaining allegations in this paragraph.

105.   The Accord has been Honda's third best-selling vehicle, selling over 267,000 vehicles and over 199,000 vehicles in 2019 and 2020, respectively.[15] The CR-V has been Honda's best-selling vehicle in the United States for eight straight years, selling over 384,000 vehicles in 2019 and over 323,000 vehicles in 2020.[16]

**ANSWER:**   AHM admits that the Accord was its third best-selling vehicle in the United States in 2019 and 2020, and that it sold over 267,000 Accords in 2019 and over 199,000 in 2020. AHM further admits the CR-V was its best-selling vehicle in the United States for some years, and that it sold over 384,000 CR-Vs in 2019 and over 325,000 in 2020. AHM further admits that Plaintiffs

---

[13]  Car Sales Statistics, https://www.best-selling-cars.com/usa/2020-full-year-usa-honda-and-acura-sales-by-model/ (last accessed Sept. 21, 2021).
[14]  *See* https ://hondanews . com/en-US/release s/honda-honors -its -top-north-american- suppliers-3#:—:text=In%202018%2C%20more%20than%2090,HF120%20turbofan%20engines%20in%20 America.
[15]  Goodcarbadcar.net, "Honda Accord Sales Figures," https://www.goodcarbadcar.net/honda-accord-sales-figures/
[16]  Goodcarbadcar.net, "Honda C-RV Sales Figures," https://www.goodcarbadcar.net/honda-cr-v-sales-figures/

purport to reference a website. The contents of the website speak for themselves, and to the extent the allegations in this paragraph vary therewith, AHM denies the allegations. AHM denies the remaining allegations in this paragraph.

106.   A McKinsey & Company report noted that over twice as many second-owner used vehicles are sold in the United States each year compared to new vehicles.[17]

**ANSWER:**   AHM admits that Plaintiffs purport to reference a website linking to a McKinsey & Company report. The contents of the website and report speak for themselves, and to the extent the allegations in this paragraph vary therewith, AHM denies the allegations. AHM lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and therefore denies the allegations.

107.   Honda has metamorphosed into such a large player in the United States auto-market based on its assurances to consumers of care, durability, quality, and safety. Consistent with its marketing and public statements, Honda falsely represents its vehicles as safe and dependable so that consumers can rely upon the build and quality of the vehicles for daily use.

**ANSWER:**   AHM lacks knowledge or information to respond to the first sentence of this paragraph. AHM denies the allegations in the second sentence of this paragraph.

108.   Honda dedicates a page on its website entitled "safety," where Honda represents the safety of its vehicles.[18] Therein, Honda states that it conducts "Virtual & Real-World Tests[,]" and touts that it has "developed two of the world's most advanced crash-test facilities — including the largest ever built and first to allow multi-directional crashes." Further, Honda states that it also "dreamt bigger to create some of the most advanced virtual crash tests in the world. All this combines to make safer roads for everyone."[19]

**ANSWER:**   AHM admits that Plaintiffs purport to reference its website. The contents of the website speak for themselves, and to the extent the allegations in this paragraph vary therewith, AHM denies the allegations. AHM denies the remaining allegations in this paragraph.

---

[17] Ben Ellencweig, et al., Used cars, new platforms: accelerating sales in a digitally disrupted market (June 6, 2019), https://www.mckinsey.com/industries/automotive-and-assembly/our-insights/used-cars-new-platforms-accelerating-sales-in-a-disrupted-market.
[18] Honda, https://www.honda.com/safety (last accessed Sept. 21, 2021).
[19] *Id.*

109.   Notwithstanding the presence of the Defect in millions of Class Vehicles which prevents drivers from starting their engines and can cause engine stalls, Honda calls itself "a mobility company—we move people. But, for us, safety is an enormous priority. We don't just want to move you; we want to move you safely."[20]

**ANSWER:**   AHM admits that Plaintiffs purport to reference its website. The contents of the website speak for themselves, and to the extent the allegations in this paragraph vary therewith, AHM denies the allegations. AHM denies the remaining allegations in this paragraph, including the existence of the alleged defect.

110.   In addition to the real-world test performed at the "most advanced crash-test facilities[,]"[21] Honda "supplement[s] these tests" with "software that results in extremely reliable, accurate, and cost-effective crash simulations."[22] Honda claims that the safety testing procedures it utilizes "allows [it] to make the road safer for everybody on it by engineering for worst case scenarios in an unprecedented way."

**ANSWER:**   AHM admits that Plaintiffs purport to reference its website. The contents of the website speak for themselves, and to the extent the allegations in this paragraph vary therewith, AHM denies the allegations. AHM denies the remaining allegations in this paragraph.

111.   A "rugged" webpage on Honda's website represents that Honda conducts "COLD-WEATHER TESTING[,]" including "on 23 different driving courses in the frozen prairies of Northern Minnesota" and in "-40-degree cold cells."[23] Further, Honda states that it "test[s] everything" at "the Honda Proving Center of California, spanning 3,840 acres of sun-scorched desert."[24]

**ANSWER:**   AHM admits that Plaintiffs purport to reference its website. The contents of the website speak for themselves, and to the extent the allegations in this paragraph vary therewith, AHM denies the allegations. AHM denies the remaining allegations in this paragraph.

---

[20] Honda, https://www.honda.com/safety/virtual-and-real-world-tests (last accessed Sept. 21, 2021).
[21] *Id.*
[22] *Id.*
[23] Honda, https://automobiles.honda.com/rugged (last accessed Sept. 21, 2021).
[24] *Id.*

112.   The consistently uniform marketing message from Honda concerning the reliability of its vehicles is also found in the marketing materials unique to the Class Vehicles.

**ANSWER:**   AHM does not understand what Plaintiffs mean by this allegation, and on that basis, denies the allegation in this paragraph.

113.   In the brochure for Honda's "ALL-NEW 2017 CR-V[,]" Honda states that "THE BAR HAS BEEN RAISED, AGAIN" and that the CR-V sets "the new standard in comfort, style and versatility." Honda marketed the CR-V as "[a] vehicle designed for a superior driving experience makes for better exploration of the roads ahead[,]" "deliver[ing] a wealth of standard features and driver and passenger conveniences[.]"[25]

**ANSWER:**   AHM admits that Plaintiffs purport to reference its website. The contents of the website speak for themselves, and to the extent the allegations in this paragraph vary therewith, AHM denies the allegations. AHM denies the remaining allegations in this paragraph.

114.   Even in the face of the known Parasitic Drain Defect in the vehicle, Honda proclaimed the CR-V's reliability with the slogan, "Because no matter where you're going, there's always more to do, more to see, and more to experience-every day."[26]

**ANSWER:**   AHM admits that Plaintiffs purport to reference its website. The contents of the website speak for themselves, and to the extent the allegations in this paragraph vary therewith, AHM denies the allegations. AHM denies the remaining allegations in this paragraph, including the existence of the alleged defect.

115.   In addition, Honda stated that the vehicle provides "A STAND-OUT EXPERIENCE" because "[e]very surface, every contour, and every feature has been thoughtfully designed to create a truly superior driving experience in every sense." In light of all these purported safety features and attention to detail, Honda instructs drivers to "COMMUTE WITH CONFIDENCE."[27]

---

[25]   Honda   2017   CR-V   Brochure,   https://automobiles.honda.com/-/media/Honda-Automobiles/Vehicles/2017/CR-V/Brochures/weird/MY17CRV-Wave2-Reprint (last accessed Sept. 21, 2021).
[26] *Id*.
[27] *Id*.

1
**ANSWER:**   AHM admits that Plaintiffs purport to reference its website. The contents of the

2
website speak for themselves, and to the extent the allegations in this paragraph vary therewith, AHM

3
denies the allegations. AHM denies the remaining allegations in this paragraph.

4
116.   Featured prominently in Honda's marketing materials are claims of excellence in

5
quality, design, safety, and reliability.

6
**ANSWER:**   AHM admits that some of its marketing materials advertise excellence in

7
quality, design, safety, and reliability. AHM denies the remaining allegations in this paragraph.

8
117.   For example, in its brochure for the 2018 Accord, Honda states that the vehicle is "[t]he

9
most impressive Honda ever":[28]



19
**ANSWER:**   AHM admits that Plaintiffs purport to reference its website. The contents of the

20
website speak for themselves, and to the extent the allegations in this paragraph vary therewith, AHM

21
denies the allegations. AHM denies the remaining allegations in this paragraph.

22
118.   Additional representations about reliability-related topics include affirmative promises

23
that the Class Vehicle was "[b]uilt for what-if" and is "[a]t the forefront of safety."[29]

---

[28]             Honda             2018             Accord             Brochure,
https://pictures.dealer.com/rivertownhonda/8b4ec4800a0e0ca37432ffaa8919ba2f.pdf  (last  accessed
Sept. 21, 2021).
[29] *Id.*

AMERICAN HONDA MOTOR CO., INC.'S ANSWER TO SECOND AMENDED COMPLAINT

1

2        **ANSWER:**   AHM admits that Plaintiffs purport to reference its website. The contents of the website speak for themselves, and to the extent the allegations in this paragraph vary therewith, AHM

3 denies the allegations. AHM denies the remaining allegations in this paragraph.

4     119.   Honda similarly represented that the 2018 CR-V is a dependable vehicle. In the

5 brochure for the Class Vehicle, Honda again states that drivers should "[c]ommute with confidence"

6 and that there is "[e]xcellence in every detail."[30]

7        **ANSWER:**   AHM admits that Plaintiffs purport to reference its website. The contents of the

8 website speak for themselves, and to the extent the allegations in this paragraph vary therewith, AHM

9 denies the allegations. AHM denies the remaining allegations in this paragraph.

10     120.   The 2019 CR-V was promoted by Honda as a reliable vehicle with the slogan "Enhance

11 Every Day[,]" "MONDAY" through "SUNDAY[,] [p]eace of mind, from here to everywhere":[31]



12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27 [30] Honda 2018 CR-V Brochure, https://automobiles.honda.com/-/media/Honda- Automobiles/Vehicles/2018/CR-V/2018-Updates/Brochure/MY18_CR-V_Brochure_Online_Mechl.pdf (last accessed Sept. 21, 2021).

28 [31] Honda, https://web.archive.org/web/20190218165632if /https ://automobiles.honda.com/cr-v#features (last accessed Sept. 21, 2021).

AMERICAN HONDA MOTOR CO., INC.'S ANSWER TO SECOND AMENDED COMPLAINT



**ANSWER:**   AHM admits that Plaintiffs purport to reference its website. The contents of the website speak for themselves, and to the extent the allegations in this paragraph vary therewith, AHM denies the allegations. AHM denies the remaining allegations in this paragraph.

**B.    The Class Vehicles' F-CAN Suffers From the Parasitic Drain Defect**

121.   Like the nervous system in a human body, which allows the body's muscles and organs to communicate with one another, the various components within a vehicle are controlled by its Controller Area Network ("CAN").

**ANSWER:**   AHM admits that some components of certain vehicles communicate via a CAN. AHM lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and therefore denies the allegations.

122.   A CAN is a serial bus system that is used to interface between various intelligent components, such as ECUs. The CAN allows the ECUs and sensors within a vehicle to communicate to one another via a single pair of wires. Utilizing a CAN reduces lengthy and complex wiring for the dozens of ECUs and other components that exchange data as part of their ordinary functions. The ECUs within the CAN have transmitters and receivers, which allow them to receive and transmit data to other components within the CAN.

**ANSWER:**   AHM admits that various components, such as certain ECUs and sensors, can communicate through a CAN, and that utilizing a CAN may reduce the length and complexity for wiring such components. AHM further admits that certain ECUs may receive and transmit data through the CAN. AHM lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and therefore denies the allegations.

123.   For example, the Class Vehicle's wheel sensors, which are part of the anti-lock braking system ("ABS") transmit information to the ABS module (which is an ECU) through the CAN. In turn, the ABS module may pass this real-time data along the CAN to the VSA modulator control unit, which will process the data to determine whether it needs to help stabilize the vehicle during acceleration, cornering and braking.

**ANSWER:**   AHM admits that a wheel speed sensor is part of the anti-lock braking system ("ABS") and that the VSA MCU is connected to the CAN. AHM denies the remaining allegations in this paragraph.

124.   The CAN in the Class Vehicles is split into two subnetworks: the Fast CAN ("F-CAN") and the Body CAN ("B-CAN"). The F-CAN transfers data at a faster speed (500 kbps) and primarily controls the more critical components of the car, such as the engine, transmission, steering, brakes, and other and "real time" functions (*e.*g. speed, fuel, and emissions data).[32] The F-CAN in the Class Vehicles is comprised of, among other ECUs, the BCM, Gauge Control Module, PCM, VSA Modulator-Control Unit, Electric Brake Booster, Electronic Power Steering ("EPS") Control Unit, and Transmission Control Module.

**ANSWER:**   AHM admits that the CAN in the alleged Class Vehicles is split into two subnetworks: the F-CAN and the Body CAN ("B-CAN"). AHM further admits that the F-CAN transfers data at a faster speed (approximately 500 kbps) and connects to components associated with the engine, transmission, steering, brakes, and other functions (including some associated with speed and fuel). AHM further admits that the F-CAN in the alleged Class Vehicles is connected to the Gauge Control Module, PCM, VSA MCU, and Electronic Power Steering ("EPS") Control Unit, and in some of the alleged Class Vehicles to the BCM, Electric Brake Booster, and Transmission Control

---

[32] https://www.autocodes.com/articles/32/honda-b-can-and-f-can.html.

Module. AHM further admits that Plaintiffs purport to reference a website. The contents of the website speak for themselves, and to the extent the allegations in this paragraph vary therewith, AHM denies the allegations. AHM denies the remaining allegations in this paragraph.

125.    The B-CAN communicates data at a slower speed (33.33 kbps) for convenience related items and for other functions.[33] For example, the B-CAN is comprised of the Climate Control Unit, Audio Unit, and Power Seat Control Unit, among others.

**ANSWER:**   AHM admits that the B-CAN communicates data at a slower speed and connects to components associated with certain convenience and other functions, including the Climate Control Unit and Audio Unit, and in some of the alleged Class Vehicles the Power Seat Control Unit. AHM further admits that Plaintiffs purport to reference a website. The contents of the website speak for themselves, and to the extent the allegations in this paragraph vary therewith, AHM denies the allegations. AHM denies the remaining allegations in this paragraph.

126.    To allow both subnetworks to share information, the gauge control module translates information from B-CAN to F-CAN and from F-CAN to B-CAN. This is called the Gateway Function.[34]

**ANSWER:**   AHM admits that the F-CAN and B-CAN are interconnected at the Gauge Control Module, which is called a Gateway. AHM further admits that Plaintiffs purport to reference a website. The contents of the website speak for themselves, and to the extent the allegations in this paragraph vary therewith, AHM denies the allegations. AHM denies the remaining allegations in this paragraph.

127.    Like the main CAN, the F-CAN has two operating modes: wake-up mode and sleep mode. When the ignition switch is turned on, the F-CAN enters wake-up mode, during which the components within the CAN may draw 200 mA or more from the battery. When the ignition is turned off and the key is removed from the ignition cylinder, the F-CAN is designed to go into low power mode off after a certain amount of time, typically 10 minutes. When the vehicle is off and the F-CAN is in sleep mode, the overall draw on the vehicle's battery is supposed to fall below 50mA.

---

[33] *Id.*.
[34] *Id.*

AMERICAN HONDA MOTOR CO., INC.'S ANSWER TO SECOND AMENDED COMPLAINT

**ANSWER:**   AHM admits that certain ECUs within the F-CAN have "wakeup" and "sleep" modes. AHM denies the remaining allegations in this paragraph.

128.   The purpose of the F-CAN entering sleep mode is to reduce parasitic draw to a level that will not prematurely or nefariously deplete the battery's reserved power, but still be able to return to full power mode when certain actions are recognized, such as the door being unlocked, the door opened, or other indications full vehicle functionality is anticipated.

**ANSWER:**   AHM admits that a purpose of the sleep mode is to reduce parasitic draw to a level that will not prematurely discharge the vehicle's battery, but still be able to operate certain functions in response to certain actions. AHM denies the remaining allegations in this paragraph.

129.   Due to the serial nature of the connectivity between components with the F-CAN, if one component fails to properly shut down or awakens before the vehicle is started, it can cause other components to do the same, causing significant parasitic draining.

**ANSWER:**   AHM admits that if a component connected to the F-CAN fails to properly shut down or awakens before the vehicle is started, this could cause other components connected to the F-CAN to do the same. AHM denies the remaining allegations in the paragraph.

130.   In a ServiceNews Article published by Honda and distributed to its dealerships, the manufacturer recognizes that "[w]hen it comes to parasitic draw," the CAN and its subnetworks, "is a major contributor." [35]

**ANSWER:**   AHM admits that Plaintiffs purport to quote a website. The contents of the website speak for themselves, and to the extent the allegations in this paragraph vary therewith, AHM denies the allegations. AHM denies the remaining allegations in this paragraph.

131.   The Class Vehicles contain a latent defect (including manufacturing defects in the form of software errors) that results in the F-CAN not entering sleep mode when the vehicle is turned off, or failing to completely turn off and continuing to cycle off and on due to improper "wake up" signals. Consequently, the F-CAN ECUs continue to draw excessive amounts of battery power when the vehicle is off.

---

[35] HONDA, SERVICENEWS ARTICLE, "Excessive Parasitic Draw? Check If the B-CAN System Is Awake" (July 2008). https ://fOIjustanswer.com/clmcr8/93f5f360-831e-426e-af57-958994d562ad_parasiticdraw.pdf

43

1    **ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the

2    alleged defect.

3    C.    **The F-CAN ECUs Failure to Enter Sleep Mode Causes Excessive Parasitic**
          **Draining, Thereby Creating an Unreasonable Safety Risk**

4

5    132.   In some fashion, vehicles today are feats of electrical coordination, no longer simply

6    mechanical machines. Nearly every function of a vehicle is dependent upon electrical power. This

7    includes federal- and state-mandated safety features, as well as the vehicle's fundamental function,

8    which is transporting consumers where they need to go, and safely.

9    **ANSWER:**   AHM admits that many vehicles today involve electrical coordination and are

10   comprised of many components that depend on electrical power, including some federal and state

11   mandated safety features, and some components associated with transport. AHM lacks knowledge or

12   information sufficient to form a belief about the truth of the remaining allegations in this paragraph

13   and therefore denies the allegations.

14   133.   A vehicle's electrical components, such as ECUs and other components that comprise

15   the F-CAN, are powered by the vehicle's battery and, when the engine is running, the alternator.

16   When operated, the alternator also charges the vehicle's battery at a specified voltage level.

17   **ANSWER:**   AHM admits that some electrical components within the alleged Class

18   Vehicles, including some ECUs and other components connected to the F-CAN, are powered by the

19   vehicle's battery and, when the engine is running, the alternator. AHM further admits that when

20   operated, the alternator also charges the vehicle's battery at a specified voltage level. AHM lacks

21   knowledge or information sufficient to form a belief about the truth of the remaining allegations in

22   this paragraph and therefore denies the allegations.

23   134.   When a vehicle is parked and turned off, the battery is the vehicle's only source of

24   power. Consequently, the vehicle relies on a minimum level of electricity stored in its battery to start

25   the engine and operate. Specifically, the vehicle's sparkplugs, which run the engine and the starter

26   which cranks the engine, rely on the battery when the vehicle is off.

27   **ANSWER:**   AHM admits that when the alleged Class Vehicles are turned off, the battery is

28   generally the vehicle's only source of power. AHM further admits that the alleged Class Vehicles

require a minimum level of electricity stored in the battery to start the engine and operate properly. AHM further admits that the spark plugs in the alleged Class Vehicles are used to start the engine and require a minimum level of electricity stored in the battery to operate properly. AHM lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and therefore denies the allegations.

135.   Additionally, in order "to reduce traffic accidents and deaths and injuries resulting from traffic accidents," automobile manufacturers are required to include certain core safety features in their vehicles that rely on battery power.[36] For example, reliable emergency hazard warning signal lights, headlights, and taillights must be found in all passenger cars sold in the United States.[37]

**ANSWER:**   AHM admits that automobile manufacturers are required under certain laws to include safety features. AHM admits that Plaintiffs purport to reference multiple laws. The contents of the laws speak for themselves, and to the extent the allegations in this paragraph vary therewith, AHM denies the allegations. AHM denies the remaining allegations in this paragraph.

136.   Other safety components that rely on engine-off battery usage are defrosters, door locks, alarm systems, interior lights, windshield wipers, and internal computer modules which store engine diagnostic codes, fuel economy adjustments, and other essential components.

**ANSWER:**   AHM admits that some of the components listed in this paragraph by Plaintiffs rely on the battery when the engine is turned off. AHM lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and therefore denies the allegations.

137.   When the engine is off, these components are supposed to turn off or, as explained above, enter sleep mode and draw negligible amounts of the battery's stored electricity. Once the engine is started, the alternator begins to replenish the minimal amount of electricity that the emergency features pulled from the battery while in the off state.

**ANSWER:**   AHM admits that when the alleged Class Vehicles are turned off, some of the electrical components listed in paragraph 136 are supposed to turn off or enter sleep mode. AHM

---

[36] 49 C.F.R. §571.108, Federal Motor Vehicle Safety Standard (FMVSS) No. 108.
[37] *Id.*; *see also* CAL. VEH. CODE §§24250, 24400 (motor vehicles in California must be equipped with at least two headlights which must be used during "darkness" or "inclement weather").

further admits that after the ignition is started, the alternator generally begins to recharge the battery in the alleged Class Vehicles. AHM lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and therefore denies the allegations.

138.   A vehicle's alternator is not designed to generate power with the engine off, therefore all electricity used from the battery when the alternator is not running is a parasitic or one-way electrical drain.

**ANSWER:**   AHM admits that the alternators in the alleged Class Vehicles are not designed to generate power with the engine off, and parasitic drain can occur when electricity is drawn from the battery when the engine is off. AHM lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and therefore denies the allegations.

139.   Left unabated over an extended period of time, a parasitic draw will deplete a vehicle's battery resulting in a no-start condition (i.e., the driver is unable to start the vehicle). Parasitic draws typically will not give drivers any warnings nor provide drivers with an apparent sign that would notify someone of its existence, until the excessive draw causes the complete depletion of the battery's power.

**ANSWER:**   AHM admits that a parasitic draw may deplete a vehicle's battery resulting in a no-start condition under certain circumstances. AHM lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and therefore denies the allegations.

140.   Due to the reliance of multiple emergency safety features and the starter on a minimum amount of electricity stored in the battery, modern vehicles are designed so that this amount of draw does not significantly discharge a healthy battery below the amount necessary to perform its basic functions.[38] The most important means by which a manufacturer accomplishes this is by turning the ECUs in the CAN into sleep mode when the vehicle is off.

---

[38] For example, vehicles are now designed with precautionary systems to detect unintended draws occurring while the vehicle is off, including audible and visual alarms which notify drivers when lights are left on. Most instances of unintended parasitic draining are not detectable, and the driver's safety is at risk without their knowledge.

**ANSWER:**   AHM admits that the alleged Class Vehicles are designed so the amount of draw on the battery does not prematurely discharge the battery. AHM lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and therefore denies the allegations.

141.   Because one or more of the F-CAN ECUs fail to shut down in the Class Vehicles and causes constant excessive parasitic draining, the vehicles' batteries will be under constant strain, and their performance will degrade until total obsolescence. That is because vehicle batteries have a certain amount of "duty cycles" — *i.e.*, the recharging of a depleted battery — before it becomes unable to store the minimal amount of electricity required to perform its function. With each depletion, the battery becomes weaker and is unable to store as much electricity. This reduced capacity is irreversible, and no amount of jump-starts or recharging through the alternator will repair the battery. Thus, the defect impaired the safety, reliability, and/or operability of the Class Vehicles, as further detailed herein.

**ANSWER:**   AHM admits that, like most vehicle batteries, the batteries in the alleged Class Vehicles have a limited lifespan and over time the battery becomes weaker and is unable to store as much energy as it is depleted and recharged. AHM denies the remaining allegations in this paragraph, including the existence of the alleged defect.

142.   Prior to the inevitable complete failure of a battery, excessive parasitic draining can cause key safety components (*e.g.*, hazard lights, headlights, and taillights) to fail, including when the vehicle is being driven. For example, as the battery degrades, the dashboard, headlights, and hazard lights can flicker and dim due to poor electricity flow coming from the battery and/or alternator.[39]

**ANSWER:**   AHM admits that Plaintiffs purport to reference a website. The contents of the website speak for themselves, and to the extent the allegations in this paragraph vary therewith, AHM denies the allegations. AHM lacks knowledge or information sufficient to form a belief about the

---

[39] *See* Synchrony, *9 Signs Your Battery Needs to Be Replaced* (Nov. 2022), https://www.mysynchrony.com/blog/automotive/6-signs-your-car-battery-needs-to-be-replaced.html#:—:text=11%20your%2Oheadlights%20dim%20while,again%20in%20the%2Onear%20future.

AMERICAN HONDA MOTOR CO., INC.'S ANSWER TO SECOND AMENDED COMPLAINT

truth of the remaining allegations in this paragraph and therefore denies the allegations. To the extent Plaintiffs are inferring that the alleged Class Vehicles suffer from the alleged defect, AHM denies those allegations.

143.   Because parasitic draining results in depleted batteries, the alternator is utilized to replenish the battery's power at a higher-than-usual rate, resulting in the failure of the alternator's internal electrical component and bearing. When that occurs, the alternator generates a reduced amount of power until the point when it ultimately fails. As the alternator's ability to generate power degrades, there is an increasing risk that the vehicle's engine will unexpectedly sta11.[40]

**ANSWER:**   AHM admits that Plaintiffs purport to reference a website. The contents of the website speak for themselves, and to the extent the allegations in this paragraph vary therewith, AHM denies the allegations. AHM lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and therefore denies the allegations. To the extent AHM is inferring that the Class Vehicles suffer from the alleged defect, AHM denies those allegations.

144.   Also, when a vehicle loses its engine control module data due to battery depletion, the vehicle may experience reduced engine performance, reduced fuel economy, and increased emissions.

**ANSWER:**   AHM lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and therefore denies the allegations. To the extent Plaintiffs are inferring that the Class Vehicles suffer from the alleged defect, AHM denies those allegations.

145.   According to Honda, "[n]ormal parasitic draw on a battery" is less than 50 mA; "if it's 50 mA or more, it's excessive."[41] When a vehicle battery experiences an expected draw within this range, the battery should last months without the need to recharge itself from the alternator or receive a jump-start. Moreover, the life and operation of the battery and other vehicle components (*i.e.*, the

---

[40] *See* Mia Bevacqua, *Why Your Engine Is Stalling, and How to Stop It*, REPAIR PAL (Mar. 14, 2018), https://repaimal.com/symptoms/why-is-my-car-stalling;; AAMCO, *Alternator Trouble Signs* (Dec. 20, 2017), https://aamcominnesota.com/alternator-trouble-signs/.

[41] HONDA, SERVICENEWS ARTICLE, "Excessive Parasitic Draw? Check If the B-CAN System Is Awake ,A08070K (July 2008), https://f01.justanswer.com/clmcr8/93f5f360-831e-426e-af57-958994d562ad_parasiticdraw.pdf

alternator) are not detrimentally impacted. But, as Honda warns its dealerships and technicians, "a current draw of more than 50mA can discharge the battery."[42] According to Honda, "[a] parasitic draw of about 200 mA will usually kill a battery in about 2 days." [43] "Left unchecked, [parasitic] current draw on the battery can drain it to the point where the engine doesn't start."[44]

**ANSWER:**   AHM admits that Plaintiffs purport to quote various websites and articles. The contents of the websites and articles speak for themselves, and to the extent the allegations in this paragraph vary therewith, AHM denies the allegations. AHM lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and therefore denies the allegations.

146.   In modern vehicles, such as the Class Vehicles, a battery typically has enough duty cycles to last up to six years, with some lasting nearly twice that amount, as long as the battery is not subject to excessive parasitic draining.[45] The cost to replace a vehicle battery typically varies from $45 to $250,[46] and the cost of a replacement alternator with repair fees can vary from $200 to $800.[47]

**ANSWER:**   AHM admits that Plaintiffs purport to reference various websites. The contents of the websites speak for themselves, and to the extent the allegations in this paragraph vary therewith, AHM denies the allegations. AHM lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and therefore denies the allegations.

---

[42] HONDA, SERVICENEWS ARTICLE, "Measuring Parasitic Current Draw" A020316M (Sept. 2002).

[43] HONDA, SERVICENEWS ARTICLE, "Excessive Parasitic Draw? Check If the B-CAN System Is Awake", A08070K (July 2008), https://f01.justanswer.com/clmcr8/93f5f360-831e-426e-af57-958994d562ad_parasiticdraw.pdf

[44] HONDA, SERVICENEWS ARTICLE, "Measuring Parasitic Current Draw" A020316M (Sept. 2002).

[45] *See* How Long Should a Car Battery Last? I YourMechanic Advice; AAA, *How Long Do Car Batteries Last*, https://www.aaa.com/autorepair/articles/how-long-do-car-batteries-last); Jen McCaffery, *How Long Do Car Batteries Last?* READER'S DIGEST (May 24, 2021), https ://www.rd. com/article/how-long-do-car-batteries-last/.

[46] *See* KELLEY BLUE BOOK, https://www.kbb.com/battery-replacement/ (last accessed Sept. 21, 2021).

[47] *See* Andy Jensen, *How Much Does an Alternator Cost*, ADVANCE AUTO PARTS (Aug. 25, 2021), https ://shop. advanceautoparts. com/r/advice/car-maintenance/how-much-doe s-it-cost-to-replace-an-alternator.

49

1    147.   The F-CAN parasitic draining Defect in the Class Vehicles is worsened by the fact that

2    the Class Vehicles are highly susceptible to the negative effects and symptoms of excessive parasitic

3    draining due to Honda's decision to install comparatively small and weak batteries in the vehicles.

4    **ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the

5    alleged defect.

6    148.   For instance, Honda installed a 12-volt battery with 410 Cold Cranking Amps

7    ("CCA")[48] in its 2017 CR-V vehicles. By comparison, its competitors with similar 4-cylinder engines

8    and the same model year installed batteries ranging from 508 CCA to 800 CCA. The 2017 4- cylinder

9    Ford Escape has a battery ranging from 590 to 760 CCA, or 43% to 85% larger than the CR-V's

10   battery. The 2017 Hyundai Tucson has a 640 CCA battery, 56% larger than the CR-V battery. The

11   2017 Jeep Cherokee has a 600 CCA battery. The 2017 Kia Sportage has a 640 CCA battery. The

12   2017 Mazda CX5 has a 520 CCA battery. And the 2017 Chevrolet Equinox has a 525 CCA battery.

13   **ANSWER:**   AHM admits that 2017 CR-Vs have a 12-volt battery. AHM further admits that

14   Cold Cranking Amps ("CCA") is an industry standard rating used for automobile batteries. AHM

15   lacks knowledge or information sufficient to form a belief about the truth of the allegations in this

16   paragraph related to other vehicles and therefore denies the allegations. AHM denies the remaining

17   allegations in this paragraph.

18   149.   The small battery size in the 2017 CR-V is not unique to that model. By way of

19   additional examples, the 4-cylinder 2016 Accord has a 410 CCA battery, while the 2017 Ford Fusion

20   has a 760 CCA battery, the Hyundai Sonata has a 800 CCA battery, and the Kia Optima has a battery

21   of at least 760 CCA.

22   **ANSWER:**   AHM admits that 2016 Accords have a 12-volt battery. AHM lacks knowledge

23   or information sufficient to form a belief about the truth of the allegations in this paragraph related to

24   other vehicles and therefore denies the allegations. AHM denies the remaining allegations in this

25   paragraph.

26

27

28   [48] CCA is an industry standard rating used to define a battery's ability to crank an engine in cold temperatures.

150.    A smaller and weaker battery, as measured by its CCA, will become depleted and result in no-start conditions faster than a battery with a higher CCA when experiencing excessive parasitic draining.

**ANSWER:**    AHM lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and therefore denies the allegations.

**D.**    **Over Two Million Class Vehicles Suffering from the Parasitic Drain Defect Were Sold by Honda**

151.    Honda, upon information and belief based on the facts alleged herein, has knowingly sold over two million Class Vehicles which suffer from a serious Parasitic Drain Defect. The Defect provides no discernable warning to drivers and thus creates an unreasonable risk to each driver. The most common symptom associated with the Defect is being unable to start a vehicle after being left undriven for a short period of time.

**ANSWER:**    AHM admits that it has sold over two million of the alleged Class Vehicles. AHM denies the remaining allegations in this paragraph, including the existence of the alleged defect.

152.    Scores of complaints submitted to NHTSA reveal the magnitude of the Defect's impact of the Class Vehicles and consumers. As set forth in these complaints and in the experience of the Plaintiffs, the defect manifested or is substantially certain to manifest within the period of time covered by Honda's warranties, and impaired the safety, reliability, or operability of the Class Vehicles.

**ANSWER:**    AHM denies the allegations in this paragraph, including the existence of the alleged defect.

153.    A list of representative complaints filed with NHTSA detailing the Parasitic Drain Defect found in the 2017 Honda CR-V Class Vehicles includes:[49]

- NHTSA ID No. 11005067 (dated July 13, 2017) ("Brand new 2017 cr-v touring, second night home. Battery completely drained while parked overnight and had to charge battery to start. Took to dealer, who did a battery test and found no issue. There is a honda tsb campaign, but honda tells me my yin is out of range and is not covered -- even though the symptoms are identical. They will not offer service until the yin is within range. Reference Honda TSB-032 `parasitic battery draw from vsa modulator' honda america support

---

[49] NHTSA complaints are publicly available online and searchable by NHTSA ID Number at https://www.nhtsa.govirecalls.

51

suggested I report this to nhtsa, for some reason. Stated that if they receive enough complaints for a yin range it could be expanded. (this makes no sense to me since i was on the phone with them.).").

- NHTSA ID No. 11012414 (dated August 2, 2017) ("THIS INCIDENT WAS 4 MONTHS AFTWR PURCHASE. I PARKED A FRIEND'S HOUSE, AND THE BATTERY DRAINED OVER THE COURSE OF 3 HOURS.").

- NHTSA ID No. 11019266 (dated August 17, 2017) ("Car battery has drained on two occasions. Car won't start.").

- NHTSA ID No. 11016279 (dated August 18, 2017) (owner reported that three months after purchasing his CR-V, the battery died after being parked for three hours. "**Honda service called [the owner[ the next day and said that they charged the car battery and that the cause was a parasitic drain** and that [he] needed to put the electric brake on before [he] turned off the car. They told [him] that Honda was aware of this issues and that they were working on a software fix.").

- NHTSA ID No. 11032872 (dated October 10, 2017) ("**Battery drains completely for no reason when vehicle is parked**. The first time it happened the dealership replaced the battery. It has [sic] happenned twice since then and dealership does not provide a fix.").

- NHTSA ID No. 11035424 (dated October 17, 2017) ("**Vehicle battery dead after sitting for 3 hours. 3 week old vehicle** with 690 miles.").

- NHTSA ID No. 11045525 (dated November 13, 2017) (2-month old vehicle would not start; the owner lamented: "so I will be late to work today and wasted my Sunday dealing with this too.").

- NHTSA ID No. 11061486 (dated January 9, 2018) ("vehicle was parked in garage for a few days over holidays. When leaving to meet relatives at a restaurant, the car was completely dead.").

- NHTSA ID No. 11064100 (dated January 22, 2018) ("**Car will not start after sitting overnight Dealer performed software update which did not correct the problem to**.").

- NHTSA ID No. 11073304 (dated February 16, 2018) ("Car purchased July 1, 2017. Jan 6, 2018 **battery died after sitting for roughly 2 days**. Honda checked battery and found no problems with battery or electrical system. Friday, Feb 16, 2018 same problem: dead battery. Car was sitting for 3 days prior to discovery.").

- NHTSA ID No. 11079667 (dated March 15, 2018) ("Car would not start twice in the first year. System seems to have some kind of drain on the battery when the car is off. First time, the car was not turned on for 3 days before trying to start it….It is not acceptable for this to happen in the first year of having a car. Plenty of 2017 CRV owners are saying the same thing happened to them. It's all over the internet. Honda must find a solution and issue a recall.").

- NHTSA ID No. 11088356 (dated April 16, 2018) (after parking car at airport for 13 days, "the battery was completely dead and was started with a jump.").

- NHTSA ID No. 11089119 (dated April 20, 2018) ("Purchased car 1/18. Took 10 day vacation car was parked during that period. Car battery was dead when we returned. Had aaa jump car and took to dealer. Battery checked and told by dealer it was fine 6 days later battery dead had honda service tow car to dealer. *Had found honda tsb 17-032 online describing a battery drain from vsa modulator. Made copy for dealer because they were*

52

*'unaware of problem' asked them to follow the tsb software upgrade procedure which they did but when they tested batter*y there was still a drain so they replaced the battery and informed me i need to drive car everday to keep it charged, this is our second car and is not driven everyday and we travel which means the car may not be driven for 10 days or more the service advisor indicated that we need to acquire a battery charger because most likely the battery would be dead. It seems that the 2017 cry has an electric brake system problem. It pulls on the battery even when the ignition is off Is honda going to issue a recall on this problem. Everytime i get in the car i wonder if the car will start and this an uncomfortable feeling for a brand new car with only 540 miles on it.").

- NHTSA ID No. 11090045 (dated April 25, 2018) ("***Five times the battery drained completely with nothing on, after sitting unused garaged, over night or after one day unused.***").

- NHTSA ID No. 11098895 (dated May 30, 2018) ("I bought this Honda CRV 2017 awd on 04/01/2017 from Honda Folsom. On April 24,2018, it would not start. I called roadside assistance to jumpstart it and brought this to the dealer in Folsom. They changed the battery on April 24, 2018…. Today, May 30, 2018, it did not start again so it was jumpstarted again[.]").

- NHTSA ID No. 11115700 (dated August 4, 2018) ("***The vehicle was in the garage with dead battery after 2 days of not being used.***").

- NHTSA ID No. 11120233 (dated August 16, 2018) ("Bought the car April of 2017, ***after a few months car went dead*** … dealer replaces the battery, not much explanation why. ***The problem happen 2 more times***, had to jump start car again took it back to the dealer but this time dealer telling me that the car needs to be driven regularly and also on a certain distance so that battery will be charged up completely. And was told to buy a portable charger[.]").

- NHTSA ID No. 11124343 (dated September 4, 2018) (after two-week vacation, "battery was dead as it was completely drained.").

- NHTSA ID No. 11131089 (dated September 24, 2018) ("car left in parking lot for four days. Car would not crank or start. Battery serviced by aaa, jump started successfully. No obvious clamps, wire, alternator problem. Car evaluated at honda burlington dealer. No problems found. No cause for battery failure given. Service clerk at dealership and aaa battery service person independently suggested that car should not be left unproven for more than a few days as battery failure has been found, without an obvious cause. Evidently honda service bulletin # 17-032 addresses this issue but neither the general honda customer hotline nor the burlington mass dealership acknowledge this with my vehicle.").

- NHTSA ID No. 11131864 (dated September 27, 2018) ("***For the second time, after leaving the vehicle parked for 3-5 days the battery has been drained and unable to start the engine***.").

- NHTSA ID No. 11142765 (dated October 25, 2018) ("***vehicle battery*** drains ***after 2 days of non use***").

- NHTSA ID No. 11143939 (dated October 29, 2018) ("***Vehicle was parked over night in the morning the battery was completely drained*** I left no lights on there was no reason for a drained battery on a new car.").

- NHTSA ID No. 11145200 (dated November 4, 2018) ("***battery drains out completely and car won't start***.. Just 18000 miles. 4 times in 3 days.").

- NHTSA ID No. 11153477 (dated November 24, 2018) ("Battery was dead after parking on street, had to call for emergency road service to jump car. There was no excessive usage of battery or electronics in the car.").

- NHTSA ID No. 11154819 (dated November 29, 2018) ("***After a month***. We went for a vacation and as we went back, ***my car is not starting anymore***.").

- NHTSA ID No. 11165366 (dated January 5, 2019) ("January 3rd my car would not start. Jan 4th and 5th again my car would not stop without a jump. I have had nothing but electrical problem, radio blinking and not coming on or brake system engaging without braking etc. since I have purchased.").

- NHTSA ID No. 11165157 (dated January 8, 2019) ("***Vehicle frequently runs out of battery and need to jump start***.").

- NHTSA ID No. 11182473 (dated February 26, 2019) ("Vehicle does not shut down when turned off. This causes a high [sic] parsitic draw on the battery which causes the vehicle not to start in a matter of hours. ... my battery blew up releasing toxic gasses filling the exterior of the car which contain my wife and kids at the time.").

- NHTSA ID No. 11187354 (dated March 17, 2019) ("Battery dies after sitting for 5+ days. ***New battery installed, same issue. TSB-032 has been applied, still have the problem***.").

- NHTSA ID No. 11191314 (dated March 25, 2019) ("Vehicle is unable to start after shutdown with no diagnosed cause.... Vehicle requires jump start for successful start upon symptoms appearing... vehicle has been brought to Honda dealerships several times for diagnosis and service... latest visit, car was unable to start immediately after parking car at dealership.... ***Dealership applied Honda technical service bulletin (TSB) 17-032 and did not fix problem***....").

- NHTSA ID No. 11194855 (dated April 9, 2019) ("***If I stop using the cr-v for two days the battery goes dead*** and I have to recharge it. The original battery was replaced after the first year in the Honda dealer.").

- NHTSA ID No. 11220318 (dated June 15, 2019) ("I had parked my car for 4 days while away on a business trip. I came back and the car was totally dead. It wouldn't start, I could not even open the doors without the emergency key.").

- NHTSA ID No. 11229585 (dated July 5, 2019) ("***If I parked this car over two nights, its battery will die*** and need to call AAA to lump it. It occurs over five times in only two years. Then I changed my battery, it still happened and I also turn off all light in my cars.").

- NHTSA ID No. 11256787 (dated September 20, 2019) ("Issue with drained battery/vsa modulator. Vehicle lights won't turn off when shutting off vehicle. Key fob will not work because vehicle battery will die. ***Once jumped, vehicle will die again. Battery has been checked and it doesn't seem to need replacing yet no active recall reported***.").

- NHTSA ID No. 11258834 (dated September 29, 2019) ("My 2017 crv-ex has had its battery drained twice. With only 4600 miles driven. I've had the battery drained after 2 days to less then 24 hours. I'm on my third time now.").

- NHTSA ID No. 11268859 (dated October 16, 2019) ("Yesterday the car would not start, battery issue was determined to be the likely problem after placing a service assist call to Honda. A jump start and problem was resolved. Mileage approx. 19,000. This is the second time this occurred since owning the car. The first time it happened within a couple of months of owning the car. In both instances, the car had been parked less than 2 hours.").

- NHTSA ID No. 11280821 (dated November 18, 2019) ("dead battery - 11-17-2019, 11-18-2019 (2yrs 3months old, 16,000 miles) garage kept. Car won't start.").

- NHTSA ID No. 11308113 (dated February 10, 2020) ("*Vehicle battery will die after two days of non starting. This happens constantly*.").

- NHTSA ID No. 11322233 (dated April 25, 2020) ("Battery keeps dying after sitting more than a several days. This is the third time since owning the car.").

- NHTSA ID No. 11322811 (dated April 30, 2020) ("Car would not start and goes dead with 3rd attempt to start. This is the 3rd time i must have car towed to dealership; car has 4,000 miles.").

- NHTSA ID No. 11322903 (dated April 30, 2020) ("numerous people including myself have been affected by this car draining a brand new battery and leaving people stranded and needing a jumpstart. My car is currently at the dealership again to have this issue looked at.").

- NHTSA ID No. 11324710 (dated May 15, 2020) ("As of May 13, I have had to return my leased 2017 cr-v to the dealership four (4) times for the same reason - the battery would not work , hence the engine did not start... *I was verbally told the problem is my fault - since I do not drive the vehicle enough.*").

- NHTSA ID No. 11325206 (dated May 19, 2020) ("*Battery keeps dying after 2 days of non operational this has happen multiple times and no fix from dealer*.").

- NHTSA ID No. 11325093 (dated May 19, 2020) ("My wife and I have, on numerous incidents, had to jumpstart the cr-v due to a dead battery.").

- NHTSA ID No. 11326577 (dated May 30, 2020) ("*Car battery will die if the car is not used for more than a couple days*. We have taken it into the dealership to get checked many times only to be told nothing is wrong. *Battery has been replaced multiple times as well only for the car to die a few days later*. We purchased the car brand new in March 2017. The first time it happened it was only a few months into owning the car.").

- NHTSA ID No. 11329352 (dated June 17, 2020) ("The car was towed to the dealer because the battery (less than 3 years old) was dead and was replaced because the car was still in warranty. Then on 6/13/2020 the second battery was completely dead with only 663 miles. I think the situation should be investigated and remedied due to concern about safety.").

- NHTSA ID No. 11241811 (dated August 5, 2019) ("Battery failure [at] 27275 miles... Car won't start, dashboard lights blinking and flashing, all sorts of error codes*...alternator may be working hard to recharge battery that won't recharge*").

- NHTSA ID No. 11349364 (dated August 15, 2020) ("Dead battery for 3 mornings in a row and now on the 4th day it will not accept a jump.").

- NHTSA ID No. 11351281 (dated August 15, 2020) ("*Battery died overnight, took vehicle to different dealerships, replaced battery.. Nothing help*!").

- NHTSA ID No. 11355664 (dated September 17, 2020) ("*Battery runs down. Put new battery...same problem*. Need a jump to start for me to drive. Battery runs down if it sits for a day problem steering after it is jumped.").

- NHTSA ID No. 11364200 (dated October 13, 2020) ("I lost power.... I have no documents except the dealer's report that there was nothing wrong except a weak battery.").

- NHTSA ID No. 11373970 (dated November 10, 2020) ("***Battery is dead if I don't drive it for 2 days. This has happened three times in the past year***, the last two times just a few weeks apart. And this past time I drove it on a Thursday and it was dead on Saturday. Fortunately the times this has happened the car was in the garage, so I was not stranded.").

- NHTSA ID No. 11376180 (dated November 24, 2020) ("***Battery will be dead if car not used every 2 days. 4 times I have had the dealer replace my battery and 1 time myself***. Dealer refuses to solve the problem. A vehicle[ls battery should not go dead after only 4 days of use.").

- NHTSA ID No. 11378523 (dated December 8, 2020) ("The battery dies frequently for no reason after not driving for one to two days. When the battery dies, it locks up the brakes and messes up the safety features.").

- NHTSA ID No. 11386463 (dated January 4, 2021) ("Ongoing intermittent issues since car was purchased May 2017. Repeated battery drains and complete failure, battery replaced by Honda July 2020. Drove, parked, would not start or run accessories Nov. 30 2020 and on Jan. 1 2021.").

- NHTSA ID No. 11388291 (dated January 15, 2021) ("Parasitic power draw on system resulting in dead battery if not driven every other day. Honda is aware of the issue but has not issued a recall.").

- NHTSA ID No. 11390863 (dated January 31, 2021) ("Overnight dead battery.").

- NHTSA ID No. 11397119 (dated February 20, 2021) ("Car battery gets drained out over night and it's not the battery or the alternator.").

- NHTSA ID No. 11398524 (dated March 1, 2021) ("Honda CRV 2017 keeps draining battery even after it is turned off and causing routine service calls.... Hope such things do not happen on road when parked and create other issues.").

- NHTSA ID No. 11437944 (dated October 24, 2021) ("After the car is turned completely off, the dash lights up with all warning lights on and won't shut down, which then drains the battery. This has happened 3 times and we've gone through 2 batteries. The 3rd time it happened, we were able to get it to the dealership before it drained the battery completely. ***The dealership was able to confirm that it's the Body Control Module that is causing the electrical shortage which completely drains the battery***. Part is on back order and car is unsafe to drive at this time because of the electrical shortage in the BCM.")

- NHTSA ID No. 11462788 (dated April 29, 2022) ("***The contact also stated that the vehicle failed to start occasionally***. The contact was able to jumpstart the vehicle with assistance. The vehicle was taken to the dealer who diagnosed that the battery needed to be replaced. ***The contact stated that the battery was replaced; however, the failure reoccurred with the computer system engaging independently, while activating the alarm system simultaneously***. The vehicle was taken to a second dealer Norm Reeves Honda Superstore Irvine (16 Auto Center Dr, Irvine, CA 92618) ***where it was diagnosed that the Body Control Module (BCM) needed to be replaced***; however, the parts were not available as it was on a national back order. The vehicle was not repaired. The manufacturer was not notified of the failure. The failure mileage was approximately 17,000."

**ANSWER:** AHM lacks knowledge or information sufficient to form a belief about the truth of the complaints allegedly filed with the National Highway Traffic Safety Administration

("NHTSA") referenced in this paragraph and therefore denies the allegations. The contents of the complaints filed with NHTSA speak for themselves, and to the extent the allegations in this paragraph vary therewith, AHM denies the allegations. AHM denies the remaining allegations in this paragraph, including the existence of the alleged defect.

154.   A list of representative complaints filed with NHTSA detailing the Parasitic Drain Defect found in the 2018 Honda CR-V Class Vehicles includes:

- NHTSA ID No. 11076480 (dated March 6, 2018) ("While on vacation, I had my 2018 Honda, CRV-EXL parked for nearly 2 weeks. On our return, I attempted to start the vehicle. It would not start as the new battery was completely drained and dead.").

- NHTSA ID No. 11115697 (dated August 4, 2018) ("Draining battery suspected parasitic. ... *The vehicle was sitting in the garage for about 2 days since last use*.").

- NHTSA ID No. 11118082 (dated August 6, 2018) ("*While driving 35 mph, the vehicle inadvertently came to a stop*. There were no warning indicators illuminated. The contact stated that the vehicle was able to restart. The vehicle was taken to Lithia Honda in Medford... *where the contact was informed that the alternator needed to be replaced*.").

- NHTSA ID No. 11139129 (dated October 8, 2018) ("Car stalls when going up parking ramp, car dies at intersection.... The car has been a problem ever since I got it earlier this year...*there is only 4,000 miles on it and so far, they changed the battery*...explanation I was given is that Honda has bad batteries ....still having problems, car is stalling, panel freezes, sensors don't work....I believe it's a major safety issue.....*Brakes failed, panel freezes, car stalls... help!* ").

- NHTSA ID No. 11316406 (dated March 5, 2020) ("*I was away for 17 days and my battery died. Went to dealer and he said this is normal. It's dangerous and should not happen*! Car is 18 months old! This is dangerous too.").

- NHTSA ID No. 11383284 (dated December 14, 2020) ("2018 Honda CRV Touring Purchase September 8, 2018. Currently has 16,400 miles. On Thursday, December 10, I went out to start my Honda CRV Touring in the garage. It would not start. ... The towing company driver informed me that this is about the 13th Honda 2018 2020 that he has had to jumpstart.").

- NHTSA ID No. 11342279 (dated July 30, 2020) ("I parked my car in my garage with half a tank of gas on Sunday. On Wednesday I went to start my car to no avail.        ").

- NHTSA ID No. 11397174 (dated February 21, 2021) ("Battery drains abnormally.").

- NHTSA ID No. 11441612 (dated November 24, 2021) ("The BCM module of the vehicle can fail unexpectedly and cause a complete drain of the vehicle battery overnight. Specific part number of the component: 38809-TMM-A21.").

- NHTSA ID No. 11478761 (dated August 11, 2022) ("The contact's husband owns a 2018 Honda CR-V. The contact stated that her husband was driving at an unknown speed when the vehicle stalled. *The battery warning light illuminated. However, the battery was replaced but the failure recurred without warning. The vehicle was taken to the dealer where it was diagnosed that the Body Control Module (BCM) needed to be replaced*. The

manufacturer was notified and the contact was informed that no parts were available. The approximate failure mileage was 20,000. The VIN was not available.").

**ANSWER:**   AHM lacks knowledge or information sufficient to form a belief about the truth of the complaints allegedly filed with NHTSA referenced in this paragraph and therefore denies the allegations. The contents of the complaints filed with NHTSA speak for themselves, and to the extent the allegations in this paragraph vary therewith, AHM denies the allegations. AHM denies the remaining allegations in this paragraph, including the existence of the alleged defect.

155.   A list of representative complaints filed with NHTSA detailing the Parasitic Drain Defect found in the 2019 Honda CR-V Class Vehicles includes:

- NHTSA ID No. 11181325 (dated February 20, 2019) ("Battery keeps dying after 2 days of not using my car. I brought my car to a honda dealer and they checked it and said there was nothing wrong with it. So far this has happened 4 times.").

- NHTSA ID No. 11182356 (dated February 25, 2019) ("Purchased 2019 honda crv on february 9, 2019. Drove only twice in the first 2 weeks. Attempted to drive for the 3rd time (101 miles on odometer) on the 2 week anniversary of buying, february 23, 2019 and the car was completely dead!").

- NHTSA ID No. 11184460 (dated March 5, 2019) ("Purchased 12/28/18. After driving home from dealer(60 miles) car was not used for 2 days. Tried to start car and battery was dead—totally drained. ... Dealership is aware of 4 additional 2019 crvs with the same problem.").

- NHTSA ID No. 11184357 (dated March 5, 2019) ("The battery is repeatedly dead after a day or so if not driven.").

- NHTSA ID No. 11185761 (dated March 11, 2019) ("After turning the vehicle off, the battery drained and the vehicle could not be restarted. ... The battery was replaced, but the failure continued.").

- NHTSA ID No. 11186743 (dated March 14, 2019) ("Vehicle failed to start without warning. ... The technician stated that the vehicle needed to be driven everyday to keep the battery charged.").

- NHTSA ID No. 11187233 (dated March 16, 2019) ("***Left car parked for 5 days. Nothing left on but battery was drained. Needed to call a tow truck for a jump start***.").

- NHTSA ID No. 11187238 (dated March 16, 2019) ("***Continual batter), failures***, batteries go dead if not driven every day. On my second battery and died as two days not being driven. Some sort of parasitic drain?").

- NHTSA ID No. 11190065 (dated March 19, 2019) ("***If the car sits for 2-3 days without running the battery drains and dies completely***.").

- NHTSA ID No. 11192285 (dated March 28, 2019) ("Vehicle battery was dead after the suv sat unused for 2 days within 3 weeks and 300 miles of ownership. ***This has occurred over 6 times in 3000 miles***. Battery has been replaced by the battery twice and is now on

58

its third battery. Dealer notes this problem exists on all 2019 crv's delivered to-date and that they do not yet have a solution.").

- NHTSA ID No. 11192339 (dated March 29, 2019) ("If the car sits for 24 + hours the battery dies, I have had this happen 6 times now. Called dealer 3+ times, brought it in they first said it was the battery (which we all knew it was not) but they put in a new one they said. Anyhow as you already know this is an electrical issue that needs to be fixed a.s.a.p. Dealer now tells me honda is working on a fix but in the mean time I have had to have the car jumped and paid for this as well it's a major nuisance I want fixed very soon or want my money back and I will buy another car. This has been going on since i bought this car dec. 28th 2018.").

- NHTSA ID No. 11196738 (dated April 16, 2019) ("*Car 2 months old, have only put 1300 miles on it, let it sit for 5 days, and battery totally dead*.").

- NHTSA ID No. 11196271 (dated May 1, 2019) ("*The consumer stated the battery dies within 2 days of shutting the vehicle down*, if not driven again. The emissions system drains the battery. There is no repair available for the failure.").

- NHTSA ID No. 11207890 (dated May 15, 2019) ("*Electrical problem,4/10/19 at 200 miles, battery completely dead after 2 days of not driving because computer program error*. Honda is aware of problem, but does not instruct the dealer to fix the problem before selling its cars[.]").

- NHTSA ID No. 11231760 (dated July 14, 2019) ("*Battery dies overnight*. Car has only 1000 miles and i've had to jump it 3 times. ... A new car should not behave this way.

- NHTSA ID No. 11172347 (dated January 27, 2019) ("*My 2019 honda cr-v's battery dies after sitting in my garage for two days. It has only 320 miles on it*").

- NHTSA ID No. 11244857 (dated August 19, 2019) ("Battery is draining out after sitting for 3 days in a parking lot, and will not start up again without a jump.").

- NHTSA ID No. 11252372 (dated August 30, 2019) ("The vehicle was parked at an airport and would not start upon the contact's return from a five day trip. ... Manufacturer suggested that the contact unhook the battery if the vehicle remained parked more than a day. ... The failure mileage was 1,900.").

- NHTSA ID No. 11279556 (dated November 12, 2019) ("*Went away for a weekend trip and hadn't driven the car for 3 days. Came back and the battery was totally drained*, had to jump start the car. It has roughly 3,300 miles on the odometer.").

- NHTSA ID No. 11299090 (dated January 13, 2020) ("The *SUV would not start after not being driven for 2 days*.").

- NHTSA ID No. 11324191 (dated May 11, 2020) ("*After leaving vehicle in garage for 24 hours or more, then attempting to start the vehicle, vehicle will not start*. After using battery jump, vehicle will start and run as normal. This has happened several times over the past few months, even when vehicle is run for couple miles or more.").

- NHTSA ID No. 11337956 (dated July 7, 2020) ("*The contact stated that an hour after parking the vehicle, the battery was drained*. The contact stated that the failure recurred six times.").

- NHTSA ID No. 11360689 (dated September 23, 2020) ("The contact stated that the battery became drained on two separate occasions. ... The battery was replaced. *The failure*

*recurred after two weeks. ... The technician stated that the failure was common with the make and model and that the dealer would not disclose that information.* The contact called the same dealer who confirmed the information and told the contact to buy a jumper cable.").

• NHTSA ID No. 11373267 (dated November 5, 2020) ("The car wouldn't start until I messed with it a lot. I've read it's a battery drain and software update issue on message boards- several people complained about it. I've only had my 2019 honda cry since september 2019.").

• NHTSA ID No. 11376801 (dated November 28, 2020) ("Our 2019 honda cry was purchased in december of 2019. The battery had died 3 times and had to be recharged by the dealer. The honda dealer refused to replace the battery and could tell us why the battery keeps dying. The car is driven every day and the lights are always turned off automatically at night after driving.").

• NHTSA ID No. 11385578 (dated December 30, 2020) ("On august 28 I went to start my car and it would not turn on. I called the dealership and they jumped it and the car started. They tested the battery and it was fine but changed it anyway. On December 23 it would not start and had to be jumped. This happened again on December 26 and 27. The car is currently at the dealership. They have said nothing is wrong with the battery or the car even though this has happened to multiple 2019 cr-vs.").

• NHTSA ID No. 11397192 (dated February 21, 2021) ("The battery has failed multipile time in the first 18 months of ownership. The first instance at the 4 month mark with about 1000 miles on the car.").

**ANSWER:**   AHM lacks knowledge or information sufficient to form a belief about the truth of the complaints allegedly filed with NHTSA referenced in this paragraph and therefore denies the allegations. The contents of the complaints filed with NHTSA speak for themselves, and to the extent the allegations in this paragraph vary therewith, AHM denies the allegations. AHM denies the remaining allegations in this paragraph, including the existence of the alleged defect.

156.   A list of representative complaints filed with NHTSA concerning the Parasitic Drain Defect found in the 2016 Honda Accord Class Vehicles includes:

• NHTSA ID No. 10959718 (dated March 9, 2017) ("***The battery has been replaced twice by the dealership.*** We are not leaving anything on.").

• NHTSA ID No. 10970672 (dated April 5, 2017) ("Vehicle would not start possibly due to alternator or battery malfunction after being purchased for one year.").

• NHTSA ID No. 10978620 (dated April 15, 2017) ("***Purchased 2016 accord touring in may 2016. In April 2017 the car would not start*** - appeared to be a battery issue.").

• NHTSA ID No. 11013956 (dated August 9, 2017) ("***I am unable to start my car after it sits for ten days to two weeks or more.*** The battery goes dead and my family and I are left potentially stranded. My wife and I travel frequently and return to a car that won't start due to a parasitic draw on the battery. ***This is a safety issue as you can imagine*** flying home, taking the bus to the parking lot at the airport at 11:00 pm, going to your car and finding a

dead battery which puts our safety in peril. ... [the honda dealership stated that] this is now normal with the new honda accords due to the parasitic draw on the battery when the car isn't running. ... I called another honda dealer's service department in the kansas city area and received the same comment. ... this is now what I can expect on my new accord, if it sits for ten days or two weeks then the battery will die". ... I have had this problem since last fall and it has occurred on several occasions.").

- NHTSA ID No. 11047161 (dated November 18, 2017) ("Second time on the last four days that my car will not start. ... I was working in los angeles four days later and once again the car wouldn't start. ... this is a problem because of where I work and I cannot let my wife drive the car due to not having the confidence that the car will start, especially if she has the kids with her.").

- NHTSA ID No. 11013956 (dated August 9, 2017) ("***I am unable to start my car after it sits for ten days to two weeks or more*** ... due to a parasitic draw on the battery. This is a safety issue[.]" The owner added that when he brought his vehicle into a Honda dealer he was told "that this is now normal with the new Honda accords due to the parasitic draw on the battery when the car isn't running which ultimately drains the battery to a point where it won't start.").

- NHTSA ID No. 11112042 (dated July 17, 2018) ("***My battery has a shortage-2016 with less than 40,000 miles. This is clearly a defect***.").

- NHTSA ID No. 11153323 (dated November 23, 2018) ("I had to get my car towed be it would not start.").

- NHTSA ID No. 11153677 (dated November 26, 2018) ("After driving the vehicle and turning the engine off, the battery power would drain and the vehicle could not be restarted. ***After replacing the battery with a new battery, the failure continued***.").

- NHTSA ID No. 11192228 (dated March 28, 2019) ("***Battery has been replaced 3 times and constantly drains***.").

- NHTSA ID No. 11209968 (dated May 25, 2019) ("Battery has been replaced twice in 1 year.").

- NHTSA ID No. 11268149 (dated October 13, 2019) ("When I get in my car sometimes to start it the battery is dead I have taking it to Autozone so they can run test with there computer and everything comes out perfect if I'm not mistaken I think the battery negative voltage sensor is damaged.").

- NHTSA ID No. 11281257 (dated November 20, 2019) ("My battery has died multiple times without leaving anything on or open.").

- NHTSA ID No. 11281833 (dated November 22, 2019) ("August 2018 battery in car stopped working. Stationary car would not start. Replaced battery and in November 2019 battery stopped working again. Car wont start.").

- NHTSA ID No. 11360118 (dated September 20, 2020) ("I just replace the battery for the 3rd time on 9/19/2020. This is a problem for a car 4 years old.").

- NHTSA ID No. 11390859 (dated January 31, 2021) ("If the vehicle is not started and driven at least every second day. A no start condition results. Battery is new, the second one from Honda dealer. ... Purchased an after market start booster to resolve dead battery issue.").

- NHTSA ID No. 11481089 (dated August 24, 2022) ("***For the 4th time in a year and a half, my CR-V has failed to start. I've had it in for dealership servicing twice on this issue and even replaced the battery at their recommendation. It did not fix the problem*** and they have since told me that they can't identify the problem and said it could be with the computer system (I did purchase an additional warranty for the computer system). In addition to the car failing to start and needing a jump start, the dashboard will start beeping and go blank, or flash a warning message that does not fit the situation. I consider this situation to be a safety issue as it leaves me without a reliable car for travel due to the uncertainty of being able to start the car. The latest episode was today and it was 88 degrees out and I had my 91 yr old father and my dog with me. Waiting for assistance in the heat was very hard on them. My father felt sick due to the long exposure to heat.").

    **ANSWER:**   AHM lacks knowledge or information sufficient to form a belief about the truth of the complaints allegedly filed with NHTSA referenced in this paragraph and therefore denies the allegations. The contents of the complaints filed with NHTSA speak for themselves, and to the extent the allegations in this paragraph vary therewith, AHM denies the allegations. AHM denies the remaining allegations in this paragraph, including the existence of the alleged defect.

    157.   A list of representative complaints filed with NHTSA detailing the Parasitic Drain Defect found in the 2017 Honda Accord Class Vehicles includes:

- NHTSA ID No. 11098225 (dated May 2, 2018) ("car needed to be jumped started twice. ... First time, car would not start after waiting 20 mins. Second time, car in garage over night would not start.").

- NHTSA ID No. 11174885 (dated February 6, 2019) ("Over the last several days the car would not start without requiring a jump for the battery. Then it would run, but once the car was off and had to be restarted it would require another jump. ...It ran fine for the next few days, but currently its parked and won't start. The only lights that displayed was the EPS which turned off shortly after the car started.").

- NHTSA ID No. 11221967 (dated June 23, 2019) ("Car won't start or turn over and the lights just flicker on and off. I'm currently waiting on a tow truck to get a jump my car is parked in the garage and it won't start. Very frustrated with Honda I had the car less than 2 years and I have less than 50k miles.").

- NHTSA ID No. 11266417 (dated October 4, 2019) ("Last night I had just gotten home from worked and gone in the house to change for church. Less than 5 minutes later, I returned to my car and when trying to start it, it would start up. Lights flickered on dash, but it wouldn't turn over..... ***This is the third time this his happened this year, with in a few months***. Car has less that 50k miles. ... ***[T]his could be very dangerous***.").

- NHTSA ID No. 11308018 (dated February 9, 2020) ("There are times the car will not start. Have to get a jump to start.").

- NHTSA ID No. 11327379 (dated June 5, 2020) ("1/10/2020 car wouldn't start 6/4/2020 my car did the exact same thing.").

- NHTSA ID No. 11329911 (dated June 21, 2020) ("After owning the car for 2.5 years, the car would not start and required a jump. After several instances of this occurring, the

original oem battery was replaced. ***Within 2 months of installing the new battery, the car wouldn't start and required a jump***. The car will start fine for a few weeks and then requires another jump (this repeats every several weeks).").

- · NHTSA ID No. 11384868 (dated December 24, 2020) ("The car battery does not hold charge. ***If the car is not used for three days to a week, the battery is completely dead***.").

- · NHTSA ID No. 11390956 (dated February 1, 2021) ("***Vehicle has been dead on 4+ occasions***. Stationary, in garage. Vehicle is driven as little as once per week at times but the battery or electric draw has caused the car to fail in as little as a couple days or even trunk being open for 15-20min.... ***Dealer is brushing this off without responsibility...They refuse to replace the battery***[.]").

**ANSWER:**   AHM lacks knowledge or information sufficient to form a belief about the truth of the complaints allegedly filed with NHTSA referenced in this paragraph and therefore denies the allegations. The contents of the complaints filed with NHTSA speak for themselves, and to the extent the allegations in this paragraph vary therewith, AHM denies the allegations. AHM denies the remaining allegations in this paragraph, including the existence of the alleged defect.

158.   A list of representative complaints filed with NHTSA detailing the Parasitic Drain Defect found in the 2018 Honda Accord Class Vehicles includes:

- NHTSA ID No. 11270292 (dated October 22, 2019) ("***The problem we had with this 2018 Honda Accord, was it wouldn't start. Without warning of low battery or faulty charging*** or any other indication displayed in the warning or advisory systems of the car previously - it just wouldn't start.... Now, if this were you, or your wife, or your daughter, or grand mother; or all of them in the car together going to an event like a wedding - and they were suddenly and unexpectedly, without warning .... Stranded on the side of a road in the middle of nowhere, at night, in stormy weather, or worse... Evacuating the area from a tsunami. Would you be concerned?").

- NHTSA ID No. 11374134 (dated November 11, 2020) ("I have changed two batteries since I bought it first battery that it came with completely died and couldn't even get a jump. Changed it and now I have to keep getting jump everyday.").

- NHTSA ID No. 11394473 (dated February 3, 2021) ("The vehicle has 8000 miles on it. The safety problem on this vehicle is that the electric system has shorted 5 batteries and has left me stranded in various locations, lending to unsafe conditions. The Honda dealer has replaced 5 batteries on my vehicle and now my car has broken-down again making it six shorted batteries on a vehicle that barely has 8k miles. When I talked to Kyle Lampe, Assistant Service Manager at Brandon

- Honda, he stated Honda Corp. knows about the electric problems and they are unwilling to address it because of cost. Below are the dates of service repairs with included invoice numbers: 8/21/19 Service #514010 11/13/19 Service #531130 1/22/20 Service#544284 8/16/20 Service #578092 11/19/20 Service #594896.").

- · NHTSA ID No. 11482350 (dated September 1, 2022) ("***software error causing intermittent disruptions in communication between the PCM. Car suddenly wouldn't start on multiple occasions have had vehicle checked many times not battery, not***

*alternator, not starter it was deemed on 9/1 it's the PCM board failing to properly communicate*[.]").

**ANSWER:**   AHM lacks knowledge or information sufficient to form a belief about the truth of the complaints allegedly filed with NHTSA referenced in this paragraph and therefore denies the allegations. The contents of the complaints filed with NHTSA speak for themselves, and to the extent the allegations in this paragraph vary therewith, AHM denies the allegations. AHM denies the remaining allegations in this paragraph, including the existence of the alleged defect.

**E.   Honda Knew that the Class Vehicles Suffered from the Defect Prior to Its Sale of the Class Vehicles**

159.   Defendant, based on the facts alleged herein and on information and belief, had full knowledge of the existence of the Defect and the risk it posed to Class Vehicle owners and lessees. This knowledge is based upon, among other facts: (a) Honda's pre-sale durability testing and part sales; (b) records of customer complaints provided to Honda; (c) NHTSA complaints; (d) dealership repair records; (e) consumer complaints posted on the internet; (f) warranty and post-warranty claims; and (g) Honda's post-sale defect investigations.

**ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the alleged defect.

**1.   Honda Conducts Extensive Pre-Sale Testing of the Class Vehicles, Putting Honda on Notice of the Defect**

160.   Honda is experienced in the design and manufacture of consumer vehicles. As an experienced manufacturer, Honda conducts tests, including pre-sale durability testing, on incoming components, including for parasitic draws, to verify the parts are free from defects and align with its specifications.

**ANSWER:**   AHM responds only as to itself and denies the allegations in this paragraph.

161.   Honda emphasizes its Global Honda Quality Standard ("G-HQS"), which it claims "continuously enhances quality at every stage, encompassing design, development, production, sales and after-sales service in order to realize products offering a new level of outstanding quality."[50]

---

[50] Honda Sustainability Report 2018 at          69.
https://global.honda/content/dam/site/global/about/cq_img/sustainability/report/pdf/2018/Honda-SR-2018-en-065-078.pdf_(2018).

1    Honda adds: "This initiative aims to achieve the highest quality through the creation of drawings

2    designed to facilitate manufacturing, as well as develop manufacturing control techniques that limit

3    process variability, by applying and reflecting design and development expertise at the production

4    preparation and production (mass-production) stages."[51]

5        **ANSWER:**   AHM admits that Honda has established and uses a Global Honda Quality

6    Standard ("G-HQS"). AHM further admits that Plaintiffs purport to quote a website. The contents of

7    the website speak for themselves, and to the extent the allegations in this paragraph vary therewith,

8    AHM denies the allegations. AHM denies the remaining allegations in this paragraph.

9        162.   As part of this initiative, Honda "Assur[es] Long-Term Reliability through Rigorous

10   Durability Testing":[52]

11       Honda subjects new and redesigned models to a rigorous regimen of long-distance
12       durability testing before beginning mass production to verify that there are no quality
         issues.

13       Honda also disassembles vehicles used in the test drives into every single part and
14       verifies that there are no quality issues through a process consisting of several thousand
         checks. By accumulating data on the issues discovered through these test drives and
15       detailed inspections as well as associated countermeasures, the Company is able to
         ensure a high level of quality and reliability.[53]
16

17       **ANSWER:**   AHM admits that Plaintiffs purport to quote a website. The contents of the

18   website speak for themselves, and to the extent the allegations in this paragraph vary therewith, AHM

19   denies the allegations. AHM denies the remaining allegations in this paragraph.

20       163.   "Honda's production departments establish manufacturing control items and criteria

21   for each part, process and operation to prevent product quality issues[,]" conducts extensive on-site

22   audits of its suppliers for quality assurance, and "then works to improve part quality through activities

23   that emphasize communication with suppliers, for example, by sharing audit results and cooperating

24   to identify opportunities for quality improvement."[54]

25

26

27   ---
     [51] *Id*. at 69.
     [52] *Id*. at 71.
28   [53] *Id*. at 71.
     [54] *Id*. at 70-71.

1     **ANSWER:**   AHM admits that Plaintiffs purport to quote a website. The contents of the

2 website speak for themselves, and to the extent the allegations in this paragraph vary therewith, AHM

3 denies the allegations. AHM denies the remaining allegations in this paragraph.

4     164.   In addition to the "quality assurance system" put in place by the G-HQS related to the

5 production and manufacturing of the Class Vehicles, Honda has in place procedures to investigate

6 "issues after sales"; namely, through its dealerships.[55] Honda has an interconnected network of

7 customer service departments worldwide which it relies upon to monitor quality control issues.

8     **ANSWER:**   AHM admits that it receives market information from the field through

9 authorized Honda dealers and that it has a customer service department. AHM further admits that

10 Plaintiffs purport to quote a website. The contents of the website speak for themselves, and to the

11 extent the allegations in this paragraph vary therewith, AHM denies the allegations. AHM denies the

12 remaining allegations in this paragraph.

13     165.   Honda's California headquarters also maintains a Technical Information & Support

14 Group ("TIS"), formerly known as Technical Research & Support Group ("TRS"), responsible for,

15 inter alia, identifying and investigating potential defects in Honda vehicles.

16     **ANSWER:**   AHM admits that it has a Technical Information & Support Group that has, and

17 formerly a Technical Research & Support Group that had, responsibilities related to, among other

18 things, gathering information in connection with investigations of potential issues with Honda

19 vehicles. AHM denies the remaining allegations in this paragraph.

20     **2.**   **Consumer Complaints Also Put Honda on Notice of the Defect**

21     166.   Honda also regularly monitors NHTSA databases for consumer complaints as part of

22 its ongoing obligation pursuant to the TREAD Act, 49 U.S.C. §30118, to identify potential defects in

23 its vehicles. As shown above, numerous complaints filed by Class Vehicle owners with NHTSA

24 establish that Honda knew, or should have known, of the Defect at least as early as March 2017

25 (NHTSA ID No. 11005067), based on publicly available information.

26     **ANSWER:**   AHM admits that Plaintiffs reference the TREAD Act, 49 U.S.C. § 30118. The

27 contents of the Act speak for themselves, and to the extent the allegations in this paragraph vary

28

---

[55] *Id*. at 67, 69.

1   therewith, AHM denies the allegations. AHM denies it regular monitors customer complaints made

2   to NHTSA in the regular course of business. AHM further denies the remaining allegations in this

3   paragraph, including the existence of the alleged defect.

4          167.   Indeed, given Honda's history of skirting its monitoring obligations under the TREAD

5   Act and subsequent fine, Honda was likely acutely aware of (or should have been) each NHTSA

6   customer complaint regarding the Parasitic Drain Defect. Specifically, in 2015, Honda was fined $70

7   million (the highest penalty allowed by Congress) by NHTSA "for failing to report deaths, injuries,

8   and certain warranty claims to the federal government in violation of the TREAD Act" from 2003

9   through 2014. As part of the Consent Order "Honda also agreed to increased NHTSA oversight and

10  third party audits to ensure that all required reporting is completed[.]"[56]

11         **ANSWER:**   AHM admits that NHTSA fined it $70 million in 2015 for alleged violations

12  that have nothing to do with Plaintiffs' claims in this action. AHM further admits that Plaintiffs

13  purport to quote a website. The contents of the website speak for themselves, and to the extent the

14  allegations in this paragraph vary therewith, AHM denies the allegations. AHM denies the remaining

15  allegations in this paragraph, including the existence of the alleged defect.

16         168.   In addition to NHTSA complaints, customer complaints of the Parasitic Drain Defect

17  in Class Vehicles—namely, that their vehicles' batteries were depleted overnight—can be found on

18  various consumer websites and message boards.

19         **ANSWER:**   AHM denies the existence of the alleged defect. AHM lacks knowledge or

20  information sufficient to form a belief about the truth of the remaining allegations in this paragraph

21  and therefore denies the allegations.

22         169.   for example, on March 9, 2017, a Class member started a thread on a message board

23  devoted to Honda CR-Vs, CRVOwnersClub.com, titled: "2017 cry battery going dead overnight."

24          I own a 2017 CRV EXL-Nav it is 2 months old with 800 miles on it. Twice the battery
25          went totally dead while sitting in my garage. First at about 500 miles and again at 800
            miles. I put it on a charger and drove it to the dealer and both times they could find no
26

27  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
    [56] Press Release, NHTSA, U.S. Department of Transportation Fines Honda $70 million for Failing to
28  Comply      with      Laws      That      Safeguard      the      Public      (Jan.      8,      2015),
    https://one.nhtsa.gov/About+NHTSA/Press+Releases/2015/DOT-fines-Honda-$70-million.

problem. The car was in the garage and doors locked there were no lights or anything else left on.

**ANSWER:**   AHM lacks knowledge or information sufficient to form a belief about the truth of the complaint allegedly posted on a website referenced in this paragraph and therefore denies the allegations. The contents of the website speak for themselves, and to the extent the allegations in this paragraph vary therewith, AHM denies the allegations. AHM denies the remaining allegations in this paragraph, including that the issues discussed in this post were due to the alleged defect.

170.   That same day some responded: "There have been several posts about battery problems on 2017's. Starting it every day is nuts. Horrible advice."[57] On March 13, 2017, a consumer suggested that the dead battery may be due to "a parasitic draw on the system." On March 28, 2017, someone else commented "I had this exact problem. It seems like Honda is now acknowledging a parasitic draw to their service reps."

**ANSWER:**   AHM lacks knowledge or information sufficient to form a belief about the truth of the complaints, responses, and comments allegedly posted on a website referenced in this paragraph and therefore denies the allegations. The contents of the website speak for themselves, and to the extent the allegations in this paragraph vary therewith, AHM denies the allegations. AHM denies the remaining allegations in this paragraph, including the existence of the alleged defect.

171.   On July 17, 2018, the owner of a 2017 CR-V noted that he found an excessive parasitic drain in his vehicle that caused multiple no- start conditions:[58]

**2017 CR-V Touring AWD problems AFTER the TSB update** I've been watching the forum with interest and I was excited to find the TSB update after my 2017 Touring was dead after sitting for a week in the airport parking lot. I had it jumped and went to the dealer where they of course told me that "nothing is wrong."

It happened again and then I insisted on the TSB update and the car has been fine for months, but I hadn't let it sit during that time!

So, two weeks ago, we let it sit while we were away and when I got home, it was dead again! Jumped it and took it to the dealer and they found "nothing wrong." So when I got it home, I decided to hook it up to my amp meter myself, and there is a 0.7 amp

---

[57] ' CR-V OWNERS CLUB (Mar. 9, 2017), https://www.crvownersclub.comithreads/2017-crv-battery-going-dead-overnight.135193/.
[58] *Id*. at 14, comment #268.

AMERICAN HONDA MOTOR CO., INC.'S ANSWER TO SECOND AMENDED COMPLAINT

parasitic draw when the car is off and the fob is in the house. That means it will be dead again in a week or so.

So, this time, I'm not going to jump the car and have Honda tow it in for me for yet another attempt. I'll bring along my amp meter and show them the clear evidence. Maybe in the meantime I'll see if I can figure out which circuit has the draw on it.

***This is quite frustrating and I'm amazed how many posters have the same experience I have had.***

**ANSWER:**   AHM lacks knowledge or information sufficient to form a belief about the truth of the complaint allegedly posted on a website referenced in this paragraph and therefore denies the allegations. The contents of the website speak for themselves, and to the extent the allegations in this paragraph vary therewith, AHM denies the allegations. AHM denies the remaining allegations in this paragraph, including the existence of the alleged defect.

172.   On February 2, 2019, a class member replied that they "had the [sic] exactly the same battery issues as reported here, classic parasitic draw!"[59]

**ANSWER:**   AHM lacks knowledge or information sufficient to form a belief about the truth of the reply allegedly posted on a website referenced in this paragraph and therefore denies the allegations. The contents of the website speak for themselves, and to the extent the allegations in this paragraph vary therewith, AHM denies the allegations. AHM denies the remaining allegations in this paragraph, including the existence of the alleged defect.

173.   On January 22, 2019, the owner of a 2019 CR-V stated, "Dead Battery. Called Honda Roadside Assist and they said `I left the lights on.' I didn't think I had, but hey, I'm human and it could have happened."[60] Six days later, the same owner provided an update: "Again dead battery after not driving the car for a couple of days. This time, towed to dealership. They couldn't find any problem. Basically, I had to wait for the problem again."[61]

**ANSWER:**   AHM lacks knowledge or information sufficient to form a belief about the truth of the complaints allegedly posted on a website referenced in this paragraph and therefore denies the

---

[59] *Id*. at 17, comment #323.
[60] CARCOMPLAINTS.COM, "2019 Honda CR-V Dead Battery," at p. 2, comment #2; https://m.carcomplaints.com/Honda/CR-V/2019/electrical/dead_battery-2. shtml (last accessed Sept. 21, 2021).
[61] *Id*. at p. 2, #3.

1    allegations. The contents of the website speak for themselves, and to the extent the allegations in this

2    paragraph vary therewith, AHM denies the allegations. AHM denies the remaining allegations in this

3    paragraph, including the existence of the alleged defect.

4          174.   On March 11, 2019, another owner of a 2019 Honda CR-V bemoaned the need for

5    three replacement batteries in a new vehicle:

6          Battery was dead on two occasions within the first 800 miles of ownership. Dealer
           replaced the battery under warranty and about 5 weeks later the same problem is back.
7          Battery discharges after sitting unused for two days. Will be calling the dealer for an
           appointment once the battery is charged and I can start the SUV.
8

9          Three dead batteries within the first 2 2/2 months of ownership. Have purchased a new
           battery charger and now carry a LI-ION battery starter in the vehicle. So much for
10         Honda reliability; never again.[62]

11

12         **ANSWER:**   AHM lacks knowledge or information sufficient to form a belief about the truth

13   of the complaint allegedly posted on a website referenced in this paragraph and therefore denies the

14   allegations. The contents of the website speak for themselves, and to the extent the allegations in this

15   paragraph vary therewith, AHM denies the allegations. AHM denies the remaining allegations in this

16   paragraph, including the existence of the alleged defect.

17         175.   Another owner recounted the extreme difficulties he encountered after purchasing a

18   new 2019 Honda CR-V on February 14, 2019, as well as the health and safety risk it posed to him.[63]

19   The owner complained that the Parasitic Drain Defect resulted in the depletion of his battery which

20   "caused [him] to miss an out of town Dr.'s appointment."[64] Over the course of the next two weeks,

21   the owner experienced multiple incidents of failed batteries and brought his vehicle to a Honda

22   dealership. Despite the dealership purporting to fix the issue, the vehicle was no more reliable. The

23   owner lamented that he was unable to rely on his new vehicle to drive to other medical appointments

24   and was forced to borrow other vehicles to get to his scheduled medical tests.[65]

25         **ANSWER:**   AHM lacks knowledge or information sufficient to form a belief about the truth

26   of the complaints allegedly posted on a website referenced in this paragraph and therefore denies the

27   _____

[62] *Id.*, at p. 2, #5.
[63] *Id.*, at p. 1, #6; https://m.carcomplaints.com/Honda/CR-V/2019/electrical/dead_battery.shtml
[64] *Id.*
28 [65] *Id.*

allegations. The contents of the website speak for themselves, and to the extent the allegations in this paragraph vary therewith, AHM denies the allegations. AHM denies the remaining allegations in this paragraph, including the existence of the alleged defect.

176.   Similar complaints of the Defect were posted on CARCOMPLAINTS.COM for other Class Vehicles. On October 1, 2018, a 2018 Honda CR-V owner complained of having to replace the battery in his vehicle six times since purchasing the car in April of the same year. The owner noted that "[t]he mechanics at [his] local Honda dealership say they know it is a problem; however, there is nothing they can do about it except keep replacing our battery."[66]

**ANSWER:**   AHM lacks knowledge or information sufficient to form a belief about the truth of the complaints allegedly posted on a website referenced in this paragraph and therefore denies the allegations. The contents of the website speak for themselves, and to the extent the allegations in this paragraph vary therewith, AHM denies the allegations. AHM denies the remaining allegations in this paragraph, including the existence of the alleged defect.

177.   A separate forum on CARCOMPLAINTS.COM has several other complaints related to the Defect in Class Vehicles:

- "My 2019 Honda CRV `s battery continues to go dead. Only had the car 2weeks. Purchased the car Feb 5th, 2019,problem started Feb 20 and then again on the 28th of Feb. Dealer said it is a software problem that when car sits overnight the car automatically does a diagnostic and drain the battery. No fix yet and dealer does no know when there will be a fix. Dealer said they are working on a software update. In the meantime dealer said I need to keep the gas tank full and drive he [sic] car 20 minutes everyday. REALLY!!!! Dealer want me to use a trickle charger everyday to keep battery charged. I contacted American Honda and received a case number. I paid 30,000 for this car and am afraid to dive it. I am still waiting for Honda to fix this problem." In an update from March 21, 2019, the driver continued: "Just received a call from my car dealer they have a software update. Bringing my car in tomorrow the 22nd. for the computer update on my car. This is supposed to be the fix for the battery constantly going dead. I will keep you posted." An additional update posted on Mar 28, 2019 states "Had software update on March 22. Not sure I it has worked yet. I am lettting [sic] it sit for at least 5 to six days to see if it starts . My concern is that other owners of the 2019 CRV had the software update and found that while driving on the highway their car lost power. In am also on CarGuru site where there are multiple owners with the same problem. I will keep you updated."

---

[66]   CARCOMPLAINTS.COM, at comment #1 https://www.carcomplaints.com/Honda/CR-V/2018/electrical/battery_drain.shtml (last accessed Sept. 21, 2021).

AMERICAN HONDA MOTOR CO., INC.'S ANSWER TO SECOND AMENDED COMPLAINT

1    **ANSWER:**   AHM lacks knowledge or information sufficient to form a belief about the truth

2    of the complaints allegedly posted on a website referenced in this paragraph and therefore denies the

3    allegations. The contents of the website speak for themselves, and to the extent the allegations in this

4    paragraph vary therewith, AHM denies the allegations. AHM denies the remaining allegations in this

5    paragraph, including the existence of the alleged defect.

6    178.   Another popular forum for complaints regarding cars, CARGURUS.COM, contains a

7    post in which the driver asks "after sitting in my garage for 2 days why is the battery dead in my

8    Honda 2019 cry?" The post has 280 responses, many of which are made by drivers complaining of

9    similar issues related to the Defect found in Class Vehicles:

- "My battery went dead after two days on Tuesday ...went to dealer , I am the 4th one reporting the problem...dealer told me that engineers are working on the problem[.]"

- "have the same problem with my cry 2019I have it 3 weeks and two times went completely dead. Dealer replaced battery the first time , the second time that said it's something with the software. They said software needs updating should have the problem fixed in two months. I want them to take the care back. I am not paying for something I can't drive unless I jump it."

- "My dealer would not give me a new battery unless I paid him $165 for one. I had 127 miles on it, they charged it up and said the battery was ok and the next morning it was dead, so I bought a jump starter, hope they get something going on it soon be cause a new $35K cry should start. This is my 3rd Honda cry and the LAST."

- "This is my problem too, bought it January 7 and in a few days it will be two months. Still not fixed. It has been dead 8 times to date. It goes dead in 3 days or less in the garage, nothing is left turned on. It has been to the dealer for several days a couple times, and sent back cause "nothing was found wrong with it". Finally they got the battery to go dead for them and put in a larger battery. That worked well for a few days and now it also goes dead. So we have to drive it every day to put some charge back in. I also bought a Jumpit pack which is helpful. But why should I have to do all this? Mine is a 2019 Honda CRV - EX. Honda I am asking politely "Will you fix my car very soon or replace it without charging me $3000" as I was told it would take to get into another car? I already paid cash for this one so better treatment to this guest would be a big plus."

- "I'm having the same issue with my battery drainage!!! I'm so upset! It will be 30 days tomorrow since I've had the car! I'm not sure if I should return it or what???"

- "Same thing happened to me about 2 weeks after I bought mine. Jumped it and made an appointment with the dealership because odd things were happening after that such as heat not working well, etc. They determined the battery was low and also told me the same thing someone else here said-it's a problem with one of the systems running a scan. A software fix should be out in a month - in the meantime, after turning the car off turn it on again immediately and then back off. That should prevent the scan from running. That was 4 days ago and so far it has started but I'm in agreement that we shouldn't be having to do this for a brand new Honda product."

**ANSWER:**   AHM lacks knowledge or information sufficient to form a belief about the truth of the complaints, responses, and comments allegedly posted on a website referenced in this paragraph and therefore denies the allegations. The contents of the website speak for themselves, and to the extent the allegations in this paragraph vary therewith, AHM denies the allegations. AHM denies the remaining allegations in this paragraph, including the existence of the alleged defect.

179.   A separate forum on CARGURUS.COM also has numerous forums dedicated to issues relating to the Parasitic Drain Defect contained in Class Vehicles with several posts from drivers complaining that Honda has inspected their vehicles but failed to provide a remedy:

- "Bought a 2019 new CRV honda in Jan 2019, from Burns Honda Marlton ***NJ twice I've had battery replaced despite the new software update***. Battery replaced May 27 and July 10, 2019. They said it was a dead cell. Was told the first time it would be okay and now they are saying that the same. I don't think that they care. The problem still persists. It should be some legal action taken ie class action suit or lemon law. Replacing battery and software update did not help. Winter is not here yet[.]"

- "***My 2019 cry battery has died twice, even after the recall update***. It cannot sit more than 3 days. They suggested I get a Jump Start kit or make arrangements for someone to come and start it when I'm out of town really!! UNACCEPTABLE. It is new and I'm not standing for this. I will get a lawyer or whatever I have to do, up to includiing [sic] a new car! ! !! Right now I hate this vehicle and would not recommend a Honda to anyone."

- "My 2019 CRV was not started for 1 week due to the corona virus issue. When I tried to start it, 3/26/2020, the battery was dead, measured 5 volts. ***The 19-039 software update meant to solve this problem had been installed the previous September***. I contacted Honda support via email. Their brilliant suggestion was to wait until it happens again and have the car towed to the dealer for diagnosis of the problem. The same thing happened to my brother who also owns a 2019 CRV. He DID have his towed to the dealer, they could find no cause. ***There is obviously a discharge problem that 19-039 did not solve and Honda will not admit to it***. I now keep my CRV on a battery charger if I do not expect to drive it for more than two days. Sort of disappointing to have to do this with a car a little over 1 year old that I paid almost 30k for."

**ANSWER:**   AHM lacks knowledge or information sufficient to form a belief about the truth of the complaints, responses, and comments allegedly posted on a website referenced in this paragraph and therefore denies the allegations. The contents of the website speak for themselves, and to the extent the allegations in this paragraph vary therewith, AHM denies the allegations. AHM denies the remaining allegations in this paragraph, including the existence of the alleged defect.

180.    On July 11, 2017, one consumer posted on the CRVOwnersClub.com message board about "battery issues" and how Honda installs "smaller batteries." [67] That same day, another consumer noted that the parasitic drain is the issue, not the battery size in of itself: "The battery issues have nothing to do with the size of the battery. No matter how big a battery you put in, if you leave the car sit long enough with a draw on the battery it will go dead without the software update."[68]

**ANSWER:**   AHM lacks knowledge or information sufficient to form a belief about the truth of the complaints, responses, and comments allegedly posted on a website referenced in this paragraph and therefore denies the allegations. The contents of the website speak for themselves, and to the extent the allegations in this paragraph vary therewith, AHM denies the allegations. AHM denies the remaining allegations in this paragraph, including the existence of the alleged defect.

181.    Other complaints posted online of the Parasitic Drain Defect causing dead batteries in Class Vehicles reference Honda's acknowledgment and attempts to rectify the Defect through various components within the F-CAN.

**ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the alleged defect.

182.    For instance, on October 31, 2021, the owner of a 2018 CR-V stated that they woke up to their vehicle "dead in the water."[69] On November 2, 2021, someone responded that "[s]everal people with the same issue including a CRV and an Odyssey. Sounds like the fix is to replace the BCM." Notably, someone responded and recounted a story similar to what Smart Honda admitted to Plaintiff Jones:

> The general theme of that thread is 1) head scratching by the dealer (which clearly indicates it is not a widespread problem) and 2) indicates that ***the dealer had to call in Honda Customer Support Engineering to isolate the cause, and they eventually settled on the BCM as the cause***. That is exactly what the dealer should do.

---

[67]   CR-VOwNERsCLuB, p. 1, comment #2; https://www.crvownersclub.com/threads/battery-upgrade.149010/#post-1071602
[68] *Id.*
[69]   "(2022)   CR-V   BCM   Issues   [Merged   Master   Thread],   discussion   starter   #1; https://www.crvownersclub.com/threads/2022-cr-v-bcm-issues-merged-master-thread.222835/   in Honda Customer Support Engineering to isolate the cause, and they eventually settled on the BCM as the cause. That is exactly what the dealer should do.

1

**ANSWER:**   AHM lacks knowledge or information sufficient to form a belief about the truth

2  of the complaints, responses, and comments allegedly posted on a website referenced in this

3  paragraph and therefore denies the allegations. The contents of the website speak for themselves, and

4  to the extent the allegations in this paragraph vary therewith, AHM denies the allegations. AHM

5  denies the remaining allegations in this paragraph, including the existence of the alleged defect.

6  183.   Years prior, on October 20, 2019, the owner of a 2019 CR-V reported on

7  CARCOMPLAINTS.COM that their vehicle's battery died after four months of ownership.[70] The

8  owner then towed the vehicle to a dealership, which replaced his battery. But because a battery

9  replacement does not address the F-CAN's failure to enter sleep mode, the F-CAN continued to

10  parasitically draw excessive amounts of power from the battery. As a result, the owner experienced

11  the same problem six months after installing the new battery. The owner again towed the vehicle to

12  the Honda dealership. This time, Honda did not install a new battery. Rather Honda did a "hard reset"

13  of the PCM, a key ECU within the F-CAN.

14  **ANSWER:**   AHM lacks knowledge or information sufficient to form a belief about the truth

15  of the complaints, responses, and comments allegedly posted on a website referenced in this

16  paragraph and therefore denies the allegations. The contents of the website speak for themselves, and

17  to the extent the allegations in this paragraph vary therewith, AHM denies the allegations. AHM

18  denies the remaining allegations in this paragraph, including the existence of the alleged defect.

19  184.   On information and belief, Honda reviews and provides feedback to consumer

20  complaints on these message boards.[71] It is also routine for retailers such as Honda to have a customer

21  relations division that receives and responds to customer calls concerning, inter alia, product defects.

22  Plaintiffs allege that these sources also put Honda on notice of the Defect and its danger.

23

24

25

26  [70] 2019 Honda CR-V Dead Battery: (carcomplaints.com), https://www.carcomplaints.com/Honda/CR-V/2019/electrical/dead_battery.shtml.

27  [71] *See* CR-V OWNERS CLUB. "2017 cry battery going dead overnight," at comment 10 , (May 15, 2017 post by "Honda Automobile Customer Service[,] American Honda Motor Co., Inc." in response

28  to a customer complaint concerning the Defect), https://www.crvownersclub.com/threads/2017-crv-battery-going-dead-overnight.135193/ (last accessed Sept. 21, 2021).

AMERICAN HONDA MOTOR CO., INC.'S ANSWER TO SECOND AMENDED COMPLAINT

1  **ANSWER:**  AHM admits that it has a customer service department that receives and

2  responds to customer calls. AHM denies the remaining allegations in this paragraph, including the

3  existence of the alleged defect.

4  185.  And, as detailed herein, several of the posts in this forum reference reporting the issues

5  directly to Honda's customer service division, providing Honda with direct knowledge of the Defect

6  and the hazards associated with the Defect.

7  **ANSWER:**  AHM denies the allegations in this paragraph, including the existence of the

8  alleged defect.

9  **3.  Honda has Acknowledged to Its Dealerships that the F-CAN ECUs
   Within the Class Vehicles Cause Excessive Parasitic Draining**

10

11  186.  Honda's first acknowledgement of the Parasitic Drain Defect in a Class Vehicle F-

12  CAN came on March 10, 2017, when Honda issued a "Tech Line Summary Article," wherein it

13  discloses that the F-CAN may fail to enter sleep mode under certain conditions.[72] Specifically, Honda

14  informed its dealerships that it had conducted an "investigation" into 2017 CR-Vs being brought in

15  for weak or dead batteries, yet the vehicles and batteries "check out OK[.]" Honda stated that it "found

16  that a software bug in the VSA system may be keeping it awake when the ignition is turned to OFF.

17  This can cause a 350 mA parasitic draw that may result in a weak or dead battery." Honda noted that

18  it "found that this issue appears to happen only when a certain shut down procedure is done, and it's

19  rare when it does." Although it acknowledged the issue, Honda did not have a "fix" and instead

20  warned that "this parasitic draw can be avoided by setting the electric parking brake before turning

21  the ignition to OFF."[73]

22  **ANSWER:**  AHM admits that it issued the Tech Line Summary Article referenced in this

23  paragraph in March 2017. The contents of the Tech Line Summary Article speak for themselves, and

24  to the extent the allegations in this paragraph vary therewith, AHM denies the allegations. AHM

25  denies the remaining allegations in this paragraph, including the existence of the alleged defect.

26

27  _____

28  [72]  NHTSA ID No. 10108281, Manufacturer Communication No. ATS 170301 (Mar. 2017),
    https://static.nhtsa.gov/odi/tsbs/2017/MC-10108281-9340.pdf.
    [73] *Id.*

187.   Honda issued Service Bulletin 17-032 (titled: *Parasitic battery draw from VSA modulator (Vehicle will not start)*) on June 14, 2017, in which it warned dealerships that 2017 CR-Vs "may have an intermittent 350mA current draw after the vehicle is shut off[d] in which case "[t]he vehicle does not start due to a low battery." Honda stated that the "possible causes" for the failure of the F-CAN ECUs to shut down was the vehicle's VSA modulator-control unit: "The VSA software logic may not allow the VSA modulator-control unit to shut down correctly and go into sleep mode after the vehicle is shut off. This can happen if the electronic parking brake (EPB) is applied within 3 to 4 seconds of the vehicle being shut off or if the EPB switch is held for a 3 to 4 second duration when the vehicle is off" Honda's proposed "corrective action" was to "[u]pdate the VSA modulator-control unit, do the VSA sensor neutral position memorization (ALL SENSOR), set the tire pressures to the driver's door jamb label cold inflation values, and do the TPMS calibration procedure."[74]

**ANSWER:**   AHM admits that it issued the Service Bulletin referenced in this paragraph on June 14, 2017. The contents of the Service Bulletin speak for themselves, and to the extent the allegations in this paragraph vary therewith, AHM denies the allegations. AHM denies the remaining allegations in this paragraph.

188.   Honda next identified the F-CAN ECUs as a source of parasitic draining on March 29, 2019, when it issued Service Bulletin 19-039 for 2019 CR-V vehicles, concerning the PCM failing to enter sleep mode. Specifically, Honda warned that "[a]fter the vehicle is parked for an extended period, the PCM begins an evaporative system leak check after meeting certain criteria. Under certain conditions, it may not return to sleep mode, causing the battery to discharge."[75] Honda stated that a "symptom" of the F-CAN's PCM not entering sleep mode was that "[t]he vehicle fails to start after being parked for an extended period." In order to address this issue, Honda proposed "[u]pdat[ing] the PCM with the latest [Programmed Fuel Injection] PGM-FI software."[76]

---

[74] Honda Service Bulletin, 17-032, NHTSA ID No. 10108868 (June 14, 2017), https://static.nhtsa.gov/odi/tsbs/2017/MC-10108868-9999.pdf.
[75] Honda Service Bulleting, 19-039, NHTSA ID No. 10156620, Manufacturer Communication No. A19-039 (Mar. 29, 2019), https://static.nhtsa.gov/odi/tsbs/2019/MC-10156620-0001.pdf.
[76] *Id*. According to Honda, "the heart of PGM-FI is a computer called the PCM." https://www.hondainfocenter.com/Shared-Technologies/Engines/Programmed-Fuel-Injection-PGM-FI/.

**ANSWER:**   AHM admits that it issued the Service Bulletin referenced in this paragraph on March 29, 2019. The contents of the Service Bulletin speak for themselves, and to the extent the allegations in this paragraph vary therewith, AHM denies the allegations. AHM denies the remaining allegations in this paragraph.

189.   Also on March 29, 2019, a Honda "Manager of Auto Campaigns and Recalls" issued a communication to dealers and "All Honda Sales, Service, & Parts Managers, and Personnel[,]" concerning Service Bulletin 19-039. In the communication, Brad Ortloff, Honda's Manager of Auto Campaigns and Recalls, stated that there was "a concern [with 2019 CR-V vehicles] related to a possible low battery state of charge and/or no start after the vehicle has been parked." Honda stated that the issue was related to "[t]he FI-ECU[, which] checks for EVAP leaks 5 hours after vehicle shutdown. Due to a programming error, this system may not go back into sleep mode afterwards. As a result, the battery may drain if this condition exists for an extended period of time." To "repair" this error, Honda told its agents to "[u]pdate the FI-ECU with improved software[,] [t]est the battery using your GR8 Diagnostic tester[, and] [d]epending on the test result, battery replacement may be necessary."[77] On information and belief, the FI-ECU is synonymous with PCM.

**ANSWER:**   AHM admits that it issued the dealer communication referenced in this paragraph on March 29, 2019. The contents of the dealer communication speak for themselves, and to the extent the allegations in this paragraph vary therewith, AHM denies the allegations. AHM denies the remaining allegations in this paragraph.

190.   On August 30, 2019, Honda issued an Owner Notification Letter for 2019 CR-Vs, warning: "After the vehicle is parked for an extended period, the powertrain control module (PCM) begins an evaporative system leak check after meeting certain criteria. Under certain conditions, the PCM will not return to sleep mode, and may ultimately result in a dead battery. This is not an indication of a leak in the evaporative system."[78]

---

[77] NHTSA ID No. 10156621, Manufacturer Communication No. ABOM03292019 (Mar. 29, 2019), https://static.nhtsa.gov/odi/tsbs/2019/MC-10156621-0001.pdf.
[78] NHTSA ID No. 10164478, Manufacturer Communication No. ONLO4G08302019 (Aug. 2019), https://static.nhtsa.gov/odi/tsbs/2019/MC-10164478-0002.pdf.

1    **ANSWER:**   AHM admits that it issued the owner notification letter referenced in this

2    paragraph in August 2019. The contents of the letter speak for themselves, and to the extent the

3    allegations in this paragraph vary therewith, AHM denies the allegations. AHM denies the remaining

4    allegations in this paragraph.

5    191.   On December 17, 2019, Honda issued an update for Service Bulletin 19-039 which

6    expanded the number of 2019 CR-Vs subject to the bulletin.[79]

7    **ANSWER:**   AHM admits that it issued the Service Bulletin referenced in this paragraph on

8    December 17, 2019. The contents of the Service Bulletin speak for themselves, and to the extent the

9    allegations in this paragraph vary therewith, AHM denies the allegations. AHM denies the remaining

10   allegations in this paragraph.

11   192.   Notably, Honda is aware that the software updates provided in the Service Bulletins

12   are equally defective as the original software and fail to correct the Parasitic Drain Defect found in

13   the Class Vehicles—in other words, the ECUs within the F-CAN system continue to fail to enter

14   sleep mode even after the software updates were implemented. Drivers, including Plaintiff Jones,

15   continued to report incidents of parasitic draining. For example, on June 9, 2018, the owner of a 2017

16   CR-V reported on CRVOwNERsCLuB.coM that his battery "kept going dead" so his local dealer

17   "applies the TSB for the Vehicle Stability problem," but the "battery still went dead."[80] Similar

18   reports were filed with NHTSA.[81]

19   **ANSWER:**   AHM lacks knowledge or information sufficient to form a belief about the truth

20   of the alleged reports referenced in this paragraph and therefore denies the allegations. The contents

21   of those alleged reports posted to the referenced website or filed with NHTSA speak for themselves,

22   and to the extent the allegations in this paragraph vary therewith, AHM denies the allegations. AHM

23   denies the remaining allegations in this paragraph, including the existence of the alleged defect.

24   _____

25   [79]  NHTSA ID No. 10169977, Manufacturer Communication No. A19-039 (Dec. 17, 2019),,
     https://static.nhtsa.gov/odi/tsbs/2019/MC-10169977-0001.pdf.
     [80] CVROwnersClub, "BatteryUpgrade," at comment #5,
26   https://www.crvownersclub.com/threads/battery-upgrade.149010/#post-1463874.
     [81]  *See*, e.g., NHTSA ID Nos. 11187354, 11089119, 11191314, 11089119. http s ://www.
27   aboutautomobile.   c   om/Consumer-C   omplaint/2017/Honda/CR-V/Electrical-System   that
     "[e]verything did pass during our second," however "[t]he engineer mentioned an issue of some CR-
28   V 2017-2019 having a problem with the BCM (body control module) staying on after the vehicle was
     shut down."

193.   In addition to its admissions in the Service Bulletins that the F-CAN's PCM and VSA modulator-control units cause the system to stay awake, on information, Honda has identified another component within the F-CAN, the BCM, as causing and/or contributing to the Parasitic Drain Defect, which leads to so many dead batteries in the Class Vehicle.

**ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the alleged defect.

194.   On February 24, 2021, a representative from Smart Honda emailed Plaintiff Jones concerning his repeated no-start condition experiences and the purported work done by the dealership to remedy the Defect. Therein, the Smart Honda representative stated that on "February 2nd we had to contact Honda technical line. Our technician worked with a on the phone engineer testing numerous items involving the electrical system." The Smart Honda representative noted that "[e]verything did pass during our second," however ***"[t]he engineer mentioned an issue of some CR-V 2017-2019 having a problem with the BCM (body control module) staying on after the vehicle was shut down***."

**ANSWER:**   AHM lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and therefore denies the allegations, including the existence of the alleged defect.

### 4.    Honda Has Been Aware of and Investigating Parasitic Draining Complaints in Class Vehicles Since 2017

195.   The existence of the Defect and Honda's knowledge thereof is also revealed through its investigations and communications sent to Honda dealerships relating to complaints by its customers that they were unable to start their Class Vehicles—the most obvious symptom of a CAN failing to enter sleep mode and causing excessive parasitic draining.

**ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the alleged defect.

196.   On February 22, 2017, Honda filed an "Engineering Request for Investigation" ("Engineering Request") with NHTSA. In the Engineering Request, Honda stated that it "is investigating certain 2016-2017 Accord V6s with a customer complaint of a no-start condition that requires the 12V battery to be replaced. To fully understand the cause of this condition, [Honda]

would like to collect specific parts from the vehicle prior to you attempting a repair of any kind."[82] Instructions were provided to have dealers contact Honda's TRS Group for further information.

**ANSWER:**   AHM admits that it issued the Engineering Request for Investigation referenced in this paragraph. The contents of the document speak for themselves, and to the extent the allegations in this paragraph vary therewith, AHM denies the allegations.

197.   Given that the Engineering Request was only issued after a significant number of complaints were received that related to "a no-start condition that requires the 12V battery to be replaced," Honda was aware of the Defect and its symptoms well before February 2017.

**ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the alleged defect.

198.   On February 23, 2017, Honda issued a "Dealer Message" with similar information.[83] Neither document identified the basis for Honda's decision to collect the vehicle batteries other than an unidentified number of customer complaints. Honda did not notify Class Vehicle owners in its February 23, 2017 Dealer Message of its investigation concerning this "no-start condition." In fact, Honda specifically warned its personnel that "[the] message is solely directed to Honda dealership personnel; please handle accordingly."

**ANSWER:**   AHM admits that it issued the dealer message referenced in this paragraph on February 23, 2017. The contents of the dealer message speak for themselves, and to the extent the allegations in this paragraph vary therewith, AHM denies the allegations. AHM denies the remaining allegations in this paragraph, including the existence of the alleged defect.

199.   Over the course of the next three months (on dates including March 6, 16, and 27, 2017 and June 30, 2017), Honda issued additional "Dealer Message[s]" concerning "customer complaint[s] of a no-start condition that requires the 12V battery to be replaced" in 2016-2017 Accords.[84] Each

---

[82]   NHTSA ID No. 10108050, Manufacturer Communication No. AER17020B, https://static.nhtsa.gov/odi/tsbs/2017/MC-10108050-9340.pdf (last accessed Sept. 21, 2021).
[83]   NHTSA ID No. 10108052, Manufacturer Communication No. APAS02232017901 (Feb. 23, 2017), https://static.nhtsa.gov/odi/tsbs/2017/MC-10108052-9340.pdf.
[84]   NHTSA ID No. 10108266, Manufacturer Communication Number: APAS03062017901 (Mar. 6, 2017), https://static.nhtsa.gov/odi/tsbs/2017/MC-10108266-9340.pdf. NHTSA ID No. 10108293, Manufacturer Communication No. APAS031 62017901 (Mar. 16, 2017), https://static.nhtsa.gov/odi/tsbs/2017/MC-10108293-9340.pdf;   NHTSA ID No. 10108331, Manufacturer Communication No. APAS03272017901 (Mar. 27, 2017),

message contained a similar admonition that the contents of the message was "solely directed to Honda dealership personnel; please handle accordingly."

**ANSWER:**   AHM admits that it issued the dealer messages referenced in this paragraph on March 6, 16, 22, and 27, 2017. The contents of the dealer messages speak for themselves, and to the extent the allegations in this paragraph vary therewith, AHM denies the allegations. AHM denies the remaining allegations in this paragraph, including the existence of the alleged defect.

200.   On October 24, 2018, Honda announced that it had launched a battery collection program for 2017-2018 CR-Vs. Honda's "Service Engineering" group sent a message to "Honda Dealers" instructing the dealers to ship the batteries to Honda and to contact Honda's TRS Group for more information if the dealership "replaced an OEM battery on a qualified vehicle."[85]

**ANSWER:**   AHM admits that it issued the dealer message referenced in this paragraph on October 24, 2018. The contents of the dealer message speak for themselves, and to the extent the allegations in this paragraph vary therewith, AHM denies the allegations. AHM denies the remaining allegations in this paragraph, including the existence of the alleged defect.

201.   Honda issued a communication to Honda Service Managers on April 16, 2019, that "[Honda] has been collecting batteries from [2018-2019 Accords and 2017-2018 CR-Vs] under certain conditions. If you have replaced an OEM battery on a qualified vehicle, please follow the procedure below. Service Managers were instructed to ship the batteries to Honda and to contact Honda's TRS Group for more information if the dealership "replaced an OEM battery on a qualified vehicle."[86]

**ANSWER:**   AHM admits that it issued the dealer message referenced in this paragraph on April 16, 2019. The contents of the dealer message speak for themselves, and to the extent the allegations in this paragraph vary therewith, AHM denies the allegations. AHM denies the remaining allegations in this paragraph, including the existence of the alleged defect.

---

https://static.nhtsa.gov/odi/tsbs/2017/MC-10108331-9340.pdf;   NHTSA   ID   No.   10108299, Manufacturer   Communication   No.   APAS03222017901   (Mar.   22,   2017), https://static.nhtsa.gov/odi/tsbs/2017/MC-10108299-9340.pdf.
[85] NHTSA ID No. 10147183, Manufacturer Communication No. APaS 10242018901 (Oct, 24, 2018), https ://static. nhtsa.gov/odi/tsbs/2018/MC-10147183-9999.pdf
[86] NHTSA ID No. 10159033, Manufacturer Communication No. APaS04162019903 (Apr. 16, 2019), https://static.nhtsa.gov/odi/tsbs/2019/MC-10159033-0001.pdf.

1

### 5.     Honda Monitors Repairs and Services Under Warranty

2      202.   On information and belief, Honda's customer relations department, which interacts

3  with authorized service technicians in order to identify potentially widespread vehicle problems and

4  assist in the diagnosis of vehicle issues, has received numerous reports of the Parasitic Drain Defect

5  and premature wear on Class Vehicle batteries. Customer relations also collects and analyzes field

6  data, including, but not limited to, repair requests made at dealerships and service centers, technical

7  reports prepared by engineers that have reviewed vehicles for which warranty coverage is requested,

8  parts sales reports, and warranty claims data.

9      **ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the

10 alleged defect.

11     203.   Honda's warranty department similarly reviews and analyzes warranty data submitted

12 by its dealerships and authorized technicians in order to identify defect trends in its vehicles.

13     **ANSWER:**   AHM admits that its warranty department collects warranty data submitted by

14 authorized dealers. AHM denies the remaining allegations in this paragraph.

15     204.   Honda dictates that when a repair is made under warranty (or warranty coverage is

16 requested), service centers must provide Defendant with detailed documentation of the problem and

17 the fix that describes the complaint, cause, and correction, and also save the broken part in case Honda

18 later determines to audit the dealership or otherwise verify the warranty repair.

19     **ANSWER:**   AHM admits that it requests that authorized service centers provide it with

20 information concerning repairs made under warranty, including a description of the issue, any

21 identified cause, and the repair. AHM denies the remaining allegations in this paragraph.

22     205.   For their part, service centers are meticulous about providing this detailed information

23 about in-warranty repairs to Honda because Honda will not pay the service centers for the repair if

24 the complaint, cause, and correction are not sufficiently described.

25     **ANSWER:**   AHM admits that there are circumstances under which it may not pay a dealer

26 for services performed. AHM denies the remaining allegations in this paragraph.

27     206.   Honda knew or should have known about the Defect and risk of premature battery wear

28 because of the high number of replacement parts and batteries it is reasonable to infer were ordered

from Honda. All of Honda's service centers are required to order replacement parts, including batteries directly from Honda. Other independent vehicle repair shops that service Class Vehicles also order replacement parts directly from Honda.

**ANSWER:**   AHM admits that independent vehicle repair shops may order replacement parts directly from Honda. AHM denies the remaining allegations in this paragraph, including the existence of the alleged defect.

207.   Honda routinely monitors part sales reports and are responsible for shipping parts requested by dealerships and technicians. Thus, Honda has detailed, accurate, and real-time data regarding the number and frequency of replacement part orders. The increase in orders of batteries and other auto-parts necessary to fix damage caused by the Parasitic Drain Defect the Class Vehicles was known to Defendant and should have alerted it to the scope and severity of the Defect.

**ANSWER:**   AHM admits that it ships replacement parts requested by dealers. It further admits that it generally has information about replacement part orders that it fulfills. AHM denies the remaining allegations in this paragraph, including the existence of the alleged defect.

208.   Furthermore, the existence of the Defect within the Class Vehicles' F-CAN can hardly come as a surprise to Honda given it has stated that the CAN "is a major contributor" to parasitic draining issues.[87]

**ANSWER:**   AHM admits that Plaintiffs purport to quote from a Service News Article. The contents of the article speak for themselves, and to the extent the allegations in this paragraph vary therewith, AHM denies the allegations. AHM denies the remaining allegations in this paragraph, including the existence of the alleged defect.

**6.   Complaints Made Directly to Honda's Customer Service Division**

209.   In addition to the numerous complaints submitted to NHTSA and posted on various consumer and car forums, Honda also learned of the Parasitic Drain Defect directly from complaints received by Honda's customer relations division.

---

[87] HONDA, SERVICENEWS ARTICLE, "Excessive Parasitic Draw? Check If the B-CAN System Is Awake"        (July        2008),        https://fDl.justanswer.com/clmcr8/93f5f360-831e-426e-af57-958994d562ad_parasiticdraw.pdf

AMERICAN HONDA MOTOR CO., INC.'S ANSWER TO SECOND AMENDED COMPLAINT

1     **ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the

2     alleged defect.

3     210.   As part of its G-HQS, Honda had procedures in place to deal with "quality issues after

4     sales" in which dealerships "collect quality information from customers in a timely manner."

5     **ANSWER:**   AHM admits that Plaintiffs purport to quote from some unidentified document.

6     The contents of that unidentified document speak for themselves, and to the extent the allegations in

7     this paragraph vary therewith, AHM denies the allegations. AHM denies any remaining allegations

8     in this paragraph.

9     211.   Honda utilizes a customer relations center which "receives feedback in the form of

10    customer questions, suggestions, requests and complaints 365 days a year." And to "ensure that this

11    valuable information is put to good use in Honda's operations, the facility shares it in a timely manner

12    with the company's R&D, manufacturing, service and sales departments."

13    **ANSWER:**   AHM admits that Plaintiffs purport to quote from some unidentified document.

14    The contents of that unidentified document speak for themselves, and to the extent the allegations in

15    this paragraph vary therewith, AHM denies the allegations. AHM denies any remaining allegations

16    in this paragraph.

17    212.   "Honda has established a Quality Center to bring together the various components of

18    our organization concerned with product market quality information to enhance the functions of

19    `preventing quality issues' and `quickly detecting and resolving quality issues when they occur' on a

20    global scale."

21    **ANSWER:**   AHM admits that Plaintiffs purport to quote from some unidentified document.

22    The contents of that unidentified document speak for themselves, and to the extent the allegations in

23    this paragraph vary therewith, AHM denies the allegations. AHM denies any remaining allegations

24    in this paragraph.

25    213.   Honda also maintains a TRS Group at its California headquarters which is responsible

26    for, among other things, identifying and investigating potential defects in Honda vehicles.

27    **ANSWER:**   AHM admits that it had a Technical Research & Support Group. AHM denies

28    the remaining allegations in this paragraph.

214.   Upon information and belief, Honda's customer relations division received numerous reports of the Parasitic Drain Defect and the premature failure of Class Vehicle batteries.

**ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the alleged defect.

215.   In fact, drivers referenced reports made directly to Honda's customer service division in posts made on many online forums in which they were discussing the Defect in Class Vehicles, providing Honda with direct knowledge of the Defect and the hazards associated with the Defect:

- "Everyone having this battery drainage problem please call Honda and report it at 1-809-999-1008 x155. This is to Consumer Services, I believe. They took all of the dates the story etc. They gave me a case number and the report will go to Case Management. I was told they would call me in 1¬2 days. I was on the phone with them for about an hour. I have no idea what they will do for me, if anything, but they need to know how widespread this problem is. Don't count on the dealership to report it. My car has been towed 5 times all through Honda Roadside assistance but only 2 of the 5 dates had a service report filed from the dealership. Write down the dates your car was dead and what the outcome was. Like was it towed to dealership, what did they say, was it jumped and you drove it. All of it. Write it out on paper or keep a running document on your computer or on your phone calendar. You will need all of this in case you decide to pursue something through the lemon law in your state. I refuse to be stuck with this car! It's been a very very productive morning."

- "I also called HONDA CUSTOMER SERVICE AND ASK THEM TO FIND OUT WHY THE BATTERY WOULD DIE AFTER SITTIG IN MY GARAGE FOE 2 DAYS AND *SHE SAID THEY WERE AWARE OF THE DEAD BATTERY PROBLEM, BUT HAD NO ANSWER FOR IT*. SHE SAID TO TALK TO THE DEALER AND I TOLD HER I did 3 times and they had no answer for it, I got a case Number. Big Deal."

- "We purchased our CRV on 2/21. On the morning of 3/3 it would not start due to a dead battery. I jump started it and let it run to charge the battery back up. On the morning of 3/4 it would not start again. Jumped it and drove to the dealership. They tested the battery and said it was OK. *They stated this was a known design problem due to the evaporative emissions system trying to test the gas tank overnight*. They said to keep the gas tank more than 3/4 filled and it would be OK. This means filling the tank every night. Filled the tank. On the morning of 3/5, no start again. We brought it to the dealership and got a loaner Civic to drive for the rest of the month. The evap test should not run with more than 3/4 tank of gas. The evap test should not run when the ambient temperature is below freezing. Overnight temperatures currently are in the single digits and teens. It should not be running this test. There is no current fix for this condition. We have about 600 miles on our new car that we cannot use. I have called Honda and started a case, we will see what happens next. If you have a car with this problem, call Honda, let them know about it and get a case number. Keep a log of all events involving your car and the people/companies you contact."

**ANSWER:**   AHM lacks knowledge or information sufficient to form a belief about the truth of the complaints, responses, and comments allegedly posted on websites referenced in this paragraph

1   and therefore denies the allegations. The contents of the websites speak for themselves, and to the

2   extent the allegations in this paragraph vary therewith, AHM denies the allegations. AHM denies the

3   remaining allegations in this paragraph, including the existence of the alleged defect.

4        **F.**    **Honda Breached the Express Warranties Covering the Class Vehicles**

5       216.  The Class Vehicles sold and leased by Honda included a written express warranty,

6   which provides: "All new Honda vehicles are covered by a 3-Year/36,000-Mile New Vehicle Limited

7   Warranty [.]"[88]

8       **ANSWER:**  AHM admits that new vehicles within the alleged Class Vehicles were sold or

9   leased with a written warranty. The contents of the written warranties speak for themselves, and to

10  the extent the allegations in this paragraph vary therewith, AHM denies the allegations.

11      217.  Under the terms of the New Vehicle Limited Warranty, Honda is required to "repair or

12  replace any part that is defective in material or workmanship under normal use."[89]

13      **ANSWER:**  AHM admits that it issued the New Vehicle Limited Warranty referenced in

14  this paragraph. The contents of the written warranty speak for themselves, and to the extent the

15  allegations in this paragraph vary therewith, AHM denies the allegations.

16      218.  Each Class Vehicle's original battery is included in the New Vehicle Limited

17  Warranty."[90]

18      **ANSWER:**  AHM admits that it issued the New Vehicle Limited Warranty referenced in

19  this paragraph. The contents of the written warranty speak for themselves, and to the extent the

20  allegations in this paragraph vary therewith, AHM denies the allegations.

21      219.  The New Vehicle Limited Warranty period begins once "[t]he vehicle is delivered to

22  the first purchaser by a Honda automobile dealer" or "[t]he vehicle is leased."[91]

23      **ANSWER:**  AHM admits that it issued the New Vehicle Limited Warranty referenced in

24  this paragraph. The contents of the written warranty speak for themselves, and to the extent the

25  allegations in this paragraph vary therewith, AHM denies the allegations.

---

[88] Honda, https://automobiles.honda.com/cr-v/warranty (last accessed Sept, 21, 2021)
[89]   Honda, https://owners.honda.com/documentum/Warranty/Handbooks/AWL47382.pdf (last accessed Sept. 21, 2021), at. 10.
[90] *Id.*, at 6.
[91] *Id.*, at 9.

220.   Honda also includes a 100-month Replacement Battery Limited Warranty for batteries purchased from a Honda automobile dealer.[92] Under the Replacement Battery Limited Warranty, defective replacement batteries are to be replaced at no cost for the battery, labor, or installation during the first 36 months of service. For the remaining 64 months, the warranty provides for a sliding-scale credit towards the purchase of a replacement battery.

**ANSWER:**   AHM admits that it issued the Replacement Battery Limited Warranty referenced in this paragraph. The contents of the written warranty speak for themselves, and to the extent the allegations in this paragraph vary therewith, AHM denies the allegations.

221.   Buyers and lessees have no pre-sale/lease knowledge or ability to bargain as to the terms of the warranties.

**ANSWER:**   AHM denies the allegations in this paragraph.

222.   Honda breached these warranties by, *inter alia*, failing to repair or remedy the Parasitic Drain Defect in the Class Vehicles. Class members complained to authorized Honda dealerships and technicians about the Parasitic Drain Defect, but did not receive an adequate repair, breaching the express and implied warranties provided by Honda.

**ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the alleged defect.

## VI.   FRAUDULENT OMISSION/CONCEALMENT ALLEGATIONS

223.   Absent discovery, Plaintiffs were unaware of, and unable through reasonable investigation to obtain, the true names and identities of those individuals at Honda responsible for making false and misleading statements regarding the Class Vehicles. Honda necessarily is in possession of all of this information. Plaintiffs' claims arise out of Defendant's fraudulent omission/concealment of the Defect, despite their representations about the quality, reliability, and safety of the Class Vehicles.

**ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the alleged defect and any alleged fraudulent conduct by AHM.

---

[92] *Id.*, at 33.

1   224.   Plaintiffs allege that, at all relevant times, including specifically at the time they and
2   Class members purchased their Class Vehicles, Honda knew, or was reckless in not knowing, of the
3   Defect; Defendant had a duty to disclose the Defect based upon its superior and exclusive knowledge;
4   and Defendant never disclosed the Defect to Plaintiffs or the public at any time or place in any manner
5   other than inadequate Service Bulletins relating to the Class Vehicles.

6   **ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the
7   alleged defect and any alleged fraudulent conduct by AHM.

8   225.   Honda actively concealed and omitted the Defect from Plaintiffs and Class members
9   while simultaneously touting the safety and dependability of the Class Vehicles, as alleged herein.
10   Plaintiffs were unaware of, and therefore unable to identify, the true names and identities of those
11   specific individuals at Honda responsible for such decisions.

12   **ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the
13   alleged defect and any alleged fraudulent conduct by AHM.

14   226.   Honda knew, or was reckless or negligent in not knowing, that the Class Vehicles
15   contain the Defect, as alleged herein. Defendant concealed and omitted the Defect while making
16   representations about the safety, dependability, and other attributes of the Class Vehicles, as alleged
17   herein.

18   **ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the
19   alleged defect and any alleged fraudulent conduct by AHM.

20   227.   Honda concealed and omitted material information regarding the Defect at all times
21   while making representations about the safety and dependability of the Class Vehicles on an ongoing
22   basis, and continuing to this day, as alleged herein. Honda still has not disclosed the truth about the
23   full scope of the Defect in the Class Vehicles. Honda has never taken any action to inform consumers
24   about the true nature of the Defect in Class Vehicles. And when consumers brought their vehicles to
25   Honda complaining of the Defect, Honda denied any knowledge of, or an adequate repair for, the
26   Defect

27   **ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the
28   alleged defect and any alleged fraudulent conduct by AHM.

228.   Honda concealed and omitted material information regarding the true nature of the Defect in every communication it had with Plaintiffs and Class members and made representations about the quality, reliability, and safety of the Class Vehicles. Plaintiffs are not aware of any document, communication, or other place or thing in which Defendant disclosed the truth about the full scope of the Defect in the Class Vehicles. Such information is not adequately disclosed in any sales documents, displays, advertisements, warranties, owner's manuals, or on Honda's website. There are channels through which Honda could have disclosed the Defect, including, but not limited to: (a) point of sale communications; (b) the owner's manual; and/or c) direct communication to Class members through means such as state vehicle registry lists and e-mail notifications.

**ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the alleged defect and any alleged fraudulent conduct by AHM.

229.   Honda concealed and omitted the Defect from Plaintiffs and Class members and made representations about the quality, safety, dependability, and comfort of the Class Vehicles. Honda actively concealed and omitted the truth about the existence, scope, and nature of the Defect from Plaintiffs and Class members at all times, even though it knew about the Defect and knew that information about the Defect would be important to a reasonable consumer, and Honda promised in its marketing materials that Class Vehicles have qualities that they do not have.

**ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the alleged defect and any alleged fraudulent conduct by AHM.

230.   Honda actively concealed and omitted material information about the Defect in the Class Vehicles for the purpose of inducing Plaintiffs and Class members to purchase and/or lease Class Vehicles, rather than purchasing or leasing competitors' vehicles, and made representations about the quality, safety, durability, and comfort of the Class Vehicles. Had Honda disclosed the truth, for example in its advertisements or other materials or communications, Plaintiffs and Class members (all reasonable consumers) would have been aware of it, and would not have bought or leased the Class Vehicles or would not have paid as much for them.

**ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the alleged defect and any alleged fraudulent conduct by AHM.

## VII.    TOLLING OF STATUTES OF LIMITATIONS

231.    Any applicable statute(s) of limitations have been tolled by Defendant's knowing and active concealment and denial of the facts alleged herein. Plaintiffs and the members of the Class could not have reasonably discovered the true, latent nature of the Defect until shortly before this class action litigation was commenced. Plaintiffs' claims were thus tolled pursuant to the discovery rule and for fraudulent concealment.

**ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the alleged defect and any alleged fraudulent conduct by AHM.

### A.    Discovery Rule

232.    As shown by Plaintiffs' experiences alleged above, Class members had no way of knowing about the Parasitic Drain Defect in their Class Vehicles. Defendant concealed its knowledge of the Defect (as evidenced by the Service Bulletins, detailed above) while continuing to market and sell the Class Vehicles as safe, high-quality, and reliable vehicles.

**ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the alleged defect and any alleged fraudulent conduct by AHM.

233.    Within any applicable statutes of limitation, Class members could not have discovered through the exercise of reasonable diligence that Honda was concealing the conduct complained of herein and misrepresenting the true qualities of the Class Vehicles. As detailed above, Class members acted reasonably and diligently in attempting to find the source of their electrical and battery-related vehicle issues.

**ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the alleged defect and any alleged fraudulent conduct by AHM.

234.    Class members did not know facts that would have caused a reasonable person to suspect that there was a Parasitic Drain Defect affecting their F-CAN and draining their vehicle's battery. An ordinary person would be unable to appreciate that the vehicle was defective.

**ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the alleged defect.

1    235.   For these reasons, all applicable statutes of limitation have been tolled by operation of

2    the discovery rule with respect to the claims in this litigation.

3        **ANSWER:**   AHM denies the allegations in this paragraph.

4        **B.    Fraudulent Concealment**

5        236.   Defendant was under a continuous duty to disclose to Class members the existence of

6    the Parasitic Drain Defect found in the Class Vehicles's F-CAN.

7        **ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the

8    alleged defect.

9        237.   Defendant recklessly disregarded the true nature, quality, and character of the Class

10   Vehicles by failing to disclose the existence of the Parasitic Drain Defect in the Class Vehicles' F-

11   CAN.

12       **ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the

13   alleged defect and any alleged fraudulent conduct by AHM.

14       238.   The statute of limitations on any counts alleged in this action are tolled during the

15   relevant period alleged herein due to Defendant's concealment of the adverse facts concerning the

16   Parasitic Drain Defect.

17       **ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the

18   alleged defect and any alleged fraudulent conduct by AHM.

19       239.   Defendant actively concealed from Class members the truth about the battery failures

20   and related electrical issues as described herein.

21       **ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the

22   alleged defect and any alleged fraudulent conduct by AHM.

23       240.   As shown by Plaintiffs' experiences alleged above, Class members were not at fault for

24   failing to discover the relationship between the Parasitic Drain Defect in the Class Vehicles' F-CAN

25   and their electrical and battery-related vehicle issues. Plaintiffs had no actual or presumptive

26   knowledge of facts sufficient to put them on inquiry notice of such a relationship. This ignorance of

27   the true cause of the electrical and battery-related vehicle issues is common across Plaintiffs and each

28   Class member

1    **ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the

2    alleged defect.

3    **VIII.   CLASS ALLEGATIONS**

4        241.   Plaintiffs bring this action pursuant to Rules 23(a), 23(b)(2), and 23(b)(3) of the

5    FEDERAL RULES OF CIVIL PROCEDURE on behalf of themselves and all others similarly

6    situated.

7        **ANSWER:**   AHM admits that Plaintiffs purport to bring this action pursuant to Federal Rule

8    of Civil Procedure 23, but denies that their claims are amenable to class treatment.

9        242.   Plaintiffs seek to represent a class ("Nationwide Class") defined as:

10       All persons in the United States and its territories who are current or former owners
11       and/or lessees of a Honda CR-V (model years 2017-2019) or Honda Accord (model
12       years 2016-2019).

13       **ANSWER:**   AHM admits that Plaintiffs seek to represent a nationwide class, but denies that

14   their claims are amenable to class treatment.

15       243.   In addition, and in the alternative to the above, Plaintiff Raynaldo seeks to represent a

16   class ("California Class") defined as:

17       All persons in the State of California who are current or former owners and/or lessees
18       of a Honda CR-V (model years 2017-2019) or Honda Accord (model years 2016-2019).

19       **ANSWER:**   AHM admits that Raynaldo seeks to represent a California class, but denies that

20   his claims are amenable to class treatment.

21       244.   In addition, and in the alternative to the above, Plaintiffs Pazanki, Tessinari, Ferreira,

22   and Woods seek to represent a class ("Florida Class") defined as:

23       All persons in the State of Florida who are current or former owners and/or lessees of
24       a Honda CR-V (model years 2017-2019) or Honda Accord (model years 2016-2019).

25       **ANSWER:**   AHM admits that Pazanki, Tessinari, Ferreira, and Woods seek to represent a

26   Florida class, but denies that their claims are amenable to class treatment.

27       245.   In addition, and in the alternative to the above, Plaintiff Rapp seeks to represent a class

28   ("Arizona Class") defined as:

All persons in the State of Arizona who are current or former owners and/or lessees of
a Honda CR-V (model years 2017-2019) or Honda Accord (model years 2016-2019).

**ANSWER:**   AHM admits that Rapp seeks to represent an Arizona class, but denies that his claims are amenable to class treatment.

246.   In addition, and in the alternative to the above, Plaintiff Rapp seeks to represent a class ("Nevada Class") defined as:

All persons in the State of Nevada who are current or former owners and/or lessees of
a Honda CR-V (model years 2017-2019) or Honda Accord (model years 2016-2019).

**ANSWER:**   AHM admits that Rapp seeks to represent a Nevada class, but denies that his claims are amenable to class treatment.

247.   In addition, and in the alternative to the above, Plaintiff Jones seeks to represent a class ("Iowa Class") defined as:

All persons in the State of Iowa who are current or former owners and/or lessees of a
Honda CR-V (model years 2017-2019) or Honda Accord (model years 2016-2019).

**ANSWER:**   AHM admits that Jones seeks to represent an Iowa class, but denies that his claims are amenable to class treatment.

248.   In addition, and in the alternative to the above, Plaintiff Lizzul seeks to represent a class ("New York Class") defined as:

All persons in the State of New York who are current or former owners and/or lessees
of a Honda CR-V (model years 2017-2019) or Honda Accord (model years 2016-2019).

**ANSWER:**   AHM admits that Lizzul seeks to represent a New York class, but denies that his claims are amenable to class treatment.

249.   In addition, and in the alternative to the above, Plaintiff Casey seeks to represent a class ("Massachusetts Class") defined as:

All persons in the State of Massachusetts who are current or former owners and/or
lessees of a Honda CR/V (model years 2017-2019) or Honda Accord (model years
2016-2019).

**ANSWER:**   AHM admits that Casey seeks to represent a Massachusetts class, but denies that his claims are amenable to class treatment.

250.   In addition, and in the alternative to the above, Plaintiff Sanger seeks to represent a class ("Michigan Class") defined as:

> All persons in the State of Michigan who are current or former owners and/or lessees of a Honda CR/V (model years 2017-2019) or Honda Accord (model years 2016-2019).

**ANSWER:**   AHM admits that Sanger seeks to represent a Michigan class, but denies that his claims are amenable to class treatment.

251.   Excluded from the Nationwide Class, the California Class, the Florida Class, the Arizona Class, the Nevada Class, the Iowa Class, the New York Class, the Massachusetts Class, and the Michigan Class (collectively, "Classes") are Honda, its affiliates, employees, officers, and directors, persons or entities that purchased the Class Vehicles for resale, and the Judge(s) assigned to this action. Plaintiffs reserve the right to modify, change, or expand the Class definitions based on discovery and further investigation.

**ANSWER:**   AHM admits that Plaintiffs seek to exclude certain categories of persons from the alleged classes, but denies that Plaintiffs claims are amenable to class treatment.

252.   <u>Numerosity</u>: The Classes are so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Classes are unknown at this time, such information being in the sole possession of Defendant, Plaintiffs believe, and on that basis allege, that approximately two million Class Vehicles have been sold and/or leased in the United States.

**ANSWER:**   AHM admits that AHM sold over two million of the alleged Class Vehicles. AHM denies the remaining allegations in this paragraph, including that Plaintiffs' claims are amenable to class treatment.

253.   <u>Existence and Predominance of Common Questions of Law and Fact</u>: Common questions of law and fact exist as to all members of the Classes. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

(a)   whether the Class Vehicles were sold with the Defect;

95

1    (b)    whether Defendant engaged in the conduct alleged herein;

2    (c)    whether Defendant advertised, marketed, distributed, leased, sold, or otherwise placed

3            the Class Vehicles into the stream of commerce in the United States;

4    (d)    whether Defendant knew of the Parasitic Drain Defect but failed to disclose the

5            problem and its consequences to its customers;

6    (e)    whether a reasonable consumer would consider the Parasitic Drain Defect or its

7            consequences to be material;

8    (f)    when Defendant discovered the Parasitic Drain Defect in the Class Vehicles, and what,

9            if anything, it did in response;

10   (g)    whether Defendant should be required to fully disclose the existence of the Parasitic

11           Drain Defect;

12   (h)    whether Defendant breached its express and/or implied warranties with respect to the

13           Class Vehicles;

14   (i)    whether Defendant's conduct violates the California Consumers Legal Remedies Act

15           ("CLRA"), CAL. CIV. CODE §§1750, et seq.; California's Unfair Competition Law

16           ("UCL"), CAL. BUS. & PROF. CODE §17200; California's False Advertising Law,

17           CAL. Bus. & PROF. CODE §§17500, et seq. and the other statutes asserted herein;

18   (j)    whether Plaintiffs and Class members overpaid for their Class Vehicles;

19   (k)    whether Defendant was unjustly enriched; and

20   (1)    whether Plaintiffs and Class members experienced out-of-pocket losses as a result of

21           the Defect, and if so, how much.

22       **ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the

23   alleged defect and that Plaintiffs' claims are amenable to class treatment.

24       254.   Typicality: Plaintiffs' claims are typical of the claims of the Classes because Plaintiffs

25   purchased Class Vehicles with the same Defect as did each member of the Classes. Furthermore,

26   Plaintiffs and all members of the Classes sustained monetary and economic injuries, including, but

27   not limited to, ascertainable losses arising out of Defendant's wrongful conduct. Plaintiffs are

28   advancing the same claims and legal theories on behalf of themselves and all absent Class members.

**ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the alleged defect and that Plaintiffs' claims are amenable to class treatment.

255.   Adequacy: Plaintiffs are adequate representatives because their interests do not conflict with the interests of the Classes that they seek to represent, they have retained counsel competent and highly experienced in complex class action litigation, and they intend to prosecute this action vigorously. The interests of the Classes will be fairly and adequately protected by Plaintiffs and their counsel.

**ANSWER:**   AHM denies the allegations in this paragraph, including that Plaintiffs' claims are amenable to class treatment.

256.   Superiority: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and members of the Classes. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Classes individually to redress effectively the wrongs done to them. Even if the members of the Classes could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the Court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Classes can be readily identified and notified based on, inter alia, Defendant's vehicle identification numbers, warranty claims, registration records, and database of complaints.

**ANSWER:**   AHM denies the allegations in this paragraph, including that Plaintiffs' claims are amenable to class treatment.

257.   Declaratory and Injunctive Relief: Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Classes as a whole.

**ANSWER:**   AHM denies the allegations in this paragraph, including that Plaintiffs' claims are amenable to class treatment and that they or any putative member of the alleged classes is entitled to any relief.

258.   Defendant has acted, and refused to act, on grounds generally applicable to the Classes, thereby making appropriate final equitable relief with respect to the Classes as a whole.

**ANSWER:**   AHM denies the allegations in this paragraph, including that Plaintiffs' claims are amenable to class treatment and that they or any putative member of the alleged classes is entitled to any relief.

## IX.   CAUSES OF ACTION

<div align="center">

**COUNT ONE:**
**VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT**
**(Cal. Civ. Code §§ 1750, *et seq.*)**
**(On Behalf of the Nationwide Class or,**
**Alternatively, on Behalf of the California Class)**

</div>

259.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

**ANSWER:**   AHM reasserts and incorporates by reference its answers to all preceding allegations as though fully set forth herein.

260.   Plaintiffs bring this claim individually and on behalf of the other members of the Nationwide Class.

**ANSWER:**   AHM admits that Plaintiffs purport to bring this claim individually and on behalf of other putative members of an alleged class, but denies that the claim is amenable to class treatment. AHM denies the remaining allegations in this paragraph.

261.   Plaintiffs allege, on information and belief that: (a) the decisions of Honda concerning the advertising, marketing, and warranty policies and procedures emanate from Honda's headquarters in Torrance, California; (b) Honda's decisions on how to present Class Vehicles in advertising in the United States emanate from its headquarters in Torrance, California; (c) decisions as to recalls, services bulletins, and whether to make warranty repairs all emanate from Honda's headquarters in Torrance, California; and (d) the relevant personnel from Honda work in Honda's headquarters in Torrance, California or coordinate and make decisions concerning the above through facilities and

other personnel in Torrance, California. For these reasons, Plaintiffs and the Class' claims emanate from Honda's actions in California and it is appropriate for Honda to be held to comply with California law on a nationwide basis.

**ANSWER:**   AHM admits that Plaintiffs purport to believe (a)-(d) to be true. AHM further admits that it has some involvement in advertising, marketing, warranty policies and procedures, and decisions to implement recalls, service bulletins, and warranty repairs, but denies Plaintiffs' characterization of AHM's involvement. The last sentence of this paragraph does not contain factual allegations requiring a response. To the extent a response is required, AHM denies the allegations in that sentence, including that the claim is amenable to class treatment. AHM denies the remaining allegations in this paragraph.

262.   Defendant is a "person" as that term is defined in CAL. CIV. CODE §1761(c).

**ANSWER:**   This paragraph does not contain factual allegations requiring a response. To the extent a response is required, Cal. Civ. Code § 1761(c) speaks for itself and AHM denies the remaining allegations in this paragraph.

263.   Plaintiffs and the Class members are "consumers" as that term is defined in CAL. CIV. CODE §1761(d).

**ANSWER:**   This paragraph does not contain factual allegations requiring a response. To the extent a response is required, Cal. Civ. Code § 1761(d) speaks for itself and AHM denies the remaining allegations in this paragraph.

264.   Honda engaged in unfair and deceptive acts in violation of the CLRA, by the practices described above, and by knowingly and intentionally concealing from Plaintiffs and Class members that the Class Vehicles suffer from a defect(s) (and the costs, risks, and diminished value of the vehicles as a result of this problem). These acts and practices violate, at a minimum, the following sections of the CLRA:

(a)(2) Misrepresenting the source, sponsorship, approval or certification of goods or services;

(a)(5) Representing that goods or services have sponsorships, approval, characteristics, ingredients, uses, benefits or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have;

99

(a)(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and

(a)(9) Advertising goods and services with intent not to sell them as advertised.

**ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the alleged defect and any conduct that violated this statute.

265.   Honda's unfair or deceptive acts or practices occurred repeatedly in Honda's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

**ANSWER:**   AHM denies the allegations in this paragraph, including any conduct that violated this statute.

266.   Honda knew that the Class Vehicles were defectively designed or manufactured, would prematurely fail to perform their essential function, and were not suitable for their intended use.

**ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the alleged defect and any conduct that violated this statute.

267.   Honda was under a duty to Plaintiffs and the Class members to disclose the defective nature of the Class Vehicles and the existence of the Parasitic Drain Defect because:

(a)   Defendant was in a superior position to know the true state of facts about the Parasitic Drain Defect and associated repair costs in the Class Vehicles;

(b)   Plaintiffs and the Class members could not reasonably have been expected to learn or discover that the Class Vehicles had a Parasitic Drain Defect until manifestation of the Defect;

(c)   Defendant knew that Plaintiffs and the Class members could not reasonably have been expected to learn or discover the Parasitic Drain Defect and the associated repair costs that it causes until the manifestation of the Defect; and

(d)   Defendant actively concealed the Parasitic Drain Defect and the associated repair costs by knowingly failing to recall Class Vehicles.

**ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the alleged defect and any conduct that violated this statute.

268.   In failing to disclose the Defect and the associated safety risks and repair costs that result from it, Defendant has knowingly and intentionally concealed material facts and breached its duty to disclose.

**ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the alleged defect and any conduct that violated this statute.

269.   The facts concealed or not disclosed by Honda to Plaintiffs and the Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Defendant's Class Vehicles or pay a lesser price. Had Plaintiffs and the Class known about the defective nature of the Class Vehicles, they would not have purchased or leased the Class Vehicles or would have paid less for them.

**ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the alleged defect and any conduct that violated this statute.

270.   On July 31, 2021, Plaintiff Raynaldo served a demand, dated July 29, 2021, on Defendant pursuant to CAL. CIV. CODE §1782. Honda responded by e-mail on September 1, 2021.

**ANSWER:**   AHM admits that Raynaldo sent a demand letter dated July 29, 2021 to it asserting that it is in violation of Cal. Civ. Code § 1782, but denies that the letter satisfied the requirements of Cal. Civ. Code § 1782. AHM further admits that it responded to the letter. AHM denies the remaining allegations in this paragraph.

271.   Plaintiffs and Class members' injuries were proximately caused by Honda's fraudulent and deceptive business practices.

**ANSWER:**   AHM denies the allegations in this paragraph, including any conduct that violated this statute and that Plaintiffs or any putative member of the alleged classes was injured by AHM.

272.   Plaintiffs and the Class members seek equitable relief and damages.

**ANSWER:**   AHM admits that Plaintiffs seek damages and other relief, but denies that they or any putative member of the alleged classes is entitled to any relief. AHM denies any remaining allegations in this paragraph.

**COUNT TWO:**
**VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW**
**(Cal. Bus. & Prof. Code §§ 17200, *et seq.*)**
**(On Behalf of the Nationwide Class or,**
**Alternatively, on Behalf of the California Class)**

273.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

**ANSWER:**   AHM reasserts and incorporates by reference its answers to all preceding allegations as though fully set forth herein.

274.   Plaintiffs bring this claim individually and on behalf of the other members of the Nationwide Class.

**ANSWER:**   AHM admits that Plaintiffs purport to bring this claim individually and on behalf of other putative members of an alleged class, but denies that the claim is amenable to class treatment. AHM denies the remaining allegations in this paragraph.

275.   The UCL defines unfair competition to include any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code." CAL. BUS. & PROF. CODE §17200.

**ANSWER:**   This paragraph does not contain factual allegations requiring a response. To the extent a response is required, the California Unfair Competition Law ("UCL") speaks for itself and AHM denies the remaining allegations in this paragraph.

276.   Defendant violated the UCL by engaging in unlawful, unfair, and deceptive business acts and practices.

**ANSWER:**   AHM denies the allegations in this paragraph, including any conduct that violated this statute.

277.   Defendant is a "person" as defined by CAL. BUS. & PROF. CODE §17201.

**ANSWER:**   This paragraph does not contain factual allegations requiring a response. To the extent a response is required, Cal. Bus. & Prof. Code § 17201 speaks for itself and AHM denies the remaining allegations in this paragraph.

AMERICAN HONDA MOTOR CO., INC.'S ANSWER TO SECOND AMENDED COMPLAINT

1     278.  Pursuant to CAL. BUS. & PROF. CODE §17204, each of the Plaintiffs named herein,

2  and the members of the proposed Class, have suffered injury-in-fact and have lost money or property

3  because of the unfair competition set forth herein.

4     **ANSWER:**  AHM denies the allegations in this paragraph, including any conduct that

5  violated this statute and that Plaintiffs or any putative member of the alleged classes was injured or

6  lost money or property because of AHM.

7     279.  Plaintiffs allege, on information and belief, that: (a) the decisions of Honda concerning

8  the advertising, marketing, and warranty policies and procedures emanate from Honda's Torrance,

9  California headquarters; (b) Honda's advertising decisions on how to present and/or market Class

10  Vehicles in the United States emanate from its headquarters in Torrance, California; (c) decisions as

11  to recalls, services bulletins, and whether to make warranty repairs all emanate from Honda's

12  headquarters in Torrance, California; and (d) the relevant personnel from Honda operate from

13  Honda's headquarters in Torrance, California or coordinate and make decisions concerning the above

14  through facilities and other personnel in Torrance, California. For these reasons, Plaintiffs and the

15  Class' claims emanate from Honda's actions in California and it is appropriate for Honda to be held

16  to comply with California law on a nationwide basis.

17     **ANSWER:**  AHM admits that Plaintiffs purport to believe (a)-(d) to be true. AHM further

18  admits that it has some involvement in advertising, marketing, warranty policies and procedures, and

19  decisions to implement recalls, service bulletins, and warranty repairs, but denies Plaintiffs'

20  characterization of AHM's involvement. The last sentence of this paragraph does not contain factual

21  allegations requiring a response. To the extent a response is required, AHM denies the allegations in

22  that sentence, including that the claim is amenable to class treatment. AHM denies the remaining

23  allegations in this paragraph.

24     280.  Honda's conduct, as described herein, was and is in violation of the UCL. Honda's

25  conduct violates the UCL by, among other things: (a) failing to disclose the existence of the Parasitic

26  Draining Defect in the Class Vehicles; (b) marketing and promoting the Class Vehicles as being free

27  from defect, including the Parasitic Draining Defect which causes the Class Vehicles to fail to

28  perform their essential function and creates safety risks; (c) knowingly and intentionally concealing

the existence of the Defect in the Class Vehicles; (d) violating California laws, including the CLRA; and (e) breaching its express and implied warranties.

**ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the alleged defect and any conduct that violated this statute.

281.   Honda intentionally and knowingly misrepresented and omitted material facts regarding the Class Vehicles with intent to mislead Plaintiffs and other Class members.

**ANSWER:**   AHM denies the allegations in this paragraph, including any conduct that violated this statute.

282.   In purchasing or leasing the Class Vehicles, Plaintiffs and other Class members were deceived by Honda's failure to disclose the Parasitic Drain Defect found in the Class Vehicles.

**ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the alleged defect and any conduct that violated this statute.

283.   Plaintiffs and other Class members reasonably relied upon Honda's false misrepresentations and omissions. They had no way of knowing that Defendant's representations were false, misleading, and incomplete. As alleged herein, Defendant engaged in a pattern of deception and public silence in the face of a known Parasitic Drain Defect in the Class Vehicles. Plaintiffs and other Class members did not, and could not, discover Defendant's deception on their own.

**ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the alleged defect and any conduct that violated this statute.

284.   Defendant knew or should have known that its conduct violated the UCL.

**ANSWER:**   AHM denies the allegations in this paragraph, including any conduct that violated this statute.

285.   Defendant owed Plaintiffs and other Class members a duty to disclose the truth about the Parasitic Drain Defect because the Defect created a safety hazard and Defendant: (a) possessed exclusive knowledge of the Defect; (b) intentionally concealed the Defect from Plaintiffs and the Class; and/or (c) made incomplete representations by failing to warn the public or to recall the Class Vehicles due to the Defect.

**ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the alleged defect and any alleged fraudulent conduct by AHM.

286.   Defendant had a duty to disclose the existence of the Defect in the Class Vehicles, because Plaintiffs and other Class members relied on Defendant's material misrepresentations and omissions.

**ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the alleged defect and any conduct that violated this statute.

287.   Defendant's conduct proximately caused injuries to Plaintiffs and other Class members that purchased or leased the Class Vehicles and suffered harm as alleged herein.

**ANSWER:**   AHM denies the allegations in this paragraph, including any conduct that violated this statute and that Plaintiffs or any putative member of the alleged classes was injured by AHM.

288.   Plaintiffs and other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiffs and other Class members incurred costs related to the parasitic drain caused by the Defect, including replacement of electrical components and service costs, and overpaid for their Class Vehicles that have suffered a diminution in value.

**ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the alleged defect, any conduct that violated this statute, and that Plaintiffs or any putative member of the alleged classes was injured or lost money or property because of AHM.

289.   Plaintiffs and the Class members are suffering from continuing injuries because Honda has failed to issue an adequate remedy for the Defect found in each Class Vehicle. Defendant's unlawful acts and practices complained of herein affect the public interest.

**ANSWER:**   AHM denies the allegations in this paragraph, including any conduct that violated this statute and that Plaintiffs or any putative member of the alleged classes was injured by AHM.

290.   Defendant's misrepresentations and omissions alleged herein caused Plaintiffs and other Class members to make their purchases or leases of their Class Vehicles. Absent those

misrepresentations and omissions, Plaintiffs and other Class members would not have purchased or leased these vehicles, would not have purchased or leased these Class Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not suffer from the Parasitic Drain Defect and lived up to industry standards.

**ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the alleged defect and any conduct that violated this statute.

291.   Accordingly, Plaintiffs and other Class members have suffered injury-in-fact, including lost money or property, as a result of Defendant's misrepresentations and omissions.

**ANSWER:**   AHM denies the allegations in this paragraph, including any conduct that violated this statute and that Plaintiffs or any putative member of the alleged classes was injured or lost money or property because of AHM.

292.   Plaintiffs request that this Court enjoin further unlawful, unfair, and/or fraudulent acts or practices by Defendant, and order restitutionary disgorgement of all monies and revenues generated as a result of such practices, and all other relief allowed under CAL. Bus. & PROF. CODE §17200, including reasonable attorneys' fees and costs under CAL. CIV. PROC. CODE §1021.5.

**ANSWER:**   AHM admits that Plaintiffs seek equitable and other relief, but denies that they or any putative member of the alleged classes is entitled to any relief. AHM denies any remaining allegations in this paragraph.

### COUNT THREE:
### VIOLATION OF THE CALIFORNIA FALSE ADVERTISING LAW
#### (Cal. Bus. & Prof. Code §§ 17500, *et seq.*)
#### (On Behalf of the Nationwide Class or,
#### Alternatively, on Behalf of the California Class)

293.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

**ANSWER:**   AHM reasserts and incorporates by reference its answers to all preceding allegations as though fully set forth herein.

294.   Plaintiffs bring this claim individually and on behalf of the other members of the Nationwide Class.

106

1    **ANSWER:**   AHM admits that Plaintiffs purport to bring this claim individually and on

2  behalf of other putative members of an alleged class, but denies that the claim is amenable to class

3  treatment. AHM denies the remaining allegations in this paragraph.

4    295.   CAL. Bus. & PROF. CODE § 17500 states:

5    It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of
     real or personal property . . . to induce the public to enter into any obligation relating

6    thereto, to make or disseminate or cause to be made or disseminated . . . from this state
     before the public in any state, in any newspaper or other publication, or any advertising

7    device, . . . or in any other manner or means whatever, including over the Internet, any

8    statement . . . which is untrue or misleading, and which is known, or which by the
     exercise of reasonable care should be known, to be untrue or misleading ....

9

10    **ANSWER:**   This paragraph does not contain factual allegations requiring a response. To the

11  extent a response is required, Cal. Bus. & Prof. Code § 17500 speaks for itself and AHM denies the

12  remaining allegations in this paragraph.

13    296.   Honda caused to be made or disseminated through California and the United States,

14  through advertising, marketing, and other publications, statements that were untrue or misleading,

15  and which were known, or which by the exercise of reasonable care should have been known, to

16  Honda to be untrue and misleading to consumers, including Plaintiffs and Class members.

17    **ANSWER:**   AHM denies the allegations in this paragraph, including any conduct that

18  violated this statute.

19    297.   Honda has violated CAL. BUS. & PROF. CODE §17500 because the

20  misrepresentations and omissions regarding the quality, safety, and reliability of the Class Vehicles

21  and the Defect contained in Class Vehicles as well as the associated safety risks and repair costs that

22  result from it as set forth in this Complaint were material and likely to deceive a reasonable consumer.

23    **ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the

24  alleged defect and any conduct that violated this statute.

25    298.   Honda has also violated CAL. BUS. & PROF. CODE §17500 because the

26  misrepresentations and omissions regarding the existence of a repair for the Defect and Defendant's

27  ability and intention to render such a repair as set forth in this Complaint were material and likely to

28  deceive a reasonable consumer.

1    **ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the

2  alleged defect and any conduct that violated this statute.

3    299.   Plaintiffs and Class members have suffered an injury-in-fact, including the loss of

4  money or property, as a result of Honda's unfair, unlawful, and/or deceptive practices. In purchasing

5  or leasing their Class Vehicles, Plaintiffs and Class members relied on the misrepresentations and/or

6  omissions of Honda with respect to the quality, safety, and reliability of the Class Vehicles as well as

7  the existence of a repair for the Defect. Honda's representations turned out to be false because as a

8  result of the Defect that could result in battery failure, stalling while operating the vehicle under

9  normal driving conditions, and the failure of essential safety features, the Class Vehicles are unsafe,

10 unreliable, and not of high quality. Additionally, no permanent and reliable repair exists for the

11 Defect. Had Plaintiffs and Class members known this, they would not have purchased or leased their

12 Class Vehicles and/or paid as much for them.

13    **ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the

14 alleged defect, any conduct that violated this statute, and that Plaintiffs or any putative member of

15 the alleged classes was injured or lost money or property because of AHM.

16    300.   Accordingly, Plaintiffs and Class members overpaid for their Class Vehicles and did

17 not receive the benefit of their bargain.

18    **ANSWER:**   AHM denies the allegations in this paragraph, including that Plaintiffs or any

19 putative member of the alleged classes was injured by AHM.

20    301.   All of the wrongful conduct alleged herein occurred, and continues to occur, in the

21 conduct of Honda's business. Honda's wrongful conduct is part of a pattern or generalized course of

22 conduct that is still perpetuated and repeated, both in the state of California and nationwide.

23    **ANSWER:**   AHM denies the allegations in this paragraph.

24    302.   Plaintiffs, individually and on behalf of the Class, request that this Court enter such

25 Orders or judgments as may be necessary to restore to Plaintiffs and Class members any money

26 Honda acquired by unfair competition, including restitution and/or restitutionary disgorgement and

27 all other relief allowed under CAL. BUS. & PROF. CODE §17500, including reasonable attorneys'

28 fees and costs under California CAL. CIV. PROC. CODE §1021.5.

**ANSWER:**   AHM admits that Plaintiffs seek equitable and other relief, but denies that they or any putative member of the alleged classes is entitled to any relief. AHM denies any remaining allegations in this paragraph.

<div align="center">

**COUNT FOUR:**
**BREACH OF EXPRESS WARRANTY**
**(Cal. Com. Code §§ 2313, 10210)**
**(On Behalf of the Nationwide Class)**

</div>

303.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

**ANSWER:**   AHM reasserts and incorporates by reference its answers to all preceding allegations as though fully set forth herein.

304.   Plaintiff Jones brings this claim individually and on behalf of the other members of the Nationwide Class.

**ANSWER:**   AHM admits that Jones purports to bring this claim individually and on behalf of other putative members of an alleged class, but denies that the claim is amenable to class treatment. AHM denies the remaining allegations in this paragraph.

305.   Defendant is a "merchant" (as defined by CAL. COM. CODE §2104(1)), a "seller" (as defined by CAL. COM. CODE §2103(d)), and "lessor" of motor vehicles (as defined by CAL. Cry. CODE §2985.7(b)).

**ANSWER:**   This paragraph does not contain factual allegations requiring a response. To the extent a response is required, Cal. Com. Code § 2103(d) and Cal. Civ. Code § 2985.7(b) speak for themselves and AHM denies the remaining allegations in this paragraph.

306.   Plaintiff Jones's and the Class' claims emanate from Honda's actions in California, and thus, the application of California extraterritorially to the claims of the Class in this action is proper. As alleged herein, Honda's advertising, marketing, and warranty policies and procedures emanate from Honda's headquarters in Torrance, California. In addition, upon information and belief, Defendant's advertising decisions emanated from its headquarters in Torrance, California, as well as its decisions as to recalls, services bulletins, and whether to make warranty repairs. Further, Defendant's relevant personnel are located at facilities in Torrance, California.

1    **ANSWER:**   AHM admits that it has some involvement in advertising, marketing, warranty

2    policies and procedures, and decisions to implement recalls, service bulletins, and warranty repairs,

3    but denies Plaintiffs' characterization of AHM's involvement. The first sentence of this paragraph

4    does not contain factual allegations requiring a response. To the extent a response is required, AHM

5    denies the allegations in that sentence, including that the claim is amenable to class treatment. AHM

6    denies the remaining allegations in this paragraph.

7    307.   Pursuant to CAL. COM. CODE §2313 (a)(1), "[a]ny affirmation of fact or promise

8    made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain

9    creates an express warranty that the goods shall conform to the affirmation or promise."

10   **ANSWER:**   This paragraph does not contain factual allegations requiring a response. To the

11   extent a response is required, Cal. Com. Code § 2313(a)(1) speaks for itself and AHM denies the

12   remaining allegations in this paragraph.

13   308.   Pursuant to CAL. COM. CODE §10210(a)(1), "[a]ny affirmation of fact or promise

14   made by the lessor to the lessee which relates to the goods and becomes part of the basis of the bargain

15   creates an express warranty that the goods will conform to the affirmation or promise."

16   **ANSWER:**   This paragraph does not contain factual allegations requiring a response. To the

17   extent a response is required, Cal. Com. Code § 10210(a)(1)) speaks for itself and AHM denies the

18   remaining allegations in this paragraph.

19   309.   The Class Vehicles are "goods" within the meaning of the UNIFORM COMMERCIAL

20   CODE and relevant state law, including CAL. COM. CODE §2105(1).

21   **ANSWER:**   This paragraph does not contain factual allegations requiring a response. To the

22   extent a response is required, Cal. Com. Code § 2105(1) speaks for itself and AHM denies the

23   remaining allegations in this paragraph.

24   310.   Defendant provided all purchasers and lessees of the Class Vehicles with the express

25   warranties described herein. In its written express warranties, Defendant expressly warranted that it

26   would repair or replace defective parts free of charge if the defects became apparent during the

27   warranty period.

28

**ANSWER:**   AHM admits that new vehicles within the alleged Class Vehicles were sold or leased with a written warranty. The contents of the written warranties speak for themselves, and to the extent the allegations in this paragraph vary therewith, AHM denies the allegations. AHM denies the remaining allegations in this paragraph.

311.   Defendant's written express warranties formed the basis of the bargain that was reached when Plaintiffs and other Class members purchased or leased their Class Vehicles.

**ANSWER:**   AHM denies the allegations in this paragraph.

312.   Defendant breached the express warranties through the acts and omissions described above.

**ANSWER:**   AHM denies the allegations in this paragraph.

313.   Plaintiff Jones and other Class members have had sufficient direct dealings with either Defendant or its agents (e.g., dealerships, consumer affairs departments, and technical support) to establish privity of contract between Defendant on one hand, and Plaintiffs and each of the other Class members on the other hand. Nonetheless, privity is not required here because Plaintiffs and each of the other Class members are intended third-party beneficiaries of contracts between Defendant and their dealers, and specifically, of Defendant's express warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumers only. Additionally, privity is excused here because Plaintiff Jones and each of the other Class members relied on statements made by Defendant itself in choosing to purchase or lease a Class Vehicle. As alleged herein, the marketing of the Class Vehicles was uniform and was controlled and disseminated directly by Defendant.

**ANSWER:**   This paragraph does not contain factual allegations requiring a response. To the extent a response is required, AHM denies the allegations in this paragraph.

314.   Defendant knew that it was unable to provide adequate remedy under the warranty. Defendant was also provided notice of the Parasitic Drain Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge. Honda has not remedied its breach.

**ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the alleged defect.

315.   Further, Defendant has refused to provide an adequate warranty repair for the Parasitic Drain Defect, thus rendering the satisfaction of any notice requirement futile. As stated above, customers that have presented their vehicles for warranty repair, as Plaintiff Jones has, due to the Parasitic Drain Defect have been denied adequate repairs.

**ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the alleged defect.

316.   The written express warranties fail in their essential purpose because the contractual remedy is insufficient to make Plaintiff Jones and other Class members whole and because Defendant has failed and/or has refused to adequately provide effective remedies within a reasonable time.

**ANSWER:**   AHM denies the allegations in this paragraph.

317.   Accordingly, recovery by Plaintiff Jones and other Class members is not limited to the limited remedy of repair, and Plaintiffs, individually and on behalf of the other Class members, seek all remedies as allowed by law.

**ANSWER:**   This paragraph does not contain factual allegations requiring a response. To the extent a response is required, AHM denies the allegations in this paragraph.

318.   Also, as alleged in more detail herein, at the time that Honda warranted and sold or leased the Class Vehicles, it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and Defendant improperly concealed material facts regarding its Class Vehicles. Plaintiff Jones and other Class members were therefore induced to purchase or lease the Class Vehicles under false pretenses.

**ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the alleged defect and any alleged fraudulent conduct by AHM.

319.   Defendant had notice of its breach of its express warranty as alleged herein.

**ANSWER:**   AHM denies the allegations in this paragraph.

320.   As a direct and proximate result of Defendant's breach of its express warranty, Plaintiff Jones and other Class members have been damaged in an amount to be determined at trial.

**ANSWER:**  AHM denies the allegations in this paragraph, including that Plaintiffs or any putative member of the alleged classes was damaged by AHM.

321.  Plaintiff Jones, on behalf of himself and the Class, seeks monetary damages, treble damages, costs, attorneys' fees, and such other and further relief provided by law and equity.

**ANSWER:**  AHM admits that Plaintiffs seek damages and other relief, but denies that they or any putative member of the alleged classes is entitled to any relief. AHM denies any remaining allegations in this paragraph.

<div align="center">

**COUNT FIVE:**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(Cal. Com. Code §§ 2314, 10212)**
**(On Behalf of the Nationwide Class or,**
**Alternatively, on Behalf of the California Class)**

</div>

322.  Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

**ANSWER:**  This paragraph does not require a response because the Court dismissed the claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as follows: AHM reasserts and incorporates by reference its answers to all preceding allegations as though fully set forth herein.

323.  Plaintiffs bring this claim individually and on behalf of the other members of the Nationwide Class.

**ANSWER:**  This paragraph does not require a response because the Court dismissed the claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as follows: AHM admits that Plaintiffs purport to bring this claim individually and on behalf of other putative members of an alleged class, but denies that the claim is amenable to class treatment. AHM denies the remaining allegations in this paragraph.

324.  Defendant is a "merchant" (as defined by CAL. COM. CODE §2104(1)), a "seller" (as defined by CAL. COM. CODE §2103(d)), and "lessor" of motor vehicles (as defined by CAL. CIV. CODE §2985.7(b)).

**ANSWER:**  This paragraph does not require a response because the Court dismissed the claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as

follows: This paragraph does not contain factual allegations requiring a response. To the extent a response is required, Cal. Com. Code §§ 2103(d) and 2104(1) and Cal. Civ. Code § 2985.7(b) speak for themselves and AHM denies the remaining allegations in this paragraph.

325.   The Class Vehicles are "goods" within the meaning of the UNIFORM COMMERCIAL CODE and relevant state law, including CAL. COM. CODE §2105(1).

**ANSWER:**   This paragraph does not require a response because the Court dismissed the claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as follows: This paragraph does not contain factual allegations requiring a response. To the extent a response is required, Cal. Com. Code § 2105(1) speaks for itself and AHM denies the remaining allegations in this paragraph.

326.   Plaintiffs and the Class' claims emanate from Honda's actions in California, and thus, the application of California extraterritorially to the claims of the Class in this action is proper. As alleged herein, Honda's advertising, marketing, and warranty policies and procedures emanate from Honda's headquarters in Torrance, California. In addition, upon information and belief, Defendant's advertising decisions emanated from its headquarters in Torrance, California, as well as its decisions as to recalls, services bulletins, and whether to make warranty repairs. Further, Defendant's relevant personnel are located at facilities in Torrance, California.

**ANSWER:**   This paragraph does not require a response because the Court dismissed the claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as follows: AHM admits that it has some involvement in advertising, marketing, warranty policies and procedures, and decisions to implement recalls, service bulletins, and warranty repairs, but denies Plaintiffs' characterization of AHM's involvement. The first sentence of this paragraph does not contain factual allegations requiring a response. To the extent a response is required, AHM denies the allegations in that sentence, including that the claim is amenable to class treatment. AHM denies the remaining allegations in this paragraph.

327.   Defendant was, at all relevant times, the manufacturer, distributor, warrantor, seller and/or lessor of the Class Vehicles. Defendant knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

**ANSWER:**   This paragraph does not require a response because the Court dismissed the claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as follows: AHM denies the allegations in this paragraph.

328.   Pursuant to CAL. COM. CODE §2314(1) "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Goods are merchantable if they are "fit for the ordinary purposes for which such goods are used" and "[c]onform to the promises or affirmations of fact made on the container or label if any." CAL. COM. CODE §2314(2)(c),(f).

**ANSWER:**   This paragraph does not require a response because the Court dismissed the claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as follows: This paragraph does not contain factual allegations requiring a response. To the extent a response is required, Cal. Com. Code § 2314(1) speaks for itself and AHM denies the remaining allegations in this paragraph.

329.   Defendant provided Plaintiffs and other Class members with an implied warranty that the Class Vehicles and any parts thereof are merchantable and fit for the ordinary purposes for which they were sold. However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles suffered from the Parasitic Drain Defect at the time of sale that causes various safety features to fail without warning, creates the undue risk of the engine stalling while driving, and results in the premature depletion of batteries and alternators. Therefore, the Class Vehicles are not fit for their particular purpose of providing safe and reliable transportation.

**ANSWER:**   This paragraph does not require a response because the Court dismissed the claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as follows: AHM denies the allegations in this paragraph, including the existence of the alleged defect.

330.   Defendant impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things, a warranty that the Class Vehicles were manufactured, supplied, distributed, and/or sold by Defendant, were safe and reliable for providing transportation, and would not result in the premature failure of its batteries.

1    **ANSWER:**   This paragraph does not require a response because the Court dismissed the

2    claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as

3    follows: AHM denies the allegations in this paragraph.

4         331.   Contrary to the applicable implied warranties, the Class Vehicles at the time of sale and

5    thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and other Class

6    members with reliable, durable, and safe transportation. Instead, the Class Vehicles suffer from a

7    defective design(s) and/or manufacturing defect(s).

8         **ANSWER:**   This paragraph does not require a response because the Court dismissed the

9    claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as

10   follows: AHM denies the allegations in this paragraph, including the existence of the alleged defect.

11        332.   Defendant knew or had reason to know of these material facts, and wrongfully and

12   fraudulently concealed these material facts from Plaintiffs and the Class. Defendant was provided

13   notice of these issues by complaints lodged by consumers with NHTSA—which Defendant routinely

14   monitors—before or within a reasonable amount of time after the allegations of the Defect became

15   public.

16        **ANSWER:**   This paragraph does not require a response because the Court dismissed the

17   claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as

18   follows: AHM denies the allegations in this paragraph, including the existence of the alleged defect

19   and any alleged fraudulent conduct by AHM.

20        333.   Defendant's actions, as complained of herein, breached the implied warranty that the

21   Class Vehicles were of merchantable quality and fit for such use.

22        **ANSWER:**   This paragraph does not require a response because the Court dismissed the

23   claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as

24   follows: AHM denies the allegations in this paragraph.

25        334.   Plaintiffs and other Class members have had sufficient direct dealings with either

26   Defendant or its agents—such as its dealerships, consumer affairs departments, and technical

27   support—to establish privity of contract between Defendant on one hand, and Plaintiffs and each of

28   the other Class members on the other hand. Nonetheless, privity is not required here because Plaintiffs

1   and each of the other Class members are intended third-party beneficiaries of contracts between

2   Defendant and their dealers, and specifically, of Defendant's implied warranties. The dealers were

3   not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty

4   agreements provided with the Class Vehicles; the warranty agreements were designed for and

5   intended to benefit the consumers only. Additionally, privity is excused here because Plaintiffs and

6   each of the other Class members relied on statements made by Defendant itself in choosing to

7   purchase or lease a Class Vehicle. As alleged herein, the marketing of the Class Vehicles was

8   uniform, and was controlled and disseminated directly by Defendant.

9       **ANSWER:**   This paragraph does not require a response because the Court dismissed the

10  claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as

11  follows: This paragraph does not contain factual allegations requiring a response. To the extent a

12  response is required, AHM denies the allegations in this paragraph.

13      335.   Plaintiffs, on behalf of themselves and the Class, seek monetary damages, treble

14  damages, costs, attorneys' fees, and such other and further relief provided by law and equity.

15      **ANSWER:**   This paragraph does not require a response because the Court dismissed the

16  claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as

17  follows: AHM admits that Plaintiffs seek damages and other relief, but denies that they or any putative

18  member of the alleged classes is entitled to any relief. AHM denies any remaining allegations in this

19  paragraph.

20                      **COUNT SIX:**
                        **UNJUST ENRICHMENT**
21              **(On Behalf of the Nationwide Class or,**
           **Alternatively, on Behalf of each of the Classes)**
22

23      336.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully

24  set forth herein.

25      **ANSWER:**   This paragraph does not require a response because the Court dismissed the

26  claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as

27  follows: AHM reasserts and incorporates by reference its answers to all preceding allegations as

28  though fully set forth herein.

337.   Plaintiffs bring this claim on behalf of themselves and the Nationwide Class under the common law of unjust enrichment, which is materially uniform in all states. In the alternative, Plaintiffs bring this claim on behalf of each of the Classes under the laws of each state in which Plaintiffs and Class members purchased or leased the Class Vehicles.

**ANSWER:**   This paragraph does not require a response because the Court dismissed the claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as follows: AHM admits that Plaintiffs purport to bring this claim individually and on behalf of other putative members of an alleged class, but denies that the claim is amenable to class treatment. AHM denies the remaining allegations in this paragraph.

338.   Defendant designed, manufactured, produced, distributed, marketed, and/or sold the Class Vehicles during the relevant period herein.

**ANSWER:**   This paragraph does not require a response because the Court dismissed the claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as follows: AHM admits that it marketed and distributed to authorized Honda dealers the alleged Class Vehicles in the United States. AHM denies the remaining allegations in this paragraph.

339.   Plaintiffs and members of the Class conferred non-gratuitous benefits upon Defendant, without knowledge that the Class Vehicles contained the Defect.

**ANSWER:**   This paragraph does not require a response because the Court dismissed the claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as follows: AHM denies the allegations in this paragraph, including the existence of the alleged defect.

340.   Defendant appreciated, or had knowledge of, the non-gratuitous benefits conferred upon them by Plaintiffs and members of the Class.

**ANSWER:**   This paragraph does not require a response because the Court dismissed the claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as follows: AHM denies the allegations in this paragraph.

341.   Defendant accepted or retained the non-gratuitous benefits conferred by Plaintiffs and members of the Class, with full knowledge and awareness that, as a result of Defendant's unconscionable wrongdoing, Plaintiffs and members of the Class were not receiving products of high

quality, nature, fitness, or value that had been represented by Defendant and reasonable consumers would have expected.

**ANSWER:**   This paragraph does not require a response because the Court dismissed the claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as follows: AHM denies the allegations in this paragraph.

342.   Retaining the non-gratuitous benefits conferred upon Defendant by Plaintiffs and members of the Class under these circumstances made Defendant's retention of the non-gratuitous benefits unjust and inequitable.

**ANSWER:**   This paragraph does not require a response because the Court dismissed the claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as follows: AHM denies the allegations in this paragraph.

343.   Because Defendant's retention of the non-gratuitous benefits conferred by Plaintiffs and members of the Class is unjust and inequitable, Plaintiffs and members of the Class are entitled to, and hereby seek, disgorgement and restitution of Defendant's wrongful profits, revenue, and benefits in a manner established by the Court.

**ANSWER:**   This paragraph does not require a response because the Court dismissed the claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as follows: AHM admits that Plaintiffs seek equitable and other relief, but denies that they or any putative member of the alleged classes is entitled to any relief. AHM denies any remaining allegations in this paragraph.

**COUNT SEVEN:**
**FRAUDULENT CONCEALMENT**
**(On Behalf of the Nationwide Class or,**
**Alternatively, on Behalf of each of the Classes)**

344.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

**ANSWER:**   This paragraph does not require a response because the Court dismissed the claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as

1    follows: AHM reasserts and incorporates by reference its answers to all preceding allegations as
2    though fully set forth herein.

3        345.   Plaintiffs bring this claim on behalf of themselves and the Nationwide Class under the
4    common law of fraudulent concealment, which is materially uniform in all states. In the alternative,
5    Plaintiffs bring this claim on behalf of each of the Classes under the laws of each state in which
6    Plaintiffs and Class members purchased or leased the Class Vehicles.

7        **ANSWER:**   This paragraph does not require a response because the Court dismissed the
8    claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as
9    follows: AHM admits that Plaintiffs purport to bring this claim individually and on behalf of other
10   putative members of an alleged class, but denies that the claim is amenable to class treatment. AHM
11   denies the remaining allegations in this paragraph.

12       346.   Honda fraudulently concealed and suppressed material facts concerning the quality of
13   the Class Vehicles and the existence of the Defect.

14       **ANSWER:**   This paragraph does not require a response because the Court dismissed the
15   claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as
16   follows: AHM denies the allegations in this paragraph, including the existence of the alleged defect
17   and any alleged fraudulent conduct by AHM.

18       347.   Despite advertising the Class Vehicles as safe, reliable, and being of high quality,
19   Honda knew when it manufactured, marketed, and sold or leased the Class Vehicles that the Class
20   Vehicles suffered from a design and/or manufacturing defect that reduced the Class Vehicles' value
21   and subjected the Class Vehicles to parasitic draining and that rendered the Class Vehicles unreliable
22   and posed significant safety hazards to drivers.

23       **ANSWER:**   This paragraph does not require a response because the Court dismissed the
24   claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as
25   follows: AHM denies the allegations in this paragraph, including the existence of the alleged defect
26   and any alleged fraudulent conduct by AHM.

27       348.   Honda failed to disclose these facts to consumers at the time it manufactured, marketed,
28   and sold or leased the Class Vehicles, and Honda knowingly and intentionally engaged in this

concealment in order to boost sales and revenue, maintain its competitive edge in the automobile market, and obtain windfall profit. Through its active concealment and/or suppression of these material facts, Honda sought to increase consumer confidence in the Class Vehicles, and to falsely assure purchasers and lessors of the same that the Vehicles were of sound quality and that Honda was a reputable manufacturer that stands behind the automobiles it manufactures. Honda engaged in this behavior to protect its profits, avoid warranty replacements, avoid recalls that would impair the brand's image, cost it money, and undermine its competitiveness in the automobile industry.

**ANSWER:**   This paragraph does not require a response because the Court dismissed the claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as follows: AHM denies the allegations in this paragraph, including the existence of the alleged defect and any alleged fraudulent conduct by AHM.

349.   Plaintiffs and Class members were unaware, and could not reasonably discover on their own, that Honda's representations were false and misleading, or that it had omitted material facts relating to the Class Vehicles.

**ANSWER:**   This paragraph does not require a response because the Court dismissed the claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as follows: AHM denies the allegations in this paragraph, including any alleged fraudulent conduct by AHM.

350.   Honda had a duty to disclose, rather than conceal and suppress, the full scope and extent of the Defect because:

(a)   Honda had exclusive or far superior knowledge of the Defect and concealment thereof;

(b)   the facts regarding the Defect and concealment thereof were known and/or accessible only to Honda;

(c)   Honda knew that Plaintiffs and Class members did not know about, or could not reasonably discover, the Defect and concealment thereof; and

(d)   Honda made representations and assurances about the qualities of the Class Vehicles, and about the existence of a repair for the Defect that were misleading, deceptive, and incomplete

1    without the disclosure of the fact that the Class Vehicles suffered from a latent and inherent design
2    and/or manufacturing defect.

3        **ANSWER:**   This paragraph does not require a response because the Court dismissed the
4    claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as
5    follows: AHM denies the allegations in this paragraph, including the existence of the alleged defect
6    and any alleged fraudulent conduct by AHM.

7        351.   These omitted and concealed facts were material because a reasonable consumer would
8    rely on them in deciding to purchase or lease the Class Vehicles, and because they substantially
9    reduced the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Whether
10   the Class Vehicles were defective, of sound quality, safe, reliable, and whether Honda stood behind
11   such vehicles would have been an important factor in Plaintiffs' and the Class members' decisions to
12   purchase or lease the vehicles. Plaintiffs and Class members trusted Honda not to sell them vehicles
13   that were defective and significantly overpriced.

14       **ANSWER:**   This paragraph does not require a response because the Court dismissed the
15   claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as
16   follows: AHM denies the allegations in this paragraph, including the existence of the alleged defect
17   and any alleged fraudulent conduct by AHM.

18       352.   Honda intentionally and actively concealed and suppressed these material facts to
19   falsely assure consumers that their Class Vehicles were free from known defects, as represented by
20   Honda and reasonably expected by consumers.

21       **ANSWER:**   This paragraph does not require a response because the Court dismissed the
22   claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as
23   follows: AHM denies the allegations in this paragraph, including the existence of the alleged defect
24   and any alleged fraudulent conduct by AHM.

25       353.   Plaintiffs and Class members were unaware of these omitted material facts and would
26   have paid less for the Class Vehicles, or would not have purchased/leased them at all, if they had
27   known of the concealed and suppressed facts. Plaintiffs and Class members did not receive the benefit
28   of their bargain due to Honda's fraudulent concealment. Plaintiffs' and Class members' actions in

purchasing the Class Vehicles were justified. Honda was in exclusive control of the material facts, and such facts were not known or reasonably knowable to the public, Plaintiffs, or Class members.

**ANSWER:**   This paragraph does not require a response because the Court dismissed the claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as follows: AHM denies the allegations in this paragraph, including any alleged fraudulent conduct by AHM.

354.   Plaintiffs and Class members relied to their detriment upon Honda's reputation, fraudulent misrepresentations, and material omissions regarding the quality, safety, and reliability of the Class Vehicles.

**ANSWER:**   This paragraph does not require a response because the Court dismissed the claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as follows: AHM denies the allegations in this paragraph, including any alleged fraudulent conduct by AHM.

355.   As a direct and proximate result of Honda's deceit and fraudulent concealment, including its intentional suppression of true facts, Plaintiffs and Class members suffered injury. They purchased and leased Class Vehicles that had a diminished value by reason of Honda's concealment of, and failure to disclose, the Defect. Plaintiffs and Class members also paid substantial money to (unsuccessfully) repair the Defect.

**ANSWER:**   This paragraph does not require a response because the Court dismissed the claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as follows: AHM denies the allegations in this paragraph, including the existence of the alleged defect, any alleged fraudulent conduct by AHM, and that Plaintiffs or any putative member of the alleged classes was injured by AHM.

356.   Accordingly, Honda is liable to the Nationwide Class and/or Classes for their damages in an amount to be proven at trial.

**ANSWER:**   This paragraph does not require a response because the Court dismissed the claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as

follows: AHM denies the allegations in this paragraph, including that Plaintiffs or any putative member of the alleged classes is entitled to any relief.

357.   On information and belief, Honda has still not made full and adequate disclosure and continues to defraud Plaintiffs and Class members. Honda also continues to conceal material information regarding the Defect.

**ANSWER:**   This paragraph does not require a response because the Court dismissed the claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as follows: AHM denies the allegations in this paragraph, including the existence of the alleged defect and any alleged fraudulent conduct by AHM.

358.   Honda's acts were done deliberately, with intent to defraud, and in reckless disregard of the Plaintiffs' and Class members' rights. Honda's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**ANSWER:**   This paragraph does not require a response because the Court dismissed the claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as follows: AHM denies the allegations in this paragraph, including that Plaintiffs or any putative member of the alleged classes is entitled to any relief.

<div align="center">

**COUNT EIGHT:**
**BREACH OF EXPRESS WARRANTY**
**(Iowa Code §§ 554.2313, 554.13210)**
**(On Behalf of the Iowa Class)**

</div>

359.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

**ANSWER:**   AHM reasserts and incorporates by reference its answers to all preceding allegations as though fully set forth herein.

360.   Plaintiff Jones brings this claim individually and on behalf of the other members of the Iowa Class.

**ANSWER:**   AHM admits that Jones purports to bring this claim individually and on behalf of other putative members of an alleged class, but denies that the claim is amenable to class treatment. AHM denies the remaining allegations in this paragraph.

361.   Honda is a "merchant" (as defined by IOWA CODE §554.2104(1)), a "seller" (as defined by IOWA CODE §554.2103(1)(d)), and a "lessor" (as defined by IOWA CODE §554.13103(p)) of Class Vehicles.

**ANSWER:**   This paragraph does not contain factual allegations requiring a response. To the extent a response is required, Iowa Code §§ 554.2103(1)(d), 554.2104(1), and 554.13103(p) speak for themselves and AHM denies the remaining allegations in this paragraph.

362.   The Class Vehicles are "goods" (as defined by IOWA CODE §§554.2105(1) and 554.13103(1)(h)).

**ANSWER:**   This paragraph does not contain factual allegations requiring a response. To the extent a response is required, Iowa Code §§ 554.2105(1) and 554.13103(1)(h) speak for themselves and AHM denies the remaining allegations in this paragraph.

363.   Pursuant to IOWA CODE §554.2313(1)(a), "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."

**ANSWER:**   This paragraph does not contain factual allegations requiring a response. To the extent a response is required, Iowa Code § 554.2313(1)(a) speaks for itself and AHM denies the remaining allegations in this paragraph.

364.   Pursuant to IOWA CODE §554.13210(1)(a), "[a]ny affirmation of fact or promise made by the lessor to the lessee which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods will conform to the affirmation or promise."

**ANSWER:**   This paragraph does not contain factual allegations requiring a response. To the extent a response is required, Iowa Code § 554.2313(1)(a) speaks for itself and AHM denies the remaining allegations in this paragraph.

365.   In its written express warranties, Honda expressly warranted that it would repair or replace defective parts free of charge if the defects became apparent during the warranty period.

1    **ANSWER:**   AHM admits that the contents of the written warranties speak for themselves,

2    and to the extent the allegations in this paragraph vary therewith, AHM denies the allegations. AHM

3    denies the remaining allegations in this paragraph.

4        366.   Honda's written express warranties formed the basis of the bargain that was reached

5    when Plaintiffs and other Class members purchased or leased their Class Vehicles.

6        **ANSWER:**   AHM denies the allegations in this paragraph.

7        367.   Honda breached its express warranty to repair defective parts in the Class Vehicles.

8    Honda admittedly has not repaired the Class Vehicles' Parasitic Drain Defect.

9        **ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the

10   alleged defect.

11       368.   Plaintiff Jones notified Honda of the Parasitic Drain Defect in the Class Vehicles when

12   he brought it in to a dealer after his Class Vehicle failed due to the Parasitic Drain Defect. Honda

13   knew that it was unable to provide adequate remedy under the warranty. Honda was also provided

14   notice of the Parasitic Drain Defect through numerous complaints filed against it directly and through

15   its dealers, as well as its own internal engineering knowledge. Honda has not remedied its breach of

16   express warranty.

17       **ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the

18   alleged defect.

19       369.   Further, Honda has refused to provide an adequate warranty repair for the Parasitic

20   Drain Defect, thus rendering the satisfaction of any notice requirement futile. As stated above,

21   customers that have presented their vehicles for warranty repair, as Plaintiffs have, due to the Parasitic

22   Drain Defect have been denied adequate repairs.

23       **ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the

24   alleged defect.

25       370.   The written express warranties fail in their essential purpose because the contractual

26   remedy is insufficient to make Plaintiffs and other Class members whole and because Honda has

27   failed and/or has refused to adequately provide effective remedies within a reasonable time.

28       **ANSWER:**   AHM denies the allegations in this paragraph.

371.   Accordingly, recovery by Plaintiffs and other Class members is not limited to the limited remedy of repair, and Plaintiffs, individually and on behalf of the other Class members, seek all remedies as allowed by law.

**ANSWER:**   This paragraph does not contain factual allegations requiring a response. To the extent a response is required, AHM denies the allegations in this paragraph.

372.   Also, as alleged in more detail herein, at the time that Honda warranted and sold or leased the Class Vehicles, it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and Honda improperly concealed material facts regarding its Class Vehicles. Plaintiffs and other Class members were therefore induced to purchase or lease the Class Vehicles under false pretenses.

**ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the alleged defect and any alleged fraudulent conduct by AHM.

373.   Honda had notice of its breach of express warranty as alleged herein.

**ANSWER:**   AHM denies the allegations in this paragraph.

374.   As a direct and proximate result of Honda's breach of its express warranty, Plaintiffs and other Class members have been damaged in an amount to be determined at trial.

**ANSWER:**   AHM denies the allegations in this paragraph, including that Plaintiffs or any putative member of the alleged classes was damaged by AHM.

375.   Plaintiffs, on behalf of themselves and the Class, seek monetary damages, costs, attorneys' fees, and such other and further relief provided by law and equity.

**ANSWER:**   AHM admits that Plaintiffs seek damages and other relief, but denies that they or any putative member of the alleged classes is entitled to any relief. AHM denies any remaining allegations in this paragraph.

<div align="center">

**COUNT NINE:**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(Iowa Code §§ 554.2314 & 554.13212)**
**(On Behalf of the Iowa Class)**

</div>

376.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1    **ANSWER:**   This paragraph does not require a response because the Court dismissed the

2  claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as

3  follows: AHM reasserts and incorporates by reference its answers to all preceding allegations as

4  though fully set forth herein.

5    377.   Plaintiff Jones brings this claim individually and on behalf of the other members of the

6  Iowa Class.

7    **ANSWER:**   This paragraph does not require a response because the Court dismissed the

8  claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as

9  follows: AHM admits that Plaintiffs purport to bring this claim individually and on behalf of other

10 putative members of an alleged class, but denies that the claim is amenable to class treatment. AHM

11 denies the remaining allegations in this paragraph.

12    378.   Honda is a "merchant" (as defined by IOWA CODE §554.2104(1)), a "seller" (as

13 defined by IOWA CODE §554.2103(1)(d)), and a "lessor" (as defined by IOWA CODE

14 §554.13103(p)) of Class Vehicles.

15    **ANSWER:**   This paragraph does not require a response because the Court dismissed the

16 claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as

17 follows: This paragraph does not contain factual allegations requiring a response. To the extent a

18 response is required, Iowa Code §§ 554.2103(1)(d), 554.2104(1), and 554.13103(p) speak for

19 themselves and AHM denies the remaining allegations in this paragraph.

20    379.   The Class Vehicles are "goods" (as defined by IOWA CODE §§554.2105(1) and

21 554.13103(1)(h)).

22    **ANSWER:**   This paragraph does not require a response because the Court dismissed the

23 claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as

24 follows: This paragraph does not contain factual allegations requiring a response. To the extent a

25 response is required, Iowa Code §§ 554.2105(1) and 554.13103(1)(h) speak for themselves and AHM

26 denies the remaining allegations in this paragraph.

27

28

380.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to IOWA CODE §§554.2314 and 554.13212.

**ANSWER:**    This paragraph does not require a response because the Court dismissed the claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as follows: This paragraph does not contain factual allegations requiring a response. To the extent a response is required, Iowa Code § 554.2314 and 554.13212 speak for themselves and AHM denies the remaining allegations in this paragraph.

381.    Honda was provided notice of the issues raised in this Count and this Complaint, as detailed above.

**ANSWER:**    This paragraph does not require a response because the Court dismissed the claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as follows: AHM denies the allegations in this paragraph.

382.    As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Iowa Class members have been damaged in an amount to be proven at trial.

**ANSWER:**    This paragraph does not require a response because the Court dismissed the claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as follows: AHM denies the allegations in this paragraph, including that Plaintiffs or any putative member of the alleged class was damaged by AHM.

383.    Plaintiffs, on behalf of themselves and the Class, seek monetary damages, costs, attorneys' fees, and such other and further relief provided by law and equity.

**ANSWER:**    This paragraph does not require a response because the Court dismissed the claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as follows: AHM admits that Plaintiffs seek damages and other relief, but denies that they or any putative member of the alleged class is entitled to any relief. AHM denies any remaining allegations in this paragraph.

**COUNT TEN:**
**VIOLATIONS OF THE IOWA PRIVATE RIGHT OF ACTION**
**FOR CONSUMER FRAUDS ACT**
**(Iowa Code § 714H)**
**(On Behalf of the Iowa Class)**

384.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

**ANSWER:**   AHM reasserts and incorporates by reference its answers to all preceding allegations as though fully set forth herein.

385.   Plaintiff Jones brings this claim individually and on behalf of the other members of the Iowa Class.

**ANSWER:**   AHM admits that Jones purports to bring this claim individually and on behalf of other putative members of an alleged class, but denies that the claim is amenable to class treatment. AHM denies the remaining allegations in this paragraph.

386.   The Iowa "Private Right of Action for Consumer Frauds Act" ("Iowa CFA"), IOWA CODE §714H, prohibits unfair and deceptive trade practices in the sale, lease, or advertisement of a product or service, and in the solicitation of charitable contributions. The Iowa CFA's purpose is to protect consumers against these unfair and deceptive business practices, and to provide efficient and economical procedures to secure such protection.

**ANSWER:**   This paragraph does not contain factual allegations requiring a response. To the extent a response is required, the Iowa Private Right of Action for Consumer Frauds Act ("Iowa CFA") and Iowa Code § 714H speak for themselves and AHM denies the remaining allegations in this paragraph.

387.   Specifically, Plaintiffs allege that Honda has violated the Iowa CFA by engaging in the unfair and/or deceptive acts and practices set forth within the Iowa CFA. Honda knew prior to the sale or lease of the Class Vehicles that the Class Vehicles suffered from an inherent defect, were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use. Honda's unfair and deceptive business practices in carrying out the marketing program described above were and are intended to, and did and do, result in the purchase of Honda's products by consumers, including Plaintiffs, in violation of the Iowa CFA.

**ANSWER:** AHM denies the allegations in this paragraph, including the existence of the alleged defect and any conduct that violated this statute.

388.   Plaintiffs' rights as consumers to bring this action at law derives from the Iowa CFA. The Iowa legislature enacted the Iowa CFA to allow Iowa consumers who have been victimized by an unfair or deceptive trade business practice to obtain damages and other such equitable relief as the Court deems necessary to protect the public from further violations.

**ANSWER:** This paragraph does not contain factual allegations requiring a response. To the extent a response is required, Iowa CFA speaks for itself and AHM denies the remaining allegations in this paragraph.

389.   As a result of Honda's unfair and/or deceptive business practices, Plaintiffs and all purchasers of Honda's products have lost money in that they paid for products that did not have the benefit as represented. Plaintiffs seek and are entitled to an Order enjoining Honda from continuing to engage in the unfair and deceptive business practices alleged herein.

**ANSWER:** AHM denies the allegations in this paragraph, including any conduct that violated this statute, that Plaintiffs or any putative member of the alleged class was injured or lost money because of AHM, and that Plaintiffs or any putative member of the alleged class is entitled to any relief.

390.   Plaintiff Jones and his counsel have sought and have obtained the approval to bring this claim pursuant to IOWA CODE §714H.7.

**ANSWER:** AHM lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and therefore denies the allegations.

**COUNT ELEVEN:**
**VIOLATION OF FLORIDA'S UNFAIR & DECEPTIVE TRADE PRACTICES ACT**
**(Fla. Stat. §§ 501.201, *et seq.*)**
**(On Behalf of the Florida Class)**

391.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

**ANSWER:** AHM reasserts and incorporates by reference its answers to all preceding allegations as though fully set forth herein.

1  392.   Plaintiffs Pazanki, Tessinari, and Ferreira bring this claim on behalf of themselves and

2  the Florida Class.

3  **ANSWER:**   AHM admits that Pazanki, Tessinari, and Ferreira purport to bring this claim

4  individually and on behalf of other putative members of an alleged class, but denies that the claim is

5  amenable to class treatment. AHM denies the remaining allegations in this paragraph.

6  393.   Plaintiffs and the Florida Class members are "consumers" within the meaning of FLA.

7  STAT. §501.203(7).

8  **ANSWER:**   This paragraph does not contain factual allegations requiring a response. To the

9  extent a response is required, Fla. Stat. § 501.203(7) speaks for itself and AHM denies the remaining

10  allegations in this paragraph.

11  394.   Honda is engaged in "trade" or "commerce" within the meaning of FLA. STAT.

12  §501.203(8).

13  **ANSWER:**   This paragraph does not contain factual allegations requiring a response. To the

14  extent a response is required, Fla. Stat. § 501.203(8) speaks for itself and AHM denies the remaining

15  allegations in this paragraph.

16  395.   The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") makes unlawful

17  "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or

18  practices in the conduct of any trade or commerce." FLA. STAT. §501.204(1).

19  **ANSWER:**   This paragraph does not contain factual allegations requiring a response. To the

20  extent a response is required, Fla. Stat. § 501.204(1) speaks for itself and AHM denies the remaining

21  allegations in this paragraph.

22  396.   In the course of its business, Honda violated the Florida FDUTPA by knowingly

23  misrepresenting and/or intentionally concealing material facts regarding the quality, safety, and

24  reliability of the Class Vehicles, including the existence of the Defect, and the existence of a

25  permanent and reliable repair for the Defect. Specifically, in marketing, offering for sale/lease, and

26  selling/leasing the defective Class Vehicles, Honda engaged in one or more of the following unfair

27  or deceptive acts or practices prohibited by FLA. STAT. §501.204(1):

28

(a)    representing that the Class Vehicles have characteristics or benefits that they do not have;

(b)    representing that the Class Vehicles are of a particular standard and quality when they are not;

(c)    advertising the Class Vehicles with the intent not to sell them as advertised;

(d)    engaging in other conduct which created a likelihood of confusion or of misunderstanding; and/or

(e)    using or employing deception, fraud, false pretense, false promise, or misrepresentation, or the concealment, suppression, or omission of a material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the advertisement and sale or lease of the Class Vehicles.

**ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the alleged defect and any conduct that violated this statute.

397.   Honda's scheme and concealment of the true characteristics of the Class Vehicles were material to Plaintiffs and the Florida Class, and Honda misrepresented, concealed, or failed to disclose the truth with the intention that Plaintiffs and the Florida Class would rely on the misrepresentations, concealments, and omissions. Had they known the truth, Plaintiffs and the Florida Class would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

**ANSWER:**   AHM denies the allegations in this paragraph, including any conduct that violated this statute.

398.   Plaintiffs and the Florida Class members had no way of discerning that Honda's representations were false and misleading, or otherwise learning the facts that Honda had concealed or failed to disclose.

**ANSWER:**   AHM denies the allegations in this paragraph, including any conduct that violated this statute.

399.   Honda had an ongoing duty to Plaintiffs and the Florida Class members to refrain from unfair and deceptive practices under the Florida FDUTPA in the course of its business. Specifically, Honda owed Plaintiffs and the Florida Class members a duty to disclose all the material facts

1  concerning the Class Vehicles because it possessed exclusive knowledge, it intentionally concealed

2  such material facts from Plaintiffs and the Florida Class members, and/or it made misrepresentations

3  that were rendered misleading because they were contradicted by withheld facts.

4       **ANSWER:**  AHM denies the allegations in this paragraph, including any conduct that

5  violated this statute.

6       400.  Plaintiffs and the Florida Class members suffered ascertainable loss and actual damages

7  as a direct and proximate result of Honda's concealment, misrepresentations, and/or failure to

8  disclose material information.

9       **ANSWER:**  AHM denies the allegations in this paragraph, including any conduct that

10  violated this statute and that Plaintiffs or any putative member of the alleged class was damaged by

11  AHM.

12      401.  Plaintiffs, on behalf of themselves and the Class, seek monetary damages, costs,

13  attorneys' fees, and such other and further relief provided by law and equity.

14      **ANSWER:**  AHM admits that Plaintiffs seek damages and other relief, but denies that they

15  or any putative member of the alleged class is entitled to any relief. AHM denies any remaining

16  allegations in this paragraph.

**COUNT TWELVE:**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(Fla. Stat. §§ 672.314 and 680.212)**
**(On Behalf of the Florida Class)**

20      402.  Plaintiffs reallege and incorporate by reference all preceding allegations as though fully

21  set forth herein.

22      **ANSWER:**  This paragraph does not require a response because the Court dismissed the

23  claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as

24  follows: AHM reasserts and incorporates by reference its answers to all preceding allegations as

25  though fully set forth herein.

26      403.  Plaintiffs Pazanki, Tessinari, and Ferreira bring this claim on behalf of themselves and

27  the Florida Class.

1   **ANSWER:** This paragraph does not require a response because the Court dismissed the

2 claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as

3 follows: AHM admits that Pazanki, Tessinari, and Ferreira purport to bring this claim individually

4 and on behalf of other putative members of an alleged class, but denies that the claim is amenable to

5 class treatment. AHM denies the remaining allegations in this paragraph.

6   404. This cause of action is brought on behalf of the Florida Class against Defendant

7   **ANSWER:** This paragraph does not require a response because the Court dismissed the

8 claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as

9 follows: AHM admits that Pazanki, Tessinari, and Ferreira purport to bring this claim individually

10 and on behalf of other putative members of an alleged class, but denies that the claim is amenable to

11 class treatment. AHM denies the remaining allegations in this paragraph.

12   405. Honda is and was, at all relevant times, a "merchant" with respect to the Class Vehicles

13 under FLA. STAT. §§672.104(1) and 680.1031(1)(t), and a "seller" of the Class Vehicles under FLA.

14 STAT. §672.103(1)(d).

15   **ANSWER:** This paragraph does not require a response because the Court dismissed the

16 claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as

17 follows: This paragraph does not contain factual allegations requiring a response. To the extent a

18 response is required, Fla. Stat. §§ 672.104(1) and 680.1031(1)(t) speak for themselves and AHM

19 denies the remaining allegations in this paragraph.

20   406. With respect to leases, Honda is and was, at all relevant times, a "lessor" of motor

21 vehicles under FLA. STAT. §680.1031(1)(p)

22   **ANSWER:** This paragraph does not require a response because the Court dismissed the

23 claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as

24 follows: This paragraph does not contain factual allegations requiring a response. To the extent a

25 response is required, Fla. Stat. § 680.1031(1)(p) speaks for itself and AHM denies the remaining

26 allegations in this paragraph.

27   407. The Class Vehicles are and were, at all relevant times, "goods" within the meaning of

28 FLA. STAT. §§672.105(1) and 680.1031(1)(h).

1    **ANSWER:**   This paragraph does not require a response because the Court dismissed the

2    claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as

3    follows: This paragraph does not contain factual allegations requiring a response. To the extent a

4    response is required, Fla. Stat. §§ 672.105(1) and 680.1031(1)(h) speak for themselves and AHM

5    denies the remaining allegations in this paragraph.

6    408.   A warranty that the Class Vehicles were in merchantable condition and fit for the

7    ordinary purpose for which vehicles are used is implied by law pursuant to FLA. STAT.

8    §§672.314(2)(c) and 680.212(2)(c).

9    **ANSWER:**   This paragraph does not require a response because the Court dismissed the

10   claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as

11   follows: This paragraph does not contain factual allegations requiring a response. To the extent a

12   response is required, Fla. Stat. §§ 672.314(2)(c) and 680.212(2)(c) speak for themselves and AHM

13   denies the remaining allegations in this paragraph.

14   409.   Honda was provided notice of the issues raised in this Count and this Complaint, as

15   detailed above.

16   **ANSWER:**   This paragraph does not require a response because the Court dismissed the

17   claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as

18   follows: AHM denies the allegations in this paragraph.

19   410.   As a direct and proximate result of Defendant's breach of the implied warranty of

20   merchantability, Florida Class members have been damaged in an amount to be proven at trial.

21   **ANSWER:**   This paragraph does not require a response because the Court dismissed the

22   claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as

23   follows: AHM denies the allegations in this paragraph, including that Plaintiffs or any putative

24   member of the alleged class was damaged by AHM.

25   411.   Plaintiffs, on behalf of themselves and the Class, seek monetary damages, costs,

26   attorneys' fees, and such other and further relief provided by law and equity.

27   **ANSWER:**   This paragraph does not require a response because the Court dismissed the

28   claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as

1   follows: AHM admits that Plaintiffs seek damages and other relief, but denies that they or any putative

2   member of the alleged class is entitled to any relief. AHM denies any remaining allegations in this

3   paragraph.

**COUNT THIRTEEN:**
**BREACH OF THE DECEPTIVE ACTS AND PRACTICES STATUTE**
**(N.Y. Gen. Bus. Law §§ 349 *et seq.*)**
**(On Behalf of the New York Class)**

7       412.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully

8   set forth herein.

9       **ANSWER:**   AHM reasserts and incorporates by reference its answers to all preceding

10  allegations as though fully set forth herein.

11      413.   This Count is brought on behalf of the New York Class against Defendant.

12      **ANSWER:**   AHM admits that Plaintiffs purport to bring this claim individually and on

13  behalf of other putative members of an alleged class, but denies that the claim is amenable to class

14  treatment. AHM denies the remaining allegations in this paragraph.

15      414.   The New York Class members and Defendant are "persons" under N.Y. GEN. Bus.

16  LAW §349(h), the New York Consumer Protection From Deceptive Acts and Practices statute ("NY

17  DAP").

18      **ANSWER:**   This paragraph does not contain factual allegations requiring a response. To the

19  extent a response is required, N.Y. Gen. Bus. Law §349(h) speaks for itself and AHM denies the

20  remaining allegations in this paragraph.

21      415.   Defendant's actions as set forth herein occurred in the conduct of trade or commerce

22  under the NY DAP

23      **ANSWER:**   This paragraph does not contain factual allegations requiring a response. To the

24  extent a response is required, the New York Consumer Protection from Deceptive Acts and Practices

25  statute ("NY DAP") speaks for itself and AHM denies the remaining allegations in this paragraph.

26      416.   The NY DAP makes unlawful "[d]eceptive acts or practices in the conduct of any

27  business, trade or commerce." N.Y. GEN. Bus. LAW §349. Defendant's conduct, as set forth herein,

28  constitutes deceptive acts or practices under this section. As alleged in more detail herein, at the time

that Honda warranted and sold or leased the Class Vehicles, it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and Defendant improperly concealed material facts regarding its Class Vehicles. Plaintiffs and other Class members were therefore induced to purchase or lease the Class Vehicles under false pretenses.

**ANSWER:**   The NY DAP speaks for itself, and to the extent the allegations in this paragraph vary therewith, AHM denies the allegations. AHM denies the remaining allegations in this paragraph, including the existence of the alleged defect and any conduct that violated this statute.

417.   New York Class members had no way of knowing that Defendant's representations were false and misleading, and that the battery on their Class Vehicles suffered from the Defect.

**ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the alleged defect and any alleged fraudulent conduct by AHM.

418.   Defendant thus violated the NY DAP by, at minimum: (a) representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; (b) representing that Class Vehicles are of a particular standard, quality, and grade when they are not; (c) advertising Class Vehicles with the intent not to sell or lease them as advertised; and (d) representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

**ANSWER:**   AHM denies the allegations in this paragraph, including any conduct that violated this statute.

419.   Defendant intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the New York Class.

**ANSWER:**   AHM denies the allegations in this paragraph, including any conduct that violated this statute.

420.   Defendant knew or should have known that their conduct violated the NY DAP.

**ANSWER:**   AHM denies the allegations in this paragraph, including any conduct that violated this statute.

421.   Defendant owed the New York Class a duty to disclose the true nature of the Class Vehicles, because Defendant:

AMERICAN HONDA MOTOR CO., INC.'S ANSWER TO SECOND AMENDED COMPLAINT

(a)     possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

(b)     intentionally concealed the foregoing from Plaintiffs, and/or Class members; and/or

(c)     made incomplete representations about the Class Vehicles generally, and the safety and reliability of the Class Vehicles, in particular, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

**ANSWER:**   AHM denies the allegations in this paragraph, including any conduct that violated this statute.

422.   Defendant's false and misleading statements about the Class Vehicles were material to Plaintiffs and to the New York Class

**ANSWER:**   AHM denies the allegations in this paragraph, including any conduct that violated this statute.

423.   Defendant's unfair or deceptive acts or practices were likely to and did, in fact, deceive reasonable consumers, including the New York Class members, about the safety, quality, and reliability of their Class Vehicles, and the true value of the Class Vehicles.

**ANSWER:**   AHM denies the allegations in this paragraph, including any conduct that violated this statute.

424.   Defendant's violations present a continuing risk to the New York Class, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

**ANSWER:**   AHM denies the allegations in this paragraph, including any conduct that violated this statute.

425.   New York Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations and its concealment of and failure to disclose material information. Defendant had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the NY DAP. All owners of Class Vehicles suffered ascertainable loss as a result of Defendant's deceptive and unfair acts and practices made in the course of Defendant's business.

**ANSWER:**   AHM denies the allegations in this paragraph, including that Plaintiffs or any putative member of the alleged class was damaged by AHM.

426.   As a direct and proximate result of Defendant's violations of the NY DAP, New York Class members have suffered injury-in-fact and/or actual damage.

**ANSWER:**   AHM denies the allegations in this paragraph, including that Plaintiffs or any putative member of the alleged class was injured by AHM.

427.   As a result of the foregoing willful, knowing, and wrongful conduct of Defendant, New York Class members have been damaged in an amount to be proven at trial, and seek all just and proper remedies, including, but not limited to, actual damages or $50, whichever is greater, treble damages up to $1,000, punitive damages to the extent available under the law, reasonable attorneys' fees and costs, an Order enjoining Defendant's deceptive and unfair conduct, and all other just and appropriate relief available under the NY DAP.

**ANSWER:**   AHM admits that Plaintiffs seek damages and other relief, but denies that they or any putative member of the alleged class is entitled to any relief. AHM denies the remaining allegations in this paragraph, including any conduct that violated this statute and that Plaintiffs or any putative member of the alleged class was damaged by AHM.

428.   Plaintiffs, on behalf of themselves and the Class, seek monetary damages, costs, attorneys' fees, and such other and further relief provided by law and equity.

**ANSWER:**   AHM admits that Plaintiffs seek damages and other relief, but denies that they or any putative member of the alleged class is entitled to any relief. AHM denies any remaining allegations in this paragraph.

<div align="center">

**COUNT FOURTEEN:**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(N.Y. U.C.C. Law §§ 2-314 and 2-A-212)**
**(On Behalf of the New York Class)**

</div>

429.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

**ANSWER:**   This paragraph does not require a response because the Court dismissed the claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as

follows: AHM reasserts and incorporates by reference its answers to all preceding allegations as though fully set forth herein.

430.   This Count is brought on behalf of the New York Class against Defendant

**ANSWER:**   This paragraph does not require a response because the Court dismissed the claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as follows: AHM admits that Plaintiffs purport to bring this claim individually and on behalf of other putative members of an alleged class, but denies that the claim is amenable to class treatment. AHM denies the remaining allegations in this paragraph.

431.   Defendant is and was, at all relevant times, a "merchant" with respect to motor vehicles under N.Y. U.C.C. LAW §2-104(1), and a "seller" of motor vehicles under N.Y. U.C.C. LAW §2-103(1)(d).

**ANSWER:**   This paragraph does not require a response because the Court dismissed the claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as follows: This paragraph does not contain factual allegations requiring a response. To the extent a response is required, N.Y. U.C.C. Law §§ 2-103(1)(d) and 2-104(1) speak for themselves and AHM denies the remaining allegations in this paragraph.

432.   With respect to leases, Defendant is and was, at all relevant times, a "lessor" of motor vehicles under N.Y. U.C.C. LAW §2-A-103(1)(p).

**ANSWER:**   This paragraph does not require a response because the Court dismissed the claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as follows: This paragraph does not contain factual allegations requiring a response. To the extent a response is required, N.Y. U.C.C. Law § 2-A-103(1)(p) speaks for itself and AHM denies the remaining allegations in this paragraph.

433.   The Class Vehicles are and were, at all relevant times, "goods" within the meaning of N.Y. U.C.C. LAW §§2-105(1) and 2-A-103(1)(h).

**ANSWER:**   This paragraph does not require a response because the Court dismissed the claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as follows: This paragraph does not contain factual allegations requiring a response. To the extent a

1  response is required, N.Y. U.C.C. Law § 2-A-103(1)(h) speaks for itself and AHM denies the

2  remaining allegations in this paragraph.

3      434.   A warranty that the Class Vehicles were in merchantable condition and fit for the

4  ordinary purpose for which vehicles are used is implied by law pursuant to N.Y. U.C.C. LAW

5  §§2¬314(2)(c) and 2-A-212(2)(c).

6      **ANSWER:**   This paragraph does not require a response because the Court dismissed the

7  claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as

8  follows: This paragraph does not contain factual allegations requiring a response. To the extent a

9  response is required, N.Y. U.C.C. Law §§ 2-103(2)(c) and 2-A-212(2)(c) speak for themselves and

10  AHM denies the remaining allegations in this paragraph.

11      435.   These Class Vehicles, when sold or leased and at all times thereafter, were subject to

12  the Defect, and were therefore not fit for the ordinary purpose for which vehicles are used.

13      **ANSWER:**   This paragraph does not require a response because the Court dismissed the

14  claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as

15  follows: AHM denies the allegations in this paragraph, including the existence of the alleged defect.

16      436.   Defendant was provided notice of these issues by complaints filed with NHTSA, and

17  the instant Complaint, within a reasonable amount of time.

18      **ANSWER:**   This paragraph does not require a response because the Court dismissed the

19  claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as

20  follows: AHM denies the allegations in this paragraph.

21      437.   As a direct and proximate result of Defendant's breach of the implied warranty of

22  merchantability, New York Class members have been damaged in an amount to be proven at trial.

23      **ANSWER:**   This paragraph does not require a response because the Court dismissed the

24  claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as

25  follows: This paragraph does not contain factual allegations requiring a response. To the extent a

26  response is required, AHM denies the allegations in this paragraph, including that Plaintiffs or any

27  putative member of the alleged class was damaged by AHM.

28

438.    Plaintiffs, on behalf of themselves and the Class, seek monetary damages, costs, attorneys' fees, and such other and further relief provided by law and equity.

**ANSWER:**    This paragraph does not require a response because the Court dismissed the claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as follows: AHM admits that Plaintiffs seek damages and other relief, but denies that they or any putative member of the alleged class is entitled to any relief. AHM denies any remaining allegations in this paragraph.

<div align="center">

**COUNT FIFTEEN:**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(Ariz. Rev. Stat. §§ 47-2314 & 47-2A212)**
**(On Behalf of the Arizona Class)**

</div>

439.    Plaintiff Rapp realleges and incorporates by reference all preceding allegations as though fully set forth herein.

**ANSWER:**    This paragraph does not require a response because the Court dismissed the claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as follows: AHM reasserts and incorporates by reference its answers to all preceding allegations as though fully set forth herein.

440.    Plaintiff Rapp brings this claim individually and on behalf of the other members of the Arizona Class.

**ANSWER:**    This paragraph does not require a response because the Court dismissed the claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as follows: AHM admits that Rapp purports to bring this claim individually and on behalf of other putative members of an alleged class, but denies that the claim is amenable to class treatment. AHM denies the remaining allegations in this paragraph.

441.    Honda is a "merchant" (as defined by ARIZ. REV. STAT. §47-2104(A)), a "seller" (as defined by ARIZ. REV. STAT. §47-2103(A)(4)), and a "lessor" (as defined by ARIZ. REV. STAT. §47-2A103(A)(16)) of Class Vehicles.

**ANSWER:**    This paragraph does not require a response because the Court dismissed the claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as

follows: This paragraph does not contain factual allegations requiring a response. To the extent a response is required, Ariz. Rev. Stat. §§ 47-2103(A)(4), 47-2A103(A)(16), and 47-2104(A) speak for themselves and AHM denies the remaining allegations in this paragraph.

442.   The Class Vehicles are "goods" (as defined by ARIZ. REV. STAT. §47-2105(A) and ARIZ. REV. STAT. §47-2A103(A)(8)).

**ANSWER:**   This paragraph does not require a response because the Court dismissed the claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as follows: This paragraph does not contain factual allegations requiring a response. To the extent a response is required, Ariz. Rev. Stat. §§ 47-2103(A)(8) and 47-2105(A) speak for themselves and AHM denies the remaining allegations in this paragraph.

443.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to ARIZ. REV. STAT. §47¬2314 and ARIZ. REV. STAT. 47-2A212.

**ANSWER:**   This paragraph does not require a response because the Court dismissed the claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as follows: This paragraph does not contain factual allegations requiring a response. To the extent a response is required, Ariz. Rev. Stat. §§ 47-2314 and 47-2A212 speak for themselves and AHM denies the remaining allegations in this paragraph.

444.   The Class Vehicles when sold or leased and all times thereafter, included the Honda CR-V (model years 2017-2019) or Honda Accord (model years 2016-2019).

**ANSWER:**   This paragraph does not require a response because the Court dismissed the claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as follows: AHM admits that Plaintiffs have defined the alleged Class Vehicles to include Honda CR-V model years 2017–2019 and Honda Accord model years 2016–2019. AHM denies the remaining allegations in this paragraph.

445.   Defendant was, at all relevant times, the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles. Defendant knew or had reason to know of the specific use for which the Class Vehicles were purchased.

**ANSWER:**   This paragraph does not require a response because the Court dismissed the claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as follows: AHM admits that it distributed the alleged Class Vehicles to authorized Honda dealers in the United States. AHM denies the remaining allegations in this paragraph.

446.   Defendant provided Plaintiff Rapp and other Class members with an implied warranty that the Class Vehicles and any parts thereof are merchantable and fit for the ordinary purposes for which they were sold. However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles suffered from the Parasitic Drain Defect at the time of sale that causes various safety features to fail without warning, creates the undue risk of the engine stalling while driving, and results in the premature depletion of batteries and alternators. Therefore, the Class Vehicles are not fit for their particular purpose of providing safe and reliable transportation.

**ANSWER:**   This paragraph does not require a response because the Court dismissed the claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as follows: AHM denies the allegations in this paragraph, including the existence of the alleged defect.

447.   Defendant impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things, a warranty that the Class Vehicles were manufactured, supplied, distributed, and/or sold by Defendant, were safe and reliable for providing transportation, and would not result in the premature failure of its batteries.

**ANSWER:**   This paragraph does not require a response because the Court dismissed the claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as follows: AHM denies the allegations in this paragraph.

448.   Contrary to the applicable implied warranties, the Class Vehicles at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff Rapp and other Class members with reliable, durable, and safe transportation. Instead, the Class Vehicles suffer from a defective design(s) and/or manufacturing defect(s).

1       **ANSWER:**   This paragraph does not require a response because the Court dismissed the

2   claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as

3   follows: AHM denies the allegations in this paragraph, including the existence of the alleged defect.

4       449.   Defendant knew or had reason to know of these material facts, and wrongfully and

5   fraudulently concealed these material facts from Plaintiff Rapp and the Class. Defendant was

6   provided notice of these issues by, *inter alia*, complaints lodged by consumers with NHTSA—which

7   Defendant routinely monitors—before or within a reasonable amount of time after the allegations of

8   the Defect became public.

9       **ANSWER:**   This paragraph does not require a response because the Court dismissed the

10   claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as

11   follows: AHM denies the allegations in this paragraph, including the existence of the alleged defect

12   and any alleged fraudulent conduct by AHM.

13       450.   Defendant's actions, as complained of herein, breached the implied warranty that the

14   Class Vehicles were of merchantable quality and fit for such use.

15       **ANSWER:**   This paragraph does not require a response because the Court dismissed the

16   claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as

17   follows: AHM denies the allegations in this paragraph.

18       451.   Plaintiff Rapp and other Class members have had sufficient direct dealings with either

19   Defendant or its agents (*e.g.*, dealerships, consumer affairs departments, and technical support) to

20   establish privity of contract between Defendant on one hand, and Plaintiff Rapp and each of the other

21   Class members on the other hand. Nonetheless, privity is not required here because Plaintiff Rapp

22   and each of the other Class members are intended third-party beneficiaries of contracts between

23   Defendant and their dealers, and specifically, of Defendant's implied warranties. The dealers were

24   not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty

25   agreements provided with the Class Vehicles; the warranty agreements were designed for and

26   intended to benefit the consumers only. Defendant was also aware that the ultimate consumers of the

27   Class Vehicles (i.e., the Class) required vehicles that would function safely, could be relied upon, and

28   otherwise meet minimum industry standards. Additionally, privity is excused here because Plaintiff

Rapp and each of the other Class members relied on statements made by Defendant itself in choosing to purchase or lease a Class Vehicle. As alleged herein, the marketing of the Class Vehicles was uniform, and was controlled and disseminated directly by Defendant.

**ANSWER:**   This paragraph does not require a response because the Court dismissed the claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as follows: This paragraph does not contain factual allegations requiring a response. To the extent a response is required, AHM denies the allegations in this paragraph.

452.   Plaintiff Rapp, on behalf of himself and the Class, seeks monetary damages, treble damages, costs, attorneys' fees, and such other and further relief provided by law and equity.

**ANSWER:**   This paragraph does not require a response because the Court dismissed the claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as follows: AHM admits that Plaintiffs seek damages and other relief, but denies that they or any putative member of the alleged class is entitled to any relief. AHM denies any remaining allegations in this paragraph.

**COUNT SIXTEEN:**
**BREACH OF THE ARIZONA CONSUMER FRAUD ACT**
**(Ariz. Rev. Stat. §§ 44-1521, *et seq.*)**
**(On Behalf of the Arizona Class)**

453.   Plaintiff Rapp realleges and incorporates by reference all preceding allegations as though fully set forth herein.

**ANSWER:**   AHM reasserts and incorporates by reference its answers to all preceding allegations as though fully set forth herein.

454.   Plaintiff Rapp brings this claim individually and on behalf of the other members of the Arizona Class.

**ANSWER:**   AHM admits that Rapp purports to bring this claim individually and on behalf of other putative members of an alleged class, but denies that the claim is amenable to class treatment. AHM denies the remaining allegations in this paragraph.

455.   Plaintiff Rapp, Class members, and Honda are each "persons" as defined by ARIZ. REV. STAT. §44-1521(6). The Class Vehicles are "merchandise" as defined by ARIZ. REV. STAT. §44-1521(5).

**ANSWER:**   This paragraph does not contain factual allegations requiring a response. To the extent a response is required, Ariz. Rev. Stat. §§ 44-1521(5) and (6) speak for themselves and AHM denies the remaining allegations in this paragraph.

456.   The Arizona Consumer Fraud Act ("Arizona CFA") declares as an unlawful practice "[t]he act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby1-.1" ARIZ. REV. STAT. ,44-1522(A).

**ANSWER:**   This paragraph does not contain factual allegations requiring a response. To the extent a response is required, the Arizona Consumer Fraud Act ("Arizona CFA") and Ariz. Rev. Stat. §§ 44-1522(A) speak for themselves and AHM denies the remaining allegations in this paragraph.

457.   By failing to disclose and actively concealing the Parasitic Drain Defect in the Class Vehicles, Honda engaged in unlawful deceptive business practices prohibited by the Arizona CFA, ARIZ. REV. STAT. §44-1522(A), including engaging in acts or practices which are unfair, misleading, false, or deceptive to the consumer.

**ANSWER:**   This paragraph does not contain factual allegations requiring a response. To the extent a response is required, the Arizona CFA and Ariz. Rev. Stat. §§ 44-1522(A) speak for themselves and AHM denies the remaining allegations in this paragraph.

458.   In purchasing or leasing the Class Vehicles, Plaintiff Rapp and Class members were deceived by Honda's failure to disclose its knowledge of the Defect, which caused a parasitic drain even when the vehicle's ignition switch is off. Defendant further concealed the hidden nature of the Parasitic Drain Defect problem by, among other things, telling Class Vehicle drivers that the issue was due to defective batteries. Each of these omissions contributed to the deceptive context of Honda's unlawful advertising and representations as a whole.

1     **ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the

2 alleged defect and any conduct that violated this statute.

3     459.   Plaintiff Rapp and Class members reasonably relied upon Honda's false

4 misrepresentations and omissions. They had no way of knowing that Honda's representations were

5 false, misleading, and incomplete. As alleged herein, Honda engaged in a pattern of deception and

6 public silence in the face of a known Parasitic Drain Defect in its vehicles. Plaintiff Rapp and Class

7 members did not, and could not, unravel Honda's deception on their own.

8     **ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the

9 alleged defect and any conduct that violated this statute.

10     460.   Honda's actions as set forth above occurred in the conduct of trade or commerce.

11     **ANSWER:**   AHM denies the allegations in this paragraph.

12     461.   Honda's unfair or deceptive acts or practices were likely to and did, in fact, deceive

13 reasonable consumers.

14     **ANSWER:**   AHM denies the allegations in this paragraph, including any conduct that

15 violated this statute.

16     462.   Honda knew that the Class Vehicles were defectively designed or manufactured, and

17 prone to create a parasitic electricity drain.

18     **ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the

19 alleged defect and any conduct that violated this statute.

20     463.   Honda intentionally and knowingly misrepresented material facts regarding the Class

21 Vehicles with intent to mislead Plaintiff Rapp and Class members

22     **ANSWER:**   AHM denies the allegations in this paragraph, including any conduct that

23 violated this statute.

24     464.   Honda knew or should have known that its conduct violated ARIZ. REV. STAT. §44-

25 1521.

26     **ANSWER:**   AHM denies the allegations in this paragraph.

27     465.   Honda owed Plaintiff Rapp and Class members a duty to disclose the truth about the

28 Parasitic Drain Defect in the Class Vehicles because the Defect created a safety hazard and Honda:

1   (a) possessed exclusive knowledge of the Defect in the Class Vehicles; (b) intentionally concealed

2   the foregoing from Plaintiff Rapp and the Class; and/or (c) made incomplete representations in

3   advertisements and on its website, failing to warn the public or to publicly admit that the Class

4   Vehicles contained the Parasitic Drain Defect.

5   **ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the

6   alleged defect and any conduct that violated this statute.

7   466.   Honda had a duty to disclose that the Class Vehicles contained the Parasitic Drain

8   Defect, as described herein, because the Defect created a safety hazard, and Plaintiff Rapp and Class

9   members relied on Honda's material misrepresentations and omissions regarding the reliability,

10   performance, and safety found in the Class Vehicles.

11   **ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the

12   alleged defect and any conduct that violated this statute.

13   467.   Honda's conduct proximately caused injuries to Plaintiff Rapp and Class members that

14   purchased the Class Vehicles and suffered harm as alleged herein.

15   **ANSWER:**   AHM denies the allegations in this paragraph, including that Plaintiffs or any

16   putative member of the alleged class was injured by AHM.

17   468.   Plaintiff Rapp and Class members were injured and suffered ascertainable loss, injury-

18   in-fact, and/or actual damage as a proximate result of Honda's conduct in that Plaintiff Rapp and

19   Class members incurred costs related to the Parasitic Drain Defect, including replacement of electrical

20   components and service costs, and overpaid for their Class Vehicles that have suffered a diminution

21   in value.

22   **ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the

23   alleged defect and that Plaintiffs or any putative member of the alleged class was injured or lost

24   money because of AHM.

25   469.   Plaintiff Rapp and Class members sustained damages as a result of Honda's unlawful

26   acts and are, therefore, entitled to damages and other relief as provided under the Arizona CFA

27   **ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the

28   alleged defect, that Plaintiffs or any putative member of the alleged class was injured or lost money

1   because of AHM, and that Plaintiffs or any putative member of the alleged class is entitled to any

2   relief.

3        470.   Plaintiff Rapp and Class members also seek court costs and attorneys' fees as a result

4   of Honda's violation of the Arizona CFA, pursuant to ARIZ. REV. STAT. §12-341.01.

5        **ANSWER:**   AHM admits that Plaintiffs seek certain relief, but denies that they or any

6   putative member of the alleged class is entitled to any relief. AHM denies any remaining allegations

7   in this paragraph.

8                         **COUNT SEVENTEEN:**
     **VIOLATIONS OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT**
9                  **(Nev. Rev. Stat. Ann. §§ 598.0903, *et seq.*)**
                         **(On Behalf of the Nevada Class)**

10       471.   Plaintiff Rapp realleges and incorporates by reference all preceding allegations as

11  though fully set forth herein.

12       **ANSWER:**   AHM reasserts and incorporates by reference its answers to all preceding

13  allegations as though fully set forth herein.

14       472.   Plaintiff Rapp brings this claim individually and on behalf of the other members of the

15  Nevada Class.

16       **ANSWER:**   AHM admits that Rapp purports to bring this claim individually and on behalf

17  of other putative members of an alleged class, but denies that the claim is amenable to class treatment.

18  AHM denies the remaining allegations in this paragraph.

19       473.   Honda advertised, offered, or sold goods or services in Nevada and engaged in trade or

20  commerce directly or indirectly affecting the people of Nevada.

21       **ANSWER:**   AHM admits that it advertised goods sold in Nevada. AHM denies the

22  remaining allegations in this paragraph.

23       474.   Honda engaged in unfair and deceptive acts in violation of the Nevada Deceptive Trade

24  Practices Act ("NDTPA"), NEV. REV. STAT. ANN. §§598.0903, *et seq,*. by the practices described

25  above, and by knowingly and intentionally concealing from Plaintiffs and Class members that the

26  Class Vehicles suffer from a defect(s) and the costs, risks, and diminished value of the vehicles as a

result of this problem. These acts and practices violate, at a minimum, the following sections of the NDTPA:

(a)    knowingly making a false representation as to the characteristics, uses, and benefits of goods or services for sale (NEV. REV. STAT. ANN. §598.0915(5));

(b)    representing that goods or services for sale are of a particular standard, quality, or grade when Honda knew or should have known that they are of another standard, quality, or grade (NEV. REV. STAT. ANN. §598. 0915 (7));

(c)    advertising goods or services with intent not to sell them as advertised (NEV. REV. STAT. ANN. §598.0915(9));

(d)    failing to disclose a material fact in connection with the sale of goods or services (NEV. REV. STAT. ANN. §598.0923(2)); and

(e)    violating state and federal statutes or regulations relating to the sale of goods or services (NEV. REV. STAT. ANN. §598.0923(3)).

**ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the alleged defect and any conduct that violated this statute.

475.   Honda's unfair or deceptive acts or practices occurred repeatedly in Honda's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

**ANSWER:**   AHM denies the allegations in this paragraph, including any conduct that violated this statute.

476.   Honda knew that the Class Vehicles were defectively designed or manufactured, would prematurely fail to perform their essential function, and were not suitable for their intended use.

**ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the alleged defect and any conduct that violated this statute.

477.   Honda was under a duty to Plaintiff Rapp and the Class members to disclose the defective nature of the Class Vehicles and the existence of the Parasitic Drain Defect because:

(a)    Defendant was in a superior position to know the true state of facts about the Parasitic Drain Defect and associated repair costs in the Class Vehicles;

(b)      Plaintiff Rapp and the Class members could not reasonably have been expected to learn or discover that the Class Vehicles had a Parasitic Drain Defect until manifestation of the Defect;

(c)      Defendant knew that Plaintiff Rapp and the Class members could not reasonably have been expected to learn or discover the Parasitic Drain Defect and the associated repair costs that it causes until the manifestation of the Defect; and

(d)      Defendant actively concealed the Parasitic Drain Defect and the associated repair costs by knowingly failing to recall Class Vehicles.

**ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the alleged defect and any conduct that violated this statute.

478.   In failing to disclose the Defect and the associated safety risks and repair costs that result from it, Defendant has knowingly and intentionally concealed material facts and breached its duty to disclose.

**ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the alleged defect and any conduct that violated this statute.

479.   The facts concealed or not disclosed by Honda to Plaintiff Rapp and the Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Defendant's Class Vehicles or pay a lesser price. Had Plaintiff Rapp and the Class known about the defective nature of the Class Vehicles, they would not have purchased or leased the Class Vehicles or would have paid less for them.

**ANSWER:**   AHM denies the allegations in this paragraph, including any conduct that violated this statute.

480.   Plaintiff Rapp and Class members' injuries were proximately caused by Honda's fraudulent and deceptive business practices.

**ANSWER:**   AHM denies the allegations in this paragraph, including any conduct that violated this statute and that Plaintiffs or any putative member of the alleged class was injured by AHM.

481.   Plaintiff Rapp and the Class members seek equitable relief and damages.

1       **ANSWER:**   AHM admits that Plaintiffs seek damages and other relief, but denies that they

2 or any putative member of the alleged class is entitled to any relief. AHM denies any remaining

3 allegations in this paragraph.

<div align="center">

**COUNT EIGHTEEN:**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(Nev. Rev. Stat. Ann. §§ 104.2314, 104A.2212)**
**(On Behalf of the Nevada Class)**

</div>

4
5
6

7       482.   Plaintiff Rapp realleges and incorporates by reference all preceding allegations as

8 though fully set forth herein.

9       **ANSWER:**   This paragraph does not require a response because the Court dismissed the

10 claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as

11 follows: AHM reasserts and incorporates by reference its answers to all preceding allegations as

12 though fully set forth herein.

13       483.   Plaintiff Rapp brings this claim individually and on behalf of the other members of the

14 Nevada Class.

15       **ANSWER:**   This paragraph does not require a response because the Court dismissed the

16 claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as

17 follows: AHM admits that Rapp purports to bring this claim individually and on behalf of other

18 putative members of an alleged class, but denies that the claim is amenable to class treatment. AHM

19 denies the remaining allegations in this paragraph.

20       484.   Honda is a "merchant" (as defined by NEV. REV. STAT. ANN. §104.2104(1)), a

21 "seller" (as defined by NEV. REV. STAT. ANN. §104.2103 (1)(c)), and a "lessor" (as defined by

22 NEV. REV. STAT. ANN. §104A.2103(1)(p)) of Class Vehicles.

23       **ANSWER:**   This paragraph does not require a response because the Court dismissed the

24 claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as

25 follows: This paragraph does not contain factual allegations requiring a response. To the extent a

26 response is required, Nev. Rev. Stat. Ann. §§ 104.2103(1)(c), 104.2104(1), and 104A.2103(1)(p)

27 speak for themselves and AHM denies the remaining allegations in this paragraph.

28

<div align="center">

154

</div>

485.   The Class Vehicles are "goods" (as defined by NEV. REV. STAT. ANN. §104.2105(1) and NEV. REV. STAT. ANN. §104A.2103(1)(h)).

**ANSWER:**   This paragraph does not require a response because the Court dismissed the claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as follows: This paragraph does not contain factual allegations requiring a response. To the extent a response is required, Nev. Rev. Stat. Ann. §§ 104.2105(1) and 104A.2103(1)(h) speak for themselves and AHM denies the remaining allegations in this paragraph.

486.   Pursuant to NEV. REV. STAT. ANN. §104.2314(1), "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."

**ANSWER:**   This paragraph does not require a response because the Court dismissed the claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as follows: This paragraph does not contain factual allegations requiring a response. To the extent a response is required, Nev. Rev. Stat. Ann. § 104.2314(1) speaks for itself and AHM denies the remaining allegations in this paragraph.

487.   Pursuant to NEV. REV. STAT. ANN. §104A.2212(1), "a warranty that the goods will be merchantable is implied in a lease contract if the lessor is a merchant with respect to goods of that kind."

**ANSWER:**   This paragraph does not require a response because the Court dismissed the claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as follows: This paragraph does not contain factual allegations requiring a response. To the extent a response is required, Nev. Rev. Stat. Ann. § 104.A2212(1) speaks for itself and AHM denies the remaining allegations in this paragraph.

488.   Goods are merchantable if they are "fit for the ordinary purposes for which such goods are used" and "[c]onform to the promises or affirmations of fact made on the container or label if any." NEV. REV. STAT. ANN. §104.2314(2)(c), (f); NEV. REV. STAT. ANN. §104A.2212(2)(c), (f).

1    **ANSWER:**   This paragraph does not require a response because the Court dismissed the

2    claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as

3    follows: This paragraph does not contain factual allegations requiring a response. To the extent a

4    response is required, Nev. Rev. Stat. Ann. §§ 104.2314(2)(c), 104.2314(2)(f), 104A.2212(2)(c), and

5    104A.2212(2)(f) speak for themselves and AHM denies the remaining allegations in this paragraph.

6        489.   Defendant was, at all relevant times, the manufacturer, distributor, warrantor, and/or

7    seller of the Class Vehicles. Defendant knew or had reason to know of the specific use for which the

8    Class Vehicles were purchased.

9        **ANSWER:**   This paragraph does not require a response because the Court dismissed the

10   claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as

11   follows: AHM admits that it marketed and distributed the Class Vehicles to authorized Honda dealers

12   in the United States. AHM denies the remaining allegations in this paragraph.

13       490.   Defendant provided Plaintiff Rapp and other Class members with an implied warranty

14   that the Class Vehicles and any parts thereof are merchantable and fit for the ordinary purposes for

15   which they were sold. However, the Class Vehicles are not fit for their ordinary purpose of providing

16   reasonably reliable and safe transportation at the time of sale or thereafter because, *inter alia*, the

17   Class Vehicles suffered from the Parasitic Drain Defect at the time of sale that causes various safety

18   features to fail without warning, creates the undue risk of the engine stalling while driving, and results

19   in the premature depletion of batteries and alternators. Therefore, the Class Vehicles are not fit for

20   their particular purpose of providing safe and reliable transportation.

21       **ANSWER:**   This paragraph does not require a response because the Court dismissed the

22   claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as

23   follows: AHM denies the allegations in this paragraph, including the existence of the alleged defect.

24       491.   Defendant impliedly warranted that the Class Vehicles were of merchantable quality

25   and fit for such use. This implied warranty included, among other things, a warranty that the Class

26   Vehicles were manufactured, supplied, distributed, and/or sold by Defendant, were safe and reliable

27   for providing transportation, and would not result in the premature failure of its batteries.

28

AMERICAN HONDA MOTOR CO., INC.'S ANSWER TO SECOND AMENDED COMPLAINT

1
2
3

    **ANSWER:**   This paragraph does not require a response because the Court dismissed the claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as follows: AHM denies the allegations in this paragraph.

4
5
6
7

    492.   Contrary to the applicable implied warranties, the Class Vehicles at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff Rapp and other Class members with reliable, durable, and safe transportation. Instead, the Class Vehicles suffer from a defective design(s) and/or manufacturing defect(s).

8
9
10

    **ANSWER:**   This paragraph does not require a response because the Court dismissed the claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as follows: AHM denies the allegations in this paragraph, including the existence of the alleged defect.

11
12
13
14
15

    493.   Defendant knew or had reason to know of these material facts, and wrongfully and fraudulently concealed these material facts from Plaintiff Rapp and the Class. Defendant was provided notice of these issues by, *inter alia*, complaints lodged by consumers with NHTSA—which Defendant routinely monitors — before or within a reasonable amount of time after the allegations of the Defect became public.

16
17
18
19

    **ANSWER:**   This paragraph does not require a response because the Court dismissed the claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as follows: AHM denies the allegations in this paragraph, including the existence of the alleged defect and any alleged fraudulent conduct by AHM.

20
21

    494.   Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use.

22
23
24

    **ANSWER:**   This paragraph does not require a response because the Court dismissed the claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as follows: AHM denies the allegations in this paragraph.

25
26
27
28

    495.   Plaintiff Rapp and other Class members have had sufficient direct dealings with either Defendant or its agents (e.g., dealerships, consumer affairs departments, and technical support) to establish privity of contract between Defendant on one hand, and Plaintiff Rapp and each of the other Class members on the other hand. Nonetheless, privity is not required here because Plaintiff Rapp

1   and each of the other Class members are intended third-party beneficiaries of contracts between

2   Defendant and their dealers, and specifically, of Defendant's implied warranties. The dealers were

3   not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty

4   agreements provided with the Class Vehicles; the warranty agreements were designed for and

5   intended to benefit the consumers only. Defendant was also aware that the ultimate consumers of the

6   Class Vehicles (*i.e.*, the Class) required vehicles that would function safely, could be relied upon, and

7   otherwise meet minimum industry standards. Additionally, privity is excused here because Plaintiff

8   Rapp and each of the other Class members relied on statements made by Defendant itself in choosing

9   to purchase or lease a Class Vehicle. As alleged herein, the marketing of the Class Vehicles was

10  uniform, and was controlled and disseminated directly by Defendant.

11      **ANSWER:**   This paragraph does not require a response because the Court dismissed the

12  claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as

13  follows: This paragraph does not contain factual allegations requiring a response. To the extent a

14  response is required, AHM denies the allegations in this paragraph.

15      496.   Plaintiff Rapp, on behalf of himself and the Class, seeks monetary damages, treble

16  damages, costs, attorneys' fees, and such other and further relief provided by law and equity.

17      **ANSWER:**   This paragraph does not require a response because the Court dismissed the

18  claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as

19  follows: AHM admits that Plaintiffs seek damages and other relief, but denies that they or any putative

20  member of the alleged class is entitled to any relief. AHM denies any remaining allegations in this

21  paragraph.

22                                **COUNT NINETEEN:**
23  **DECEPTIVE ACTS OR PRACTICES PROHIBITED BY MASSACHUSETTS LAW**
    **(Mass. Gen. Laws ch. 93A, §§ 1, *et seq.*)**
24                   **(On Behalf of the Massachusetts Class)**

25      497.   Plaintiff Casey realleges and incorporates by reference all preceding allegations as

26  though fully set forth herein.

27      **ANSWER:**   AHM reasserts and incorporates by reference its answers to all preceding

28  allegations as though fully set forth herein.

498.   Plaintiff Casey brings this claim individually and on behalf of the Massachusetts Class against Defendant.

**ANSWER:**   AHM admits that Casey purports to bring this claim individually and on behalf of other putative members of an alleged class, but denies that the claim is amenable to class treatment. AHM denies the remaining allegations in this paragraph.

499.   Defendant, Plaintiffs, and the Massachusetts Class are "persons" within the meaning of MASS. GEN. LAWS ch. 93A, §1(a).

**ANSWER:**   This paragraph does not contain factual allegations requiring a response. To the extent a response is required, M.G.L. ch. 93A, § 1(a) speaks for itself and AHM denies the remaining allegations in this paragraph.

500.   Defendant engaged in "trade" or "commerce" within the meaning of MASS. GEN. LAWS ch. 93A, §1(b).

**ANSWER:**   This paragraph does not contain factual allegations requiring a response. To the extent a response is required, M.G.L. ch. 93A, § 1(b) speaks for itself and AHM denies the remaining allegations in this paragraph.

501.   Massachusetts law prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." MASS. GEN. LAWS ch. 93A, §2. Defendant participated in misleading, false, or deceptive acts that violated Massachusetts law.

**ANSWER:**   M.G.L. ch. 93A, § 2 speaks for itself, and to the extent the allegations in this paragraph vary therewith, AHM denies the allegations. AHM further denies the remaining allegations in this paragraph, including any conduct that violated this statute.

502.   In the course of its business, Defendant concealed and suppressed material facts concerning the Parasitic Drain Defect present in the Class Vehicles. Specifically, Defendant knowingly misrepresented and/or intentionally concealed material facts regarding the quality, safety, and reliability of the Class Vehicles, including the existence of the Defect, and the existence of a permanent and reliable repair for the Defect. Specifically, in marketing, offering for sale/lease, and selling/leasing the defective Class Vehicles, Defendant engaged in one or more of the following unfair or deceptive acts or practices prohibited by Massachusetts law.

**ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the alleged defect and any conduct that violated this statute.

503.   Plaintiffs and the Massachusetts Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose.

**ANSWER:**   AHM denies the allegations in this paragraph, including any conduct that violated this statute.

504.   Defendant thus violated Massachusetts law by, at minimum: (a) representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; (b) representing that Class Vehicles are of a particular standard, quality, and grade when they are not; (c) advertising Class Vehicles with the intent not to sell or lease them as advertised; and (d) representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

**ANSWER:**   AHM denies the allegations in this paragraph, including any conduct that violated this statute.

505.   Defendant intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the Massachusetts Class.

**ANSWER:**   AHM denies the allegations in this paragraph, including any conduct that violated this statute.

506.   Defendant knew or should have known that its conduct violated Massachusetts law.

**ANSWER:**   AHM denies the allegations in this paragraph.

507.   Defendant owed the Plaintiffs and the Massachusetts Class a duty to disclose the Defect and the true nature of the Class Vehicles, because Defendant:

(a)   possessed exclusive knowledge that it was manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

(b)   intentionally concealed the foregoing from regulators, Plaintiffs, and/or the Massachusetts Class members; and/or

1    (c)    made incomplete representations about the Class Vehicles generally, and the safety,

2    quality, and reliability of the Class Vehicles in particular, while purposefully withholding material

3    facts from Plaintiffs and/or Massachusetts Class members that contradicted these representations.

4    **ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the

5    alleged defect and any conduct that violated this statute.

6    508.   Defendant's fraudulent statements concerning the safety, quality, and reliability of the

7    Class Vehicles were material to Plaintiffs and to the Massachusetts Class.

8    **ANSWER:**   AHM denies the allegations in this paragraph, including any conduct that

9    violated this statute.

10   509.   Defendant's unfair or deceptive acts or practices were likely to and did, in fact, deceive

11   reasonable consumers, including Plaintiffs and the Massachusetts Class members, about the safety,

12   quality, and reliability of the Class Vehicles, and the true value of the Class Vehicles.

13   **ANSWER:**   AHM denies the allegations in this paragraph, including any conduct that

14   violated this statute.

15   510.   Defendant's violations present a continuing risk to Plaintiffs and to the Massachusetts

16   Class, as well as to the general public. Defendant's unlawful acts and practices complained of herein

17   affect the public interest.

18   **ANSWER:**   AHM denies the allegations in this paragraph.

19   511.   Plaintiffs and the Massachusetts Class suffered ascertainable loss and actual damages

20   as a direct and proximate result of Defendant's misrepresentations and its concealment of and failure

21   to disclose material information. Defendant had an ongoing duty to all of its customers to refrain from

22   unfair and deceptive practices under Massachusetts law. All owners of Class Vehicles suffered

23   ascertainable loss as a result of Defendant's deceptive and unfair acts and practices made in the course

24   of Defendant's business.

25   **ANSWER:**   AHM denies the allegations in this paragraph, including any conduct that

26   violated this statute and that Plaintiffs or any putative member of the alleged class was damaged by

27   AHM.

28

AMERICAN HONDA MOTOR CO., INC.'S ANSWER TO SECOND AMENDED COMPLAINT

512.   As a direct and proximate result of Defendant's violations of Massachusetts law, Plaintiffs and the Massachusetts Class have suffered injury-in-fact and/or actual damage.

**ANSWER:**   AHM denies the allegations in this paragraph, including that Plaintiffs or any putative member of the alleged class was injured or damaged by AHM.

513.   Pursuant to MASS. GEN. LAWS ch. 93A, §9, Plaintiffs, on behalf of the Massachusetts Class, seek monetary relief against Defendant measured as the greater of: (a) actual damages in an amount to be determined at trial; and (b) statutory damages in the amount of $25 for each Massachusetts Class member. Because Defendant's conduct was committed willfully and knowingly, Plaintiffs and each Massachusetts Class member is entitled to recover up to three times actual damages, but no less than two times actual damages.

**ANSWER:**   AHM admits that Plaintiffs seek damages and other relief, but denies that they or any putative member of the alleged class is entitled to any relief. AHM denies the remaining allegations in this paragraph.

514.   Plaintiffs, on behalf of the Massachusetts Class, also seek an Order enjoining Defendant's unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees and costs, and any other just and proper relief available under Massachusetts law.

**ANSWER:**   AHM admits that Plaintiffs seek equitable and other relief, but denies that they or any putative member of the alleged class is entitled to any relief. AHM denies the remaining allegations in this paragraph.

515.   On August 23, 2021, a notice letter was sent to Defendant, complying with MASS. GEN. LAWS ch. 93A, §9(3). Additionally, Defendant was provided notice of the issues raised in this Count and this Complaint by the numerous complaints filed against it, and the many individual notice letters sent by consumers. Plaintiffs seek all damages and relief to which Plaintiffs and the Massachusetts Class are entitled.

**ANSWER:**   AHM admits that Casey sent a letter to it dated August 23, 2021 asserting that it is in violation of M.G.L. ch. 93A, § 9(3), but denies that the letter satisfied the requirements of M.G.L. ch. 93A, § 9. AHM further admits that Plaintiffs seek damages and other relief, but denies

that they or any putative member of the alleged class is entitled to any relief. AHM denies the remaining allegations in this paragraph.

516.   As a result of Defendant's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

**ANSWER:**   AHM denies the allegations in this paragraph.

517.   Plaintiffs, on behalf of themselves and the Massachusetts Class, seek monetary damages, costs, attorneys' fees, and such other relief provided by law and equity.

**ANSWER:**   AHM admits that Plaintiffs seek damages and other relief, but denies that they or any putative member of the alleged class is entitled to any relief. AHM denies any remaining allegations in this paragraph.

<div align="center">

**COUNT TWENTY:**
**MASSACHUSETTS LEMON LAW**
**(Mass. Gen. Laws ch. 90, § 7N1/2(1))**
**(On Behalf of the Massachusetts Class)**

</div>

518.   Plaintiff Casey realleges and incorporates by reference all preceding allegations as though fully set forth herein.

**ANSWER:**   AHM reasserts and incorporates by reference its answers to all preceding allegations as though fully set forth herein.

519.   Plaintiff Casey brings this claim individually and on behalf of the Massachusetts Class against Defendant.

**ANSWER:**   AHM admits that Casey purports to bring this claim individually and on behalf of other putative members of an alleged class, but denies that the claim is amenable to class treatment. AHM denies the remaining allegations in this paragraph.

520.   Plaintiffs and the Massachusetts Class members own or lease "motor vehicles" within the meaning of MASS. GEN. LAWS ch. 90, §7N1/2(1), because these vehicles were constructed or designed for propulsion by power and were sold, leased, or replaced by Defendant. These vehicles are not: (a) auto homes; (b) vehicles built primarily for off-road use; and (c) used primarily for business purposes.

**ANSWER:**   AHM admits that the alleged Class Vehicles are not auto homes and vehicles built primarily for off-road use. M.G.L. ch. 90, § 7N1/2(1) speaks for itself, and to the extent the allegations in this paragraph vary therewith, AHM denies the allegations. AHM denies that it sold, leased, or replaced any vehicles to Plaintiffs or any putative member of the alleged class. AHM lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and therefore denies the allegations.

521.   Defendant is a "manufacturer" of the Class Vehicles within the meaning of MASS. GEN. LAWS ch. 90, §7N1/2(1).

**ANSWER:**   This paragraph does not contain factual allegations requiring a response. To the extent a response is required, M.G.L. ch. 90, § 7N1/2(1) speaks for itself and AHM denies the remaining allegations in this paragraph.

522.   Plaintiffs and the Massachusetts Class are "consumers" within the meaning of MASS. GEN. LAWS ch. 90, §7N1/2(1) because they bought or leased the Class Vehicles or are otherwise entitled to the attendant terms of warranty

**ANSWER:**   This paragraph does not contain factual allegations requiring a response. To the extent a response is required, M.G.L. ch. 90, § 7N1/2(1) speaks for itself and AHM denies the remaining allegations in this paragraph.

523.   The Class Vehicles did not conform to their express and implied warranties because of the Defect, which caused the Class Vehicles to not operate as intended, and were therefore not fit for the ordinary purpose for which vehicles are used.

**ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the alleged defect.

524.   Defendant had actual knowledge of the nonconformities during the "term of protection" within the meaning of MASS. GEN. LAWS ch. 90, §§7N1/2(1)-7N1/2(2). But, the nonconformities continued to exist throughout this term, as they have not been fixed. Massachusetts Class members are excused from notifying Defendant of the nonconformities because it was already fully aware of the problem—it intentionally created it—and any repair attempt is futile.

1   **ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the

2   alleged defect.

3   525.   Defendant had a reasonable opportunity to cure the nonconformities because of its

4   actual knowledge of, creation of, and attempt to conceal the nonconformities, but has not done so as

5   required under MASS. GEN. LAWS ch. 90, §7N1/2(3).

6   **ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the

7   alleged defect.

8   526.   For vehicles purchased, the Massachusetts Class demands a full refund of the contract

9   price. For vehicles leased, the Massachusetts Class demands a full refund of all payments made under

10  the lease agreement. The Massachusetts Class exercises their "unqualified right" to reject an offer of

11  replacement and will retain their vehicles until payment is tendered under MASS. GEN. LAWS ch.

12  90, §7N1/2(3).

13  **ANSWER:**   AHM admits that Plaintiffs seek damages and other relief, but denies that they

14  or any putative member of the alleged class is entitled to any relief. AHM denies the remaining

15  allegations in this paragraph.

16  527.   Plaintiffs, on behalf of themselves and the Massachusetts Class, seek monetary

17  damages, costs, attorneys' fees, and such other relief provided by law and equity.

18  **ANSWER:**   AHM admits that Plaintiffs seek damages and other relief, but denies that they

19  or any putative member of the alleged class is entitled to any relief. AHM denies any remaining

20  allegations in this paragraph.

21              **COUNT TWENTY-ONE:**
    **BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
22       **(Mass. Gen. Laws ch. 106, §§ 2-314 and 2A-212)**
            **(On Behalf of the Massachusetts Class)**
23

24  528.   Plaintiff Casey realleges and incorporates by reference all preceding allegations as

25  though fully set forth herein.

26  **ANSWER:**   This paragraph does not require a response because the Court dismissed the

27  claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as

28

1    follows: AHM reasserts and incorporates by reference its answers to all preceding allegations as

2    though fully set forth herein.

3           529.    Plaintiff Casey brings this claim individually and on behalf of the Massachusetts Class

4    against Defendant.

5           **ANSWER:**    This paragraph does not require a response because the Court dismissed the

6    claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as

7    follows: AHM admits that Casey purports to bring this claim individually and on behalf of other

8    putative members of an alleged class, but denies that the claim is amenable to class treatment. AHM

9    denies the remaining allegations in this paragraph.

10          530.    Defendant is and was, at all relevant times, a "merchant" with respect to motor vehicles

11   under MASS. GEN. LAWS ch. 106, §2-104(1), and a "seller" of motor vehicles under MASS. GEN.

12   LAWS ch. 106, §2 103(1)(d).

13          **ANSWER:**    This paragraph does not require a response because the Court dismissed the

14   claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as

15   follows: This paragraph does not contain factual allegations requiring a response. To the extent a

16   response is required, M.G.L. ch. 106, §§ 2-103(1)(d) and 2-104(1) speak for themselves and AHM

17   denies the remaining allegations in this paragraph.

18          531.    With respect to leases, Defendant is and was, at all relevant times a "lessor" of motor

19   vehicles under MASS. GEN. LAWS ch. 106, §2A-103(1)(p).

20          **ANSWER:**    This paragraph does not require a response because the Court dismissed the

21   claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as

22   follows: This paragraph does not contain factual allegations requiring a response. To the extent a

23   response is required, M.G.L. ch. 106, § 2A-103(1)(p) speaks for itself and AHM denies the remaining

24   allegations in this paragraph.

25          532.    The Class Vehicles are and were, at all relevant times, "goods" within the meaning of

26   MASS. GEN. LAWS ch. 106, §§2-105(1) and 2A-103(1)(h).

27          **ANSWER:**    This paragraph does not require a response because the Court dismissed the

28   claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as

follows: This paragraph does not contain factual allegations requiring a response. To the extent a response is required, M.G.L. ch. 106, §§ 2-A103(1)(h) and 2-105(1) speak for themselves and AHM denies the remaining allegations in this paragraph.

533.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to MASS. GEN. LAWS ch. 106, §§2-314 and 2A-212.

**ANSWER:**   This paragraph does not require a response because the Court dismissed the claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as follows: This paragraph does not contain factual allegations requiring a response. To the extent a response is required, M.G.L. ch. 106, §§ 2-314 and 2A-212 speak for themselves and AHM denies the remaining allegations in this paragraph.

534.   These Class Vehicles, when sold or leased and at all times thereafter, included the Defect, and were therefore not fit for the ordinary purpose for which vehicles are used.

**ANSWER:**   This paragraph does not require a response because the Court dismissed the claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as follows: AHM denies the allegations in this paragraph, including the existence of the alleged defect.

535.   Defendant was provided notice of these issues by the numerous public complaints filed against it with NHTSA, as well as the filing of the instant Complaint, within a reasonable amount of time.

**ANSWER:**   This paragraph does not require a response because the Court dismissed the claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as follows: AHM denies the allegations in this paragraph.

536.   As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Massachusetts Class members have been damaged in an amount to be proven at trial.

**ANSWER:**   This paragraph does not require a response because the Court dismissed the claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as follows: AHM denies the allegations in this paragraph, including that Plaintiffs or any putative member of the alleged class was damaged by AHM.

537. Plaintiffs, on behalf of themselves and the Massachusetts Class, seek monetary damages, costs, attorneys' fees, and such other relief provided by law and equity.

**ANSWER:**   This paragraph does not require a response because the Court dismissed the claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as follows: AHM admits that Plaintiffs seek damages and other relief, but denies that they or any putative member of the alleged class is entitled to any relief. AHM denies any remaining allegations in this paragraph.

<div align="center">

**COUNT TWENTY-TWO:**
**VIOLATIONS OF THE MICHIGAN CONSUMER PROTECTION ACT**
**(Mich. Comp. Laws §§ 445.903 *et seq.*)**
**(On Behalf of the Michigan Class)**

</div>

538. Plaintiff Sanger realleges and incorporates by reference all preceding allegations as though fully set forth herein.

**ANSWER:**   AHM reasserts and incorporates by reference its answers to all preceding allegations as though fully set forth herein.

539. Plaintiff Sanger brings this claim individually, and on behalf of the Michigan Class against Defendant.

**ANSWER:**   AHM admits that Sanger purports to bring this claim individually and on behalf of other putative members of an alleged class, but denies that the claim is amenable to class treatment. AHM denies the remaining allegations in this paragraph.

540. The Michigan Class members are "person[s]" within the meaning of the MICH. COMP. LAWS §445.902(1)(d).

**ANSWER:**   This paragraph does not contain factual allegations requiring a response. To the extent a response is required, MCL § 445.902(1)(d) speaks for itself and AHM denies the remaining allegations in this paragraph.

541. Defendant is a "person" engaged in "trade or commerce" within the meaning of the MICH. COMP. LAWS §445.902(1)(d) and (g).

<div align="center">168</div>

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ANSWER:**   This paragraph does not contain factual allegations requiring a response. To the extent a response is required, MCL §§ 445.902(1)(d) and (g) speak for themselves and AHM denies the remaining allegations in this paragraph.

542.   The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce[.]" MICH. COMP. LAWS §445.903(1). Defendant engaged in unfair, unconscionable, or deceptive methods, acts, or practices prohibited by the Michigan CPA, including: "(c) [r]epresenting that goods or services have . . . characteristics . . . that they do not have . . .;" "(e) [r]epresenting that goods or services are of a particular standard . . . if they are of another;" "(i) [m]aking false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;" "(s) [f]lailing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer;" "(bb) [m]aking a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is;" and "(cc) [f]lailing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner." MICH. COMP. LAWS §445.903(1).

**ANSWER:**   The Michigan Consumer Protection Act ("Michigan CPA") and MCL §§ 445.903(1) speak for themselves, and to the extent the allegations in this paragraph vary therewith, AHM denies the allegations. AHM further denies the remaining allegations in this paragraph, including any conduct that violated this statute.

543.   In the course of its business, Defendant concealed and suppressed material facts concerning the Parasitic Drain Defect present in the Class Vehicles. Specifically, Defendant knowingly misrepresented and/or intentionally concealed material facts regarding the quality, safety, and reliability of the Class Vehicles, including the existence of the Defect, and the existence of a permanent and reliable repair for the Defect.

**ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the alleged defect and any conduct that violated this statute.

544.   Defendant, thus, violated the Michigan CPA by, at minimum: (a) employing deception, deceptive acts or practices, fraud, and/or misrepresentations; or (b) concealing, suppressing, or omitting material facts with the intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

**ANSWER:**   AHM denies the allegations in this paragraph, including any conduct that violated this statute.

545.   Plaintiffs and the Michigan Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose.

**ANSWER:**   AHM denies the allegations in this paragraph, including any conduct that violated this statute.

546.   Defendant intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Michigan Class.

**ANSWER:**   AHM denies the allegations in this paragraph, including any conduct that violated this statute.

547.   Defendant knew or should have known that its conduct violated the Michigan Act.

**ANSWER:**   AHM denies the allegations in this paragraph.

548.   Defendant owed Plaintiffs and the Michigan Class a duty to disclose the Defect and the true nature of the Class Vehicles, because Defendant:

(a)     possessed exclusive knowledge that it was manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

(b)     intentionally concealed the foregoing from regulators, Plaintiffs, and/or Michigan Class members; and/or

(c)     made incomplete representations about the Class Vehicles generally, and the quality, safety, and reliability of the Class Vehicles in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

**ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the alleged defect and any conduct that violated this statute.

549.   Defendant's fraudulent concealment of the true characteristics of the Class Vehicles' battery, and the lack of safety, reliability, and quality of the Class Vehicles, were material to Plaintiffs and the Michigan Class.

**ANSWER:**   AHM denies the allegations in this paragraph, including any conduct that violated this statute.

550.   Defendant's unfair or deceptive acts or practices were likely to and did, in fact, deceive reasonable consumers, including Plaintiffs and the Michigan Class, about the safety, reliability, and quality of the Class Vehicles; the quality of Defendant's brands; the existence of the Defect; and the true value of the Class Vehicles.

**ANSWER:**   AHM denies the allegations in this paragraph, including the existence of the alleged defect and any conduct that violated this statute.

551.   Plaintiffs and the Michigan Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations and its concealment of and failure to disclose material information.

**ANSWER:**   AHM denies the allegations in this paragraph, including any conduct that violated this statute and that Plaintiffs or any putative member of the alleged class was damaged by AHM.

552.   Defendant's violations present a continuing risk to Plaintiffs and the Michigan Class, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

**ANSWER:**   AHM denies the allegations in this paragraph.

553.   Plaintiffs and the Michigan Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations and its concealment of and failure to disclose material information. Defendant had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Michigan CPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendant's deceptive and unfair acts and practices made in the course of Defendant's business.

1     **ANSWER:**   AHM denies the allegations in this paragraph, including any conduct that

2    violated this statute and that Plaintiffs or any putative member of the alleged class was damaged by

3    AHM.

4     554.   As a direct and proximate result of Defendant's violations of the Michigan CPA,

5    Michigan Class members have suffered injury-in-fact and/or actual damage.

6     **ANSWER:**   AHM denies the allegations in this paragraph, including that Plaintiffs or any

7    putative member of the alleged class was injured or damaged by AHM.

8     555.   Plaintiffs, on behalf of the Michigan Class, seek injunctive relief to enjoin Defendant

9    from continuing its unfair and deceptive acts; monetary relief against Defendant measured as the

10   greater of: (a) actual damages in an amount to be determined at trial; and (b) statutory damages in the

11   amount of $250 for each Michigan Class member; reasonable attorneys' fees; and any other just and

12   proper relief available under MICH. COMP. LAWS §445.911.

13    **ANSWER:**   AHM admits that Plaintiffs seek damages and other relief, but denies that they

14   or any putative member of the alleged class is entitled to any relief. AHM denies the remaining

15   allegations in this paragraph.

16    556.   Plaintiffs, on behalf of the Michigan Class, also seek punitive damages against

17   Defendant because it carried out despicable conduct with willful and conscious disregard of the rights

18   of others. Defendant intentionally and willfully misrepresented the reliability of the Class Vehicles

19   and concealed material facts that only it knew—all to avoid the expense and public relations

20   nightmare of correcting a flaw in the Class Vehicles. Defendant's unlawful conduct constitutes

21   oppression and fraud warranting punitive damages.

22    **ANSWER:**   AHM admits that Plaintiffs seek other relief, but denies that they or any putative

23   member of the alleged class is entitled to any relief. AHM denies the remaining allegations in this

24   paragraph, including any conduct that violated this statute.

25    557.   Plaintiffs, on behalf of themselves and the Michigan Class, seek monetary damages,

26   costs, attorneys' fees, and such other relief provided by law and equity.

27

28

1     **ANSWER:**   AHM admits that Plaintiffs seek damages and other relief, but denies that they

2     or any putative member of the alleged class is entitled to any relief. AHM denies the remaining

3     allegations in this paragraph.

### COUNT TWENTY-THREE:
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Mich. Comp. Laws §§ 440.2314 and 440.2860)
### (On Behalf of the Michigan Class)

7     558.   Plaintiff Sanger realleges and incorporates by reference all preceding allegations as

8     though fully set forth herein.

9     **ANSWER:**   This paragraph does not require a response because the Court dismissed the

10    claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as

11    follows: AHM reasserts and incorporates by reference its answers to all preceding allegations as

12    though fully set forth herein.

13    559.   Plaintiff Sanger brings this claim individually and on behalf of the Michigan Class

14    against Defendant.

15    **ANSWER:**   This paragraph does not require a response because the Court dismissed the

16    claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as

17    follows: AHM admits that Sanger purports to bring this claim individually and on behalf of other

18    putative members of an alleged class, but denies that the claim is amenable to class treatment. AHM

19    denies the remaining allegations in this paragraph.

20    560.   Defendant is and was, at all relevant times, a "merchant" with respect to motor vehicles

21    under MICH. COMP. LAWS §440.2104(1), and a "sellers" of motor vehicles under MICH. COMP.

22    LAWS §440.2103(1)(c).

23    **ANSWER:**   This paragraph does not require a response because the Court dismissed the

24    claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as

25    follows: This paragraph does not contain factual allegations requiring a response. To the extent a

26    response is required, MCL §§ 440.2104(1) and 440.2103(1)(c) speak for themselves and AHM denies

27    the remaining allegations in this paragraph.

28

561. With respect to leases, Defendant is and was, at all relevant times, a "lessor" of motor vehicles under MICH. COMP. LAWS §440.2803(1)(p).

**ANSWER:**   This paragraph does not require a response because the Court dismissed the claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as follows: This paragraph does not contain factual allegations requiring a response. To the extent a response is required, MCL § 440.2803(1)(p) speaks for itself and AHM denies the remaining allegations in this paragraph.

562. The Class Vehicles are and were, at all relevant times, "goods" within the meaning of MICH. COMP. LAWS §§440.2105(1) and 440.2803(1)(h).

**ANSWER:**   This paragraph does not require a response because the Court dismissed the claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as follows: This paragraph does not contain factual allegations requiring a response. To the extent a response is required, MCL § 440.2803(1)(h) speaks for itself and AHM denies the remaining allegations in this paragraph.

563. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to MICH. COMP. LAWS §§440.2314 and 440.2862.

**ANSWER:**   This paragraph does not require a response because the Court dismissed the claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as follows: This paragraph does not contain factual allegations requiring a response. To the extent a response is required, MCL §§ 440.2314 and 440.2862 speak for themselves and AHM denies the remaining allegations in this paragraph.

564. These Class Vehicles, when sold or leased and at all times thereafter, included the Defect, and were therefore not fit for the ordinary purpose for which vehicles are used.

**ANSWER:**   This paragraph does not require a response because the Court dismissed the claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as follows: AHM denies the allegations in this paragraph, including the existence of the alleged defect.

565.   Defendant was provided notice of these issues by the complaints filed with NHTSA detailed herein, as well as the instant Complaint, within a reasonable amount of time.

**ANSWER:**   This paragraph does not require a response because the Court dismissed the claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as follows: AHM denies the allegations in this paragraph.

566.   As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiffs and the Michigan Class members have been damaged in an amount to be proven at trial.

**ANSWER:**   This paragraph does not require a response because the Court dismissed the claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as follows: AHM denies the allegations in this paragraph, including that Plaintiffs or any putative member of the alleged class was damaged by AHM.

567.   Plaintiffs, on behalf of themselves and the Michigan Class, seek monetary damages, costs, attorneys' fees, and such other relief provided by law and equity.

**ANSWER:**   This paragraph does not require a response because the Court dismissed the claim on October 19, 2023. *See* Dkt. 89 at 12. To the extent a response is required, AHM responds as follows: AHM admits that Plaintiffs seek damages and other relief, but denies that they or any putative member of the alleged class is entitled to any relief. AHM denies any remaining allegations in this paragraph.

## X.   PRAYER FOR RELIEF

Plaintiffs' prayer for relief does not contain factual allegations requiring a response. To the extent a response is required, AHM denies that Plaintiffs or any putative member of the alleged classes is entitled to any relief, including specifically all relief requested for each cause of action set forth in Plaintiffs' prayer.

## AFFIRMATIVE DEFENSES

Without assuming or admitting that AHM bears the burden of proof for any of the below allegations or defenses, AHM pleads the following affirmative defenses to Plaintiffs' SAC. AHM has insufficient knowledge or information on which to form a belief as to whether it may have additional

affirmative defenses that govern the claims asserted by Plaintiffs and members of the proposed classes. AHM therefore reserves the right to amend its answer to add additional defenses as appropriate, including but not limited to those revealed during discovery.

<div align="center">

**FIRST AFFIRMATIVE DEFENSE**
</div>

The SAC fails to state any claim upon which relief can be granted.

<div align="center">

**SECOND AFFIRMATIVE DEFENSE**
</div>

Upon information and belief, the sales contracts pursuant to which Plaintiffs and/or some or all members of the proposed classes purchased or leased their vehicles contain arbitration clauses that may require some or all of the claims asserted herein to be resolved through arbitration.

<div align="center">

**THIRD AFFIRMATIVE DEFENSE**
</div>

Some or all of the claims made in Plaintiffs' SAC, including claims made on behalf of the proposed putative classes, are barred because the named Plaintiffs and/or members of the proposed putative classes lack Article III or statutory standing.

<div align="center">

**FOURTH AFFIRMATIVE DEFENSE**
</div>

The claims of Plaintiffs and/or members of the proposed classes may be barred, in whole or in part, to the extent any injury sustained by Plaintiffs and/or members of the proposed classes were proximately and actually caused, in whole or in part, by the acts or omissions on the part of Plaintiffs, members of the proposed class, and/or others for whose conduct AHM is not responsible.

<div align="center">

**FIFTH AFFIRMATIVE DEFENSE**
</div>

The claims of Plaintiffs and/or members of the proposed classes may be barred, in whole or in part, in that any alleged acts or omissions were intervened and/or superseded by the acts and omissions of others, which were the sole cause of injury, damage, or loss (if any) to Plaintiffs and/or members of the proposed classes.

<div align="center">

**SIXTH AFFIRMATIVE DEFENSE**
</div>

The claims of Plaintiffs and/or members of the proposed classes may be barred, in whole or in part, in that any and all injuries, losses, or damages (if any) sustained or suffered by Plaintiffs and/or members of the proposed classes were the direct and proximate result of an unavoidable accident,

incident or condition, an act of God, an act of nature, and/or irresistible forces of nature without fault or liability on the part of AHM.

## SEVENTH AFFIRMATIVE DEFENSE

Any claims for damages or other monetary recovery by Plaintiffs and/or members of the proposed classes must be offset and reduced by the value received from the vehicles purchased or leased.

## EIGHTH AFFIRMATIVE DEFENSE

Any claims for incidental or consequential damages are barred by written disclaimers.

## NINTH AFFIRMATIVE DEFENSE

With respect to all causes of action based on an alleged breach of any express warranty, there is no privity of contract or other relationship between Plaintiffs and/or members of the proposed classes and AHM that provides a basis for such warranty or duty in favor of Plaintiffs and/or members of the proposed classes.

## TENTH AFFIRMATIVE DEFENSE

If any persons or entities claiming to be members of the proposed classes have settled or released their claims, they may be barred from recovery, in whole or in part, by such settlements or releases.

## ELEVENTH AFFIRMATIVE DEFENSE

If any persons claiming to be members of the proposed classes have resolved similar or the same claims as those alleged in the SAC, they may be barred from recovery, in whole or in part, on the ground that they are subject to the defense of accord and satisfaction.

## TWELFTH AFFIRMATIVE DEFENSE

The claims of Plaintiffs and/or members of the proposed classes are time-barred under the applicable statute of limitations.

## THIRTEENTH AFFIRMATIVE DEFENSE

The claims of Plaintiffs and/or members of the proposed classes are barred, in whole or in part, based on the doctrine of waiver.

AMERICAN HONDA MOTOR CO., INC.'S ANSWER TO SECOND AMENDED COMPLAINT

1

**FOURTEENTH AFFIRMATIVE DEFENSE**

2
3

The claims of Plaintiffs and/or members of the proposed classes are barred, in whole or in part, based on the doctrine of estoppel.

4

**FIFTEENTH AFFIRMATIVE DEFENSE**

5
6

The claims of Plaintiffs and/or members of the proposed classes are barred, in whole or in part, based on the doctrine of laches.

7

**SIXTEENTH AFFIRMATIVE DEFENSE**

8
9

The claims of Plaintiffs and/or members of the proposed classes are barred, in whole or in part, to the extent they engaged in unlawful, inequitable, or improper conduct.

10

**SEVENTEENTH AFFIRMATIVE DEFENSE**

11
12
13

The claims of Plaintiffs and/or members of the proposed classes may be barred, in whole or in part, based upon the improper use or maintenance of their vehicles or the misuse, abuse, unauthorized or unreasonable use of their vehicles.

14

**EIGHTEENTH AFFIRMATIVE DEFENSE**

15
16

Plaintiffs and/or members of the proposed classes whose vehicles have been altered, modified, or changed are barred, in whole or in part, from recovery.

17

**NINETEENTH AFFIRMATIVE DEFENSE**

18
19
20

The claims of Plaintiffs and/or members of the proposed classes are barred, in whole or in part, to the extent they have failed to mitigate damages and/or have caused some or all of the alleged damage of which they now complain.

21

**TWENTIETH AFFIRMATIVE DEFENSE**

22
23
24

The claims of Plaintiffs and/or members of the proposed classes may be barred, in whole or in part, because Plaintiff and members of the proposed classes cannot meet their burden of showing that any acts, conduct, statement or omissions on the part of AHM were likely to mislead.

25

**TWENTY-FIRST AFFIRMATIVE DEFENSE**

26
27
28

Plaintiffs' action is not properly maintained as a class action because the requirements under federal law for class certification are not met and certification of the proposed classes would result in a denial of due process to AHM as well as to the proposed classes.

1

2      **TWENTY-SECOND AFFIRMATIVE DEFENSE**

The action is not appropriate for class treatment because Plaintiffs' claims necessarily revolve

3    around the individual circumstances concerning the usage, maintenance, and parking of the vehicles

4    of Plaintiffs and each member of the proposed classes.

5      **TWENTY-THIRD AFFIRMATIVE DEFENSE**

6        Plaintiffs' claims for equitable remedies are barred because Plaintiff and members of the

7    proposed putative classes have an adequate remedy at law.

8      **TWENTY-FOURTH AFFIRMATIVE DEFENSE**

9        AHM's conduct described in the SAC is not "unfair" within the meaning of California

10   Business and Professions Code § 17200 because the benefits of the alleged conduct outweigh the

11   alleged harm to consumers.

12     **TWENTY-FIFTH AFFIRMATIVE DEFENSE**

13       AHM's conduct described in the SAC is not "unfair" within the meaning of California

14   Business and Professions Code § 17200 based upon AHM's reasons, justifications, and motives for

15   the conduct.

16     **TWENTY-SIXTH AFFIRMATIVE DEFENSE**

17       AHM's conduct described in the SAC is not "unfair" within the meaning of California

18   Business and Professions Code § 17200 because Plaintiffs and members of proposed classes had

19   reasonably available alternatives.

20     **TWENTY-SEVENTH AFFIRMATIVE DEFENSE**

21       AHM's practice described in the SAC is not "unfair" within the meaning of California

22   Business and Professions Code § 17200 because the alleged conduct does not violate established

23   public policy and is not immoral, unethical, oppressive, or unscrupulous.

24     **TWENTY-EIGHTH AFFIRMATIVE DEFENSE**

25       Plaintiffs' claim for unfair-business practices under California Business and Professions Code

26   § 17200 is barred because the claim is not tethered to a legislatively declared policy.

27

28

AMERICAN HONDA MOTOR CO., INC.'S ANSWER TO SECOND AMENDED COMPLAINT

1

**TWENTY-NINTH AFFIRMATIVE DEFENSE**

2       Plaintiffs' and proposed class members' vehicles conform to the then-existing current state of

3   art and are not unreasonably dangerous.

4

**THIRTIETH AFFIRMATIVE DEFENSE**

5       Plaintiffs' and proposed class members' vehicles conform to any then-existing applicable

6   governmental or industry standards.

7

**THIRTY-FIRST AFFIRMATIVE DEFENSE**

8       Plaintiffs' claim under the Massachusetts Lemon Law fails, in whole or in part, because the

9   alleged nonconformity does not substantially impair the use, market value, or safety of the vehicle.

10

**AHM'S PRAYER FOR RELIEF**

11      WHEREFORE, AHM prays for judgment in its favor and against Plaintiffs as to all remaining

12  claims in this action as follows:

13      1.      that Plaintiffs and all putative members of the proposed classes take nothing by

14  reason of this action;

15      2.      that certification of the proposed classes be denied;

16      3.      for attorneys' fees and costs of suit incurred; and

17      4.      for such other and further relief as the Court deems just and proper.

18

**JURY DEMAND**

19      AHM demands a trial by jury on all issues so triable.

20  Dated: December 22, 2023                 Respectfully submitted,

21                                           SHOOK, HARDY & BACON L.L.P.

22                                           By:     __/s/ Rachel A. Straus_____

23                                                       Rachel A. Straus

24                                           Attorneys for Defendant
                                             AMERICAN HONDA MOTOR CO., INC.

25

26

27

28